UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DAVID J. WIDI, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:12-cv-00188-JAW |
| | ) | |
| PAUL MCNEIL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING PLAINTIFF'S MOTION TO STAY; DENYING PLAINTIFF'S MOTION TO STRIKE; AND GRANTING DEFENDANT MCNEIL'S MOTION TO DISMISS**

David J. Widi, Jr. alleges a variety of constitutional torts related to his criminal conviction for possession of firearms and ammunition by a felon and manufacturing marijuana, *United States v. Widi*, No. 09-CR-00009-GZS. Defendant Special Agent Paul McNeil moves to dismiss all counts of the complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), or, in the alternate, for summary judgment under Rule 56. In addition to opposing Agent McNeil's motion, Mr. Widi moves to strike Agent McNeil's Reply Statement of Material Facts (ECF No. 128) and moves to stay the proceedings. The Court denies Mr. Widi's Motion to Strike, denies Mr. Widi's Motion to Stay Proceedings, and dismisses all counts as against Agent McNeil.

## I.     STATEMENT OF FACTS

Mr. Widi alleges that thirty-two named individuals, four John Does, thirteen state and federal government agencies, one town, and one bank colluded to arrange his false arrest and conviction for production of marijuana and possession of a firearm and ammunition by a felon. *Am. Compl.* (ECF No. 15). Having lost his criminal appeal, *United States v. Widi*, 684 F.3d 216 (1st Cir. 2012), he brought a fourteen count civil suit against virtually everyone involved in his arrest and conviction other than the judge. *Am. Compl.* Most of the allegations of the Amended Complaint arise from the search and seizure of Mr. Widi's property on November 28, 2008, his subsequent arrest and interrogation, and his later criminal trial and conviction. The Court will recount the facts relevant to each count in detail below.

Nearly eleven months ago, on October 15, 2012, Defendant Special Agent Paul McNeil moved for the dismissal of all counts against him or summary judgment in his favor and filed a statement of undisputed material facts. *Special Agent McNeil's Mot. to Dismiss or for Summ. J.* (ECF No. 37) (*Motion*); *Statement of Undisputed Material Facts* (ECF No. 38) (DSMF). Mr. Widi opposed the motion on March 4, 2013, and filed a statement of opposing material facts. *David Widi's Opp'n to McNeil's Mot. to Dismiss and for Summ. J.* (ECF No. 102) (*Pl.'s Opp'n*); *Statement of Opposing Material Facts* (ECF No. 103) (PRDSMF). Agent McNeil replied on March 25, 2013. *McNeil's Reply to Pl.'s Opp'n* (ECF No. 127) (*Def.'s Reply*); *Reply Statement of Material Facts* (ECF No. 128) (Def.'s Reply SMF).

On April 19, 2013, Mr. Widi moved to strike Agent McNeil's Reply Statement of Material Facts, arguing that Agent McNeil's filing was not authorized by Local Rule 56(d).  *Mot. to Strike* (ECF No. 134).  Agent McNeil opposed the Motion to Strike on April 25, 2013.  *Resp. to Mot. to Strike* (ECF No. 137).  Mr. Widi let the deadline for a reply lapse on May 9, 2013.

On June 28, 2013, Mr. Widi moved to stay proceedings.  *Mot. to Stay Proceedings* (ECF No. 148).  Defendant TD Bank, N.A. opposed this motion on July 15, 2013, *Defendant TD Bank, N.A.'s Opp'n to Pl.'s Mot. to Stay Proceedings* (ECF No. 153), and most Defendants followed suit on July 17, 2013.  *Resp. in Opp'n to Mot. to Stay Proceedings* (ECF No. 157).  Mr. Widi replied to the Defendants' oppositions on August 5, 2013 (ECF No. 160).

## II.   LEGAL STANDARDS

### A.   *Bivens*, Section 1983, and the Maine Civil Rights Act

*Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), provides a civil cause of action, and a corresponding money damages remedy, against agents of the federal government who violate a person's constitutional rights.  Title 42 U.S.C. § 1983 (2012) provides an analogous cause of action and remedy against agents of a state.  Section 4682 of the Maine Civil Rights Act, 5 M.R.S. § 4682 (2013), provides a somewhat broader cause of action under state law.[1]

---

[1]      The Maine Civil Rights Act reaches action by "any person, whether or not acting under color of law," while § 1983 only applies to persons who act "under color of any statute, ordinance, regulation, custom, or usage" of state law.  Furthermore, the Maine Civil Rights Act also provides a cause of action for violations of the Maine state constitution.  Neither party asserts that the Maine statute is of legal significance independent of § 1983, so the Court has not analyzed it separately.

Mr. Widi alleges in Counts I – X and XII – XIII that the actions of the defendants violated *Bivens*, § 1983, and section 4682.

### B.     The Jurisdictional Bar of *Heck v. Humphrey*

A plaintiff may not seek civil damages for allegedly unconstitutional conduct that would, if proved, render his underlying conviction invalid. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Thore v. Howe*, 466 F.3d 173, 179-80 (1st Cir. 2006); *Figueroa v. Rivera*, 147 F.3d 77, 81 (1st Cir. 1998). The First Circuit has suggested that *Heck* acts as a bar to the subject matter jurisdiction of the district court. *See Figueroa*, 147 F.3d at 81 ("*Heck* . . . makes the impugning of an allegedly unconstitutional conviction in a separate, antecedent proceeding a prerequisite to a resultant section 1983 action for damages"); *McGann v. Eaton*, No. 05-2864, 2006 WL 2391059, at *5-6 (1st Cir. Aug. 21, 2006) ("The *Heck* decision . . . required that the district court 'deny the existence of [this] cause of action' and dismiss the complaint") (quoting *Heck*, 512 U.S. at 489); *see also* H.L.A. HART, THE CONCEPT OF LAW 94-110 (3d ed. 2012) (describing the inherent connection between rules defining what the rules are and rules defining who has the power to adjudicate them). Assuming that *Heck* addresses the subject matter jurisdiction of the Court, Agent McNeil is correct to refer to it as a "jurisdictional bar." *Motion* at 8. Rule 12(b)(1) requires the Court to dismiss any dispute over which it lacks subject matter jurisdiction.

### C.   Rule 12(b)(6)

When evaluating a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." FED. R. CIV. P. 12(b)(6); *Oscasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011). The Court need not assume the truth of conclusory allegations, and the complaint must state at least a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). In deciding a Rule 12(b)(6) motion, the Court may consider any documents attached to the complaint as well as any other documents "integral to or explicitly relied upon in the complaint, even though not attached to the complaint." *Trans-Spec Truck Servs. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (quoting *Clorox Co. v. Proctor & Gambel Comm. Co.*, 228 F.3d 24, 32 (1st Cir. 2000)).

