UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DAVID J. WIDI, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:12-cv-00188-JAW |
| | ) | |
| PAUL MCNEIL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED[1] ORDER DENYING DEFENDANTS' MOTION TO DISMISS
COUNT XIV, DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AS TO COUNT XIV, AND DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT AS TO COUNT XIV**

David J. Widi Jr., a prisoner in Federal Correctional Institution Otisville
(FCI Otisville), alleges in Count XIV of his Amended Complaint that the Bureau of
Alcohol, Tobacco, Firearms, and Explosives (ATF) and the Executive Office of the
United States Attorneys (EOUSA) failed to comply with his lawful Freedom of
Information Act (FOIA) and Privacy Act (PA) requests. The Defendants have
moved to dismiss Count XIV or in the alternate to grant summary judgment in their
favor; Mr. Widi has opposed dismissal and cross-claimed for summary judgment.
First, the Court concludes that dismissal on the merits would be improper because
Count XIV of the Amended Complaint states a claim on which the law may grant

---

[1]      The reason for this Amended Order is to clarify that the Order docketed on September 27,
2013 (ECF No. 172) was incorrectly dated August 27, 2013. The correct date should have been
September 27, 2013.

relief.    Furthermore, there remain genuine disputes as to material facts that preclude summary judgment for either side.

## I.   PROCEDURAL POSTURE

Mr. Widi filed his original Complaint on June 13, 2012, ECF No. 1, and an Amended Complaint on August 8, 2012. *Am. Compl.* (ECF No. 15). ATF and EOUSA jointly moved to dismiss Count XIV, or in the alternate for summary judgment, on November 11, 2012. *Mot. to Dismiss and for Summ. J.* (ECF No. 44) (*Motion*). They filed with this motion a Statement of Undisputed Material Facts, as required by Local Rule 56(b). *Defs.' Statement of Undisputed Material Facts* (ECF No. 45) (DSMF). With their Statement of Undisputed Material Facts came two affidavits and several other exhibits. Mr. Widi replied in opposition on November 28, 2012, and also filed a cross-motion for summary judgment. *Pl.'s Opp'n to Mot. to Dismiss and for Summ. J. and Pl.'s Cross-Mot. for Summ. J. or Mot. for Vaughn Index* (ECF No. 58, 59) (*Pl.'s Opp'n*) (*Pl.'s Cross Mot.*). In accordance with Local Rule 56(c), Mr. Widi also provided an Opposing Statement of Material Facts (PRDSMF), ECF No. 60, and his own Statement of Undisputed Material Facts (PSAMF). He also filed a supporting affidavit. PRDSMF Attach. 1 *Decl. of David J. Widi, Jr. Regarding Count XIV* (*Widi First Decl.*). On January 3, 2013, Mr. Widi provided two supplementary attachments in support of his opposition to the motion to dismiss and his cross-motion for summary judgment. *Letter from David J. Widi, Jr. to U.S. District Court* (Dec. 26, 2012) Attach. 1 *Disposition Form Federal Bureau of Prisons dated Nov. 22, 2012*, Attach. 2 *Envelope* (ECF No. 75).

The Defendants replied to Mr. Widi's opposition on January 24, 2013. *Reply to Pl.'s Opp'n to Dismiss and for Summ. J.* (ECF No. 83) (*Defs.' Reply*). In response

to Mr. Widi's Opposing Statement of Material Facts, the Defendants provided a Reply Statement of Material Facts under Local Rule 56(d). *Defs.' Reply Statement of Material Facts* (ECF No. 84) (DRPSAMF). On the same day, the Defendants filed a short reply to Mr. Widi's cross-motion for summary judgment, incorporating the legal arguments of their reply brief. *Opp'n to Pl.'s FOIA Cross-Mot.* (ECF No. 85); *Opposing Statement of Material Facts* (ECF No. 86) (DRPSMF).

Mr. Widi replied to the Defendants' opposition to his cross-motion for summary judgment on March 14, 2013. *Reply to Def.'s Opp'n of Cross-Mot. for Summ. J.* (ECF No. 115). He also offered a Reply Statement of Material Facts. *Reply Statement of Material Facts* (ECF No. 116) (*Widi Second Reply Statement*).[2] With it came a second affidavit. *Second Decl. of David J. Widi, Jr. Regarding Count XIV* (ECF No. 117) (*Widi Second Decl.*).

## II.   LEGAL STANDARD

### A.      Rule 12(b)(6)

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." *Oscasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011). The Court need not assume the truth

---

[2]       This is not the normal procedure under the Local Rules, because the Defendants did not introduce any new facts in their statement of facts in opposition to Mr. Widi's cross motion for summary judgment. D. ME. LOC. R. 56(d). However, in light of Mr. Widi's status as a pro se litigant and the highly relevant affidavit attached to the Widi Second Reply Statement, the Court will consider it.

of conclusory allegations, and the complaint must state at least a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  However, "non-conclusory factual allegations in the complaint must . . . be treated as true, even if seemingly incredible." *Oscasio-Hernández*, 640 F.3d at 12.  A court may not "attempt to forecast a plaintiff's likelihood of success on the merits." *Id.* at 13.  Furthermore, courts should be "solicitous of the obstacles that pro se litigants face, and . . . endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." *Dutil v. Murphy*, 550 F.3d 154, 158-59 (1st Cir. 2008).  In deciding a Rule 12(b)(6) motion, the Court may consider any documents attached to the complaint as well as any other documents "integral to or explicitly relied upon in the complaint, even though not attached to the complaint." *Trans-Spec Truck Servs. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (quoting *Clorox Co. v. Proctor & Gambel Comm. Co.*, 228 F.3d 24, 32 (1st Cir. 2000)).

### B.    Rule 56

A court may grant summary judgment under Federal Rule of Civil Procedure 56 if the record demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  "Material" means that the fact has the potential to change the outcome of the litigation; "genuine" means that a reasonable jury could resolve the matter in favor of the non-moving party. *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).  The Court must examine the record evidence "in the light most favorable to, and drawing all

reasonable inferences in favor of, the nonmoving party." *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000).

