UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DAVID J. WIDI, JR.                )
                                  )
        Plaintiff,               )
                                  )
    v.                           )      2:12-cv-00188-JAW
                                  )
PAUL MCNEIL, et al.,              )
                                  )
        Defendants.              )

**ORDER GRANTING THE RENEWED MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS CLARK AND LYON**

In Count XIII of his Amended Complaint, David J. Widi, Jr. alleges that Denis R. Clark and Michael Lyon searched his residence in November 2005 in violation of the Fourth Amendment of the United States Constitution. Messrs. Clark and Lyon (Defendants) move the Court for summary judgment, asserting that they received the consent of a person with apparent authority to give it when entering the residence, that Mr. Widi had consented to the search as a condition of his probation, and that Mr. Widi has suffered no constitutional deprivation. The Court grants the Defendants' motion for summary judgment because Mr. Widi consented to a search of his residence as a condition of his probation.

**I.    LEGAL STANDARD**

A court may grant summary judgment under Federal Rule of Civil Procedure 56 if the record demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. "Material"

means that the fact has the potential to change the outcome of the litigation; "genuine" means that a reasonable jury could resolve the matter in favor of the non-moving party. *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)). The Court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000).

## II. FACTS

### A. Procedural Posture

On September 24, 2013, the Court dismissed without prejudice an earlier motion for summary judgment by these same Defendants based on the limitations period for actions under 42 U.S.C. § 1983. *Order Denying Motion for Summary Judgment by Defendants Clark and Lyon* (ECF No. 169) (*First Order*). After their first attempt to file a second motion for summary judgment foundered on difficulties communicating with Mr. Widi as he was transferred from prison to prison, *Order on Plaintiff's Motion to Vacate* (ECF No. 212), the Defendants re-filed their Second Motion for Summary Judgment on February 19, 2014. *Second Mot. of Defs. Denis Clark and Michael Lyon for Summ. J.* (ECF No. 214) (*Def.'s Mot.*). They included a Statement of Material Facts, *Statement of Material Facts* (ECF No. 215) (DSMF), and an Affidavit of Michael Lyon. DSMF Attach. 5 *Aff. of Michael Lyon* (ECF No. 215) (*Lyon Aff.*).

Following a short stay granted by the Court, Mr. Widi replied in opposition to the motion for summary judgment on April 7, 2014. *Opp'n to Second Mot. of Defs. Clark and Lyon for Summ. J. With Accompanying Mots. for Disc. and Appointment of Counsel* (ECF No. 228) (*Pl.'s Opp'n*). The Court recently addressed the collateral motions for discovery and appointment of counsel in Mr. Widi's opposition. *Order on Mot. to Appoint Counsel and Mot. for Disc.* (ECF No. 232). Mr. Widi also included a reply to the Defendants' statement of material facts and his own statement of additional material facts. *Reply Statement of Material Facts and Opposing Statement of Material Facts* (ECF No. 230) (PRDSMF) (PSAMF). Mr. Widi filed a Declaration in support of his opposition. *Second Decl. of David J. Widi Jr. Regarding Count XIII* (ECF No. 231) (*Widi Second Decl.*). In his reply to the Defendants' statement of material facts, Mr. Widi also refers to affidavits from the earlier motion for summary judgment. *Decl. of David J. Widi Jr. Regarding Count XIII* (ECF No. 65) (*Widi First Decl.*); *Reply of Defs. Denis Clark and Michael Lyon to Additional Statement of Material Facts* Attach. 2 *Second Aff. of Denis R. Clark* (ECF No. 71) (*Clark Second Aff.*).

The Defendants filed a reply to Mr. Widi's opposition on April 17, 2014. *Reply of Defs. Denis Clark and Michael Lyon to Pl.'s Opp'n to Summ. J. Mot.* (ECF No. 235) (*Def.'s Reply*). They also filed a reply to Mr. Widi's statement of additional material facts. *Reply Statement of Material Facts of Defs. Denis Clark and Michael Lyon* (ECF No. 234) (DRPSAMF).

