UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DAVID J. WIDI, JR.,                     )
                                        )
                 Plaintiff,             )
                                        )
        v.                              )        2:12-cv-00188-JAW
                                        )
PAUL MCNEIL, et al.,                    )
                                        )
                 Defendants.            )


**ORDER DENYING PLAINTIFF'S MOTIONS FOR RECONSIDERATION**

Having issued an order on a motion for summary judgment in favor of Defendants Denis R. Clark and Michael Lyon, the Court denies David J. Widi, Jr.'s motion for reconsideration as supplemented. The Court also rejects the parties' multiple procedural squabbles, reaches the merits of Mr. Widi's contentions, and concludes that no different result is required.

## I.       PROCEDURAL BACKGROUND

On April 21, 2014, the Court granted a motion for summary judgment in favor of Maine State Probation Officers Denis R. Clark and Michael Lyon. *Order Granting the Renewed Mot. for Summ. J. by Defs. Clark and Lyon* (ECF No. 236) (*Order*). On May 12, 2014, Mr. Widi filed a motion for reconsideration. *Mot. for Recons. of Order Granting Summ. J. to Defs. Clark and Lyon* (ECF No. 242) (*Pl.'s Mot.*). Probation Officers Clark and Lyon objected on May 22, 2014. *Resp. in Opp'n to Mot. for Recons. of Summ. J. Order* (ECF No. 244) (*Defs.' Opp'n*). Mr. Widi replied on June 9, 2014. *Reply to Opp'n of Mot. for Recons. of Summ. J. Order* (ECF No. 245) (*Pl.'s Reply*).

On July 25, 2014, Mr. Widi filed a supplemental motion for reconsideration. *Supplemental Mot. for Recons. Under Fed. R. Civ. P. 59(e) and 60(b) with Accompanying Req. for Disc. Order* (ECF No. 246) (*Pl.'s Supplemental Mot.*). On August 8, 2014, Probation Officers Clark and Lyon filed an opposition to the supplemental motion. *Opp'n to Pl.'s Supplemental Mot. for Recons.* (ECF No. 247) (*Defs.' Supplemental Opp'n*). Mr. Widi replied on August 25, 2014. *Reply to Defs.' Opp'n to Supplemental Mot. for Recons.* (ECF No. 250) (*Pl.'s Supplemental Reply*).

On August 14, 2014, Mr. Widi filed a second supplemental motion for reconsideration. *Second Supplemental Mot. for Recons. Under Fed. R. Civ. P. 59(e) and 60(b)* (ECF No. 248) (*Pl.'s Second Supplemental Mot.*). On August 15, 2014, Probation Officers Clark and Lyon waived further response. *Waiver of Resp. to Pl.'s Second Supplemental Mot. for Recons.* (ECF No. 249) (*Defs.' Waiver*). On September 5, 2014, Mr. Widi replied to Probation Officers Clark and Lyon's waiver of response. *Pl.'s Reply to Def[s.]' Waiver of Resp.* (ECF No. 251) (*Pl.'s Reply to Defs.' Waiver*).

## II.    FACTUAL BACKGROUND

### A.    The Order

In Count XIII of his Amended Complaint, Mr. Widi alleged that Probation Officers Clark and Lyon illegally searched his residence in November 2005 in violation of the Fourth Amendment of the United States Constitution. *Am. Compl.* at 18-19 (ECF No. 15); *see also Order* at 6. In its Order on Probation Officers Clark and Lyon's motion for summary judgment, the Court concluded that, as a condition of his probation, Mr. Widi had consented to the Probation Officers' search of his

residence. *Order* at 12-19. The probation condition contained the following critical language:

> I will submit to reasonable searches of my person, property and possessions as requested by the Probation/Parole Officer and permit the Probation/Parole Officer to visit my residence at reasonable times for the purpose of examination and inspection for the enforcement of the conditions of probation and parole.

*Id.* at 17.

### B. David J. Widi, Jr.'s Motion for Reconsideration

In Mr. Widi's motion for reconsideration, he argues that the Court committed a "manifest error of law by interpreting the probation condition as referring to two separate rights of probation officers." *Pl.'s Mot.* at 4. Citing the New Hampshire Code of Administrative Rules – Probation and Parole, he maintains that under New Hampshire law, "the second part of the probation condition is not considered a separate right or surplusage, but is a qualifier that prevents a probation officer from harassing a probationer by rousting him or her in the middle of the night for a search and to prevent the probation officer from using the probation condition to conduct searches on behalf of the police as an end-around to the warrant procedure." *Id.* He also points out, in support of his contention, the absence of a comma between the two clauses and the absence of a new subject, "I will" at the beginning of the second clause. *Id.* at 4-5.

He asserts that under the New Hampshire Code of Administrative Rules, there are four conditions for a probation officer residential search: (1) the search must be "reasonable;" (2) the search must be "requested;" (3) the search requests must be

3

made at "reasonable times;" and (4) the search must be made "for the purpose of examination and inspection for the enforcement of the conditions of probation." *Id.* at 5. Citing his own sworn declaration, Mr. Widi claims that Heather E. Polucha, a New Hampshire Probation Officer, informed him about these four conditions when she discussed the conditions of probation with him in New Hampshire. *Id.*

Even assuming the Court is correct about waiver, Mr. Widi contends that the Probation Officers failed to demonstrate the fourth criterion for a probation officer search, namely, that the search is being carried out for the purpose of examination and inspection for the enforcement of the conditions of probation. *Id.* at 6.

