UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DAVID J. WIDI, JR.,                    )
                                       )
              Plaintiff,               )
                                       )
       v.                              )        2:12-cv-00188-JAW
                                       )
PAUL MCNEIL, et al.,                   )
                                       )
              Defendants.              )

**ORDER ON MOTION FOR RECONSIDERATION AND MOTION
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60**

David J. Widi, Jr. returns to this Court, urging it once again to reconsider its orders. In general, the Court refuses to change its earlier rulings. However, as Mr. Widi is challenging a screening order under 28 U.S.C. § 1915A and First Circuit law deems it preferable to allow a litigant whose claims may fail under § 1915A an opportunity to amend the complaint to cure any defects, the Court allows Mr. Widi thirty days to move to amend his Second Amended Complaint as to certain Counts. At the same time, because Mr. Widi seems to have shifted the facts to suit legal rulings, because the Court has previously determined that Mr. Widi's factual claims against a government defendant were fanciful, and because Mr. Widi charges law enforcement officials with violations that could affect their reputations and professional and personal standing, the Court is requiring Mr. Widi to produce documentary evidence to support his newest set of allegations.

## I.     MOTION FOR RECONSIDERATION

### A.     The *Bailey v. United States* Argument

In his sixty-nine page Second Amended Complaint, Mr. Widi claimed in Count One that on the morning of November 28, 2008, a number of law enforcement officers unlawfully seized him at a local Irving Oil convenience store about 300 yards from his apartment, where they were executing a search warrant.  *Second Am. Compl.* ¶¶ 56-65 (ECF No. 191) (*Second Am. Compl.*).  On February 11, 2015, the Court issued a screening order pursuant to 28 U.S.C. § 1915A in which it held that Count One of the Second Amended Complaint must be dismissed because *Michigan v. Summers*, 452 U.S. 692, 705 (1981)—the controlling United States Supreme Court precedent in November 2008—allowed arrests of occupants incident to the execution of a search warrant.  *Screening Order, Order Vacating in part Earlier Order Denying Mot. for Leave to File Second Am. Compl. as to Served Defs., Order Granting in part Mot. to File Second Am. Compl., Order Striking Portions of the Second Am. Compl., and Order Denying Mot. to Stay* (ECF No. 270) (*Screening Order*).  Mr. Widi chafes at the Court's dismissal and insists that under *Bailey v. United States*, 133 S. Ct. 1031 (2013) his arrest was unlawful.

The Court first explained its position on this issue on September 24, 2013, when it dismissed his claim against Special Agent Paul McNeil based on its conclusion that Agent McNeil was entitled to qualified immunity.  *Order Denying Pl.'s Mot. to Stay; Denying Pl.'s Mot. to Strike; and Granting Def. McNeil's Mot. to Dismiss* at 17-19 (ECF No. 170) (*McNeil Order*).  The Court noted that to prevail in

this claim, Mr. Widi had to demonstrate that the right he claims the law enforcement defendants violated was "clearly established" at the time of the alleged violation. *Id.* (quoting *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009)). The Court concluded that the arrest of Mr. Widi did not violate clearly established law as of 2008 and that Agent McNeil was entitled to qualified immunity. *McNeil Order* at 19. Since September 24, 2013, the Court has applied this rationale to the remaining officers that Mr. Widi has sued for his Irving Oil arrest. *Screening Order* at 31-32. Mr. Widi objects to the dismissals and now files a motion for reconsideration, arguing the Court erred. *Mot. for Recons.* at 1-4 (ECF No. 292) (*Pl.'s Mot. for Recons.*). In his motion, he contends that *Michigan v. Summers* was limited to the occupants of buildings to be searched and did not extend to persons stopped away from the searched building. *Id.*

In the Court's view, Mr. Widi is simply wrong. *Bailey* itself demonstrates that the limitation on arrests pursuant to a search warrant was not clearly established in 2008. In *Bailey*, the police were preparing to execute a warrant to search a basement apartment for a handgun when they saw two men exit the gated area above the apartment and drive away. *Bailey*, 133 S. Ct. at 1036. The police followed them and stopped them about one mile away from the apartment. *Id.* The police did a patdown search of the men, and one of the men possessed keys that later turned out to fit the apartment. *Id.* The police handcuffed the men and drove them in a patrol car back to the apartment. *Id.* In *Bailey*, the Supreme Court concluded that the *Summers*

3

detention rule was limited to the immediate vicinity of the premises to be searched. *Id.* at 1042-43.

The *Bailey* case came to the Supreme Court from the Second Circuit Court of Appeals. *Bailey*, 652 F.3d 197 (2d Cir. 2011). In its 2011 opinion, the Second Circuit ruled that the police stop and detention of the defendant about a mile from the searched residence was lawful under *Summers*. *Id.* at 206 ("[W]e have no trouble concluding that Bailey's detention was lawful under the Fourth Amendment"). The Second Circuit noted that whether a detention of a person who had left the searched premises may be permitted under *Summers* had split the circuits, with three circuits concluding that such detentions were permissible and two concluding they were not. *Id.* at 204-06. In *Bailey*, the Second Circuit joined the majority in holding that such a detention was permissible under *Summers*. Finally, the Supreme Court was itself not unanimous. There were six justices in the majority, and three justices—Justices Breyer, Thomas, and Alito—dissented. *Bailey*, 133 S. Ct. at 1035-50.