### D.   Qualified Immunity

Qualified immunity "provides defendant public officials an immunity from suit and not a mere defense to liability." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009). Government officials performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). This qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The First Circuit instructs a court facing a qualified immunity claim to apply a two-part test. The Court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendant's alleged violation. *Maldonado*, 568 F.3d at 268-69 (citing *Pearson v. Callahan*, 555 U.S. 223, 230 (2009)). "A right is clearly established only if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Soto-Torres v. Fraticelli*, 654 F.3d 153, 158 (1st Cir. 2011) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

The "clearly established" part of the qualified immunity analysis has two aspects: first, the clarity of the law at the time of the alleged civil rights violation, and second, the particular facts in the case. *See Maldonado*, 568 F.3d at 268-69. The first focuses on the clarity of the law at the time of the alleged civil rights violation. Regarding the first inquiry, "[t]o overcome qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The plaintiff is not required to prove that "the very action in question has previously been held unlawful," but the plaintiff must show that under "pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The second aspect turns to the particular facts of the case. Specifically, "[c]ognizant of both the contours of the allegedly infringed right and the particular facts of the case, '[t]he relevant, dispositive inquiry in

6

determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Maldonado*, 568 F.3d at 269 (quoting *Brosseau*, 543 U.S. at 199).

### E.   Motion to Stay Proceedings

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997). "Generally, in evaluating whether to issue a stay, a court will consider three factors: (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party without a stay; and, (3) judicial economy."  *Good v. Altria Group, Inc.*, 624 F. Supp. 2d 132, 13 (D. Me. 2009).  "The proponent of a stay bears the burden of establishing its need."  *Clinton*, 520 U.S. at 708.

### F.   Motion to Strike

Local Rule 56(e) expressly forbids motions to strike statements of fact.  D. ME. LOC. R. 56(e).  Instead, the Local Rule instructs parties to respond to individual statements of fact that should be stricken, with record citations or other authority. Local Rule 56(e).  Consequently, the Court denies Mr. Widi's Motion to Strike. However, the issue is entirely moot because the Court is dismissing all counts as against Agent McNeil without granting summary judgment for either side.

## III.   MOTION TO STAY PROCEEDINGS

Mr. Widi asks the Court to stay the proceedings in this matter for four reasons.  First, he claims that he has recently become aware of financial records that change his legal theory against TD Bank and the U.S. Attorney's Office.

7

Second, he would like to reformulate Count XII in response to Agent McNeil's arguments in his Motion to Dismiss. Third, Mr. Widi asserts that "Travis Webber and Joshua Eastman are expected to be joining the case as plaintiffs." *Mot. to Stay Proceedings* at 2. Finally, he claims that he has recently filed a motion under Federal Rule of Criminal Procedure 33 in his criminal docket that "clearly demonstrates he is legally innocent of the possession of firearms charge." *Id.*

First, the Court reviewed Mr. Widi's Criminal Rule 33 motion and does not perceive it to "clearly demonstrate[] [that] he is legally innocent of the possession of firearms charge." In fact, on August 16, 2013, after Mr. Widi filed the motion to stay, Judge Singal denied his Rule 33 motion. *Order on Def.'s Mot. to Vacate Conviction* at 11, *United States v. Widi*, No. 09-CR-00009-GZS, 2013 WL 4455290 (D. Me. Aug. 16, 2013) (ECF No. 341) (denying the Rule 33 motion). The Court is not confident that Mr. Widi's pending appeal of this denial, *Notice of Appeal*, *United States v. Widi*, No. 09-CR-00009-GZS (ECF No. 342) (D. Me. Aug. 30, 2013), will receive favorable treatment in the First Circuit.

Defendants McNeil and TD Bank both moved for summary judgment over ten months ago. *Mot. for Summ. J.* (ECF No. 40) (TD Bank); *Motion* (Agent McNeil). As the Magistrate Judge has noted, TD Bank's summary judgment pleadings consist of "a simple straightforward motion raising one issue concerning TD Bank's response to legal process." *Order Denying Motion to Stay* (ECF No. 91) (Feb. 7, 2013). Since that time, Mr. Widi has filed a total of five motions requesting a stay of proceedings. *Mot. to Stay Proceedings* (ECF NO. 51) (Nov. 19, 2012); *Mot. to*

*Vacate or Strike Pleadings and Mot. to Stay Proceedings* (ECF No. 72) (Dec. 28, 2012); *Letter to U.S. District Ct.* (ECF No. 78) (Jan. 11, 2013) *Letter to U.S. District Ct.* (ECF No. 90) (Feb. 6, 2013); *Mot. to Stay Proceedings* (ECF No. 148) (June 28, 2013).  Additional delay would serve no purpose.  Furthermore, the RICO claim has been fully briefed and the Court has determined that it lacks subject matter jurisdiction to decide that count.  No more briefing is needed on the matter, and the Court can conceive of no reformulation that would eliminate the jurisdictional bar. Permitting Mr. Widi to delay the proceedings further while he reconsiders his legal theories against TD Bank and reformulates his RICO claim will violate the Defendants' right to a "just, speedy, and inexpensive determination" of the matter. FED. R. CIV. P. 1.

As to judicial economy, the Court perceives no gain to be had by further delay in this matter.  Although Mr. Eastman and Mr. Webber are certainly free to argue that they should be allowed to join this proceeding if they perceive some benefit in doing so, the Court will not wait while they make that decision.

Although the Court is sympathetic to the difficulties of litigating a complex civil case pro se from a federal correctional institute, the Court also has a duty to protect each party's right to a "just, speedy, and inexpensive determination" of the matter.  FED. R. CIV. P. 1.

The Court denies Mr. Widi's Motion to Stay Proceedings.

## IV.    COUNT I

### A.    Facts Relevant to the Motion to Dismiss

Count I of the Amended Complaint alleges that on November 28, 2008, the ATF defendants and others "conspired to false[ly] arrest and false[ly] imprison Mr. Widi in violation of his Fourth, Fifth, [and] Fourteenth Amendment rights." *Am. Compl.* at 4 (ECF No. 15).   Specifically, the ATF defendants, including Agent McNeil, allegedly "hatched a plot to initiate a traffic stop and arrest Mr. Widi for driving without a license." *Id.*  The purported traffic stop would have been "based on the fact that Mr. Widi had 'an active Maine license but a suspended New Hampshire license.'" *Id.* (quoting *Compl.* Attach 1, *Tr. of Proceedings on Mot. to Suppress* at 59, *United States v. Widi*, No. 09-09-P-S (Feb. 22, 2010) (*Suppression Hearing*)).