### C.    The Freedom of Information Act and the Privacy Act

FOIA provides in relevant part that a government agency must, with certain enumerated exceptions, produce records upon request by any person.   5 U.S.C. § 552(a)(3) (2012) .   The fees the agency may charge depend on the use for which the records are requested; for uses other than commercial, scientific, and educational, the fees are limited to "reasonable standard charges for document search and duplication."   *Id.* at § 552(a)(4)(A)(ii)(III).   However, an agency may not charge "advance fees"—fees that must be paid by the requestor before any work being done or continued by the agency.   *Id.* at § 552(a)(4)(A)(v); 28 C.F.R. § 16.11(i)(1) (2013) (regulating fees charged by Department of Justice components).   At the same time, an agency may require pre-payment before copies are sent. 28 C.F.R. § 16.11(a) ("A component ordinarily shall collect all applicable fees before sending copies of requested records to a requester"); *Farrugia v. Exec. Office for U.S. Attorneys*, 366 F. Supp. 2d 56, 57 (D.D.C. 2005).

Among the records exempt from disclosure under FOIA are "records or information compiled for law enforcement purposes, but only to the extent that [their production] . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."   § 552(b)(7).   However, when an agency refuses to provide information because it is exempt, "the exemption under which the deletion is made, shall be indicated on the released portion of the record, unless including

that indication would harm an interest protected by the exemption in this subsection under which the deletion is made." *Id.* at § 552(b).

The PA requires that any government agency subject to FOIA provide any person "his record or . . . any information pertaining to him which is contained in [the agency's system of records]." 5 U.S.C. § 552a(d)(1) (2012). Under the regulations promulgated by the Department of Justice (DOJ) under the PA, a component subject to a PA request may charge fees for duplication of records, but not for search or review, unless the records are themselves subject to an exemption under the PA. 28 C.F.R. § 16.49 (2013).

The DOJ has established a categorical exemption from the PA for records in criminal case files, but only to the extent permitted by PA §§ 552a(j)(2), (k)(1), and (k)(2). 28 C.F.R. § 16.81(a) (2013). PA subsection (j) does not permit exemptions from subsection (d)—the provision allowing individuals to access their own records. § 552a(j). However, PA subsection (k) does permit records to be exempt from disclosure under PA subsection (d) if the system of records is "investigatory material compiled for law enforcement purposes" other than records of a law enforcement or criminal prosecution agency that fall into PA subsection (j)(2). *Id.* § 552a(k), (k)(2). These records, which are in effect not permitted to be exempt under PA subsection (k)(2), include "reports of informants and investigators, and associated with an identifiable individual." § 552a(j)(2)(B). The net effect is that DOJ regulation 28 C.F.R. § 16.81(a), exempting criminal case files from disclosure under the PA, does not by its own terms apply to "reports of informants and investigators, and

associated with an identifiable individual."  Finally, DOJ regulations state that the Department will limit disclosure "to the extent that the identity of confidential sources will not be compromised . . . the privacy of third parties will not be violated . . . and . . . the disclosure would not otherwise impede effective law enforcement.  28 C.F.R. § 16.81(i).

## III.   THE MOTION TO DISMISS

Deciding the Defendants' Motion to Dismiss requires the Court to determine whether Count XIV, considering the contents of the documents on which it relies, states a claim on which the law will grant relief.

### A.   Facts Relevant to the Motion to Dismiss

First, Mr. Widi alleges that on March 28, 2011, he sent a FOIA and PA request to ATF, seeking records of statements made by five individuals concerning Mr. Widi in his criminal case.  *Am. Compl.* at 19.  He further alleges that ATF did not respond to this FOIA request.  *Id.*

Second, Mr. Widi alleges that on April 21, 2011 he sent a FOIA and PA request to EOUSA.  *Id.* at 20.  EOUSA replied on August 12, 2011, assigning it a request number of 11-1399 and indicating that it had located 280 pages of potentially responsive records in 3.5 hours of search time.  *Id.*  On August 20, 2011, Mr. Widi responded with a letter agreeing to pay all associated fees relating to the release of these documents.  *Id.*  On November 25, 2011, he alleges that EOUSA sent him a letter stating that the records had been "processed."  *Id.*  However, this letter also stated that EOUSA would not produce grand jury material; that some

documents "originated with another government component which would have to forward the documents"; and that "the records were public documents that could be obtained from the clerk of the court or EOUSA upon specific request."[3]  *Id.*  The letter identified no documents that could actually be released, and also did not identify any exemptions applicable to the documents that were not to be released. *Id.*  Critically, but ambiguously, the Amended Complaint alleges that "the paragraph associated with fees for the search request was not checked off indicating that Mr. Widi owed fees because the EOUSA was not releasing any documents." *Id.*

Finally, Mr. Widi alleges that he appealed to the Office of Information Policy (OIP) on December 20, 2011.  *Id.*  Mr. Widi's grounds for appeal were apparently that

> (1) the documents are in the possession of the EOUSA, thus they should be released; (2) the response did not list any specific exemptions as requested; (3) the statement that once the search fees are paid the documents will be forwarded to another agency is nonsensical because Mr. Widi was not supposed to be charged for review of material to determine whether it falls within the purview of any FOIA/PA exemptions.

*Id.* at 20-21.  Although OIP replied by mail on January 6, 2012, assigning an appeals number, it did not answer the appeal until June 18, 2012, and then only addressed the "fee determination" of the EOUSA.  *Id.* at 21.  OIP apparently did not reach any other merits of Mr. Widi's appeal because he had not paid the fees, the validity of which Mr. Widi disputed.  *Id.*

---

[3]  Much of the Court's recitation of facts relevant to the Motion to Dismiss is taken verbatim from the Amended Complaint.  The Court quotes this particular material because it is both ambiguous and highly relevant to the determination of the merits of the dispositive motions on Count XIV.

### B.     Position of the Parties

The Defendants do not dispute that Count XIV states a claim on its face as to the ATF.  *See Motion* at 8 (requesting only summary judgment as to ATF).[4]  The Defendants contend the Court should dismiss Count XIV as to EOUSA because Mr. Widi failed to pre-pay for delivery of the documents.  They point out that an agency may charge an advance fee before delivering copies of material relevant to a FOIA request and that failure to pay such a fee amounts to a failure to exhaust administrative remedies.  Because failure to exhaust administrative remedies is a "condition precedent to filing a FOIA action," *Motion* at 9, the Defendants contend that it is appropriate to dismiss a pleading if it fails to allege proper payment of fees.

Mr. Widi, for his part, responds that the Amended Complaint alleges he was never assessed any fees by EOUSA because the November 25 letter did not have the box checked indicating that he should pay any fees.  Mr. Widi's position on the Motion to Dismiss appears to be that EOUSA improperly refused to produce any documents at all, that the "paragraph associated with fees . . . was not checked off," *Am. Compl.* at 20, because no documents were to be delivered, and that EOUSA's refusal to deliver any documents (and consequently to charge any fees) was improper under FOIA and PA.