3

### B. Summary Judgment Facts

Denis R. Clark is employed by the Maine Department of Corrections (MDOC) as an adult probation officer, a position he has held for eight years. DSMF ¶ 1; PRDSMF ¶ 1. P.O. Clark supervised the probation of Mr. Widi from February 2005 to February 2006. DSMF ¶ 2; PRDSMF ¶ 2. Mr. Widi was convicted in the Rockingham County, New Hampshire Superior Court of reckless conduct. DSMF ¶ 3; PRDSMF ¶ 3.[1] He was sentenced to twelve months in prison, all suspended, and two years of probation. DSMF ¶ 3; PRDSMF ¶ 3. Upon application of the New Hampshire Department of Corrections, Mr. Widi's probation was transferred to Maine, and P.O. Clark was assigned to supervise him. DSMF ¶ 4; PRDSMF ¶ 4. The transfer was officially accepted on March 10, 2005. DSMF ¶ 4; PRDSMF ¶ 4. Mr. Widi was arrested on December 8, 2005 for several probation violations. DSMF ¶ 5; PRDSMF ¶ 5.

---

[1] Defendants claim that Mr. Widi was convicted of "felony" reckless conduct, DSMF ¶ 3, while Mr. Widi contends that he was convicted of a misdemeanor. PRDSMF ¶ 3. Viewing the record evidence in the light most favorable to Mr. Widi, his assertion is supported by his own sworn declaration. *Widi Decl.* at ¶¶ 1-3. The Court therefore accepts Mr. Widi's version solely for the purpose of summary judgment on Count XIII pursuant to District of Maine Local Rule 56(f), (g).
 However, as the Court previously remarked, "[w]hether the crime for which Mr. Widi was convicted in New Hampshire was a felony or misdemeanor should be an ascertainable fact based on New Hampshire court records. His sentence of twelve months incarceration, all suspended, does not resolve the issue." *First Order* at 7 n.11. New Hampshire defines a felony as either class A or B and a class B felony is defined as "any crime . . . for which the maximum penalty . . . is imprisonment in excess of one year but not in excess of 7 years." N.H. REV. STAT. §§ 625:9(III)(a)(2), 631:3. New Hampshire defines a class A misdemeanor as "any crime . . . for which the maximum penalty . . . is imprisonment not in excess of one year." *Id.* § 625:9(IV)(a). Section 631:3 of New Hampshire law provides: "Reckless conduct is a class B felony if the person uses a deadly weapon . . . All other reckless conduct is a misdemeanor." *Id.* § 631:3(II).
 It would seem that there should be a definitive answer to this question. As the Court earlier wrote, "[d]ueling personal knowledge affidavits in lieu of court records are distinctly unhelpful." *First Order* at 7 n.11.

In November 2008, Mr. Widi found himself in trouble again. This time, a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives issued a criminal complaint against Mr. Widi, alleging that on November 28, 2008, having previously been convicted of a felony, he possessed a firearm, a violation of 18 U.S.C. § 922(g)(1).[2] *Criminal Compl.* (ECF No. 1), *United States v. Widi*, No. 2:08-mj-142-JHR (D. Me.). At a detention hearing in the U.S. District Court for the District of Maine on December 3, 2008, Detective Kevin Curran of the Eliot, Maine police department testified that he entered David Widi's residence in November, 2005 with P.O. Clark at a time when Mr. Widi was not at home. DSMF ¶ 6; DRPSMF ¶ 6. P.O. Clark has no current recollection or record of entering Mr. Widi's residence at that time. DSMF at 2, ¶ 2; PRDSMF ¶ 7.[3]

During the same time, P.O. Lyon supervised a probationer named D.S., who shared the apartment on Harold Dow Highway in Eliot with Mr. Widi in November,

---

[2] In their filings, the parties did not mention this new criminal complaint, but the sequence of events is unclear without the intervening federal criminal complaint. Without it, there would be no explanation as to why the case jumped three years later from a state probation violation to federal court. As the initiation of the criminal complaint is a matter of this Court's docket, the Court has taken judicial notice of this fact and has inserted it for context.

[3] Again, this statement is ambiguous as to whether P.O. Clark recalled entering Mr. Widi's residence when he testified in 2008. To clarify, the parties do not contend that P.O. Clark had no memory of the event when he testified about it in 2008, only that he has no current memory of it.

Oddly, the Defendants have numbered paragraphs in their Statement of Material Facts running 1, 2, 3, 4, 5, 6, 2, 3, 4. DSMF at 1-2. The Court refers to paragraphs 2 through 4 of page 2 by reference to both page and paragraph. References to paragraphs 2 through 4 without a page number indicate a paragraph occurring on page 1 of the Statement of Material Facts.