Finally, Mr. Widi maintains that, contrary to the Court's ruling, it matters whether the Probation Officers visited his residence with Officer Curran or whether they visited his residence a second time in November 2005, because, he contends, if they visited a second time, they must have broken into his residence. *Id.* at 7. He asserts that the Probation Officers did not have the right to "break into a probationer's home, kick down his door, or smash out his window to gain access to conduct a search as long as he does so at a 'reasonable time' and 'for the purpose of examination and inspection for the enforcement of the conditions of probation.'" *Id.* at 8.

## C. The Probation Officers' Opposition

In their opposition, Probation Officers Clark and Lyon respond that Mr. Widi failed to demonstrate that the Order is based upon a manifest error of law, that he may not introduce additional evidence and arguments by way of a motion for

reconsideration, that his additional evidence is inadmissible, that he attempted to mislead the Court as to the date he filed the motion, and that the prison mailbox rule does not apply. *Defs.' Opp'n* at 1. The Probation Officers observe that a party may not introduce new evidence or advance a new argument in a motion for reconsideration that could have been presented before the original ruling. *Id.* at 1-2. Thus, they urge the Court not to consider Mr. Widi's "non-specific reference to the 'New Hampshire Code of Administrative Rules – Probation and Parole.'" *Id.* at 2. They also object to Mr. Widi's attempt to place new evidence before the Court of a conversation he had with a New Hampshire probation officer, noting in addition that the content of the conversation is hearsay. *Id.* at 3. The Probation Officers observe that the Order was dated April 21, 2014 and Mr. Widi's motion for reconsideration was due on or before May 5, 2014. *Id.* However, Mr. Widi did not file the motion for reconsideration until May 12, 2014 and did not deposit the motion for mailing until May 5, 2014. *Id.* The Probation Officers concede that Mr. Widi's May 5 mail deposit was technically timely under the prison mailbox rule, but they contend that the mailbox rule should not apply because "application of the rule in this instance would not further its purpose." *Id.* at 3-4.

### D.     David J. Widi, Jr.'s Reply

In his reply, Mr. Widi repeats some of his earlier arguments. *Pl.'s Reply* at 1-2, 4-6, 7-8. Mr. Widi excuses his failure to cite the New Hampshire Code of Administrative Rules on the ground that he has not been provided access to this information while in federal prison, and obtained the information only while he was

incarcerated at the Strafford County Jail in New Hampshire. *Id.* at 2. He also justifies his failure to refer to his conversation with Probation Officer Polucha during the initial briefing by noting that the issue was not raised by the Defendants until they did so in their reply. *Id.* at 3-4.

Mr. Widi raises a new argument: that the New Hampshire probation conditions would not be applicable in the state of Maine as they relate to Probation Officer Clark. *Id.* at 6-7. He claims that when he was transferred to Maine, he was required to sign new probation conditions, which took the place of the New Hampshire conditions. *Id.* He contends that even though he has requested copies of those conditions in discovery, the Court refused to order their production. *Id.* at 6. Finally, Mr. Widi offers an explanation involving internal procedure at the Federal Correctional Institution in Berlin, New Hampshire (FCI Berlin) as to why the mail that he deposited on May 3, 2014 was not recorded as deposited until May 5, 2014. *Id.* at 8-9.

**E.      David J. Widi, Jr.'s First Supplemental Motion**

In his first supplemental motion, Mr. Widi cites New Hampshire law as providing that when a probationer is transferred to a new state during his term of probation, he is subject to the probation conditions of the transferee state. *Pl.'s. Supplemental Mot.* at 5. Thus, he maintains that the effective terms and conditions of his probation should have been the Maine, not New Hampshire conditions. *Id.* at 5-6. Furthermore, Mr. Widi contends that the Court should not have considered the waiver argument because it was raised for the first time in the Defendants' reply. *Id.*

at 6-8.  Mr. Widi also asserts that the New Hampshire Attorney General has conceded that its probation conditions were unconstitutional and agreed to change them.  *Id.* at 9-10.

## F.  Probation Officers Clark and Lyon's First Supplemental Response

The Defendants first object to the Court's consideration of the supplemental memorandum by Mr. Widi, noting that it is not authorized by the Federal Rules of Civil Procedure or the Local Rules.  *Defs.' Supplemental Opp'n* at 1.  They also note that Mr. Widi's reliance on Federal Rules of Civil Procedure 59(e) and 60 is inappropriate.  *Id.* at 1-2.  They further dispute Mr. Widi's contention that the New Hampshire probation transfer statute affects the terms and conditions of probation in the transferee state because it is the sentencing court, not the Probation Office, that establishes the terms and conditions of probation.  *Id.* at 2.  They also dispute Mr. Widi's argument that they waited until their reply to raise the probation conditions issue.  *Id.*  Finally, they disagree with Mr. Widi's view that the New Hampshire probation condition has been found constitutionally defective.  *Id.* at 3.