This recitation demonstrates the error in Mr. Widi's repeated argument. Mr. Widi would have the police officers who detained him in November 2008 be better judges of the scope of the *Summers* rule than three Justices of the United States Supreme Court and numerous judges of four courts of appeal. Based on the opinions of these distinguished jurists, the Court reiterates its conclusion that the right to be free from detention in Mr. Widi's circumstances was not clearly established as of November 2008. Mr. Widi's continued citation to *Bailey* and to cases that have followed *Bailey* do not change this Court's view that before *Bailey*, the *Bailey* holding

was not clearly established law, and that the police officers who detained him in November 2008 relying on *Summers* are entitled to qualified immunity.[1]

## B.   Eliot Police Officer Elliot Moya

In Count Two of the Second Amended Complaint, Mr. Widi alleged that a number of police officers had applied his handcuffs too tightly and had failed to respond to his demands that the handcuffs be loosened. *Second Am. Compl.* ¶¶ 66-75. In its Screening Order, the Court let stand—despite substantial reservations—the claims against town of Eliot Police Officer Robert Brown and Lieutenant Kevin Cady. *Screening Order* at 32-36. However, reviewing Mr. Widi's allegations against Officer Elliot Moya, the Court concluded that the allegations were insufficient to prevent dismissal. *Id.* at 35-36.

The sole allegations in the Second Amended Complaint against Officer Moya were:

> Curran instructed Brown and Moya to transport Mr. Widi back to his residence at McNeil's directive.   Mr. Widi complained during the transport that the handcuffs were too tight.   Moya said he'd have to take it up with the ATF.   Brown and Moya had the ability to loosen the handcuffs and the keys to do so.

*Second Am. Compl.* ¶ 71. There is only one other mention of Officer Moya:

---

[1]      The *Bailey* Court allowed detention for persons in the "immediate vicinity" of the searched premises. *Bailey*, 133 S. Ct. at 1042.   It explained that the "immediate vicinity" requirement is intended to limit detention to areas in which an occupant "poses a real threat to the safe and efficient execution of a search warrant."   *Id.*   Among the factors a court may weigh in determining whether a person was in the "immediate vicinity" are "the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors."   *Id.*   Since *Bailey*, the United States Supreme Court used the term "near" to describe the immediate vicinity requirement. *Fernandez v. California*, 134 S. Ct. 1126, 1136 (2014).   The Court does not reach whether Mr. Widi's presence at a gas station 300 yards away from the searched residence would be deemed in the "immediate vicinity."   There is no evidence in this record for some of the *Bailey* factors, including line of sight.

Brown's use of handcuffs was unreasonable, excessive, and applied to cause harm to Mr. Widi. McNeil, Curran, Cady, and Moya had sufficient time and opportunity to intervene, yet they did not act to protect Mr. Widi from the excessive use of force and it was unreasonable for them to fail to prevent the excessive use of force. The defendants were deliberately indifferent to the harm being caused to Mr. Widi.

*Id.* ¶ 74. Based on a close reading of the allegations in the Second Amended Complaint against Officer Moya, which consisted of his presence in a police car for a brief interval as Mr. Widi was being brought from the gas station to his apartment, the Court concluded that the allegations were insufficient to support an excessive force claim. *Screening Order* at 35-36.

Mr. Widi returns and attempts to add allegations to his Second Amended Complaint not present in the Complaint itself, extending the time during which Officer Moya was present. *Pl.'s Mot. for Recons.* at 5-6. He now says that Officer Moya was present at the scene while Mr. Widi was handcuffed and that he drove Mr. Widi to the police station. *Id.* But these additional allegations appear nowhere in Mr. Widi's sixty-nine page Second Amended Complaint. *Second Am. Compl.* at 1-69. The Court declines to consider them in this Order.[2]

However, the First Circuit has written that "[o]rdinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded." *Brown v. Rhode Island*, 511 Fed.

---

[2]   Mr. Widi says that the Second Amended Complaint makes reference to "incorporated transcripts" and says that they contain information that supports his current contention that Officer Moya was present "the entire time." *Pl.'s Mot. for Recons.* at 6. Even though a plaintiff is entitled to provide a "short and plain statement of the claim," the short and plain statement must show that the plaintiff is "entitled to relief." FED. R. CIV. P. 8(a)(2). The Second Amended Complaint is Mr. Widi's third version of his claims and does not lack for detail. The Court will not fish through referenced transcripts to provide sufficient detail to Mr. Widi's claims and will hold him to what he has alleged against Officer Moya, not what might appear somewhere in a referenced transcript.