### B.    Discussion

Agent McNeil claims that Count I should be dismissed for three reasons. First, he argues, Mr. Widi fails to state a claim because there are no specific allegations against Agent McNeil.  Second, the *Heck* doctrine bars the claim because Mr. Widi's criminal conviction has been affirmed on appeal.  Third, in Maine a claim for civil liability for conspiracy requires the actual commission of a recognized tort, and Mr. Widi does not allege that he was arrested for driving without a license.  Mr. Widi counters that the facts in the attached Suppression Hearing do make out a claim for conspiracy to commit false arrest and conspiracy to commit false imprisonment.  Furthermore, he argues that *Heck* is inapplicable for two reasons.

10

First, he argues that the doctrine only applies to malicious prosecution, not to false imprisonment.  Second, he argues that even if *Heck* is applicable, it does not bar Count I because the alleged facts and legal theory do not call into question his conviction.  Third, he argues that the testimony given at the suppression hearing shows that Agent McNeil did commit a constitutional tort.

Agent McNeil's first argument fails for the simple reason that Mr. Widi has accused the "ATF defendants" of conspiracy to falsely arrest and falsely imprison Mr. Widi, and Agent McNeil is one of the "ATF defendants."  *Am. Compl.* at 4. However, his second and third defenses prevail.

Mr. Widi argues that the *Heck* bar does not apply to Count I because the *Heck* requirement—that the earlier criminal conviction be overturned before the facts necessary to it can be challenged collaterally—only applies to malicious prosecution actions.  As authority he cites *Heck* itself, 512 U.S. at 483-844, and *Wallace v. Kato*, 549 U.S. 384 (2007).  It is true that *Heck* arose in the context of a claim akin to malicious prosecution, and the *Heck* Court looked to the common law of malicious prosecution for guidance.  *Heck*, 512 U.S. at 483-86.  However, *Heck* did not simply adopt the common law tort of malicious prosecution as a Fourth Amendment violation, as Mr. Widi contends.  In the Court's own words:

> We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.
>
> . . .

11

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal [or otherwise invalidated].

*Id.* at 486-87 (footnotes omitted). This holding is much broader than Mr. Widi would have it. The opinion does not limit the doctrine to malicious prosecution charges, nor does the underlying policy imply any such limitation.

*Wallace*, meanwhile, is a case about when the statute of limitations begins to run for constitutional torts resting on false imprisonment and malicious prosecution, and its distinctions are not relevant here. *Wallace*, 549 U.S. In sum, the *Heck* doctrine is, at the very least, clearly relevant to the allegations of Count I.

Mr. Widi also claims that Count I does not call into question his criminal conviction because he could have been convicted even if all of the alleged facts are proved and his theory of liability is correct. It is true, as Mr. Widi asserts, that the district court in his criminal case suppressed the oral statements given by Mr. Widi before *Miranda* warnings; therefore, those statements could not have impacted the criminal trial. *Order on Mot. to Suppress* at 8, *United States v. Widi*, No. 09-CR-9-P-S (Feb. 23, 2010) (*Suppression Order*). However, if the facts Mr. Widi alleges in Count I were proved true—that is, if the entire search and arrest were the product of an unlawful conspiracy to falsely arrest him—the court would almost certainly also have suppressed the statements given after the *Miranda* warnings, as "fruit poisoned by unlawful seizure." *United States v. Camacho*, 661 F.3d 718, 730 (1st Cir. 2011). These statements, not to mention all the rest of the evidence seized following his purportedly unlawful detention, would not have been available at the

criminal trial, and Mr. Widi would not have been convicted.  Thus, proving the facts and prevailing on the legal theory of Count I would necessarily call into question the criminal conviction, and the Supreme Court has forbidden this result.  *Heck*, 512 U.S. at 486-87.

Agent McNeil is also entitled to dismissal of Count I because he and his alleged co-conspirators never carried out the object of the alleged conspiracy.  A civil conspiracy to deprive a person of a constitutional right requires a showing of an "actual abridgment of some federally-secured right."   *Torres-Rosado v. Rotger-Sabat*, 335 F.3d 1, 14 (1st Cir. 2003); *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001).[2]  Here, Count I alleges that Agent McNeil and others conspired to falsely arrest and falsely imprison Mr. Widi by stopping him and arresting him based on a false legal theory.  This false legal theory was that by driving in Maine with a valid Maine driver's license but a suspended New Hampshire license, Mr. Widi would be violating New Hampshire law.  *Suppression Hearing* at 49-50, 59, 88-89.  However, this allegedly unconstitutional stop and arrest never actually occurred.  Instead, another person drove the car, *Am. Compl.* at 4, and the police detained Mr. Widi at a gas station—not as an arrest for driving without a license, but simply as a detention incident to the lawful execution of an apparently valid search warrant.  *Suppression Hearing* at 34, 40, 51; *Michigan v. Summers*, 452 U.S. 692, 705 (1981)

---

[2]     Agent McNeil asserts that Maine civil conspiracy law governs Count I; however, this is not a diversity case that would implicate the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 65 (1938). Whether federal or state civil conspiracy law applies, the result is the same; Maine also requires "the actual commission of a recognized tort" to impose liability for civil conspiracy.  *Potter, Prescott, Jamieson & Neslon, PA v. Campell*, 1998 ME 70, ¶ 8, 708 A.2d 283.

("[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted").[3]

Mr. Widi relies heavily on the district court's finding, in its order on Mr. Widi's suppression motion, that prior to his arrest Mr. Widi's "freedom was curtailed to a degree typically associated with formal arrest." *Suppression Order* at 8. However, the Court made this statement in the context of determining whether Mr. Widi was subject to custodial interrogation for the purposes of applying the *Miranda* doctrine, not whether he was actually arrested. *Id.* The Court also acknowledged the propriety of Mr. Widi's detention during the execution of the search warrant. *Id.* at 6.

In sum, Agent McNeil is entitled to dismissal of Count I because *Heck* bars it and because Count I fails to allege that the alleged conspirators actually performed constitutionally tortious actions.