---

[4]     The Court will address later the Defendants' request that it grant summary judgment in favor of ATF on Count XIV.

C.    Discussion

"To invoke subject matter jurisdiction under the FOIA, a plaintiff must allege that the agency '(1) "improperly", (2) "withheld" (3) "agency records."'" *Union Leader Corp. v. U.S. Dep't of Homeland Sec.*, No. 12-cv-134-PB, 2013 U.S. Dist. LEXIS 55775 (D.N.H. Apr. 18, 2013) (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (quoting 5 U.S.C. § 552(a)(4)(B))).   Mr. Widi alleges he sent ATF a FOIA request and ATF never responded.   These allegations are sufficient to constitute an improper withholding of records.   *See U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 149-50 (1989) ("When the Department refused to grant Tax Analysts' requests for the district court decisions in its files, it undoubtedly 'withheld' these decisions in any reasonable sense of that term").   Count XIV survives dismissal as to ATF.

As to EOUSA, Defendants move to dismiss Count XIV because Mr. Widi fails to allege that he has actually paid fees.   Mr. Widi asserts that, although he had earlier agreed to pay "all associated fees" relating to the records he requested, the face of the November 25 letter did not levy any fees he could pay and in fact indicated that no documents would be released for which he could be charged a fee. The text of the November 25 letter is indeed ambiguous on this point, and the Court cannot conclude that Mr. Widi's claim is without merit.   The box next to the fee payment paragraph is not checked, but other boxes are.   Even assuming that Mr. Widi was on notice that at some point he would have to pay some fees (and had in

11

fact agreed to do so), the letter is not clear enough for the Court to determine that, as a matter of law, EOUSA had put him on notice that he owed a fee.

Furthermore, EOUSA located records responsive to Mr. Widi's request but refused to release them because some "originated with another government component" and others were "grand jury material."  DSMF at Ex. H, at 3 (ECF No. 47-7).  Defendants have not cited any provision of FOIA or PA that would permit an agency to withhold records within its possession simply because they originated with another government component, and the Court cannot locate any such exemption.  Likewise, the grand jury testimony might well fit into a statutory exemption from FOIA and PA, but again the Defendants have not brought it to the Court's attention.  FOIA requires an agency, denying access to records, to state the specific exemptions on which the denial is based, 5 U.S.C. § 552(b), but at least up to now, EOUSA has failed to comply with this FOIA requirement.  Absent some other justification, the letter of November 25 amounts to an improper withholding of records.

Mr. Widi's appeal to OIP constituted, for the purposes of the Motion to Dismiss, an exhaustion of his administrative remedies.  The Amended Complaint alleges, and the Defendants' Exhibit K corroborates, that OIP refused to consider his claim that EOUSA improperly withheld records because Mr. Widi had not paid the fees.  DSMF Attach. 10 *Letter from Office of Information Policy to David J. Widi, Jr.* (*Government Ex. K*).  However, under Mr. Widi's allegations—supported by at least one reasonable interpretation of the November 25 letter—EOUSA never

12

assessed any fees and improperly withheld the records he requested.  Because OIP did not make a satisfactory or complete "determination with respect to any appeal," 5 U.S.C. § 552(a)(6)(A)(ii), this Court may properly hear his case.  *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ("[E]xhaustion requirements are designed . . . to give the agency a fair and full opportunity to adjudicate . . . claims").[5]

In sum, Count XIV of the Amended Complaint, together with the letter of November 25 and the OIP response to Mr. Widi's appeal, state a colorable claim that both ATF and EOUSA improperly withheld records under FOIA and PA.  This is a claim for which the law may grant relief, and the Court has subject matter jurisdiction.  Count XIV survives dismissal as to both ATF and EOUSA.[6]

## IV.   THE MOTION FOR SUMMARY JUDGMENT

### A.   Facts Relevant to the Motion for Summary Judgment

#### 1.   ATF

On March 27, 2011, Mr. Widi drafted two documents entitled "Freedom of Information and Privacy Act of 1974 Request."  PSAMF ¶ 25; DRPSAMF ¶ 25.  Mr. Widi directed one request to ATF and the other to EOUSA.  PSAMF ¶ 25; DRPSAMF ¶ 25.  On March 28, 2011, he mailed these two documents, one to ATF

---

[5]      Because the Court concludes that OIP failed to address the merits of Mr. Widi's claim, the Court does not yet reach Mr. Widi's argument that the OIP response was untimely.  The Court will address this assertion in its summary judgment analysis.

[6]      The specific relief for which Mr. Widi prays—$100,000,000.00 per defendant in money damages—is improper.  However, the fact that the plaintiff requests a remedy that is beyond the Court's power to grant does not necessarily mean that it must dismiss an otherwise meritorious complaint.  *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 66 (1978).

and one to EOUSA, through the FCI Otisville internal legal mail log.[7]  PSAMF ¶ 26; DRPSAMF ¶ 26.  Mr. Widi addressed the request to the ATF as follows: "Bureau of Alcohol, Tobacco, Firearms, & Explosives, U.S. Department of Justice, 650 Massachusetts Avenue, N.W., Washington, D.C. 20226."[8]  PSAMF ¶ 27; DRPSAMF ¶ 27.  A partially obscured excerpt from the FCI Otisville mail log shows a record of the request sent to this address but does not include the zip code.  *Pl.'s Opp. to Mot. to Dismiss and for Summ. J.* Attach. 2 *Mail Log*.  Mr. Widi insists that he did include the zip code in the mailing, but that prison officials would only allow him to use one line of the mail log, and so he did not have space to include the zip code.  *Widi Second Reply Statement* ¶ 27 (citing *Widi Second Decl.* ¶¶ 3-4).  The reproduced version of the mail log does appear to show that the writer exhausted the available space.  Mail Log.  Mr. Widi further claims that prison staff check every piece of outgoing mail in the FCI Otisville internal legal mail system to ensure that the address is complete.  *Widi Second Reply Statement* ¶ 5.  Mr. Widi's mailing was never returned to him by the U.S. Postal Service.   PSAMF ¶ 28;

---

[7]     Defendants interpose a qualified response to paragraph 26, asserting that "Widi failed to include the requisite zip code."   DRPSAMF ¶ 26.   The Defendants cite only their response to paragraph 27, and so the Court will address the issue of the zip code in its treatment of that paragraph.