Mr. Widi interposes a qualified response to page 2, paragraph 2, citing evidence that Probation Officer Clark did in fact enter Mr. Widi's residence in November, 2005. PRDSMF ¶ 7 (citing *Clark Second Aff.* ¶¶ 3-4; *Lyon Aff.* ¶¶ 6-7; and DSMF Attach. 2 *Transcr. of Proceedings* at 4-5 (ECF No. 215) (*Detention Hearing*)). However, page 2, paragraph 2 does not make any assertion about what Probation Officer Clark actually did; the assertion speaks to what he recalls. Mr. Widi's record citations do not controvert this assertion, so the Court deems page 2, paragraph 2 admitted under Local Rule 56(f), (g).

2005. DSMF at 2, ¶ 3; PRDSMF ¶ 8.[4] On November 15, 2005, P.O. Lyon, accompanied by an Eliot police officer and "probably" by P.O. Clark, conducted a home visit of the residence shared by D.S. and Mr. Widi. DSMF at 2, ¶ 3; PRDSMF ¶ 8. D.S. was not at home, but his girlfriend was present and allowed the probation officers to enter the apartment. DSMF at 2, ¶ 3; PRDSMF ¶ 8.[5] They found no contraband and left. DSMF at 2, ¶ 3; PRDSMF ¶ 8.

Sometime in November, 2005, Detective Curran entered Mr. Widi's apartment with P.O. Clark when Mr. Widi was not home. *Detention Hr'g* at 4:8-17, 5:12-17. This may or may not have been November 15, 2005, when P.O. Lyon, an

---

[4] Mr. Widi denies page 2, paragraph 3 in its entirety, but his denial only addresses the third sentence of that paragraph. The Court deems the first two sentences admitted under Local Rule 56(f), (g).

[5] Mr. Widi denies this assertion. PRDMSF ¶ 8 (citing *Widi Second Decl.* ¶ 5 and DSMF Attach. 6 (ECF No. 215) (*CORIS Note*)). He cites his Second Declaration, in which he swears to the following facts:

> 3) [D.S.] requested of Defendant Lyon to be allowed to move into my apartment around November 4, 2005, but did not stay with me until November 12, 2005.
>
> 4) [D.S.] and I shared the common areas of the apartment, but each maintained private bedrooms.
>
> 5) Christine Donnelly was never left alone in the apartment.

*Widi Second Aff.* ¶¶ 3-5. The CORIS Note provided with P.O. Lyon's Affidavit mentions that a "C[redacted] D[Redacted]" was present at the apartment, and the Affidavit itself swears that D.S.'s girlfriend "was present and allowed the officers to enter the apartment and look around." *Lyon Aff.* ¶ 3. Drawing all reasonable inferences in Mr. Widi's favor, the Court concludes that "C.D." was Christine Donnelly.

However, Mr. Widi's assertion that Ms. Donnelly "was never left alone in the apartment," *Widi Second Aff.* ¶ 5, does not controvert the assertion of page 2, paragraph 3. This is because Mr. Widi can only establish facts by affidavit of which he has personal knowledge. FED. R. CIV. P. 56(c)(4). Mr. Widi can swear that he himself never left Ms. Donnelly alone in the apartment, but he cannot swear that she "was never left alone." The use of the passive voice indicates that D.S. never left Ms. Donnelly alone when Mr. Widi was not present, and Mr. Widi has no way to know this personally. The Court must view all record evidence in a light most favorable to Mr. Widi, but it may not allow him to swear to facts of which he does not have personal knowledge. Because Mr. Widi has not shown record evidence to controvert the assertion of page 2, paragraph 3, the Court deems it admitted under Local Rule 56(f), (g).

unidentified Eliot police officer, and possibly P.O. Clark searched Mr. Widi's entire apartment. PSAMF ¶ 10; DRPSAMF ¶ 10.[6]

D.S. lived with Mr. Widi for about a week, and never paid rent. PSAMF ¶ 15; DRPSAMF ¶ 15.[7] D.S. did not stay with Mr. Widi in the apartment through December 14, 2005. PSAMF ¶ 16; DRPSAMF ¶ 16.[8] Mr. Widi and D.S. both maintained private areas in the apartment. PSAMF ¶ 11; DRPSAMF ¶ 11. The information that there might have been a weapon in the apartment related only to