## G.  David J. Widi, Jr.'s Supplemental Reply

In his supplemental reply, Mr. Widi argues that he is free to file supplemental memoranda and to use Federal Rule of Civil Procedure 59(e) or Local Rule 7(g) to present his argument.  *Pl.'s Supplemental Reply* at 1-3.  He also disagrees with the Defendants' contention that they presented the probation condition issue in their original summary judgment motion.  *Id.* at 3.  Finally, he says that the New Hampshire probation condition has been found constitutionally defective.  *Id.* at 4.

**H.    David J. Widi, Jr.'s Second Supplemental Motion**

In his second supplemental motion, Mr. Widi reiterates many of the previously raised arguments. *Pl.'s Second Supplemental Mot.* at 1-3. To this motion, Mr. Widi attaches an executed form entitled, "Consent to Random Drug or Alcohol Testing and to Searches Based on Reasonable Suspicion." *Id.* Attach. 2. He contends that this form constitutes newly discovered evidence and limits the Maine Probation Office's right to search his residence. *Id.* at 3-4.

**I.    Probation Officers Clark and Lyon's Waiver**

The Defendants refer to their prior filings and waive the right to present further argument. *Defs.' Waiver* at 1.

**J.    David J. Widi, Jr.'s Reply to the Waiver**

In his final reply, Mr. Widi reasserts that the Consent to Random Drug or Alcohol Testing and to Searches Based on Reasonable Suspicion form proves that he did not waive his right to have searches done only upon reasonable suspicion. *Pl.'s Reply to Defs.' Waiver* at 1.

## III.    DISCUSSION

### A.    Procedural Issues

#### 1.    The Prison Mailbox Rule

The Defendants contend that the so-called mailbox rule should not apply to this case. *Defs.' Opp'n* at 3-4. The Court disagrees. The First Circuit has held that the mailbox rule applies to pro se prisoner actions filed under 42 U.S.C. § 1983. *Casanova v. Dubois*, 304 F.3d 75, 79 (1st Cir. 2002). The *Casanova* Court relied on

the Supreme Court's decision in *Houston v. Lack*, 487 U.S. 266, 270-76 (1988) "to explain the policy underpinning this rule: a prisoner has no control over how or when a complaint is filed after he hands it over to prison officials." *Ward v. Bellotti*, No. 13-cv-12054, 2014 U.S. Dist. LEXIS 129253, at *8 (D. Mass. Sept. 15, 2014) (citing *Casanova*, 304 F.3d at 79). This same logic extends to other documents that a pro se prisoner plaintiff in a § 1983 case files with the Court. *See Johnson v. United States*, 544 U.S. 295, 300 n.2 (2005) (applying the mailbox rule to a motion filed under 28 U.S.C. § 2255); *Donovan v. Maine*, 276 F.3d 87, 90 (1st Cir. 2002) (applying the mailbox rule to the filing date for a notice of appeal).[1]

## 2. New Evidence and New Argument

Citing First Circuit precedent and District of Maine Local Rule 7(g), the Defendants maintain that Mr. Widi is prohibited from introducing new evidence or making a new argument on a motion for reconsideration if either could have been presented before the contested order issued. *Defs.' Opp'n* at 2 (citing *Alicea v. Machete Music*, 744 F.3d 773, 781 (1st Cir. 2014); *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 11 (1st Cir. 2003); D. ME. LOC. R. 7(g)). Mr. Widi replies that the contested issue— the meaning of the terms and conditions of probation—was not raised by the Defendants until their reply, and therefore, he was never given an opportunity to make a fair argument on that critical issue before the Court made its decision. *Pl.'s*

---

[1] The Defendants assert that Mr. Widi made a misrepresentation to the Court regarding when he deposited the motion for reconsideration in the prison mail system. *Defs.' Opp'n* at 4 ("Moreover, Widi should be estopped from claiming the advantage of the prison mailbox rule by his blatant attempt to mislead the court as to the date of mailing"). Mr. Widi responds with a complicated description of the mail system at FCI Berlin. *See Pl.'s Reply* at 8-10. The Court need not enter this factual mire because the Defendants acknowledge that "Widi's 'filing' was technically timely under the rule." *Defs.' Opp'n* at 3.

*Reply* at 3-4.  The Defendants disagree.  *Defs.' Supplemental Opp'n* at 2.  They point to an argument made in their motion for summary judgment to support their disagreement.  *Id.* (citing *Second Mot. of Defs. Denis Clark and Michael Lyon for Summ. J.* at 2, 5 (ECF No. 214) (*Second Mot. of Defs. Clark and Lyon*)).  Mr. Widi responds that the Defendants' assertion is "patently false" and he reiterated his position in his second supplemental filing.  *Pl.'s Supplemental Reply* at 3; *Pl.'s Second Supplemental Mot.* at 1-5.

This sparring about whether the argument regarding the correct meaning of his probation conditions is new, old or something in between is distinctly unproductive.  In this Order, the Court reaches the merits of Mr. Widi's arguments, and therefore, whether it should have done so in the past is moot.

### 3. Federal Rules of Civil Procedure 59 and 60 and Local Rule 7(g)

Another unhelpful squabble is whether Mr. Widi may move for reconsideration under Federal Rules of Civil Procedure 59 and 60.  *Defs.' Supplemental Opp'n* at 1-2.  The Defendants are correct that Mr. Widi mislabeled his motion for reconsideration as a motion under Rules 59 and 60; Mr. Widi is incorrect in his stubborn defense of his choice of cited rules.