Appx. 4, 5 (1st Cir. 2013) (citing *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002); *Street v. Fair*, 918 F.2d 269, 272-73 (1st Cir. 1990) (per curiam)).  This Court is reluctant to prolong this unwieldy case any longer than necessary, but it is guided by the First Circuit.  As with some of the other Counts, the Court will allow Mr. Widi to file a motion to amend the Second Amended Complaint setting forth more detailed allegations against Officer Moya.  But, given his continually shifting allegations, the Court will require Mr. Widi to present more to the Court than his own say-so.  To amend this Count against Officer Moya, Mr. Widi must present the Court with some documentation that is roughly contemporaneous with Officer Moya's actions that substantiate his accusations or that demonstrate that someone other than Mr. Widi has provided a foundation for his allegations.  Mr. Widi must file this motion to amend the Second Amended Complaint within thirty days of the date of this Order.

### C.   Special Agent Paul McNeil

On September 24, 2013, the Court addressed Special Agent Paul McNeil's motion to dismiss or motion for summary judgment against the Amended Complaint in a thirty-six page order and granted his motion to dismiss.  *McNeil Order* at 1-36.  On November 18, 2013, Mr. Widi filed a Second Amended Complaint and made numerous specific allegations against Special Agent McNeil.  *Second Am. Compl.* ¶¶ 7, 59, 61-62, 67-68, 71, 73-74, 86, 94-95, 101-02, 112-13, 115, 121, 123-24, 128, 132-33, 137-38, 142, 150, 154-55, 159.[3]  The Second Amended Complaint attempted to add certain allegations against Special Agent McNeil, most of which were contained in

---

[3]      The Second Amended Complaint's enumeration of allegations is not strictly sequential.

the earlier litigated pleading. *See Second Am. Compl.* Count III (Illegal Sniff Search), Count IV (Illegal Seizure of Tile Company Van), Count V (2ⁿᵈ Illegal Sniff Search). In its February 11, 2015 ruling, the Court declined to allow Mr. Widi to restate dismissed claims or assert new claims against Special Agent McNeil. *Screening Order* at 35 (citing *McNeil Order*).

In his motion for reconsideration, Mr. Widi asserts that the Court's reasoning—that it would not allow a resurrected claim—is "not true as a matter of law." *Pl.'s Mot. for Recons.* at 6. Citing *Torres-Álamo v. Puerto Rico*, 502 F.3d 20, 25 (1st Cir. 2007), Mr. Widi says that the First Circuit allows such amendments under Federal Rule of Civil Procedure 15(a). In *Torres-Álamo*, however, the First Circuit observed that there are legitimate reasons to deny a motion to amend including "undue delay, bad faith, futility, and the absence of due diligence on the movant's part." *Id.* (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006). *See also Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 531 (1st Cir. 2015) (affirming district court's denial of a party's motion to amend where further amendment would "do little more than further waste the time of the courts and litigants").

Here, Mr. Widi's Complaint has been pending since June 13, 2012, making it one of the oldest cases on this Court's docket. *Compl.* (ECF No. 1). It was on October 15, 2012 that Special Agent McNeil filed a dispositive motion against Mr. Widi's Amended Complaint. *Special Agent McNeil's Mot. to Dismiss or for Summ. J.* (ECF No. 37). The motion was thoroughly briefed by both Special Agent McNeil and Mr.

Widi.  Mr. Widi filed his objection on March 4, 2013, *David Widi's Opp'n to McNeil's Mot. to Dismiss and for Summ. J.* (ECF No. 102), and Special Agent McNeil filed his reply on March 25, 2013.  *McNeil's Reply to Pl.'s Opp'n* (ECF No. 127).  On September 24, 2013, the Court issued an extensive order on the dispositive motion and dismissed Special Agent McNeil.  *McNeil Order* at 1-36.

Now, more than two years after the Court dismissed all Counts against Special Agent McNeil and more than three years after suit was filed, Mr. Widi seeks to bring Special Agent McNeil back in under Rule 15(a).  Even though Mr. Widi has not filed a Rule 15(a) motion to allow him to state or restate claims against Special Agent McNeil, the Court would not grant the motion.  First, although he has recast some of his claims against Special Agent McNeil, Mr. Widi's new claims are at bottom the same as the old ones that the Court considered in depth and dismissed.  To reinitiate dismissed claims would be an exercise in futility.  Second, to the extent there are new allegations (and Mr. Widi has not identified them if there are), it is much too late in the disposition of this intractable action to start fresh, and Mr. Widi has given no good reason for doing so.  Third, Mr. Widi's complaint about the Court's September 24, 2013 Order is really a motion for reconsideration.  Mr. Widi already filed a motion for reconsideration of that Order, and the Court denied it.  *Mot. for Recons. and Certificate for Appeal* (ECF No. 180); *Order Denying Pl.'s Mots. for Recons. of Orders Granting Mot. to Dismiss to Paul McNeil and Mot. for Summ. J. to TD Bank* (ECF No. 213).  Finally, there has to be a point in civil litigation where the disappointed party accepts—for the time being—the rulings of the trial court and pins his hopes

on the appellate court.  For Mr. Widi, that moment has long since passed as regards his claims against Special Agent Paul McNeil.