## V.   COUNT II

### A.   Facts Relevant to the Motion to Dismiss

Count II of the Amended Complaint alleges that the actions taken by Agent McNeil and his associates on November 28, 2008 amount to false arrest and false imprisonment in violation of Mr. Widi's Fourth, Fifth, and Fourteenth Amendment

---

[3]      At the time of this detention, the Supreme Court had not yet announced the rule in *Bailey v. United States* that a detention incident to a search is only permissible if it is done in the immediate vicinity of the premises to be searched.  133 S. Ct. 1031, 1041-42 (2013).  Thus, as discussed in more detail with respect to Count II, Agent McNeil and his associates are entitled to qualified immunity even though their detention of Mr. Widi might have violated *Bailey*.  *Harlow*, 457 U.S. at 818.

rights. *Am. Compl.* at 5. Specifically, Mr. Widi alleges that the ATF defendants planned to arrest him, and then approached him at a gas station and placed him in handcuffs. *Id.* at 4-5. He alleges, and the suppression hearing transcript confirms, that Agent McNeil knew that he did not have probable cause to arrest Mr. Widi at this time. *Id.* at 5; *Suppression Hearing* at 34. The defendants, presumably including Agent McNeil, then placed Mr. Widi in the back of a patrol car and returned him to his residence for execution of a search warrant. *Am. Compl.* at 5. Mr. Widi did not ask to return to his residence, but was held there for almost an hour before he was taken to the Eliot Police Station. *Id.* Finally, the Amended Complaint highlights a finding made by the district court in Mr. Widi's suppression hearing: that Mr. Widi was subjected to a "de facto arrest." *Id.* (quoting *Suppression Order* at 8).

### B. Discussion

Agent McNeil asks the Court to dismiss Count II for two reasons. First, he asserts that Count II makes no claim against him personally. As discussed above with respect to Count I, this is not correct; Count II names the "ATF defendants," which includes Agent McNeil, and references "defendants" generally.

Agent McNeil also argues that the facts alleged in the Amended Complaint and shown in the suppression hearing do not state a claim of a constitutional violation, either through false arrest or false imprisonment. Mr. Widi counters that two findings of the district court ruling on his suppression motion show that he was wrongly arrested and imprisoned: first, that his "freedom was curtailed to a degree

typically associated with a formal arrest," *Suppression Order* at 8; and, second, that he was subject to a "de facto arrest." *Id.*

### 1.     The "Arrest" Referenced in the Suppression Order

Mr. Widi's use of phrases from the suppression order takes them entirely out of context.   The judge issuing that order was ruling on Mr. Widi's motion to suppress the statements he made after he was detained but before he was arrested. *Id.* at 6-8.   Under *Miranda v. Arizona*, police must notify detainees of their Fifth Amendment rights when the police perform any "custodial interrogation."   384 U.S. 436, 444-45 (1966).   To determine if *Miranda* warnings are required, a court must assess whether "a reasonable person would believe he is 'in custody' under the circumstances." *United States v. Pagán-Santini*, 451 F.3d 258, 263 (1st Cir. 2006). As the Suppression Order notes, "[t]he Supreme Court has held 'the safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a "degree associated with a formal arrest."'" *Suppression Order* at 7 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983))).   In the very next sentence, the Suppression Order states: "There is no precise formula for determining when an individual is subject to a *de facto* arrest; rather, the Court must consider the totality of the circumstances." *Id.*   The context clearly shows that the Court held, not that Mr. Widi was actually arrested or imprisoned, but that he was subject to a custodial interrogation for the purposes of the *Miranda* analysis.   The word "arrest" in this context means no more.

### 2.      Qualified Immunity

As the Suppression Order notes, the police may permissibly detain a person while executing a search warrant of his dwelling. *Suppression Order* at 6 (quoting *Summers*, 452 U.S. at 705). The Supreme Court recently narrowed that doctrine in *Bailey*, 133 S. Ct. at 1041-42, but *Bailey* was decided in February of 2013—more than four years after Mr. Widi's detention. Here, the Amended Complaint alleges (and the Suppression Hearing confirms) that Agent McNeil was part of a group of officers who detained Mr. Widi at a location away from his home. The Court assumes, without deciding, that such a detainer would today violate *Bailey* and be an unconstitutional seizure. However, Count II is barred as to Agent McNeil under the doctrine of qualified immunity.

To overcome the qualified immunity of a government officer, a plaintiff must show that the right violated was "clearly established" at the time of the defendant's alleged violation. *Maldonado*, 568 F.3d at 258. To be "clearly established," the law must have been clear at the time of the violation, and the facts of the case must have made it clear to a reasonable officer that his conduct was unlawful in that particular situation. *Id.* The *Bailey* right, which Agent McNeil assumedly violated, was neither of these things.

First, as to the clarity of the law, the Supreme Court itself noted that "the Federal Courts of Appeals have reached differing conclusions as to whether *Michigan v. Summers* justifies the detention of occupants beyond the immediate vicinity of the premises covered by a search warrant." *Bailey*, 133 S. Ct. at 1037. A

vigorous dissent argued that the now-reversed holding of the lower court was "strongly supported by Supreme Court precedent." *Id.* at 1046 (Breyer, J., dissenting) (citing *Summers*, 452 U.S.). Furthermore, the First Circuit was one of the few Courts of Appeals that never ruled on the question presented in *Bailey*. *See Brief for the United States* at 22-23, *Bailey v. United States*, 133 S. Ct. 1031 (2013) (No. 11-770), 2012 WL 4259480 (collecting cases).

Second, under the facts and circumstances of the case the Court simply cannot conclude that a reasonable officer would anticipate that his conduct, apparently in conformity with *Summers*, would violate the Fourth Amendment. This is not such a case as *Glik v. Cuniffe*, 655 F.3d 78 (1st Cir. 2011) in which the First Circuit denied qualified immunity to police officers who violated the First Amendment by arresting a man who openly filmed them making another arrest on Boston Common. *Id.* at 79. There, the Court of Appeals held that the justification offered by the officers was "not even arguable." *Id.* at 88. The officers tried to persuade the *Gilk* Court that they thought the arrest was valid because they had made it under the Massachusetts wiretap statute; the video filming with audio, they claimed, amounted to a "secret" wiretap. *Id.* The First Circuit would have none of it, observing that the officers' mere subjective unawareness of audio recording could not possibly make it a "secret" for the purpose of the Massachusetts law. *Id.* Because there was no colorable argument that the arrest was supported by probable cause, the Court of Appeals denied immunity.

This Court highlights *Glik* to illustrate what this case is not. Even assuming that Agent McNeil did violate the right announced in *Bailey*, this is not a case where no colorable argument could support his actions. *Bailey* had not yet been decided; there was a substantial circuit split on the issue, and the First Circuit had not issued a ruling. A reasonable police officer could have believed that Agent McNeil's detention of Mr. Widi while police executed a search warrant of his dwelling was permissible under *Summers*—just as many reasonable lawyers and judges believed the same thing. The Court will not deny Agent McNeil the benefit of qualified immunity under these circumstances.