[8]     Defendants deny paragraph 27, asserting that Mr. Widi omitted the zip code from the address.  DRPSAMF ¶ 27 (citing *Pl.'s Opp. to Mot. to Dismiss and for Summ. J.* Attach. 2 (ECF No. 75) (*Mail Log*)).  Mr. Widi responds, under oath and penalty of perjury, that he included the zip code but the prison officials would not permit him to use more than one line of the mail log, and so he did not have space to write the zip code in the mail log.  *Widi Second Decl.* ¶¶ 3-4.  Because Mr. Widi's position is supported by the record, and the Court must view the record in a light most favorable to the non-movant, the Court credits Mr. Widi's version of paragraph 27.  There is, however, a clear factual dispute about whether the address contained a zip code.

DRPSAMF ¶ 28.  The ATF has not responded to Mr. Widi's request, nor has it released the requested records.  PSAMF ¶ 29; DRPSAMF ¶ 29.

Peter Chisholm is the Acting Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms, and Explosives.[9]  DSMF ¶ 1; PRDSMF ¶ 1.  In this capacity he is familiar with the applicable procedures in responding to a FOIA or PA request, and he is familiar with Mr. Widi's current lawsuit.[10]  DSMF ¶ 2; PRDSMF ¶ 2. When ATF receives a FOIA or PA request, it is immediately logged into the Disclosure Division tracking database under the requestor's name; this database includes every FOIA request received by the Division over the last six years.[11] DSMF ¶ 4; PRDSMF ¶ 4.  However, ATF, after a keyword search of its database, can find no record of any correspondence from Mr. Widi regarding any FOIA or PA request.[12]  DSMF ¶¶ 3, 5; PRDSMF ¶¶ 3, 5.

---

[9]     Mr. Widi "denied" paragraph 1, citing his own affidavit for the proposition that he has no personal knowledge of Mr. Chisholm's position.  The record supports the Defendants' claim.  DSMF Attach. 1, *Decl. of Peter J. Chisholm* ¶ 1 (*Chisholm Decl.*).  Because Mr. Widi cites no portion of the record suggesting that Mr. Chisholm is not the Acting Chief of the Disclosure Division, the Court treats this "Denied" response as "Admitted" for the purposes of summary judgment pursuant to Local Rule 56(g).  The Court treats Mr. Widi's other "denials" of this sort in the same fashion.

[10]     This statement is supported by the record.  *Chisholm Decl.* ¶ 2.  Therefore, the Court treats Mr. Widi's "Denied" response as "Admitted" under Local Rule 56(g).  *See supra* note 9.

[11]     This statement is supported by the record.  *Chisholm Decl.* ¶ 6.  Mr. Widi's response to paragraph 4 is "Denied or Qualified," with a citation only to his own affidavit.  His explanation of his response to paragraph 4 does not address the substance of DSMF ¶ 4, and so the Court treats Mr. Widi's "Denied or Qualified" response as "Admitted" under Local Rule 56(g).

[12]     This statement is supported by the record.  *Chisholm Decl.* ¶¶ 5, 7.  Mr. Widi's responses to paragraphs 3 and 5 do not address whether ATF received his request; rather, they address whether Mr. Widi sent the request and whether ATF has responded.  Therefore, the Court treats Mr. Widi's "Denied" response as "Admitted" under Local Rule 56(g).  *See supra* note 9.

## 2.    EOUSA

John Boseker is an Attorney Advisor in the EOUSA, assigned to the component of EOUSA designated to administer FOIA and PA requests.[13]   DSMF ¶ 8; PRDSMF ¶ 8.   Due to his official duties, Mr. Boseker is familiar with the applicable procedures in responding to a FOIA or PA request and is familiar with Mr. Widi's lawsuit.[14]   DSMF ¶ 9; PRDSMF ¶ 9.   Mr. Boseker's official duties include: having the authority to make final disclosure determinations on records requested by an individual using the FOIA/PA; to assure compliance with the provisions of FOIA and PA and related DOJ regulations; to defend EOUSA's position in litigation challenges to its actions; to liaise between EOUSA and the components within the DOJ regarding FOIA/PA requests; to review requests for records sought from EOUSA and/or the 94 U.S. Attorney's Offices; to review request-related correspondence; to review searches performed in response to requests; and to review responses made to those requests.[15]   DSMF ¶¶ 10-11; PRDSMF ¶¶ 10-11.

On April 4, 2011, EOUSA received Mr. Widi's letter dated March 28, 2011, which sought "any and all statements made by" five specifically named third party individuals in connection with the criminal case of *United States v. Widi*, 09-CR-

---

[13]     This statement is supported by the record.   DSMF Attach. 2 *Decl. of John F. Boseker* ¶ 1 (*Boseker Decl.*).   Therefore, the Court treats Mr. Widi's "Denied" response as "Admitted" under Local Rule 56(g).   *See supra* note 9.

[14]     This statement is supported by the record.   *Boseker Decl.* ¶¶ 2-4.   Therefore, the Court treats Mr. Widi's "Denied" response as "Admitted" under Local Rule 56(g).   *See supra* note 9.

[15]     These statements are supported by the record.   *Boseker Decl.* ¶¶ 3-4.   Therefore, the Court treats Mr. Widi's "Denied" responses as "Admitted" under Local Rule 56(g).   *See supra* note 9.

000009-GZS.[16]  DSMF ¶ 12, PRDSFM ¶ 12.  The requested statements concerned those made to law enforcement personnel, and the EOUSA interpreted the records as being non-public in nature.  DSMF ¶ 12, PRDSMF ¶ 12.  By letter dated April 18, 2011, EOUSA advised Mr. Widi that it was categorically denying access to all the records under various FOIA and PA exemptions, absent express authorization of the individuals, proof of death, or a clear demonstration that public interest outweighed protected personal privacy interests of these individuals.[17]  DSMF ¶ 13; PRDSMF ¶ 13.  This letter did not include a "certificate of identity form" that Mr. Widi could use to obtain authorization from the third parties.[18]   DSMF ¶13; PRDSMF ¶ 13.  However, the letter did notify Mr. Widi that if he wished to obtain public records he could make a specific request for such, and that he had the right to appeal this determination to OIP within 60 days of the letter.  DSMF ¶ 13; PRDSMF ¶ 13.  Mr. Widi elected not to challenge this determination.[19]  DSMF ¶ 14; PRDSMF ¶ 14.

---

[16]     Mr. Widi denies this statement, asserting instead that his request of March 28, 2011 was for "records maintained on himself."  PRDSFM ¶ 12.  The dispute between the parties on this paragraph is largely a matter of description.  Mr. Widi's own description of the March 28 letter in the Amended Complaint suggests that EOUSA's interpretation of the letter is reasonable.  However, because Mr. Widi never pursued his FOIA/PA request of March 28, it is not material to the present dispute and the Court need not resolve the disagreement.  *Widi First Decl.* ¶ 10.