---

[6] In paragraph 10, Mr. Widi asserts that "Defendant Curran, Clark, and Lyon searched Mr. Widi's entire apartment on November 15, 2005. The Defendants interpose a qualified response to this paragraph, pointing out that the CORIS Note does not record the extent of the November 15 search. They further observe that P.O. Lyon swears in his affidavit that he "look[ed] around." *Lyon Aff.* ¶ 8. However, drawing all reasonable inferences in Mr. Widi's favor, the Court concludes that whoever was in the apartment on November 15, 2005, including P.O. Lyon, did search the entire apartment.
  The Court cannot credit paragraph 10 as Mr. Widi drafted it, however. Viewing the record evidence in a light most favorable to Mr. Widi and drawing all reasonable inferences, the Court cannot conclude with certainty that the episode Detective Curran mentioned in the Detention Hearing is the same as the episode of November 15, 2005. P.O. Lyon does not recall the name of the Eliot police officer who accompanied him on November 15; it might or might not have been Officer Curran. *Lyon Aff.* ¶ 6. P.O. Lyon is also not certain that P.O. Clark accompanied him on the November 15 visit. *Id.* ¶ 7. Officer Clark has "no recollection of entering [Mr.] Widi's residence in November, 2005, with Kevin Curran or any other police officer." *Clark Second Aff.* ¶¶ 3. In fact, P.O. Clark's own regularly-kept records contain no indication of such a visit. *Id.* ¶ 4. Under the applicable summary judgment standard, this record cannot support the conclusion that Detective Curran, Officer Lyon, and Officer Clark together visited and searched Mr. Widi's apartment on November 15, 2005. The Court has adjusted the assertion to reflect what the record supports, and deems the modified assertion admitted under Local Rule 56(f), (g).
The Court deems paragraph 10 admitted under Local Rule 56(f), (g).
[7] The Defendants deny this statement, citing P.O. Lyon's affidavit. DRPSAMF ¶ 15 (citing *Lyon Aff.* ¶ 3). However, the Court must resolve all factual disputes in Mr. Widi's favor in evaluating this motion for summary judgment. The Court deems paragraph 15 admitted under Local Rule 56(f), (g).
[8] The Defendants deny this statement, citing P.O. Lyon's affidavit. DRPSAMF ¶ 16 (citing *Lyon Aff.* ¶ 3). However, the Court must resolve all factual disputes in Mr. Widi's favor in evaluating this motion for summary judgment. The Court has removed Mr. Widi's statement that D.S. was "in York County Jail," because this statement is supported only by Mr. Widi's sworn declaration; Mr. Widi does not appear to have personal knowledge of D.S.'s whereabouts after he left the apartment. *See* PSAMF ¶ 16 (citing *Widi Second Decl.* ¶ 8). The Court otherwise deems paragraph 16 admitted under Local Rule 56(f), (g).

D.S. PSAMF ¶ 12; DRPSAMF ¶ 12.[9] Detective Curran and Probation Officers Clark and Lyon never asked Mr. Widi for permission to search his apartment. PSAMF ¶ 13; DRPSAMF ¶ 13.[10]

Mr. Widi's conditions of probation in 2005 included:

> I will submit to reasonable searches of my person, property and possessions as requested by the Probation/Parole Officer and permit the Probation/Parole Officer to visit my residence at reasonable times for the purpose of examination and inspection for the enforcement of the conditions of probation and parole.

DSMF at 2, ¶ 4; PRDSMF ¶ 9.

---

[9] The Defendants interpose a qualified response that the CORIS Note does not indicate who owned the weapon. DRPSAMF ¶ 12. However, the CORIS Note lists "staff" as "Lyon, Michael," and P.O. Lyon was D.S.'s probation officer, not Mr. Widi's probation officer. *Lyon Aff.* ¶ 2; *Statement of Material Facts* Attach. 1 *Aff. of Denis R. Clark*, ¶ 8 (ECF No. 49) (*Clark Aff.*). Drawing all reasonable inferences in favor of Mr. Widi, the Court concludes that the information about a weapon related to D.S., not to Mr. Widi. The Court deems the first sentence of paragraph 12 admitted under Local Rule 56(f), (g).

In the second sentence of paragraph 12, Mr. Widi claims that "[P.O.] Clark supervised Mr. Widi and has no record of him possessing a weapon at this time or a search being done for this reason." PSAMF ¶ 12 (citing *Clark Second Aff.* ¶ 3). Paragraph 3 of P.O. Clark's second Affidavit does not support this assertion, and the Court does not credit it.