After the Court issued a summary judgment order in favor of Probation Officers Clark and Lyon, multiple parties and grounds of action remained to be resolved.  Accordingly, the provisions of Federal Rule of Civil Procedure 54(b) apply:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to

one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

FED. R. CIV. P. 54(b). The Court has not directed entry of a final judgment as to Probation Officers Clark and Lyon pursuant to this Rule, and therefore, neither Rule 59 nor Rule 60 is applicable. *See Order* at 20. Rule 59(e), by its terms, applies only to judgments. FED. R. CIV. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment"). Absent the Court's determination under Rule 54(b) that an order on a motion for summary judgment should be deemed final, the decision is not reviewable under Rule 60(b). *Dempsey v. The Nat'l Enquirer*, 702 F. Supp. 927, 929 n.4 (D. Me. 1988) ("The Order lacks finality because it dismissed the complaint only as to one defendant. The court did not certify the Order as final for purposes of appeal under Federal Rule of Civil Procedure 54(b). Thus, the time requirements under Federal Rule of Civil Procedure 60(b) are inapplicable").

None of this matters. Under Local Rule 7(g), a party may file a motion for reconsideration of an interlocutory order of the Court, "meaning a motion other than one governed by Fed. R. Civ. P. 59 or 60." D. ME. LOC. R. 7(g). Local Rule 7(g) requires the movant to "demonstrate that the order was based on a manifest error of fact or law." *Id*. Mr. Widi's motion for reconsideration fits within Local Rule 7(g).

## B. The Merits

### 1. The Court's Interpretation of the Condition of Probation

Accompanying their renewed motion for summary judgment, the Defendants posited the following statement of material fact:

> Widi's conditions of probation in 2005 included the following: "I will submit to reasonable searches of my person, property and possessions as requested by the Probation/Parole Officer and permit the Probation/Parole Officer to visit my residence at reasonable times for the purpose of examination and inspection for the enforcement of the conditions of probation and parole."

*Statement of Material Facts* at 2, ¶ 4 (ECF No. 215) (DSMF).[2]  Mr. Widi admitted the statement.  *Reply Statement of Material Facts* ¶ 9 (ECF No. 230) (PRDSMF).  In its Order on the motion for summary judgment, the Court interpreted this provision as containing two parts: (1) the first being related to searches in the presence of the probationer; and (2) the second being related to searches of the probationer's residence not requiring his presence.  *Order* at 14-19.  Having come to this interpretation, the Court determined that Mr. Widi had consented to the search of his residence by the two Defendants.  *Id.* at 19.

Mr. Widi strenuously objects to the Court's interpretation of this probation condition.  He bases his disagreement on the following points: (1) that the New Hampshire Code of Administrative Rules – Probation and Parole interprets this probation condition differently, *Pl.'s Mot.* at 4; (2) that New Hampshire Probation Officer Polucha informed him about four conditions for a search different from the

---

[2]   The Defendants numbered their statement of material facts oddly, starting with 1 through 6 and continuing with 2 through 4.  DSMF ¶¶ 1-6, 2-4.  Mr. Widi responded as if the numbers were sequential.  PRDSMF ¶¶ 1-9.  The parties have not argued about the odd numbering and have proceeded as if they were sequential.

Court's reading of the probation condition, *id.* at 5; (3) that New Hampshire probation conditions would not be applicable to a probation case transferred from New Hampshire to Maine, *Pl.'s Supplemental Mot.* at 5-6; (4) that the Attorney General for the state of New Hampshire has conceded that the state probation conditions are unconstitutional and has agreed to change them, *id.* at 9-10; and (5) that a Maine form entitled "Consent to Random Drug or Alcohol Testing and to Searches Based on Reasonable Suspicion" clarified that probation officers in Maine could search a residence only upon reasonable suspicion. *Pl.'s Second Supplemental Mot.* Attach 2. Mr. Widi also argues that even if the Court is correct in its interpretation of the waiver issue, the Defendants were still required to demonstrate that they were performing the search for the purpose of examination and inspection for the enforcement of the conditions of probation. *Pl.'s Mot.* at 6.

### 2. New Hampshire Code of Administrative Rules — Probation and Parole and New Hampshire Probation Transfer Law

In his motion for reconsideration, Mr. Widi writes:

> Under New Hampshire law the second part of the probation condition is not considered a separate right or surplusage, but is a qualifier that prevents a probation officer from harassing a probationer by rousting him or her in the middle of the night for a search and to prevent the probation officer from using the probation condition to conduct searches on behalf of the police as an end-around to the warrant procedure. See New Hampshire Code of Administrative Rules – Probation and Parole.

*Id.* at 4. In their response, the Defendants observe that Mr. Widi has made a "non-specific reference to 'New Hampshire Code of Administrative Rules – Probation and

Parole' to support the alternate interpretation he proffers [and] is similarly unhelpful." *Defs.' Opp'n* at 2.

In his first supplement, Mr. Widi attaches a copy of a New Hampshire statute, New Hampshire Revised Statutes § 504-A:2, which reads:

> Under RSA 651-A:25, probationers or parolees may be transferred for supervision and control between states which are signatories to a compact entered into under that section. New Hampshire probationers and parolees whose supervision has been transferred to other states are subject to the rules, regulations, policies, and procedures in effect in the state to which they are transferred. Probationers and parolees transferred to New Hampshire for supervision shall be held accountable and be supervised and controlled under the same rules, policies, and procedures as apply to New Hampshire probationers and parolees.