### D.    Counts Three and Five: The Sniff Searches

In his Second Amended Complaint, Mr. Widi presented two Counts complaining about law enforcement's use of a drug detection dog on his company van, first when it was parked in his driveway and next after it had been seized.  *Second Am. Comp.* ¶¶ 76-82, 92-98.  In its Screening Order, the Court dismissed Counts Three and Five by concluding that based on Supreme Court authority, law enforcement was allowed to employ a drug detection dog without infringing on Mr. Widi's constitutional rights.  *Screening Order* at 36-37.

Mr. Widi says the Court got it wrong.  He cites *Florida v. Jardines*, 133 S. Ct. 1409, 1417-18 (2013) for the proposition that the use of drug detection dogs to search the curtilage of a home violated the Fourth Amendment.  *Pl.'s Mot. for Recons.* at 7-8.  Next, he claims that to the extent the sniff search was conducted after law enforcement had seized his van, it is "completely unreasonable to say that law enforcement should be allowed to remove items from private property without a warrant so that they can conduct a sniff search elsewhere." *Id.* at 8.  Citing *Rodriguez v. United States*, 135 S. Ct. 1609 (2015), Mr. Widi observes that the Supreme Court has not allowed law enforcement to hold a vehicle during a traffic stop to allow for the retrieval of a drug detection dog, and Mr. Widi says that this principle should disallow law enforcement's removal of the van for the purpose of allowing a sniff search.  *Pl.'s Mot. Recons.* at 8.

10

In his Second Amended Complaint, Mr. Widi alleged that law enforcement executed a search warrant on his residence on November 28, 2008, *Second Am. Compl.* ¶ 57, and that his company van was located in the private driveway of his apartment. *Id.* ¶ 84-89. In Count Three, Mr. Widi alleged that while the search of his apartment was taking place, law enforcement performed a sniff search of the van and that it came back negative. *Id.* ¶ 77-78. Mr. Widi also alleged in Count Three that this sniff search was illegal because it was not authorized by the search warrant. *Id.* ¶ 80 (quoting *United States v. Widi*, 686 F. Supp. 2nd 107, 114 (D. Me. 2010)). Then in Count Five, he claimed that after law enforcement illegally seized his van, they conducted a second sniff search on November 30, 2008, which came back positive this time. *Id.* ¶ 94. Mr. Widi asserted that this second sniff search was an unconstitutional violation of his Fourth, Fifth, and Fourteenth Amendment rights. *Id.* ¶ 97.

In its Screening Order, the Court dismissed Counts Three and Four on the ground that law enforcement is allowed to use a drug sniffing dog to search cars and luggage without violating the Fourth Amendment. *Screening Order* at 36-37. Turning first to Mr. Widi's *Florida v. Jardines* objection, the Court views that case as markedly different from what happened here. In *Jardines*, law enforcement brought a drug sniffing dog onto a person's porch without a warrant, and once the dog alerted, the police obtained a warrant and searched the home. *Jardines*, 133 S. Ct. at 1413. But here, the police had a warrant to enter onto Mr. Widi's curtilage and to search

his home.[4]   Unlike *Jardines*, the police in this case had a right to be where they were when they brought the drug sniffing dog to the van parked in his driveway.   The search warrant makes this part of the search more like a legally-authorized traffic stop than a privacy-violating porch snooping.   *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005).   The Court dismisses Count Three.

As regards the November 30 sniffing, Mr. Widi's complaint is not really with the sniffing but with the seizure.[5]   What the *Jardines* Court says is that it matters whether the police had a right to be where they were when the dog sniffed.   If the van seizure is illegal, then the police would not have had a right to have a dog sniff it— they would in effect be on the Jardines' porch.   But if the van seizure is legal, the police could use the sniffing dog—they would be in effect on the street doing a traffic stop of Mr. Caballes.   In short, the answer to the Count Five depends on Mr. Widi's challenge to the dismissal of Count Four: the van seizure count.

### E.   Count Four and Six: The Van Seizure

In Counts Four and Six of his Second Amended Complaint, Mr. Widi claims that a company called Widi Tile Company, LLC was the owner of a van parked in the apartment of his driveway on November 28, 2008 and that the police unlawfully

---

[4]   Law enforcement had a search warrant in this case.   However, as the van was apparently parked in an area without any "indicia of privacy, such as an enclosure, barrier, or lack of visibility from the street," the First Circuit has held there is no "expectation of privacy in a driveway that is exposed to the public."   *United States v. Roccio*, 981 F.2d 587, 591 (1st Cir. 1992).   Indeed, "[i]f the relevant part of the driveway is freely exposed to public view, it does not fall within the curtilage."   *United States v. Brown*, 510 F.3d 57, 65 (1st Cir. 2007) (citations omitted).

[5]   *Rodriquez* is not determinative.   If law enforcement had a right to seize the van, they had a right to continue to seize it, at least for long enough to allow the dog sniff.   If they did not have the right to seize the van, they had no right to retain it for any period of time, including a period long enough to allow the dog sniff.

seized his "company van." *Second Am. Compl.* ¶¶ 83-91, 99-104.  One of the listed plaintiffs in Mr. Widi's Second Amended Complaint is Widi Tile Company, LLC.  *Id.* ¶ 2.  The Second Amended Complaint states that "at all times relevant to this Complaint," Widi Tile Company, LLC—of which Mr. Widi is "an owner and operator"—"is mainly engaged in the business of ceramic tile and marble installations." *Id.*  Noting that Mr. Widi alleged that Widi Tile Company was the owner of the seized van, the Court observed that he was attempting to bring constitutional claims on behalf of his company, and as he is not an attorney, he may not represent a corporation, including a limited liability company. *Screening Order* at 37-39.