Because Agent McNeil never "arrested" Mr. Widi, and because he is entitled to qualified immunity as to the assumed *Bailey* violation, the Court dismisses Count II as to Agent McNeil.

## VI.   COUNT III

### A.   Facts Relevant to the Motion to Dismiss

Count III alleges that Agent McNeil subjected Mr. Widi to excessive force in violation of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights. *Am. Compl.* at 5-6. Mr. Widi claims that when he was arrested at the gas station he told one of the Eliot Police Department Defendants, Officer Brown, that the handcuffs were too tight. *Id.* at 5. After being transported back to his residence he told another Eliot Police Defendant, Detective Curran, that the handcuffs were hurting him. *Id.* Detective Curran told Mr. Widi that he could stand outside the car,

19

though Mr. Widi protested that this did not reduce the pain. *Id.* at 5-6.[4]  Mr. Widi also told Agent McNeil that the handcuffs were "too tight and they were causing unbearable pain but they also refused to loosen the handcuffs." *Id.* at 6.  Mr. Widi alleges that as a result he was forced to wear the "overtightened" handcuffs for over an hour, and still suffers pain in his wrists to this day. *Id.*

### B.   Discussion

The "mere presence" of an officer at a scene, "without more, does not by some mysterious alchemy render him legally responsible under [42 U.S.C. § 1983] for the actions of a fellow officer." *Calvi v. Knox Cnty.*, 470 F.3d 422, 428 (1st Cir. 2006). Count III claims that Agent McNeil was working on the same investigation as Officer Brown when Officer Brown put handcuffs on Mr. Widi, and that Agent McNeil refused to loosen Officer Brown's handcuffs.  The Court acknowledges that "[a]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of force can be held liable under section 1983 for his nonfeasance." *Davis v. Rennie*, 264 F.3d 86, 98 (1st Cir. 2001).  But nowhere does Count III suggest that Agent McNeil had the ability to comply with Mr. Widi's request; for instance, that Agent McNeil had a key to the cuffs.

Furthermore, by the terms of the Amended Complaint, Agent McNeil is a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives, while Officer Brown and Detective Curran are with the Eliot, Maine Police Department.

---

[4]     The summary judgment record shows that Detective Curran allowed Mr. Widi to stand for the purpose of alleviating the pain, DSMF ¶ 3, but the Court cannot consider that claim when deciding the Motion to Dismiss.

Although these agencies were cooperating with each other on the arrest, they are law enforcement officers of separate and distinct sovereigns—the United States of America and the state of Maine.  U.S. CONST. amend X.  In other words, there is no allegation that Agent McNeil has the authority to give orders to state police regarding the treatment of Mr. Widi as detainee.[5]  Absent any allegation of authority or ability to intervene, Agent McNeil may not be held liable for the actions of Officer Brown or Detective Curran.

Because Count III does not allege that Agent McNeil had the ability or authority to comply with Mr. Widi's request to loosen the handcuffs, the Court dismisses Count III as to Agent McNeil.

## VII.   COUNT IV

### A.    Facts Relevant to the Motion to Dismiss

Count IV alleges that "the ATF defendants" among others seized Mr. Widi's tile company van even though it was not listed in the search warrant.  *Am. Compl.* at 6-7.  Agent McNeil testified that

> in the briefing [before the detention of Mr. Widi] the instructions are that the Eliot police was there to sort of assist ATF with a federal U.S. District Court search warrant and possible arrest, so that the Eliot police officers didn't . . . at that point engage in . . . anything else other than, here he is, we're holding on to him for you, you engage him in conversation, and you make a decision as to what will be done.

*Suppression Hearing* at 46.  Later, the Suppression Hearing clarifies that Detective Curran of the Eliot Police Department ordered and directed the seizure of the van.

---

[5]      Indeed, Mr. Widi claims just the opposite.  Count VIII alleges that the Eliot Police Department permitted Mr. Widi to speak with his lawyer against Agent McNeil's express wishes, and to Agent McNeil's sharp dissatisfaction.  *Am. Compl.* at 11-12.

*Suppression Hearing* at 63, 81.   Several days after the seizure, the Eliot Police Department applied for and received a search warrant for the van from a state magistrate.  *Id.* at 82-84.

At Mr. Widi's suppression hearing the district court ruled that "removing the vehicle from the private driveway at [Mr. Widi's] apartment constituted a seizure of the vehicle" and that the "seizure violated the Fourth Amendment."  *Id.* at 6 (quoting *Suppression Order* at 10, 12).  Mr. Widi concludes that Agent McNeil is liable for violating his Fourth, Fifth, and Fourteenth Amendment rights.

### B.    Discussion

Assuming, without deciding, that Detective Curran could be liable for the unlawful seizure of the van, this liability does not extend to Agent McNeil.  Agent McNeil's mere presence at the scene as a representative of ATF is not sufficient to create vicarious liability.   Count IV does not allege, nor does the Suppression Hearing reveal, that Agent McNeil directed Detective Curran to seize the van, or that seizing the van was part of any unlawful conspiracy in which Agent McNeil participated.    To the contrary, Detective Curran testified that "I made arrangements for a wrecker . . . and I asked Officer Brown [of the Eliot Police Department] . . . to follow the wrecker to [the wrecker service's] facility in Eliot, and to secure the vehicle with evidence tape and make sure that it was secured inside." *Suppression Hearing* at 81.  Furthermore, it was the Eliot Police Department that later applied for a search warrant for the van from a state magistrate, not the ATF from a federal magistrate.  *Id.* at 82-84.  The Suppression Hearing shows a level of

operational independence between ATF and the Eliot police that precludes holding Agent McNeil liable for the constitutional torts of the state police.  In cases of direct supervisory authority a superior may, under certain conditions, be liable for the constitutional torts of his associates.  *Cf., e.g.*, *Rodriguez-Garcia v. Municipality of Caguas*, 495 F.3d 1, 10 (1st Cir. 2007) ("Municipal officials may only be held liable under § 1983 in their personal capacity if the plaintiff can establish that her constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization") (internal quotations omitted).  But, as discussed in Section VI.B, *supra*, the relationship between ATF and the Eliot Police Department was at most a loose cooperation in which ATF took the strategic lead.  That relationship was not enough to impute liability for Detective Curran's (assumed) unlawful seizure to Agent McNeil.

Because Count IV does not allege that Agent McNeil unlawfully seized Mr. Widi's van, the Court will dismiss Count IV as to Agent McNeil.