[17]     Mr. Widi interposes a qualified response, asserting that the Defendants' letter cited only § 552a generally, not the specific exemption subsection § 552a(b) as claimed by the Defendants in their paragraph 13.  *Widi First Decl.* ¶ 9.  This difference is not material to the dispute.  *See supra* note 16.

[18]     The Defendants claim that the April 18 letter did include a certification of identity form.  DSMF ¶ 13.  Mr. Widi's version is supported by the record.  *Widi First Decl.* ¶ 9.  This difference is not material to the dispute.  *See supra* note 16.

[19]     Mr. Widi interposes a qualified response, but his qualification is not relevant to the factual assertions in Defendants' paragraph 14.  PRDSMF ¶ 14.  Therefore, the Court treats Mr. Widi's "Qualified" response as "Admitted."

On April 27, 2011, EOUSA received a letter from Mr. Widi that expanded his request to include all records on himself, including the statements of the five individuals named in the request of March 28, 2011.[20]  DSMF ¶ 15; PRDSMF ¶ 15. The only completed certification of identity form provided by Mr. Widi was his own. DSMF ¶ 15; PRDSMF ¶ 15.  By letter dated May 10, 2011, EOUSA acknowledged that Mr. Widi's letter had been received and assigned it FOIA tracking number 11-1399.  DSMF ¶ 16; PRDSMF ¶ 16.  The letter of May 10 explained that "by making a request for all information on himself, the time for processing might take up to nine months to respond, and that by making this request, he was agreeing to pay fees up to $25.00, and the basis for charging fees was also explained."  DSMF ¶ 16; PRDSMF ¶ 16.

Based upon the response received by EOUSA from the U.S. Attorney's Office for the District of Maine, EOUSA advised Mr. Widi by letter dated August 12, 2011, that the search for documents had been completed, that 3.5 hours had been expended, and that the fee for the work performed to date was $42.00 (at the rate of $28.00 per hour with two hours free).  DSMF ¶ 17; PRDSMF ¶ 17.  The relevant text of the letter of August 12 follows:

> [W]e have determined that the fee for search is $42.00.  In addition, the District has forwarded to us approximately 280 pages of potentially responsive records.  Although not all of these pages are likely to be

---

[20]    Mr. Widi interposes a qualified response, asserting that "the records requested were never those of a third party."  PRDSMF ¶ 15 (citing *Widi First Decl.* ¶¶ 10-11 and DSMF at Exs. A, C (*Government Ex. A*) (*Government Ex. C*)).  The Defendants maintain that Mr. Widi requested "records of the specifically identified third party individuals" named in the request of March 28. DSMF ¶ 15 (citing *Government Ex. C*).  The parties do not appear to dispute the factual contents of the letter of March 28, but rather the legal status of the statements of the five named individuals. Thus, the Court adopts a hybrid of both parties' versions of paragraph 15.

released to you, you should note that we charge $0.10 per page for duplication of documents that are released to you after the first 100 pages, which are free.  Therefore, we estimate duplication fees will be at least $18.00.  Once processing has been completed and a final charge is known, you will be required to submit the remaining fee before documents will be released to you.

In accordance with Department of Justice Regulation . . . the request shall not be considered received and further work shall not be completed until the requester agrees to pay the anticipated fees. . . . Records identified for release after processing will not be released until payment has been received.

In order for your request to be processed, we must hear from you within 30 days of the date of this letter or we will close your request. Please complete the attached form and return to the above address.

DSMF Attach. 4 (*Government Ex. E*).  EOUSA informed Mr. Widi that "until he had agreed to pay the $42.00 fee (within 30 days), all work on his case would cease."[21] DSMF ¶ 17; PRDSMF ¶ 17.  On August 30, 2011, EOUSA received Mr. Widi's response, dated August 19, in which he agreed to pay the search fee detailed in the letter of August 12 and acknowledged that he might be charged an additional duplication fee.[22]  DSMF ¶ 18; PRDSMF ¶ 18.  On October 28, 2011, EOUSA received a letter from Mr. Widi dated October 20, 2011, requesting a status update and reaffirming his agreement to pay fees.  DSMF ¶ 19; PRDSMF ¶ 19.

---

[21]     Mr. Widi interposes a qualified response, asserting that "Mr. Widi was only provided with an estimate of possible fees.  Mr. Widi was not required to pay fees within 30 days."  PRDSMF ¶ 17. This appears to be consistent with EOUSA's claim that "until [Mr. Widi] had *agreed to pay* the $42.00 fee (within 30 days), all work on his case would cease."  DSMF ¶ 17 (emphasis added).  In other words, it does not appear that EOUSA claims that its letter of August 12 amounted to a demand that Mr. Widi immediately pay fees, only that he agree to pay fees in the future.  *See also* PRDSMF ¶ 20 (claiming that EOUSA first made a demand for the $42.00 fee on November 25, 2011). Therefore, the Court treats Mr. Widi's "Qualified" response as "Admitted."

[22]     Mr. Widi interposes a qualified response, asserting that he "agreed to pay the estimated fees."  PRDSMF ¶ 18.  This qualification does not change the meaning of EOUSA's paragraph 18, and so the Court treats Mr. Widi's "Qualified" response as "Admitted."

By letter dated November 25, 2011, EOUSA notified Mr. Widi that it had processed responsive records.  DSMF ¶ 20; PRDSMF ¶ 20.  This letter recites a list of records that would not be provided (grand jury material and public records), or that would be provided by other government components only after "referral" for "review" (records "that originated with another government component").[23] *Government Ex. H.*  Most paragraphs in the letter have a bracketed space for a check box, which appears to indicate that the paragraph applies or does not apply to the recipient's request.[24]  *Id.*  Of the five paragraphs with brackets, three have a bold X in the bracket, indicating that they apply to the request.  *Id.*  The paragraph that indicates that Mr. Widi must pay the $42.00 search fee is not checked, nor is the paragraph whose text reads: "See additional information attached."  *Id.*

EOUSA claims, but Mr. Widi disagrees, that the letter of November 25 assessed a fee of $42.00, due and payable prior to release of any records to Mr. Widi or referral of records to other government entities.  DSMF ¶ 20; PRDSMF ¶ 20.  The letter also informed Mr. Widi that grand jury records were being "withheld in the District [of Maine]" and that public records were available upon request and copying charge.  DSMF ¶ 20; PRDSMF ¶ 20.  EOUSA claims, but Mr. Widi disagrees, that the letter informed Mr. Widi that he had 30 days within which to

---

[23]     Mr. Widi interposes a qualified response to paragraph 20, asserting that he "was notified that he did not owe any fees and was not notified that he owed fees within 30 days."  PRDSMF ¶ 20 (citing *Widi First Decl.* ¶ 15 and DSMF Attach. 7 (*Government Ex. H*)).  This disagreement over the interpretation of the letter of November 25 goes to the heart of the dispute between the parties, and the Court cannot resolve it merely with reference to the parties' statements of material facts. Therefore, at this stage the Court can only acknowledge the interpretational difference.