[10] In paragraph 13, Mr. Widi claims that "Defendants Curran, Clark, and Lyon never requested to search Mr. Widi's apartment." PSAMF ¶ 13 (citing *CORIS Note* and *Widi Second Decl.* ¶ 2). The CORIS Note provides no evidence to support or controvert this assertion; it simply notes that Ms. Donnelly was present at the time of the search. *CORIS Note*. Mr. Widi swears that "Defendants Clark and Lyon never requested to search my apartment when I wasn't home," *Widi Second Decl.* ¶ 2, but this statement does not reflect Mr. Widi's personal knowledge. If Mr. Widi was not at home, he would have no way to know whether the probation officers did or did not make a request—to someone, perhaps other than Mr. Widi—to search the apartment. *See* FED. R.CIV. P. 56(c)(4). The Court has adjusted the assertion of paragraph 13 to reflect the most to which Mr. Widi can testify on personal knowledge: that the probation officers never asked him personally for permission to search the apartment. *See Widi Second Decl.* ¶ 2.

In paragraph 14, Mr. Widi claims that "[t]he Eliot/Kittery Police Department had a practice of unlawfully entering Mr. Widi's private property to conduct searches." PSAMF ¶ 14. This is a statement of legal argument, not a historical fact. The non-moving party may not "rest[] merely upon conclusory allegations," *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990), and the Court is not required to credit bald legal argument to establish a factual dispute. The Court does not credit paragraph 14.

## III. POSITION OF THE PARTIES

### A. The Defendants

The Defendants first argue that Mr. Widi cannot bear his burden of production on the elements of the constitutional offense because Detective Curran's testimony at the Detention Hearing is hearsay and inadmissible. *Def.'s Mot.* at 4-5. They next argue that the testimony, if admissible, does not show a constitutional violation; this is so, in their view, because the unconsented entry to Mr. Widi's home complied with the terms of his probation conditions. *Id.* at 5-6. Next, they argue that "the event probably referred to in Officer Curran's testimony was actually a visit by [P.O.] Lyon to a different probationer, D.S., who shared an apartment with [Mr.] Widi in 2005 at the time of the alleged entry." *Id.* at 6. They argue that Ms. Donnelly gave apparent consent to their entry and search, and the probation officers could not have violated Mr. Widi's rights under the Fourth Amendment. *Id.*

Finally, the Defendants argue that Mr. Widi has no cognizable constitutional injury because he only learned of the unconsented entry in 2008, three years after it actually happened. *Id.* at 7. Since he suffered no injury as a result of the entry and search, they contend that he is not entitled to compensatory damages. *Id.* Because his injury is only "abstract," they argue that "he is not entitled to the only relief [money damages] he requests against these defendants." *Id.*

### B. Mr. Widi

Mr. Widi first argues that this Court's previous decision regarding the admissibility of Detective Curran's testimony, *First Order* at 12, should be law of the case and control the admissibility of the same testimony in this summary

9

judgment motion. *Pl.'s Opp'n* at 4-5. He next disputes that the unconsented entry and search was reasonable under the terms of his then-current probation conditions. *Id.* at 6. In his view, his expectation of privacy was not so compromised by the terms that it was reasonable for probation officers to enter his home at any time without notice or permission. *Id.*

Next, Mr. Widi attacks as speculative the Defendants' effort to connect the incident to which Detective Curran testified at the Detention Hearing to the November 15, 2005 incident to which Ms. Donnelly apparently consented. *Id.* at 7. He further argues that Ms. Donnelly could not have given apparent consent to search Mr. Widi's bedroom, because the information about the weapon in the house was related only to D.S., not to Mr. Widi. *Id.*

Finally, Mr. Widi argues that even if he is not entitled to compensatory damages, he might be entitled to the punitive damages that he has requested in his Amended Complaint. *Id.* at 8.