*Pl.'s Supplemental Mot.* Attach. 1 (attaching N.H. REV. STAT. § 504-A:2). In their response, the Defendants note that Mr. Widi "erroneously argues that this statute applies to the conditions of probation." *Defs.' Supplemental Opp'n* at 2. They cite New Hampshire Revised Statutes § 504-A:1(VII) as providing that the sentencing court, not the probation officer or the statute, establishes conditions of probation. *Id.*

The Court views Mr. Widi's contentions about the New Hampshire Code of Administrative Rules and the New Hampshire probation transfer statute as missing the point. During the motion for summary judgment process, the parties agreed that in 2005, Mr. Widi was subject to the following condition of probation:

> I will submit to reasonable searches of my person, property and possessions as requested by the Probation/Parole Officer and permit the Probation/Parole Officer to visit my residence at reasonable times for the purpose of examination and inspection for the enforcement of the conditions of probation and parole.

DSMF at 2, ¶ 4; PRDSMF ¶ 9. What is important is that Mr. Widi admitted that his probation was subject to the quoted language.

The Court does not know what to make of Mr. Widi's argument regarding the New Hampshire Code of Administrative Rules. Mr. Widi never cites a specific Rule. He simply asserts that one of these Rules provides a different interpretation of this provision than the Court has rendered, namely, that there are four preconditions placed on a probation officer residential search of Mr. Widi's residence: (1) the search must be "reasonable;" (2) the search must be "requested;" (3) the request must be made at "reasonable times;" and (4) the search must be made "for the purpose of examination and inspection for the enforcement of the conditions of probation." *Pl.'s Mot.* at 5. Without a citation, however, the Court has not considered Mr. Widi's argument on this point because it is too unsupported to credit.

Furthermore, under New Hampshire law, it is the Court, not the probation office, that establishes the conditions of probation.[3] N.H. REV. STAT. § 504-A:1(VII) ("'Probation conditions' means the restrictions and limitations established by the court for the conduct and behavior of a probationer"). Although a court might take into account the probation office's interpretation of the probation condition, it is the court's job, not the probation office's job, to interpret the meaning of probation conditions. *State v. Merrill*, 999 A.2d 221, 225 (N.H. 2010) ("[T]he judiciary retains

---

[3]    By New Hampshire rule, a probation officer has the authority to impose some conditions in addition to those imposed by the court. *State v. Merrill*, 999 A.2d 221, 225 (N.H. 2010). However, the Supreme Court of New Hampshire has noted that the judiciary "retains the ultimate authority to review those conditions and to vacate them if they are unreasonable." *Id.* Thus, even if a probation officer imposed this condition (and there is no suggestion that he or she did), its proper interpretation would be a judicial matter.

the ultimate authority to review those conditions and to vacate them if they are unreasonable").

Finally, there is nothing in the Court's interpretation of this probation condition that contradicts Mr. Widi's overall interpretation. Mr. Widi states that this probation condition "prevents a probation officer from harassing a probationer by rousting him or her in the middle of the night for a search and to prevent the probation officer from using the probation condition to conduct searches on behalf of the police as an end-around to the warrant procedure." *Pl.'s Mot.* at 4. The Court agrees. Under the Court's interpretation of this probation condition, the second clause of the probation condition "is limited to a search of [the probationer's] residence, the search must be at a 'reasonable time,' and the search must be related to the 'enforcement of the conditions of probation.'" *Order* at 18. The probation officer would have to justify a residential search as reasonable and in furtherance of the enforcement of a probation condition, and a search in the middle of the night accompanied by police officers might well not meet those tests.

The one precondition to a residential search that Mr. Widi insists exists that the Court determined did not is the requirement that a probation officer must "request" a search of a residence before it is undertaken. For the reasons the Court discussed in its Order, the Court did not and does not interpret the language of the probation condition as requiring that a probation officer request from the probationer the right to search a probationer's residence before executing the search. *Id.* at 17-18.

### 3. David J. Widi, Jr.'s Memory of Probation Officer Heather Polucha's Interpretation of the Probation Condition

In his motion, Mr. Widi claims he discussed the conditions of probation with his New Hampshire probation officer, Heather Polucha, and asserts it was his "understanding" from his meeting with Probation Officer Polucha that before a probation officer may search his residence, the probation officer would be required to meet the four conditions contained in the New Hampshire Code of Administrative Rules, including the request precondition. *Pl.'s Mot.* at 5-6. To support his view that Probation Officer Polucha's statements to him about the meaning of the conditions of probation matter, Mr. Widi cites *United States v. Graham*, 553 F.3d 6 (1st Cir. 2009) as reiterating the Supreme Court standard for such waivers: "'where the [probation] order clearly expresses the conditions and the probationer is unambiguously informed of them.'" *Id.* at 5 (quoting *Graham*, 553 F.3d at 16). Mr. Widi further notes that the First Circuit has said it will uphold "'waivers so long as the waiver was clearly expressed and the probationer agreed with them.'" *Id.* (quoting *Order* at 19). Mr. Widi implicitly concludes that because he understood Probation Officer Polucha's explanation of the conditions of probation in a particular way, this creates a genuine issue of material fact as to whether they were ambiguous. *See id.* at 5-6.