In his motion for reconsideration, Mr. Widi attempts to change the allegations in his Second Amended Complaint, stating that Widi Tile Company, LLC did not really own the van, but he did personally. *Pl.'s Mot. for Recons.* at 9.  Furthermore, he now claims that he is the owner of Widi Tile Company, LLC and that he also did business as a sole proprietor. *Id.*  In general, he now maintains that Widi Tile Company, LLC did commercial work and that he did residential work under his sole proprietorship. *Id.*

The problem with his motion for reconsideration is that it is flatly contrary to the allegations in his Second Amended Complaint regarding the "company van": "Widi Tile Company, LLC at all times relevant to this Complaint, is mainly engaged in the business of ceramic tile and marble installations.  Mr. Widi is an owner and operator Widi Tile Company." *Second Am. Compl.* ¶ 2.  The Second Amended

Complaint alleges that Mr. Widi is "an owner and operator," *id.*, whereas his motion for reconsideration claims that he is also a sole proprietor and that "[t]he van in the complaint was owned by Mr. Widi and was used by him to complete contracts for the sole proprietorship." *Pl.'s Mot. for Recons.* at 9.

Next, the Second Amended Complaint repeatedly describes the van as being the "company van." *Id.* ¶ 25 ("Curran submitted an application and affidavit to the York County District Court to obtain a search warrant <u>for Mr. Widi's tile company van</u> . . . "); ¶ 77 ("During the briefing the ATF, MDEA, EPD, and MSP defendants made plans and agreed to have the MSP defendants enter Mr. Widi's private property during the execution of the search warrant to conduct <u>a K-9 sniff on Mr. Widi's tile company van</u>"); ¶ 78 ("During the search Curran had the MSP defendants conduct a sniff of <u>Mr. Widi's tile company van</u> at McNeil's instruction, which came back negative"); ¶ 79 ("The federal search warrant obtained by McNeil did not authorize the search of <u>Mr. Widi's tile company van</u>"); ¶ 84 ("During the briefing the ATF, MDEA, EPD, and MSP defendants made plans and agreed to seize <u>Mr. Widi's tile company van</u>, even though it was not listed in the warrant"); ¶ 85 ("At the Eliot Police Station, Cady attempted to get Mr. Widi's consent to allow the ATF and members of the search team to search <u>his tile company van</u>"); ¶ 91 ("Mr. Widi has also suffered injuries through <u>the seizure of his tile company van</u>"); ¶ 93 ("At the briefing the ATF, MDEA, EPD, and MSP defendants planned and agreed to <u>unlawfully seize and search Mr. Widi's tile company van</u> that was not included in the warrant"); ¶ 94 ("After the seizure of <u>Mr. Widi's tile company van,</u> . . . ); ¶ 95 ("The search of <u>Mr. Widi's tile</u>

company van . . . "); ¶ 100 ("At the briefing the ATF, MDEA, EPD, and MSP defendants planned and agreed to unlawfully search Mr. Widi's tile company van . . . "). To be fair to Mr. Widi, scattered within the Second Amended Complaint, he alleges a few times that the van is his. *Id.* ¶ 33 ("Carr conducted a K-9 sniff of Mr. Widi's van during the search and again on November 30, 2008, at McNeil and Curran's [behest]"); ¶ 87 ("The search warrant did not authorize the seizure of Mr. Widi's van").[6] It is also true that he demanded damages for himself for the alleged violations of Counts Four and Five. *Id.* at 64.

At this stage in the litigation, the Court is constrained. The First Circuit has written that "[o]rdinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded." *Brown*, 511 Fed. Appx. at 5 (citations omitted). Still, the Court is deeply skeptical. The Court previously addressed a case in which Mr. Widi's factual allegations were so far from the truth as revealed in a videotape that the Court dismissed his lawsuit. *Widi v. U.S. DOJ*, No. 1:11-cv-00113-JAW, 2013 U.S. Dist. LEXIS 62269 (D. Me. May 1, 2013), *aff'd* No. 13-2112 (1st Cir. Oct. 20, 2015). Now, more than three years from the filing of his Complaint and right after this Court dismissed the Counts involving his van because the company, not he, owned the van, Mr. Widi has just realized that he, not the company, owned the van all along. The Court is very concerned that Mr. Widi is changing the facts to suit the law.

---

[6]      For all of the quoted passages in this paragraph, the Court has supplied the emphases where they appear.

Despite its significant reservations about the timing and content of Mr. Widi's representations, the Court will amend its earlier dismissal of Counts Four and Five subject to the following:

(1) No later than thirty days after the date of this Order, Mr. Widi must file a motion to amend his Second Amended Complaint to alter the current allegations that Widi Tile Company, LLC was the owner of the van that law enforcement searched and seized in November 2008 and to assert instead that he was the actual owner of the van.