## VIII.  COUNT V

### A.     Facts Relevant to the Motion to Dismiss

Count V alleges that on November 28, 2011 "the ATF defendants" and others conducted an "external sniff" on Mr. Widi's tile company van.  *Am. Compl.* at 7.  The drug-sniffing dog did not alert positive to the presence of narcotics or contraband.  *Id.*  Mr. Widi further alleges that "Defendant Curran, with intentional or reckless disregard for the truth, omitted this information in the affidavit that was supplied to Judge O'Neill at the York District Court."  *Id.* (citing *Suppression Hearing* at 86-

87).  The search warrant to which Count V refers is the search warrant to search the van, the affidavit for which Detective Curran of the Eliot Police Department filed on December 4 following a later positive "external sniff."  *See Suppression Hearing* at 63, 81-83, 86-87.  Mr. Widi concludes that these facts show that the Defendants, including Agent McNeil, "jointly and individually, violated Mr. Widi's right to have a warrant issued only on probable cause in violation of his Fourth, Fifth, and Fourteenth Amendment rights."  *Am. Compl.* at 7.

   **B.    Discussion**

   Agent McNeil asks the Court to dismiss Count V because it fails to allege that he had any involvement with the affidavit, and, in the alternate, because the claim is barred by the *Heck* doctrine.  Mr. Widi counters that Agent McNeil's overall authority over the November 28 search and arrest should create vicarious liability for Detective Curran's allegedly false affidavit of December 4, and that *Heck* is not applicable because the evidence gathered from the van was suppressed and therefore had no effect no his criminal trial.

   The Court agrees with Agent McNeil that Count V states no claim against him.  As the Court has explained with regard to Counts III and IV, Agent McNeil's role in the November 28 operation is not, by itself, sufficient to create vicarious liability for constitutional torts allegedly committed by the state and municipal police defendants.  The allegedly false affidavit submitted by Detective Curran on December 4, *Suppression Hearing* at 83, is even more remote in time, space, and authority from Agent McNeil than Detective Curran's actions on November 28.  Mr.

24

Widi directs the Court to no allegation that Agent McNeil directed Detective Curran to omit the negative external sniffs from the December 4 affidavit, or even that Agent McNeil directed Detective Curran to file the affidavit.  Without more, Count V may not proceed against Agent McNeil.

Because the Court dismisses Count V for failure to state a claim, it need not decide whether Count V would also be barred by *Heck*.

## IX.   COUNT VI

### A.   Facts Relevant to the Motion to Dismiss

Count VI alleges that Defendant Neil Vaccaro had pledged his Harley Davidson motorcycle to Mr. Widi as collateral for a loan. *Am. Compl.* at 8.  It further alleges that Mr. Vaccaro has said that Agent McNeil told him to falsely report the motorcycle stolen to the Portsmouth Police, and to act as a confidential informant against Mr. Widi, in exchange for which Mr. Vaccaro would receive back his motorcycle following the raid. *Id.* at 8-9.  Finally, as to Agent McNeil, it alleges that, "with intentional or reckless disregard for the truth, [he] omitted the fact that [Mr. Vaccaro] had reason to lie because of the motorcycle from the affidavit in support of the search warrant." *Id.* at 9.

### B.   Discussion

Agent McNeil asks the Court to dismiss Count VI because it alleges only that Mr. Vaccaro "has said" that Agent McNeil told him to lie, not that Mr. Vaccaro and Agent McNeil actually entered into this exchange.   He also argues that the allegation that he omitted Mr. Vaccaro's "reason to lie" from the affidavit is

"unintelligible," *Mot. to Dismiss or for Summ. J.* at 16 (ECF No. 37) (*Motion*), and that the allegations are conclusory.  Mr. Widi counters that the Court should not throw out Count VI "based on semantics" and that Mr. Vaccaro's motive to lie is clear.

Count VI in its entirety is barred by *Heck*.  If Agent McNeil procured Mr. Vaccaro's information in support of the search warrant by inducing lies, the search warrant would have been invalid.  Likewise, if Agent McNeil deliberately withheld information about Mr. Vaccaro's wrongful motive in the warrant application, it would also have been invalid.  *See Burke v. Town of Walpole*, 405 F.3d 66, 87-88 (1st Cir. 2005) (denying qualified immunity to a police officer who withheld exculpatory evidence from a warrant application).[6]  Either allegation against Agent McNeil, if proved, would negate the criminal conviction, and therefore Count VI must be dismissed as to Agent McNeil.

## X.    COUNT VII

### A.    Facts Relevant to the Motion to Dismiss

Count VII alleges that the various Defendants, including Agent McNeil, generated a voluminous quantity of false evidence that was used to convict him. *Am. Compl.* at 9.  Mr. Widi accuses the Defendants of falsifying evidence of ammunition found in his residence, marijuana plants, marijuana seeds, and a drug log. *Am. Compl.* at 10.

---

[6]    The § 1983 action in *Burke* was not barred by *Heck* because all charges against the plaintiff had been dropped following the discovery of exculpatory evidence. *See Burke*, 405 F.3d at 74.  Thus, no criminal conviction would be called into question if the plaintiff prevailed in the civil action.

**B.     Discussion**

Agent McNeil asks the Court to dismiss Count VII because the allegations are conclusory, contradicted by the evidence in the Suppression Hearing, and barred by *Heck*.  Mr. Widi claims that the Suppression Hearing supports his interpretation.  He also claims that *Heck* does not bar Count VII because the prosecution presented multiple theories of liability as to the felon in possession count, some of which did not require the evidence he now alleges was fabricated. Specifically, he notes that the Government also charged him with possession of a derringer pistol, but Count VII does not allege that the evidence of the derringer was fabricated.

Without attempting to unravel the parties' competing interpretations of the Suppression Hearing, the Court concludes that *Heck* bars Count VII.  The United States went to trial on two counts against Mr. Widi: (1) knowing possession in and affecting commerce of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a) (2006) (Criminal Count I), and (2) knowingly and intentionally manufacturing marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) (2006) (Criminal Count II).  *Second Superseding Indictment*, *United States v. Widi*, No. 09-09-P-S (D. Me. Apr. 7, 2010) (ECF No. 181).[7]  The jury convicted Mr. Widi on both counts.  *Verdict Form*, *United States v. Widi*, No. 09-09-P-S (D. Me. Apr. 20, 2010) (ECF No. 205).  If Agent McNeil and the other Defendants had fabricated the evidence of marijuana, Criminal Count II would

---

[7]     The Court takes notice of the public records related to Mr. Widi's criminal conviction because they are integral to the Complaint and their validity is indisputable.

necessarily be invalidated.  Likewise, if the Defendants had fabricated the evidence of ammunition in Mr. Widi's dwelling, Criminal Count I would necessarily be invalidated.  That other evidence also supported the conviction on Criminal Count I—the derringer to which Mr. Widi refers—does not change this analysis.  The ammunition, evidence of which Mr. Widi complains that Agent McNeil fabricated, was central to the conviction on Criminal Count I.  That is sufficient to conclude that *Heck* shields the criminal conviction from Mr. Widi's collateral attack in Count VII.  The Court dismisses Count VII.