[24]     E.g., "[  ]   Our office located records that originated with another government component." *Government Ex. H.*

pay this fee.[25]  DSMF ¶ 20; PRDSMF ¶ 20.  Mr. Widi, for his part, asserts that the

letter of November 25 "informed Mr. Widi that it had determined it would not

release any records requested," without citing any statutory exemptions.[26]  PSAMF

¶ 30; DRPSAMF ¶ 30.  Mr. Widi further asserts that he "has not been presented

with a fee by the EOUSA."[27]  PSAMF ¶ 32; DRPSAMF ¶ 32.  He also claims that he

"has exhausted all administrative remedies."[28]  PSAMF ¶ 33; DRPSAMF ¶ 33.

Mr. Widi appealed EOUSA's disposition of the matter to OIP, receipt of which

appeal OIP acknowledged by letter dated December 20, 2011.  DSMF ¶¶ 21-22;

PRDSMF ¶¶ 21-22.  EOUSA claims that by letter dated June 18, 2012, OIP

"affirmed the EOUSA action and that no payment had been received."[29]  DSMF ¶

23; PRDSMF ¶ 23.  EOUSA claims that because Mr. Widi has "refused to pay fees

respecting the processing of his request, he has failed to exhaust administrative

---

[25]     Mr. Widi's qualified response to paragraph 20 disputes that he was notified that payment was due within 30 days.  PRDSMF ¶ 20 (citing *Government Ex. H*); *supra* note 23.

[26]     EOUSA denies paragraph 30, but its explanation does not address Mr. Widi's assertion that the letter communicated that no records would be released and that it cited no statutory exemptions. DRPSAMF ¶ 30.  Mr. Widi's position is supported by record evidence, *Government Ex. H*, but the Court adopts Mr. Widi's paragraph 30 only to the extent that it states purely factual assertions.  The assertion that the letter "informed Mr. Widi that it had determined it would not release any records requested" is a matter of interpretation.  Whether the language of the letter is susceptible to an interpretation as a matter of law, rather than by a fact-finder, is precisely the question the parties have called on the Court to answer at the summary judgment stage.  On the other hand, there is no genuine dispute that the letter cites no statutory exemptions.

[27]     EOUSA denies paragraph 32.  DRPSAMF ¶ 32.  Its denial is not one of pure fact, and the Court will determine in due course if it can adopt EOUSA's preferred interpretation as a matter of law.  *See supra* note 26.  Neither party disputes the contents of the letter of November 25 or any of the preceding letters.  *Government Ex. H.*

[28]     EOUSA denies paragraph 33. DRPSAMF ¶ 33.  Its denial is not one of pure fact, and the Court will determine in due course if it can adopt EOUSA's preferred interpretation as a matter of law.  *See supra* note 26.  Neither party disputes the contents of the letter of November 25 or any of the preceding letters.  *Government Ex. H*

[29]     Mr. Widi denies paragraph 23.  PRDSMF ¶ 23.  His denial is a matter of law, not of fact, since he disputes the legal effect of OIP's letter of June 18.  Neither party disputes the contents of the letter of June 18.  DSMF Attach. 8 (*Government Ex. I*).

remedies, and is deemed by EOUSA to have no valid request."[30]   DSMF ¶ 24;
PRDSFM ¶ 24.  Mr. Widi, by contrast, claims that OIP "treated Mr. Widi's appeal as
one from a fee determination, even though that was never mentioned."[31]  PSAMF ¶
31; DRPSAMF ¶ 31.  Furthermore, he asserts that "[t]he OIP blatantly ignored and
refused to address Mr. Widi's claim that the EOUSA had improperly withheld
requested records."[32]   PSAMF ¶ 31; DRPSAMF ¶ 31.  Finally, Mr. Widi "wants to
pay fees for the 280 pages of [responsive] records."[33]  PSAMF ¶ 34; DRPSAMF ¶ 34.

## B.   Genuine Dispute of Material Fact as to ATF

Mr. Widi has presented a genuine dispute of material fact as to the FOIA
request that he alleges he sent to ATF.   Specifically, he has produced record
evidence to support his assertion that he included a zip code on the envelope in
which he sent the request.  *Widi Second Decl.* ¶¶ 4-6.  If a fact-finder were to credit
that assertion, a presumption would arise that his mail, properly addressed, was
delivered to ATF.  *See United States v. Stewart*, 472 F.2d 1114, 1118 (1st Cir. 1973)
(adopting the common law "presumption of regularity in mail delivery").   From this
presumption, a fact-finder could conclude that ATF received Mr. Widi's FOIA

---

[30]      Mr. Widi denies paragraph 24.  PRDSMF ¶ 24.  As with paragraph 23, the dispute between
the parties is legal, not factual.  The parties' paragraphs 24 state different opinions about the legal
result of the facts.
[31]      EOUSA denies paragraph 31.  DRPSAMF ¶ 31.  Its denial addresses a matter of law, not of
fact, and the Court will address this legal dispute in due course.  Neither party disputes the contents
of the letter of June 18.  *Government Ex. I.*
[32]      This statement is subject to the same legal denial noted above.  *Supra* note 31.
[33]      EOUSA interposes a qualified response, stating that "[t]he fees that Widi asserts he wants to
pay are the same fees that EOUSA assessed and were not paid."  DRPSAMF ¶ 34.  Since Mr. Widi's
paragraph 34 goes to his present intention and desire to have the records released, and the dispute
between Mr. Widi and the EOUSA centers around whether EOUSA has actually assessed any fees,
the EOUSA's qualifier does not add any additional dimension to the factual and legal dispute
presented by paragraphs 9 through 24 and 30 through 33.

request and failed entirely to respond.  This, in turn, would cause ATF to be liable for improperly withholding records.  5 U.S.C. § 552(a)(4)(B); *see also Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 615-16 (D.C. Cir. 1976) (stating that federal court process is available "when the agency [is] not showing due diligence in processing plaintiff's individual request").  The factual dispute is "genuine" because a reasonable fact-finder could resolve it in Mr. Widi's favor; it is "material" because, if proved, it will change the outcome of the litigation in Mr. Widi's favor.  Consequently, the Court does not grant summary judgment on Count XIV as to ATF.