### C. The Defendants' Reply

The Defendants make three points in reply. First, they argue that the probation conditions did anticipate an unconsented entry into his home. *Def.'s Reply* at 2. This is so, in their view, because the condition stated: "I will . . . permit the Probation/Parole Officer to visit my residence at reasonable times for the purpose of examination and inspection for the enforcement of the conditions of probation and parole." *Id.* They view the consent or lack of consent by Ms. Donnelly as "not material" because the probation conditions "do[] not require

10

anyone to be present when the probation officer visits and inspects the premises." *Id.*

Second, the Defendants dispute that Mr. Widi has made an evidentiary showing that would establish wrongful state of mind necessary for punitive damages. *Id.*

Third, the Defendants argue that the burden is on Mr. Widi to prove facts that would entitle him to withstand summary judgment, and deny that they bear any burden of production. *Id.* at 2-3.

## IV. DISCUSSION

The Fourth Amendment to the U.S. Constitution prohibits, among other things, unreasonable searches. U.S. CONST. amend IV. The Fourth Amendment restrains state agents as well as federal agents. *Wolf v. Colorado*, 338 U.S. 25 (1949); *Mapp v. Ohio*, 367 U.S. 643 (1961). A search without a warrant is presumptively unreasonable, *Kyllo v. United States*, 533 U.S. 27, 39 (2001), but that presumption can be rebutted if the state can show that an exception to the warrant requirement applies. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). One such exception is when the police obtain, without coercive tactics, the consent of one with apparent authority to grant it. *Id.* at 246-48. The Supreme Court has also upheld the warrantless search of a probationer based only on the reasonable suspicion of police officers, *United States v. Knights*, 534 U.S. 112 (2001), and the warrantless, suspicionless search of a parolee who had consented as a condition of parole to search at any time without cause. *Samson v. California*, 547 U.S. 843,

11

846, 857 (2006). Most recently, the Supreme Court ruled that Maryland police did not violate the expectation of privacy of a pre-trial detainee when they "searched" him by collecting a DNA sample. *Maryland v. King*, 133 S. Ct. 1958, 1966, 1980 (2013).

### A. The Admissibility of Detective Curran's Testimony

The Defendants claim Officer Curran's testimony from the Detention Hearing is hearsay and inadmissible to prove that defendants entered plaintiff's residence. *Second Motion* at 4-5. In its earlier order dismissing the first motion for summary judgment, the Court considered Detective Curran's testimony for the purpose of summary judgment, *First Motion* at 12, and does so again here for the same reasons.

### B. The Theory of Actual Consent by Ms. Donnelly

Defendants argue that Detective Curran's testimony must have referred to the November 15, 2005 home visit by Officers Lyon, maybe Officer Clark, and an unnamed Eliot police officer. In their view, the girlfriend of Mr. Widi's roommate gave consent for the entry and search, and had apparent authority to do so. "Consent searches are part of the standard investigatory techniques of law enforcement agencies" and are "a constitutionally permissible and wholly legitimate aspect of effective police activity." *Schneckloth*, 412 U.S. at 228, 231-32. If the search took place as the Defendants have surmised—namely, the girlfriend of a lodger consenting to the search—the facts are similar to *Fernandez v. California*, 134 S. Ct. 1126 (2014), where the defendant's girlfriend consented to a search of their jointly occupied apartment. In *Fernandez*, the Supreme Court reiterated the

rule that "consent by one resident of jointly occupied premises is generally sufficient to justify a warrantless search." *Id.* at 1133. The Supreme Court explained that "a person who shares a residence with others assumes the risk that 'any one of them may admit visitors, with the consequence that a guest obnoxious to one may nevertheless be admitted in his absence by another.'" *Id.* (quoting *Georgia v. Randolph*, 547 U.S. 103, 111 (2006)).

Unlike *Randolph*, there is no suggestion here that Mr. Widi, D.S., or anyone else objected to the search. *See Fernandez*, 134 S. Ct. at 1133 ("The Court's opinion went to great lengths to make clear that its holding was limited to situations in which the objecting occupant is present. Again and again, the opinion of the Court stressed this controlling factor"). Whenever this search took place, there is no evidence at all that Mr. Widi was present to object. In fact, the reason Mr. Widi is now objecting is that he was not present to object during the search. In the face of consent to search by a person with apparent authority to consent, the police do not need to assume that an absent resident would have objected had he been there. *Id.* at 1135 ("[T]he calculus of this hypothetical caller would likely be quite different if the objecting tenant was not standing at the door"). Thus, if the search took place when the Defendants say it did and with the consent of the girlfriend of a tenant, Mr. Widi has no valid constitutional gripe.