The Defendants object to Mr. Widi's reliance on his impression of what Probation Officer Polucha said to him. *Defs.' Opp'n* at 3. They argue the evidence is hearsay and not newly discovered. *Id.*

In reply, Mr. Widi argues that the evidence is newly discovered because the Defendants raised the waiver issue only in their reply. *Pl.'s Reply* at 3-4. Mr. Widi does not respond to the hearsay objection. *See id.* at 1-11.

Setting aside the newly discovered evidence issue, the Court agrees with the Defendants that Mr. Widi's memory of what Probation Officer Polucha told him is hearsay. It is an out-of-court statement proffered for its truth and does not fit within any of the hearsay exceptions. FED. R. EVID. 801, 803-04. For purposes of the summary judgment record, Mr. Widi could have presented an affidavit from Probation Officer Polucha as to what she said to him, but he did not do so.

The cases cited by Mr. Widi do not prove the unambiguous nature of the probation condition by referring to what the probation officer said to the probationer. In *Graham*, the First Circuit noted that "Graham signed the probation order, indicating that he had read and understood the conditions of probation." 553 F.3d at 10. The same evidence was before the Supreme Court in *United States v. Knights*, 534 U.S. 112, 114 (2001) ("The probation order included the following condition: that Knights would '[s]ubmit his . . . person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer.' Knights signed the probation order, which stated immediately above his signature that 'I HAVE RECEIVED A COPY, READ AND UNDERSTAND THE ABOVE TERMS AND CONDITIONS OF PROBATION AND AGREE TO ABIDE BY SAME'"). These

written acknowledgements are remarkably similar to the acknowledgement that Mr. Widi signed in New Hampshire:

> I hereby certify that I have this date received a copy of the rules and regulations of probation/parole. I have read and had read to me the rules and I fully understand and agree to comply with them.

DSMF Attach. 4 *New Hampshire Dep't of Corrections, Div. of Field Servs., Terms and Conditions of Adult Probation*.

In sum, the Court agrees with the Defendants that Mr. Widi's memory of what another person told him about the meaning of the probation conditions is not probative and the Court does not consider it.

### 4. Unconstitutionality of the New Hampshire Probation Condition

In his supplemental filing, citing *Anderson v. Peterson*, No. 02-315-M, 2003 U.S. Dist. LEXIS 23488 (D.N.H. Dec. 31, 2003), Mr. Widi claims that the United States District Court for the District of New Hampshire found the probation condition at issue in this case to be unconstitutional. *Pl.'s Supplemental Mot.* at 9. The Defendants respond that the condition in *Anderson* was different than the condition in this case, and furthermore, that the District Court decided *Anderson* before the Supreme Court decided *Samson v. California*, 547 U.S. 843 (2006), "which upheld a parole condition allowing the warrantless, suspicionless search of a parolee who consented to such a condition." *Defs.' Supplemental Opp'n* at 3. In reply, Mr. Widi asserts that the parole condition in *Anderson* was identical to the probation condition in his case. *Pl.'s Supplemental Reply* at 4. In addition, he contends that *Samson* is

irrelevant because the Defendants searched his residence before *Samson* was decided. *Id.* at 4-5.

Mr. Widi is incorrect in asserting that the parole condition in *Anderson* was identical to the probation condition in his case. The parole condition in *Anderson* permitted the parole officer "to visit [his] residence at any time for the purpose of examination and inspection in the enforcement of the conditions of parole and submit to searches of [his] person, property, and possessions as requested by the parole officer." *Anderson*, 2003 U.S. Dist. LEXIS 23488, at *3. The *Anderson* Court observed that this parole condition was derived from the Administrative Rules of the Adult Parole Board, located in the New Hampshire Administrative Code Rules at paragraph 401.02(b)(9), and provided that all parolees shall "'permit[] the parole officer to visit parolee's residence at any time for the purpose of examination and inspection in the enforcement of the conditions of parole and submit to searches of his person, property, and possessions as requested by the parole officer.'" *Id.* at *3 n.2 (quoting N.H. CODE ADMIN. R. ¶ 401.02(b)(9)). The *Anderson* Court casted doubt on the constitutionality of paragraph 401.02(b)(9) in light of the "reasonable suspicion requirement described in *Griffin* [*v. Wisconsin*, 483 U.S. 868 (1987)] and *Knights*." *Id.* at *22-23.

The obvious difference between the parole condition in *Anderson* and the probation condition in this case is that the parole condition allowed examination and inspection of the residence "at any time" while the condition in Mr. Widi's case allowed such examinations and inspections "at reasonable times." But the Court

agrees that this difference between the *Anderson* and Widi conditions does not address the "reasonable suspicion" requirement.

More significantly, in *Samson*, the Supreme Court refined the teachings of *Griffin* and *Knights* and held that "a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment." *Samson*, 547 U.S. at 847. Thus, the Court in Mr. Widi's case properly focused on whether Mr. Widi had actually consented to the search of his residence and concluded he had. The *Anderson* Court did not have the benefit of *Samson*'s refinement of *Griffin* and *Knights*.