(2) Before the Court will grant the motion to amend the Second Amended Complaint, Mr. Widi must produce documentary proof that he owned the van that was the subject of the search and seizure as of November 2008. That proof must consist of copies of the certificate of title to the van, the state of Maine registration of the van, and the insurance certificate for the van—all confirming ownership in his name, not the name of his company.

(3) In support of the motion, Mr. Widi must submit an affidavit, declaring the contents of the motion are true and that the documentary attachments are accurate.

If Mr. Widi produces satisfactory proof of the true ownership of the van, the Court will grant the motion to amend the Second Amended Complaint and will vacate the portion of the Screening Order that dismissed Counts Four and Five of the Second Amended Complaint.   If he fails to satisfy the Court that the statements in his

motion for reconsideration concerning the ownership of the van are true, the Court will deny the motion and will consider whether to impose sanctions against Mr. Widi. Finally, for Count Six, which contests law enforcement's omission of the negative sniff search of the van in the affidavit submitted in support of the search warrant to the state court, the Court ruled in its Screening Order that Mr. Widi asserted constitutional claims on behalf of his company and thereby dismissed the Count. The Court will amend its earlier dismissal of Count Six subject to the same conditions it has placed on Counts Four and Five.[7]

### F.    Count VII: The Grey Trailer

The Second Amended Complaint contained a Count Seven, which alleged that law enforcement searched his grey trailer. *Second Am. Compl.* ¶¶ 105-09. He says that the grey trailer was not listed on the search warrant and that Judge Singal determined that the search of the grey trailer was unauthorized by the warrant. *Id.* ¶¶ 106-07. The Second Amended Complaint names all twenty-four law enforcement officers as participating in the illegal search. *Id.* ¶ 108. In its Screening Order, the Court found that these allegations were so vague that they did not constitute a valid claim, noting among other things that the Court would not know who among the twenty-four law officer defendants actually searched the grey trailer and who should be served with the lawsuit. *Screening Order* at 39.

---

[7]    To be clear, the Court has not reached the question of whether the contents of an affidavit in support of a search warrant provide the basis for a § 1983 lawsuit. The Court's disposition at this point rests solely on whether Mr. Widi or his corporate business owned the van.

Mr. Widi urges reconsideration, arguing that there are sufficient facts to allow the claim to go forward.  First, he claims that because Count Seven incorporated prior allegations, the Court should have inferred that the search took place on November 28, 2008.  *Pl.'s Mot. for Recons.* at 10.  Mr. Widi acknowledged that the Court's concern about who performed the search "has some substance," but he professes ignorance as to who performed the search.  *Id.* at 11.

First, Mr. Widi's broad assertions about Judge Singal's February 23, 2010 Order are inaccurate.  Judge Singal's opinion never mentioned a grey trailer; the only vehicle referenced in the Order is the company van.  *See Widi*, 686 F. Supp. 2d at 107-115.  Furthermore, although Judge Singal stated that the search warrant did not authorize the search of any vehicles, the Court is unclear whether a trailer is a vehicle within the meaning of Judge Singal's Order.  *Id.* at 114.

Second, the Court is not going to authorize suit against twenty-four officers without some reason to believe that they were individually involved in the search that Mr. Widi claims was illegal.  The filing of a lawsuit against a defendant is not a frivolous act.  Mr. Widi is attempting to sue each of these officers in their individual and official capacities, and once served, the officers will be required to obtain counsel, to act to protect their own personal assets, to meet with defense counsel, and to prepare a defense.  The filing of a lawsuit and the service of a lawsuit affect police officers' reputations and divert the officers from their duties of public service.  This is one of the reasons Congress enacted 28 U.S.C. § 1915A; namely, to prevent scattershot cases.

It has now been more than three years since Mr. Widi initiated suit. It is past time that he identify the people he is suing and why he is suing them. As with Counts Four, Five, and Six, the Court will allow Mr. Widi thirty days to file a motion to amend Count Seven to specify which officers he claims searched the so-called grey trailer and to provide documentation substantiating his allegations. If he fails to do so within thirty days of the date of this Order, the Court will deny his motion for reconsideration on Count Seven.

### G.   Counts Eight and Nine: Illegal Seizure of Neil Vaccaro's Motorcycle

In its Screening Order, the Court dismissed Counts Eight and Nine because they spun such a strange and implausible tale that the Court determined they should not proceed. *Screening Order* at 39 (noting the claims were "too fanciful to generate a federal cause of action"). Mr. Widi objects, reasserting that law enforcement took his collateral in order to "provide a quid pro quo payment to Vaccaro for his service as a confidential informant" and indicating his claim that he held Neil Vaccaro's motorcycle as collateral for a $5,000 loan to Mr. Vaccaro is not on its face implausible. *Pl.'s Mot. for Recons.* at 12.

Count Eight alleged that law enforcement unlawfully took a motorcycle located on Mr. Widi's property that was not included in the search warrant and that Mr. Widi claimed he was holding as collateral for a $5,000 loan to a man named Neil B. Vaccaro. *Second Am. Complaint* ¶¶ 110-19.