## XI.   COUNT VIII

### A.   Facts Relevant to the Motion to Dismiss

In Count VIII, Mr. Widi alleges that after his arrest Agent McNeil and others questioned Mr. Widi, despite his several requests for counsel.  *Am. Compl.* at 11. He further alleges that when he was finally permitted to speak with counsel, he was not given privacy.  *Id.* at 12.   After this, Agent McNeil and others allegedly continued to question him, despite his efforts to invoke his *Miranda* rights.  *Id.*  Mr. Widi finally notes that "[t]he information gathered after the deprivation of counsel and through the eavesdropping were used against Mr. Widi at trial."  *Id.*

### B.   Discussion

Agent McNeil asks the Court to dismiss Count VIII because the claims are barred by *Heck*; if proved, they would invalidate much of the evidence used to convict Mr. Widi.  Agent McNeil phrases his invocation of the *Heck* bar as follows: "Widi's claims about self-incrimination and deprivation of counsel were litigated in

the criminal proceeding . . . and summarily rejected by the First Circuit." *Motion* at

17.  Mr. Widi replies that "the deprivation of counsel" allegedly in violation of the

Constitution "was never litigated at Mr. Widi's trial." *Opp'n to Mot. to Dismiss and*

*for Summ. J.* at 24 (ECF No. 102) (*Opp'n to Mot.*).  Furthermore,

> [t]he issue regarding McNeil's failure to allow Mr. Widi to contact his
> attorney at the [gas station] and behind the apartment have never
> been litigated.  Nor has McNeil's failure to cease questioning after Mr.
> Widi made numerous requests to contact his attorney, or after he had
> in fact contacted his attorney, or after he had in fact contacted his
> attorney, been litigated in the criminal case.

Agent McNeil is correct, in essence, that Count VIII is barred by *Heck*.  His

characterization of *Heck* as a bar to issues that were actually litigated at the

criminal trial is actually too narrow; *Heck* by its own terms applies to any issue that

could have been litigated.  *See Heck*, 512 U.S. at 486-487 ("[C]ivil tort actions are

not appropriate vehicles for challenging the validity of outstanding criminal

judgments"); Section IV.B, *supra*.  The purpose of the bar is to require defendants to

raise and litigate all issues relevant to the criminal trial at the criminal trial, not

later—and to provide finality for the results of that criminal litigation.  Thus, the

fact that Mr. Widi did not previously raise the *Miranda* issues he now asserts does

not prevent the *Heck* doctrine from barring it.  Therefore, the Court dismisses

Count VIII.

## XII.   COUNT IX

### A.    Facts Relevant to the Motion to Dismiss

Count IX alleges that Agent McNeil and other Defendants made three

specific false statements regarding Mr. Widi.  *Am. Compl.* at 13.  First, he alleges

that Agent McNeil falsely told numerous media outlets that their search of Mr. Widi's residence uncovered a "stolen motorcycle." *Id.* Second, he alleges that Agent McNeil "made numerous representations that Mr. Widi was 'ready for war' and 'preparing for the end of the world.'" *Id.* Third, he alleges that Agent McNeil "presented information that Mr. Widi was stockpiling firearms and explosives." *Id.* He alleges that these statements were made with knowing falsity and they were done with the specific intent to "injure and discredit Mr. Widi in his reputation and employment." *Id.* at 14. Finally, he alleges that he has failed to secure business for his tile contracting business as a result of the defamation. *Id.*

**B.   Discussion**

Agent McNeil asks the Court to dismiss Count IX because its allegations do not meet the "defamation plus" test required to establish a constitutional violation. *Motion* at 18 (citing *Celia v. O'Malley*, 918 F.2d 1017, 2021 (1st Cir. 1990); *Young v. Dep't of Human Servs.*, No. Civ. 05-30-B-W, 2005 WL 1412446 (D. Me. June 14, 2005), *aff'd*, 2005 WL 1592949 (D. Me. July 1, 2005)). He argues that the claim in Count IX is "implausible due to Widi's criminal history, as well as his current and extended incarceration." *Id.* at 18. Furthermore, he contends that in order to state a constitutional claim that defamation deprived a plaintiff of employment, the complaint must allege that the defendant took some further action beyond the defamation. *Id.* (citing *Young*, 2005 WL 1412446, at *3). Mr. Widi's allegation that a third party may refuse to hire Mr. Widi solely as a result of the defamation does not set forth a viable constitutional claim, in Agent McNeil's view, because Mr. Widi

does not allege that Agent McNeil took some action to obstruct Mr. Widi's employment other than the defamation.

Mr. Widi, for his part, contends that the alleged injury to reputation violates the Constitution either if the injury is inflicted in connection with a federally protected right or else if the injury actually causes the denial of a federally protected right. *Opp'n to Mot.* at 26 (citing *Celia*, 918 F.2d at 1021). He points to the search of the trailer and the seizure of the motorcycle as a violation of a federal right "in connection" with the injurious statement about possessing a stolen motorcycle. He also points to the alleged conspiracy of Count V, discussed previously, as a deprivation of a constitutionally protected "in connection" with the statements about his preparations for war and the end of the world. Finally, he claims that the alleged defamation interfered with his constitutionally protected right to enter into contracts as an independent tile contractor.

Both parties cite *Celia* for their respective positions. In that case, the First Circuit applied the seminal Supreme Court case of *Paul v. Davis*, 424 U.S. 693 (1975), to a variety of allegations of prosecutorial misconduct. *Celia*, 918 F.2d at 1020-21. The basic teaching in *Paul* is that "reputation alone, apart from some more tangible interests such as employment, [is not a] 'liberty' or 'property' [interest] by itself sufficient to invoke the procedural protection of the Due Process Clause." *Paul*, 424 U.S. at 701. In the case then before the Supreme Court, the Chief of Police of Louisville, Kentucky had posted a flier to local businesses identifying the plaintiff, by photograph, as an "active shoplifter." *Id.* at 695. The

plaintiff did not lose his job as a result of the defamation, but did suffer harm to his reputation. *Id.* at 696. The *Paul* Court ruled that, although the plaintiff might have claims under state defamation law, he did not have a claim under the Due Process Clause for deprivation of a property or liberty interest. *Id.* at 693.