### C.     Genuine Dispute of Material Fact as to EOUSA

Resolving the Defendants' Motion for Summary Judgment on Count XIV as to EOUSA requires the Court to untangle the legal implications of the correspondence between Mr. Widi and EOUSA.  The parties do not dispute the contents of the letters, which would be a purely factual dispute.  Rather, the parties dispute the meaning and legal result of the words.  The interpretation of non-statutory words is usually a mixed question of fact and law.  *See Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981); *see also* William W. Schwarzer et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 455-56 (1992).  The Court may only grant summary judgment if there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law.  Rule 56(a).

First, drawing all reasonable inferences in favor of Mr. Widi, the letter of November 25 on its face presents a disputed question of material fact. This is so because the letter is ambiguous about whether it is assessing a fee. Viewing the letter in the light most favorable to Mr. Widi, the ordinary reader looking over the letter might be confused about whether the second bracketed paragraph demanded a fee. Other paragraphs clearly applicable to Mr. Widi's request are checked, but not the fee paragraph. A reasonable fact-finder could decide that the unchecked fee box means that the language in the un-checked paragraph is not applicable to the request. The fact that the next paragraph, which is checked, states that EOUSA would "refer" records to other government components "[o]nce we have received the above payment" does not resolve the ambiguity, because a reasonable fact-finder could conclude that the un-checked paragraph assessed no fee. The earlier correspondence between EOUSA and Mr. Widi only establishes that Mr. Widi agreed to pay some fees at some point; it does not erase the ambiguity of the language in the letter of November 25. Although the interpretation of ambiguous language is a mixed question of fact and law, in this case the Court cannot conclude as a matter of law that the letter assessed a fee. This determination will have to be made by a fact-finder. The question is "genuine" because a reasonable fact-finder could resolve it in Mr. Widi's favor; it is "material" because, if proved, it will change the outcome of the litigation in Mr. Widi's favor. Specifically, if EOUSA never

assessed a fee, then OIP's resolution of Mr. Widi's appeal (dismissing for failure to pay a required fee) was improper.[34]

     This conclusion is strengthened by the related conclusion that EOUSA apparently presented no legal grounds on which to withhold this information. The November 25 letter itself cites no statutory exemptions, as it was required to do under § 552(b) of FOIA. In the context of Mr. Widi's original FOIA/PA request (which he later abandoned), the EOUSA response letter did cite three provisions of FOIA and PA: 5 U.S.C. § 552(b)(6), § 552(b)(7)(C), and 5 U.S.C. § 552a(b). DSMF Attach. 1 (*Government Ex. B*). However, even assuming that these sections are applicable to the second FOIA/PA request, they do not justify the withholding. Section 552(b)(6) exempts personnel and medical files, "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." But there is no indication that the records Mr. Widi requested contain such information. Likewise, § 552(b)(7)(C) exempts "records or information compiled for law enforcement purposes, but only to the extent that production . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." Again, the Defendants offer no argument about why disclosure even of the statements made by

---

[34]    Mr. Widi also argues that he should never have been assessed a fee in the first place because the request was properly construed under the PA. Under the DOJ regulations covering PA requests, "[n]o search or review fee may be charged for any record unless the record has been exempted from access under Exemptions (j)(2) or (k)(2) of the Privacy Act." 28 C.F.R. § 16.49 (2013). Defendants counter that records in the Criminal Case File System are categorically exempt from PA requests. As discussed in section I.C, *supra*, neither § 552a(j)(2) nor (k)(2) exempts reports of informants, and so § 16.49 does appear to apply at the very least to the statements of the five named individuals from both FOIA/PA requests. However, because the Court has concluded that there exists a genuine dispute of material fact as to whether EOUSA actually assessed a fee, it need not at this stage decide Mr. Widi's alternate argument that no fees could be properly assessed under § 16.49. The Court addresses this argument in connection with Mr. Widi's cross-motion for summary judgment.

the five named individuals would be an invasion of personal privacy. Even assuming it would be, there is no reason the personally identifying information could not be redacted. *See Antonelli v. Fed. Bureau of Prisons*, 591 F. Supp. 2d 15, 27 (D.D.C. 2008) (holding that the names of informants were properly redacted from otherwise responsive records under § 552(b)(7)(C)). Finally, § 552a(b) is inapposite because it is explicitly preempted by the requirements of § 552. 5 U.S.C. § 552a(b)(2).

EOUSA does not argue that any provision of FOIA or PA permits an agency to withhold information simply because it is grand jury material, as asserted by the letter of November 25.[35] Nor does any provision of either statute permit the agency receiving the request to "refer" records in its possession to other government components for "review and direct response," as the letter claimed. *Government Ex. H.* FOIA requires that the agency produce the records, not refer them to another agency. Finally, the letter instructed Mr. Widi to make a separate request for certain "public records." *Id.* It is true that FOIA contains a special provision for certain records that, "because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records." 5 U.S.C. § 552(a)(2)(D). The disclosure requirements in § 552(a)(3)(A) exclude records already released under § 552(a)(2). However, the letter instructs Mr. Widi to make, in essence, a second, duplicate

---

[35] Although not argued, the Court is concerned about grand jury secrecy. *See* FED. R. CRIM. P. 6(E)(2)(B). As this Order does not require the release of grand jury material to Mr. Widi, the Court leaves this issue for another day.

FOIA/PA request, without indicating which records were "public" or how his second request would produce a result in any way different than his first request. The Court is not convinced that this instruction, or the withholding of the records, is justified under the law, and the Defendants have made no effort to defend it.

Furthermore, Mr. Widi has exhausted his administrative remedies by appealing to OIP. As a preliminary matter, Mr. Widi's claim that no fee could be assessed because no documents would be released lacks merit. The parties do not dispute that Mr. Widi agreed to pay a lawful search fee entirely independent of the document duplication fees; the search fee properly accrued, even if the EOUSA never actually assessed it against Mr. Widi.[36]   § 552(a)(4)(A)(ii)(III); *see also Stabasefski v. United States*, 919 F. Supp. 1570, 1573 (M.D. Ga. 1996) (holding that payment of FOIA duplication fees is not conditioned on the requesting party's satisfaction with the results of the search).