The problem is that in the context of a motion for summary judgment, the facts in the dueling filings are simply too fuzzy to find, over Mr. Widi's objection, that the search took place when the Defendants say it did. The Defendants have

13

not established anything more than a speculative connection between the November 15, 2005 home visit and the entry and search of which Detective Curran testified at the detention hearing. It is understandable that the officers' memories are decidedly hazy about a search that supposedly took place over eight years ago and revealed nothing. Detective Curran's testimony does not reveal the date of his visit with Officer Clark; the Defendants can only claim that "the event probably referred to in Detective Curran's testimony was actually a visit by [Officer] Lyon to a different probationer, D.S., who shared an apartment with Widi at the time of the alleged entry." *Def.'s Mot.* at 6. Moreover, the record is silent as to what, if anything, D.S.'s girlfriend, Christine Donnelly recalls about this incident. As the non-movant, Mr. Widi is entitled to the benefit of all reasonable inferences in his favor.[11] One such reasonable inference is that Detective Curran was not, in fact, referring to the November 15, 2005 home visit to which Ms. Donnelly gave apparent consent. This alone is sufficient to generate a genuine dispute of material fact and deny Defendants judgment as a matter of law on the apparent consent theory.

### C. Consent by Mr. Widi as a Condition of Probation

The United States Supreme Court has long held that, although probationers may enjoy some Fourth Amendment protections, it is also true that "[i]nherent in the very nature of probation is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled."'" *Knights*, 534 U.S. at 119 (quoting *Morrissey v.*

---

[11] The Defendants are correct that Mr. Widi has the burden of production as to the general elements of a constitutional violation, *Def.'s Mot.* at 4, but the Defendants bear the burden of production as to the defense of consent. *See United States v. Luciano*, 329 F.3d 1, 8 (1st Cir. 2003) (citing *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)).

14

*Brewer*, 408 U.S. 471, 480 (1972)). In other words, "[j]ust as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *Id.* The *Knights* Court concluded that a warrantless search of probationer "supported by reasonable suspicion and authorized by a condition of probation" passed constitutional muster. *Id.* at 122.

In 2006, the Supreme Court went further and held constitutional a California statute that required every prisoner eligible for release on state parole to "'agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause.'" *Samson v. California*, 547 U.S. 843, 846 (2006) (quoting Cal. Penal Code § 3067(a)). In *Samson*, the Supreme Court distinguished between probationers and parolees and wrote that "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." *Id.* at 850. In 2013, addressing a New Hampshire parolee, the First Circuit observed that although some states, such as California, have passed statutes giving law enforcement the power to search the homes of persons released on parole without any cause, it "cannot locate a similar provision under New Hampshire law." *United States v. Vazquez*, 724 F.3d 15, 21 n.3 (1st Cir. 2013).

As Mr. Widi was on probation, not parole, he had a "substantially diminished expectation of privacy." *United States v. Graham*, 553 F.3d 6, 15 (1st Cir. 2009). Even though a probationer's expectation of privacy might be lower than the average

15

citizen, the courts have persisted in describing the standard for a warrantless search as "a reasonable suspicion of criminal conduct." *Vazquez*, 724 F.3d at 21. This lower expectation of privacy may be further reduced, however, by agreement. In *Graham*, the First Circuit observed that a probationer's expectation of privacy "can be further shaped by search conditions in the probation order where the order clearly expresses the conditions and the probationer is unambiguously informed of them." *Graham*, 553 F.3d at 15-16 (internal quotations omitted). Here, there is no evidence that the probation officers had a reasonable suspicion to believe that Mr. Widi was engaged in criminal conduct whenever it was that they entered his residence.

The Court turns to the other possible source of authority for the warrantless search: the conditions of probation. On December 15, 2004, Mr. Widi signed a document entitled: New Hampshire Department of Corrections, Division of Field Services, Terms and Conditions of Adult Probation. DSMF Attach. 4, *Aff. of Denis R. Clark*, at Ex. 1 (ECF No. 215). Mr. Widi's probation conditions included restrictions against (1) changing residence without first obtaining the Probation Officer's permission, (2) possession of a firearm, (3) associating with persons having a criminal record, and (4) the use of controlled drugs or alcohol, among other conditions. *Id.* Mr. Widi signed the document before a Probation Officer and certified:

> I hereby certify that I have this date received a copy of the rules and regulations of probation/parole. I have read and had read to me the rules and I fully understand and agree to comply with them.