Mr. Widi contends that *Samson* is irrelevant because the Defendants searched his home before the case was decided. *Pl.'s Supplemental Reply* at 4-5. Mr. Widi's argument on this point is not fully developed, and the Court deems it waived. However, even addressing his argument as presented, it is baseless. The Supreme Court has held that new constitutional rules of criminal procedure shall apply to pending cases. *See, e.g., Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) (holding that a "new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final"). The *Griffith* Court went on to explain that while the Supreme Court "cannot hear each case pending on direct review and apply the new rule," it can "instruct[] the lower courts to apply the new rule retroactively to cases not yet final." *Id.* at 323. Here, the Court properly applied *Samson* to Mr. Widi.

### 5. The Maine Form

In his second supplemental filing, Mr. Widi argues that when he was transferred to Maine, he signed a Maine probation form, which limited residential searches to those based on reasonable suspicion. *Pl.'s Second Supplemental Mot.* at 3. He claims that the Maine probation form, which he signed, constitutes newly discovered evidence because he was unable to obtain it until the state of Maine responded to his Freedom of Access Act request and sent him the form. *Id.* at 3-4. The Defendants did not reply to this second supplement. *See Defs.' Waiver.*

This is one argument that simply comes too late. Mr. Widi filed his lawsuit against Probation Officers Clark and Lyon on June 13, 2012. *Compl.* (ECF No. 1). Probation Officers Clark and Lyon initially filed a motion for summary judgment on November 9, 2012 based on statute of limitations grounds. *Mot. of Denis R. Clark and Michael Lyon for Summ. J.* (ECF No. 48). The disposition of the motion was substantially delayed, largely because Mr. Widi, who is a prolific filer, had unusual problems receiving his mail. *See Order on Objections and on Status* (ECF No. 107). The Court subsequently denied the motion on September 24, 2013. *Order Denying Mot. for Summ. J. by Defs. Clark and Lyon* (ECF No. 169).

Meanwhile, the Defendants filed a second motion for summary judgment on April 23, 2013. *Second Mot. of Defs. Denis Clark and Michael Lyon for Summ. J.* (ECF No. 135). Again, Mr. Widi had an inordinately difficult time receiving his mail, and for the next nine months, the record became hopelessly tangled about whether and when he received what was sent. On February 18, 2014, the Court cut the

Gordian knot and dismissed the motion without prejudice, requiring the Defendants to start fresh. *Order on Pl.'s Mot. to Vacate or for Order of Serv. and Extension of Time to File a Resp. and Defs. Denis Clark and Michael Lyon's Second Mot. for Summ. J.* (ECF No. 212).

The Defendants quickly filed a renewed motion for summary judgment and a statement of material facts on February 19, 2014, each identical in substance to the April 23, 2013 filings. *Second Mot. of Defs. Clark and Lyon*; DSMF. On April 7, 2014, Mr. Widi responded with his own memorandum, responsive statement of material facts and posited additional facts. *Opp'n to Second Mot. of Defs. Clark and Lyon for Summ. J. with Accompanying Mots. for Disc. and Appointment of Counsel* (ECF No. 228) (*Pl.'s Opp'n to Defs.' Second Mot. with Accompanying Mots. for Disc. and Appointment of Counsel*); PRDSMF; *Opposing Statement of Material Facts* (ECF No. 230). On April 17, 2014, the Defendants replied to Mr. Widi's opposing memorandum and his statement of additional material facts. *Reply of Defs. Denis Clark and Michael Lyon to Pl.'s Opp'n to Summ. J. Mot.* (ECF No. 235); *Reply Statement of Material Facts of Defs. Denis Clark and Michael Lyon* (ECF No. 234).

During the briefing on the motion for summary judgment, Mr. Widi admitted that for purposes of the motion, he was subject to the contested probation condition. DSMF at 2, ¶ 4; PRDSMF ¶ 9. On April 21, 2014, the Court undertook a painstaking, twenty-page analysis of the condition that Mr. Widi himself acknowledged applied to him. *Order* at 1-20.

Now, Mr. Widi attempts to argue that the applicable probation condition was not the New Hampshire condition but a later-imposed Maine condition. Even if Mr. Widi did not obtain the Maine probation conditions until after the Court issued its Order, he has made no showing that the documents were "previously unavailable." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006); *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005). Mr. Widi's delay is more egregious because the Defendants' second motion had, as a practical matter, been pending since April 23, 2013; at the least, Mr. Widi has known about the issues the Defendants were raising since then. Yet, he has not explained why he could not have obtained the documents much earlier in the process that he now presents.

Instead, in his supplemental motion, Mr. Widi blames the Court for his failure to obtain the Maine probation form from the Defendants. *Pl.'s Supplemental Mot.* at 8-9 ("The Court . . . committed error by not granting Mr. Widi's requested discovery order (ECF No. 232, Pg. 2-3) as that has denied Mr. Widi the ability to effectively litigate this case"). But in his April 7, 2014 motion for discovery, he asked the Court to order the deposition of Special Agent Kevin Curran. *Pl.'s Opp'n to Defs.' Second Mot. with Accompanying Mots. for Disc. and Appointment of Counsel* at 9 ("However, due to Mr. Widi's limited knowledge of the facts held by Curran, he is not in a place to be able to effectively plead his case"). His discovery request focused on his demand that he be allowed to depose and obtain discovery from Special Agent Curran. *Id.* ("Accordingly, Mr. Widi seeks to obtain from Curran a deposition or answers to interrogatories to determine what he remembers about the time he entered Mr.

Widi's apartment when he wasn't home, and the circumstances surrounding that event").