When combined with Count Eight, Count Nine presents a strange conspiracy allegation. Count Nine alleged that Mr. Vaccaro was acting as a confidential

19

informant in the case against Mr. Widi and that ATF Special Agent McNeil agreed to "give him the motorcycle with the condition that Mr. Vacarro say that the motorcycle was stolen" and on the further condition that Mr. Vaccaro would say "Mr. Widi stole the motorcycle." *Id.* ¶ 121.  To obtain the motorcycle, Count Nine alleged that Chief Theodor Short instructed Eliot Police Officers Robert Brown and Matthew Raymond to return to Mr. Widi's property, enter his grey trailer, and observe the motorcycle being loaded onto a flatbed.  *Id.* ¶ 123.  Count Nine also alleged that ATF Agent McNeil "had Short and Curran seize the motorcycle because he claims he was told by Vaccaro that Mr. Widi unlawfully possessed it." *Id.* ¶ 124.

Count Nine then claimed that on December 4, 2008, Mr. Vaccaro contacted Officer Andre Wassouf of the Portsmouth New Hampshire Police Department and that Mr. Vaccaro told Officer Wassouf that "he needed a report stating Mr. Widi had stolen his motorcycle so that he could gain possession of the motorcycle." *Id.* ¶ 126. Count Nine also claimed that Officer Wassouf "agreed to generate the false report" and that Lieutenant Dante Puopolo of the Portsmouth Police Department "signed off on the report as a supervisor knowing that it was false." *Id.*  Count Nine alleged that during the search of Mr. Widi's tile company van, Detective Kevin Curran of the Eliot Police Department gave Mr. Vaccaro the motorcycle on instructions from ATF Special Agent Paul McNeil and Eliot Chief of Police Theodore Short.  *Id.* ¶ 128.

To knit this all together, Mr. Widi is alleging that an ATF Agent in Maine conspired with a chief of police, a police detective, and two police officers for the town of Eliot, Maine as well as a police officer and a police lieutenant for the city of

Portsmouth, New Hampshire to steal a motorcycle from Mr. Widi and to give it to a man named Neil Vaccaro, who agreed to falsely testify that Mr. Widi had stolen his motorcycle in exchange for the stolen motorcycle. In effect, Mr. Widi is contending that eight people, including seven police officers from three different agencies or departments, engaged in a fairly elaborate conspiracy to frame him for a crime he did not commit. All of this is on Mr. Widi's say-so alone. The Court views these allegations as the type of frivolous and malicious claims that Congress had in mind when it enacted § 1915A. *See Widi v. DOJ*, 2013 U.S. Dist. LEXIS 62269, at *13-15.

As the Court is allowing Mr. Widi to supply information justifying other Counts, the Court will do the same for Counts Eight and Nine, again within thirty days of the date of this Order. If Mr. Widi supplies documentary information supporting his allegations, the Court will review his filings and reserve the right to reinstate Counts Eight and Nine. However, based on its review of the allegations in Counts Eight and Nine, the Court concludes that federal court is no place to spin out wholly unsubstantiated conspiracy theories. If Mr. Widi fails to respond within thirty days, the Court will deny his motion for reconsideration on Counts Eight and Nine.

### H.    Count Ten: Defamation

The Court has reviewed Mr. Widi's objections to its dismissal of Count Ten, the defamation and libel count, and concludes that no further comment is necessary as the Court adequately addressed his objections in its February 11, 2015 Order. *See Screening Order* at 40-41.

### I.    Count Thirteen: Unlawful Probation Search

Mr. Widi again challenges the Court's earlier conclusions about the legality of whatever search Maine Probation Officers Denis R. Clark and Michael Lyon carried out in November 2005. On April 21, 2014, the Court issued a twenty-page order granting Probation Officers Clark and Lyons' motion for summary judgment. *Order Granting the Renewed Mot. for Summ. J. by Defs. Clark and Lyon* (ECF No. 236). On May 12, 2014, Mr. Widi filed a motion for reconsideration; on July 25, 2014, he filed a supplemental motion for reconsideration and a request for a discovery order; and on August 14, 2014, Mr. Widi filed a second supplemental motion for reconsideration. *Pl.'s Mot. for Recons. of Order Granting Summ. J. to Defs. Clark and Lyon* (ECF No. 242); *Suppl. Mot. for Recons. under Fed. R. Civ. P. 59(e) and 60(b) with Accompanying Req. for Disc. Order* (ECF No. 246); *Second Suppl. Mot. for Recons. under Fed. R. Civ. P. 59(e) and 60(b)* (ECF No. 248). On October 7, 2014, the Court issued a twenty-eight page order, denying his motions for reconsideration. *Order Denying Pl.'s Mots. for Recons.* (ECF No. 257).