In *Celia*, the First Circuit applied the basic principle established in *Paul* to more complex facts. In that case, a police officer, accused and acquitted of stealing cocaine, in turn accused his state prosecutors of defamation in violation of his rights under the Due Process Clause. *Celia*, 918 F.2d at 1018-19. The plaintiff had two theories of liability: first, that the prosecution had harmed his reputation; second, that "the alleged defamatory statements were made in connection with the deprivation of his constitutional right not to be tried without indictment by a grand jury." *Id.* at 1021. The Court of Appeals first upheld the prosecutors' actions taken in their "quasi-judicial" capacity as protected by absolute prosecutorial immunity. *Id.* at 1019-20. As to actions taken in an investigative or administrative capacity— including both the investigation and the statements made to the press—the First Circuit noted that these were subject to only qualified, not absolute, immunity, and that immunity might not stand in the way of a constitutional defamation claim. *Id.* at 1020-21. However, the Court of Appeals also held that the complaint had failed to establish any logical connection between the defamatory statements to the press and the right to be tried only after indictment by a grand jury. *Id.* at 1021. Nor did the complaint establish how the investigatory actions actually violated the plaintiffs' due process rights. *Id.* Consequently, the First Circuit did not reach

32

whether, and under what conditions, investigative and administrative acts by a prosecutor could amount to constitutional defamation.

In *Young*, this Court acknowledged that

> a § 1983 claim for defamation-plus may be proved either by demonstrating that the plaintiff suffered an injury to reputation that was inflicted in connection with the violation of a federally protected right or by demonstrating that the plaintiff's injury to reputation caused the denial of a federally protected right.

*Young*, 2005 WL 1412446, at *3 (internal quotations omitted).  However, this Court has also recently held that where a "loss of liberty arises from a valid criminal conviction," there can be no constitutional defamation "until and unless that conviction is set aside."  *Hofland v. LaHaye*, No. 09-CV-00172-JAW, 2011 WL 2490959 (D. Me. June 21, 2011), *aff'd*, 2012 WL 1400216 (D. Me. Jan. 18, 2012); *see also Heck*, 512 U.S. (barring civil damages claims that would call into question the validity of an affirmed criminal conviction).

Count IX, in essence, makes claims nearly identical to the one originally rejected by the Supreme Court in *Paul*.  Mr. Widi alleges that Agent McNeil made false statements regarding Mr. Widi's stolen motorcycle, preparations for "war" and the "end of the world," and possession of firearms and explosives, just as in *Paul* the police chief wrongly labeled the plaintiff as an "active shoplifter."  Both *Paul* and *Celia* hold, at least, that injury to reputation alone is not actionable under the Due Process Clause.  However, Count IX also alleges that "[t]hese statements . . . deprived [Mr. Widi] of gainful employment opportunities within the community as customers do not want to hire a tile contractor who is said to be armed with firearms/explosives and looking for war."  *Am. Compl.* at 13.  The Court assumes,

without deciding, that these allegations (if proved) would expose Agent McNeil to constitutional liability.  However, the murky state of the case law in this Circuit—*Celia* and its progeny—demonstrates that, even if this were a constitutional violation, Agent McNeil would be entitled to qualified immunity.  This Court's own decisions in *Young* and *Hofland* suggest that when the alleged defamation is intimately connected with allegations that would be barred by *Heck*, so too will be any claim of constitutional defamation.  The Due Process right alleged to have been violated here is simply not clear enough; the Court will not hold Agent McNeil responsible for predicting the future development of this area of the law.  *Cf. Glik*, 655 F.3d at 85-87.

Because Agent McNeil would be entitled to qualified immunity even if his alleged defamatory statements did deprive Mr. Widi of business, the Court dismisses Count IX.

## XIII.  COUNTS X AND XI

Counts X and XI do not make any allegations against Agent McNeil, and therefore the Court will dismiss them as to Agent McNeil.

## XIV.  COUNT XII

### A.    Facts Relevant to the Motion to Dismiss

Count XII alleges that Agent McNeil and others conspired to prevent Josh Eastman and Travis Webber from testifying at Mr. Widi's trial.  *Am. Compl.* at 15-17.  To this end, the conspirators are alleged to have: threatened to have Mr. Eastman fired from his job at the Department of Defense if he did not cooperate

against Mr. Widi; arranged Mr. Webber's false arrest; threatened and harassed Mr. Webber; obtained false testimony against Mr. Webber; and unlawfully incarcerated Mr. Webber for 90 days as revenge for giving testimony at Mr. Widi's trial.  *Id.*  This alleged conspiracy resulted in Mr. Eastman being unavailable as a witness and Mr. Webber testifying in prison garb, impugning his credibility.  *Id.*  Mr. Widi asserts that these actions violate not only a variety of constitutional rights, but also the Racketeer Influenced and Corrupted Organizations Act, 18 U.S.C. §§ 1964 *et seq.* (2012) (RICO).

### B.    Discussion

Agent McNeil asks the court to dismiss Count XII for three reasons: first, because it is conclusory and implausible; second, because Mr. Widi lacks standing to assert harm to Mr. Eastman and Mr. Webber; and, third, because the claims are barred by *Heck*.  Mr. Widi counters that he has standing because the alleged conspiracy served to deprive him of witnesses at his criminal trial.  Furthermore, he claims that *Heck* does not apply to RICO claims.

Mr. Widi has standing to bring this claim because he alleges that he was personally deprived of the right to present witnesses in his defense.  However, without condemning the allegations as conclusory or implausible, the Court agrees with Agent McNeil that they are barred by *Heck*.  If proved, the allegations against Agent McNeil would utterly invalidate Mr. Widi's criminal conviction.  Furthermore, Mr. Widi's assertion that *Heck* does not apply to RICO claims is simply not correct as a matter of law.  *Swan v. Barbadoro*, 520 F.3d 24, 26 (1st Cir.

2008) ("*Heck*'s bar cannot be circumvented by substituting a supposed RICO action for the earlier *Bivens* claims ineffectually designed for the same purpose").

Because *Heck* bars Count XII, the Court dismisses Count XII as to Agent McNeil.

## XV.   COUNTS XIII AND XIV

Counts XIII and XIV do not make any allegations against Agent McNeil, and therefore the Court dismisses them as to Agent McNeil.

## XVI.   CONCLUSION

1. The Court DENIES Mr. Widi's Motion to Stay Proceedings (ECF No. 148);

2. The Court DENIES Mr. Widi's Motion to Strike Agent McNeil's *Reply Statement of Material Facts* (ECF No. 134); and

3. The Court GRANTS Defendant Special Agent McNeil's Motion to Dismiss (ECF No. 37).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 24th day of September, 2013