However, Mr. Widi is correct that this record raises a genuine dispute as to whether OIP wrongly failed to reach the merits of his claim of improper withholding because its disposition of his appeal was untimely, and therefore search fees were disallowed. First, OIP is required to "make a determination with respect to any appeal within twenty days." § 552(a)(6)(A)(ii). OIP refused to reach any issue other than the fee assessment, citing 28 C.F.R. § 16.11(i)(3) (2013). DSMF Attach. 10 (*Government Ex. K*). This regulation provides that if a requester has failed to pay a properly charged FOIA fee, the component can refuse to "process a new request or

---

[36]   To be clear, the Court does not conclude that EOUSA actually failed to assess a fee. Whether EOUSA assessed the fee remains a genuine dispute of material fact.

continue to process a pending request from the requestor" until the outstanding charge is paid with interest.[37]  § 16.11(i)(3).  However, OIP issued this decision on June 18, 2012—more than six months after it received Mr. Widi's appeal of EOUSA's letter.  FOIA prohibits any agency from charging a search fee if it fails to comply with a time limit under subsection (a)(6).  § 552(a)(4)(A)(viii).  Subsection (a)(6) required OIP to "make a determination with respect to" Mr. Widi's appeal within twenty business days of receiving the appeal.  § 552(a)(6)(A)(ii).  Because the only fees that EOUSA asserts are due are search fees, *see Government Ex. H* (assessing $42.00 for "search"), Mr. Widi's contention that OIP could not properly refuse to reach the merits of Mr. Widi's appeal six months after receiving it, solely on the grounds that he has not paid the search fees, precludes summary judgment in favor of the Defendants.[38]

All the Defendants' arguments as to why EOUSA is entitled to judgment as a matter of law hinge on the assumption that Mr. Widi was required to pay a fee and did not.  OIP's disposition of Mr. Widi's appeal likewise refused to reach the merits of his claim of improper withholding because he had failed to pay the fee.  However,

---

[37]     The Court is hesitant to conclude that hearing the merits of an appeal is the same thing as "processing a pending [FOIA] request" within the meaning of § 16.11(i)(3).  However, the Court need not decide this issue because OIP's untimely response renders EOUSA unable to collect search fees—the nonpayment of which was the basis of OIP's refusal to hear the merits of the appeal.
[38]     Mr. Widi also claims that that EOUSA's response to his second FOIA request, by the letter of November 25, was untimely.  § 552(a)(6)(A)(i) requires the receiving agency to "determine within 20 [business] days . . . whether to comply with such request and . . . notify the person making such request of such determination."  EOUSA argues that its letter of May 10 satisfied the requirement; Mr. Widi counters that the agency did not make a determination of whether to comply until November 25.  The Court need not resolve this disagreement because it has determined that OIP's unjustified six month delay in deciding Mr. Widi's appeal bars the agency from assessing search fees, pursuant to § 552(a)(4)(A)(viii).

because the Court has determined that there exists a genuine dispute of material fact as to whether EOUSA ever assessed the fee in the first place, these arguments cannot prevail at this stage.

In conclusion, the Court does not grant summary judgment to either Defendant. There remain genuine disputes of material fact relevant to both Defendants, and these matters must be resolved by a fact-finder.

## V.    THE CROSS-MOTION FOR SUMMARY JUDGMENT

Mr. Widi also moves the Court for summary judgment in his favor. First, as to ATF, the Court cannot grant summary judgment because there is a genuine dispute of material fact as to whether Mr. Widi put a zip code in the address on his FOIA request and whether ATF actually received his FOIA request. Second, as to EOUSA, the Court has already determined that there is a genuine dispute of material fact with regard to whether EOUSA assessed a fee in its letter of November 25. This would, on its own, preclude summary judgment in Mr. Widi's favor as to EOUSA as well. However, Mr. Widi has put forth an alternative theory as to why he is entitled to judgment as a matter of law: that no fee for the documents would be proper because his request is covered by the Privacy Act.

The DOJ regulations under the PA require that "[n]o search or review fee may be charged for any record unless the record has been exempted from access under Exemptions (j)(2) or (k)(2) of the Privacy Act." 28 C.F.R. § 16.49.[39] The

---

[39]    Since the previous sentence of the regulation limits its reach to duplication of records "under the Privacy Act," the Court reads the sentence dealing with search or review fees to apply only to PA requests as well.

Defendants do not dispute that the basic, conceptual subject matter of the request—all documents related to Mr. Widi—is an appropriate one for a PA request.  *See* § 552a(d)(1) (covering any "request by any individual to gain access to his record or to any information pertaining to him which is contained in the [record] system"). Rather, the Defendants argue that under subsections (j)(2) and (k)(2) of the PA, and the DOJ regulations in 28 C.F.R. § 16.81(a)(4), the records in the Criminal Case File System Justice/USA – 007 are categorically excluded from coverage of the PA. However, the Court has already explained that that regulation is not applicable to at least some of the subject matter of the request—the statements about Mr. Widi from the five named individuals.  *See* Section I.C, *supra.*  In light of this conclusion, the Defendants are at least partially incorrect that Mr. Widi's request is cognizable exclusively under FOIA and not under PA—and, to that extent, Mr. Widi may not have been required to pay any fees under 28 C.F.R. § 16.49.

However, the Court is not yet prepared to grant summary judgment to Mr. Widi.  Some of the documents responsive to Mr. Widi's request may fall into the (j)(2) and (k)(2) exemptions in the PA, and to that extent they are available to Mr. Widi only through FOIA.  If the records are available only through FOIA, Mr. Widi may be required to pay a search or review fee for them, if and when EOUSA actually assesses that fee.[40]  Further discovery is needed to determine which records, if any, are only available through FOIA, and what the fees for those documents would be. If it turns out that 100% of the responsive records are

---

[40]      Or, perhaps, to the extent EOUSA has already assessed such a fee.

available through PA, and that consequently no fees are properly assessed against Mr. Widi for search or review, Mr. Widi may then be entitled to summary judgment.

Therefore, the Court dismisses without prejudice Mr. Widi's cross-motion for summary judgment.

## VI.   CONCLUSION

Thus,

1. The Court DENIES the Defendants' Motion to Dismiss and for Summary Judgment Regarding Count XIV (ECF No. 44); and

2. The Court DISMISSES WITHOUT PREJUDICE the Plaintiff's Cross-Motion for Summary Judgment as to Count XIV (ECF No. 59).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2013