*Id.* The contested condition of probation reads:

> I will submit to reasonable searches of my person, property and possessions as requested by the Probation/Parole Officer and permit the Probation/Parole Officer to visit my residence at reasonable times for the purpose of examination and inspection for the enforcement of the conditions of probation and parole.

DSMF at 2, ¶ 4; PRDSMF ¶ 9. The Court reads this clause as containing two parts. The first—"I will submit to reasonable searches of my person, property and possessions as requested by the Probation/Parole Officer"—contemplates the presence of the probationer. For example, if Mr. Widi were to enter the probation office, he could be required to undergo a reasonable examination of his person and possessions, or if he were in a motor vehicle, the probation officer would have the right to search his vehicle.

The second clause reads: "[I] permit the Probation/Parole Officer to visit my residence at reasonable times for the purpose of examination and inspection for the enforcement of the conditions of probation and parole." This clause must mean something different than the first clause or else it would be surplusage. The first clause already gives the probation officer the right to search his property—presumably including his residence—upon request.

The Court interprets this second clause to refer to a separate right of probation officers to visit and inspect his residence so long as they are doing so at "reasonable times" and so long as the inspection related to "enforcement of the conditions of probation." Unlike a personal search of Mr. Widi—which requires submission to a request—by this clause Mr. Widi consented to inspections of his residence by his probation officers even if he was not there. This clause is not

unrestricted. It is limited to a search of his residence, the search must be at a "reasonable time", and the search must be related to the "enforcement of the conditions of probation." But so long as they arrived at his residence at a reasonable time and they were there to enforce probation conditions, Mr. Widi had agreed to let them inspect his residence.

This interpretation of the probation condition is consistent with the practicalities of probation. A simple example suffices. Under most conditions of probation, including Mr. Widi's, the probation officer is periodically obligated to make certain that the probationer is actually living where he says he is living, that the probationer does not have ready access to firearms, and that the probationer is not living with a prohibited person. If actual consent were required, a probationer could safely violate the conditions of probation in his apartment by refusing to answer the door when the probation officers knocked. This inspection condition allows the probation officer to conduct inspections consistent with his most basic oversight obligations.

Here, the Defendants have asserted and Mr. Widi has admitted that on December 3, 2008 at a detention hearing in the United States District Court for the District of Maine, Detective Kevin Curran of the town of Eliot Police Department testified that he entered David Widi's residence in November 2005 with Probation Officer Denis Clark when Mr. Widi was not home. DSMF ¶ 6; PRDSMF ¶ 6. Mr. Widi believes and the Court accepts as true that Detective Curran, Probation Officer Clark, and Probation Officer Lyon all searched his entire apartment when

he was not present on November 15, 2005. PSAMF ¶ 10; DRPSAMF ¶ 10. Probation Officer Clark was Mr. Widi's Probation Officer. DSMF ¶ 4; PRDSMF ¶ 4. This may or may not have been a second visit to Mr. Widi's residence in November 2005. It does not matter. Mr. Widi had expressly consented to either or both searches.

The final question is whether this clause, as interpreted by the Court, would be deemed unconstitutional in light of the "reasonable suspicion" standard in *Knights*. *Graham* upheld waivers so long as the waiver was clearly expressed and the probationer agreed with them. In *Samson*, the Supreme Court authorized searches of parolees any time day or night with or without cause. Although under *Samson* there is a difference between parolees and probationers, this Court does not view that distinction as significant enough to void a reasonably tailored, consented-to residential search condition for a probationer. Here the Court finds reasonable the three conditions in the contested clause: (1) the visited premises must be the probationer's residence, (2) the visit must have been made at a reasonable time, and (3) the visit must have been for the purpose of examination and inspection to enforce the conditions of probation. Mr. Widi may not now be heard to complain about a search carried out pursuant to a search condition that he consented to when he entered into probation.[12]

---

[12] Because the Defendants are entitled to judgment as a matter of law based on Mr. Widi's probation conditions, the Court need not reach the parties' disagreement about whether Mr. Widi's requested remedies render Count XIII non-viable.

## V. CONCLUSION

The Defendants are entitled to judgment as a matter of law on Count XIII because, although there are genuine disputes of fact, they are not material in light of Mr. Widi's consented to probation conditions. Thus, the Court GRANTS the Defendants' Second Motion for Summary Judgment as to Count XIII (ECF No. 214).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 21st day of April, 2014