Regarding Probation Officers Clark and Lyon, Mr. Widi requested the following:

> Mr. Widi also seeks the documentary records of Defendants Clark and Lyon related to any and all home visits or searches conducted by the defendants and any information related to Mr. Widi in the CORIS notes. Mr. Widi further seeks depositions, answers to interrogatories and documents relating to the information that "there may be a weapon in the house" as was stated in the 11/15/05 CORIS note.

*Id.* at 9-10. The Court is skeptical about whether this discovery request, as framed by Mr. Widi, against Probation Officers Clark and Lyon would have produced the consent form for the New Hampshire to Maine transfer that Mr. Widi signed in the presence of New Hampshire Probation Officer Heather Polucha. After all, it was Mr. Widi who signed the Consent to Random Drug or Alcohol Testing and to Searches Based on Reasonable Suspicion form on January 26, 2005. If Mr. Widi thought that this form contained the truly effective conditions of probation and that the Court should have considered them as opposed to the New Hampshire probation conditions in ruling on the motion for summary judgment, he should have brought this specific issue to the Court's attention before, not after, the Court's ruling. Instead, Mr. Widi buried this contention in a general demand for discovery, waited to see what the Court would do on the motion, and then sprang it on the Court, only after he lost the motion.

In addition, the Court did not deny Mr. Widi's request for discovery. On April 10, 2014, it dismissed the request and indicated it would consider ordering discovery

when it reviewed the completed motion under Rule 56(d). *Order on Mot. to Appoint Counsel and Mot. for Disc.* at 7 (ECF No. 232). However, in his filings, Mr. Widi made no effort to explain that the Court did not have the correct set of probation conditions. To the contrary, Mr. Widi stipulated that the New Hampshire probation condition that the Court interpreted was the effective condition for purposes of the motion for summary judgment. DSMF at 2, ¶ 4; PRDSMF ¶ 9.

Finally, as the Court earlier noted, even if the Court considered this Maine consent sheet, it remains true that the probation officers do not set the terms and conditions of probation; the Court establishes probation conditions as part of its sentencing judgment. To the extent the Maine probation conditions contradict the probation conditions imposed by the New Hampshire court, the court-imposed conditions must apply, and thus, the probation condition that the Court analyzed is the effective one for purposes of this Order.

### 6. The Purpose of the Search

Mr. Widi maintains that there is no evidence in the record that either Probation Officer Clark or Probation Officer Lyon searched his residence "for the purpose of examination and inspection for the enforcement of the conditions of probation" as required by the probation condition. *Pl.'s Mot.* at 6. He notes that the Defendants searched Mr. Widi's "entire apartment." *Id.* The Defendants did not respond to this issue. *See Defs.' Opp'n* at 1-4.

As is typical in this case, Mr. Widi's allegations require a detailed response. This entire controversy stems from the testimony of Eliot, Maine Detective Kevin

Curran, who testified at a detention hearing in this Court on December 3, 2008 that he entered Mr. Widi's residence with Probation Officer Clark in November 2005 at a time when Mr. Widi was not home. *Order* at 5. Beyond this, the circumstances of the search are extremely murky. There is no clear answer as to whether there was one search or two. It is possible that the only search in this case took place on November 15, 2005 when Mr. Widi was living with a man whose initials are "D.S." *Id.* at 5-6. Probation Officer Lyon was supervising D.S., who was also on probation, and on November 15, 2005, Probation Officer Lyon went to Mr. Widi's home accompanied by an Eliot police officer and probably by Probation Officer Clark, and conducted a home visit of the residence that Mr. Widi and D.S. shared. *Id.* If the search took place then, there is evidence in the record that D.S.'s girlfriend consented to the search and that the search was pursuant to probation conditions for D.S., which Mr. Widi has no standing to contest. *Id.* at 6. In its Order, the Court concluded that "if the search took place when the Defendants say it did and with the consent of the girlfriend of a tenant, Mr. Widi has no valid constitutional gripe." *Id.* at 13.

There is also, however, the possibility there was more than one search. Detective Curran testified that he entered Mr. Widi's home in November 2005 with Probation Officer Clark. Probation Officer Clark has no memory or record of entering Mr. Widi's residence at that time. *Id.* at 5. This search may or may not have been the same search that Probation Officer Lyon, Probation Officer Clark, and Detective Curran conducted on November 15, 2005. If not, the Court infers that the probation officer(s) went to Mr. Widi's residence in connection with enforcement of the terms of

his probation. There is simply no evidence in the record that the probation officers went to Mr. Widi's residence for a purpose other than their work as probation officers. To generate a genuine issue of material fact on this point, there must be something in the record to suggest that the probation officers were off on a personal excursion or for a law enforcement purpose other than the enforcement of probation conditions. In this case, no genuine issue of material fact has been generated on this point.

## IV. CONCLUSION

The Court DENIES David J. Widi, Jr.'s Motion for Reconsideration of Order Granting Summary Judgment to Defendants Clark and Lyon (ECF No. 242), his Supplemental Motion for Reconsideration under Federal Rules of Civil Procedure 59(e) and 60(b) with Accompanying Request for Discovery Order (ECF No. 246), and his Second Supplemental Motion for Reconsideration under Federal Rules of Civil Procedure 59(e) and 60(b) (ECF No. 248).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 7th day of October, 2014