When Mr. Widi filed his Second Amended Complaint on November 18, 2013, the Court had not yet issued its orders on the viability of his claims against Probation Officers Clark and Lyon. However, on May 4, 2015, Mr. Widi filed yet another motion for reconsideration as to Count Thirteen. *Pl.'s Mot. for Recons.* at 16-18. The time to challenge the Court's rulings on Count Thirteen has long since passed and the pending motion for reconsideration is not an appropriate vehicle for the Court to revisit its April 21, 2014 Order. The Court thoroughly examined the parties' arguments concerning Mr. Widi's claims against these officers and granted summary

22

judgment in their favor.  Mr. Widi has more than had his say about Count Thirteen, and the Court has said all it is going to say about that Count as it applies to Probation Officers Clark and Lyon.

### J.      Count Seventeen: Right to Financial Privacy Act

In his motion for reconsideration, Mr. Widi correctly points out that the Court did not address his claim against the Office of the United States Attorney (USAO) for the District of Maine.  *Pl.'s Mot. for Recons.* at 18-19.  In Count Seventeen, Mr. Widi says that because the USAO subpoenaed his financial records from TD Bank and never presented them to the grand jury, he is entitled to sue the USAO for invasion of his financial privacy.  *Second Am. Compl.* ¶¶ 175-85.  The Court concludes that Mr. Widi's claims against the USAO must fail because prosecutors are absolutely immune from civil liability when performing activities "intimately associated with the judicial phase of the criminal process."  *Butz v. Economou*, 438 U.S. 478, 510 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *Goldstein v. Galvin*, 719 F.3d 16, 24 (1st Cir. 2013) (quoting *Bettencourt v. Bd. of Registration in Med. of Commonwealth of Mass.*, 904 F.2d 772, 782 (1st Cir. 1990)).  Here, acknowledging that he was the subject of a grand jury investigation, Mr. Widi has alleged that the USAO acted in bad faith in the way it procured his financial records and in failing to present those records to the grand jury.  *Second Am. Compl.* ¶¶ 176-85.  The actions of the USAO fit squarely within activities intimately associated with the judicial phase of the criminal process, and the USAO is absolutely immune from civil suit.

## II.      MOTION FOR RELIEF UNDER FEDERAL RULE OF CIVIL PROCEDURE 60

On August 6, 2015, Mr. Widi filed a motion for relief under Rule 60 of the Federal Rules of Civil Procedure, once again challenging the Court's dispositive rulings in favor of Probation Officers Clark and Lyon. *Mot. for Relief under Fed. R. Civ. P. 60* (ECF No. 311). Probation Officers Clark and Lyon responded on August 14, 2015. *Opp'n to Mot. for Relief under F. R. Civ. P. Rule 60* (ECF NO. 314) (*Defs.' Opp'n*). Mr. Widi replied on August 31, 2015. *Reply to Defs.' Opp'n to Mot. for Relief Under Fed. R. Civ. P. 60* (ECF No. 319).

The Court agrees with the Defendants that Rule 60 does not provide a vehicle for challenging the earlier summary judgment order. *See Greene v. Unum Mut. Ins. Co.*, 764 F.2d 19, 22 (1st Cir. 1985); *Defs.' Opp'n* at 1. Instead, Mr. Widi's motion is properly seen as a motion for reconsideration. *Defs.' Opp'n* at 1-2. As such, this is Mr. Widi's fourth motion for reconsideration of the Court's summary judgment order in favor of Probation Officers Clark and Lyon. Under First Circuit precedent, a court should consider a motion for reconsideration under the "interest-of-justice" test. *United States v. Siciliano*, 578 F.3d 61, 72 (1st Cir. 2009).

Here the interest of justice weighs strongly in favor of temporary finality. The Court has done its best and has now written two exhaustive orders totaling forty-eight pages to explain its decision. *See Order Granting the Renewed Mot. for Summ. J. by Defs. Clark and Lyon* (ECF No. 236); *Order Denying Pl.'s Mots. for Recons.* (ECF No. 257). It is plain that Mr. Widi disagrees with the Court's rulings and believes them to be in error. Certainly this Court is not infallible, and Mr. Widi may be correct that the Court of Appeals for the First Circuit will reverse the Court's rulings. Time

will tell.  But more than eighteen months after the Court's summary judgment ruling, it is time for Mr. Widi to pursue those claims in this Court that the Court has found viable and to save his arguments regarding the claims this Court has found non-viable for the First Circuit.  If the First Circuit agrees with Mr. Widi, this Court will accept its ruling and proceed accordingly.  For now, the Court's rulings stand.

## III.   CONCLUSION

The Court DENIES Plaintiff's Motion for Reconsideration (ECF No. 292) with the following exceptions:

(1) If Mr. Widi elects to do so, he may file a motion to amend his Second Amended Complaint within thirty days from the date of this Order;

(2) In the motion, he may move to amend Count Two as against Officer Moya only; Counts Four, Five, and Six; Count Seven; and Counts Eight and Nine;

(3) In making this motion, Mr. Widi must comply with the requirements that the Court has imposed in this Order and failure to do so may result in dismissal of all or part of the motion.

The Court DENIES Plaintiff's Motion for Relief under Fed. R. Civ. P. 60 (ECF No. 311).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR
UNITED STATES DISTRICT JUDGE

Dated this 8th day of December, 2015

25