UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DAVID J. WIDI, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:12-cv-00188-JAW |
| | ) | |
| PAUL MCNEIL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT ORDER ON COUNT XVIII

In this long-delayed Freedom of Information Act (FOIA) claim, various government agency defendants move for summary judgment based on their submission of a *Vaughn* index[1] that explained the FOIA exemptions that form the basis for the withholding of requested records. The Court agrees with the Government on most, but not all of its explanations. For those documents that do not meet the asserted exemption, the Court has given the Government thirty days either to produce the document or supplement its explanation.

## I.  PROCEDURAL POSTURE

This case's procedural history is tortuous. Mr. Widi filed his original Complaint on June 13, 2012, *Compl.* (ECF No. 1), and an Amended Complaint on

---

[1]     The term *Vaughn* index arose from *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), in which the Court of Appeals for the District of Columbia required an index to determine the validity of the agency's withholding of documents. As the First Circuit explained, a *Vaughn* index is necessary in FOIA litigation as "the only party opposing disclosure will have access to all the facts." *N.H. Right to Life v. United States HHS*, 778 F.3d 43 (1st Cir. 2015) (quoting *Church of Scientology Int'l v. United States Dep't of Justice*, 30 F.3d 224, 228 (1st Cir. 1994)).

August 2, 2012. *Am. Compl.* (ECF No. 15) (*Am. Compl.*). In Count XIV of the Amended Complaint, Mr. Widi alleged that the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), the Executive Office of the United States Attorneys (EOUSA), and the Office of Information Policy (OIP) improperly withheld statements made by particular persons with regard to Mr. Widi's criminal trial, *United States v. Widi*, 2:09-cr-00009-GZS, in violation of the Freedom of Information Act (FOIA) and the Privacy Act (PA). *Am. Compl.* at 19-21. On September 30, 2013, the Court denied the Defendants' motion to dismiss Count XIV and both parties' cross-motions for summary judgment as to Count XIV. *Am. Order Denying Defs.' Mot. to Dismiss Count XIV, Denying Defs.' Mot. for Summ. J. as to Count XIV, and Denying Pl.'s Cross-Mot. for Summ. J. as to Count XIV* (ECF No. 173) (*Sept. 30, 2013 Order*).

On December 2, 2013, the Defendants filed an Answer to Count XIV. *Answer to Am. Compl.* (ECF No. 193) (*Answer*). When the Court granted leave to amend the Amended Complaint on February 11, 2015, the FOIA/PA claim transferred from Count XIV to Count XVIII. *Screening Order, Order Vacating in Part Earlier Order Denying Mot. for Leave to File Second Am. Compl. as to Served Defs., Order Granting in Part Mot. to File Second Am. Compl., Order Striking Portions of the Second Am. Compl., and Order Denying Mot. to Stay* (ECF No. 270).

On June 29, 2015, ATF, EOUSA, and OIP—collectively, the Defendants here—again moved for summary judgment on Count XVIII with a supporting statement of material facts. *Mot. for Summ. J. on Count XVIII* (ECF No. 302) (*Defs.' Mot.*); *Statement of Undisputed Material Facts* (ECF No. 305) (DSMF). Mr. Widi opposed

2

the Defendants' motion on December 4, 2015, *Obj. to Mot. for Summ. J. on Count XVIII* (ECF No. 323) (*Pl.'s Opp'n*), and he filed a reply to the Defendants' statement of material facts that same day. *Reply Statement of Material Facts* (ECF No. 324) (PRDSMF). On February 5, 2016, the Defendants filed a reply to Mr. Widi's opposition. *Reply to Pl.'s Opp'n to Defs.' Mot. for Summ. J. on Count XVIII* (ECF No. 342) (*Defs.' Reply*). That same day, they filed a statement of additional material facts supported by an affidavit. *Reply Statement of Material Facts* (ECF No. 343) (DRSMF); *Third Decl. of Stephanie M. Boucher, Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and Explosives* (ECF No. 344) (*Boucher Third Decl.*).

On March 4, 2016, Mr. Widi moved to either strike the Defendants' motion for summary judgment, their statement of undisputed material facts, his own objection to motion for summary judgment, and the Defendants' reply to his opposition, or for leave to file a surreply. *Mot. to Strike or for Leave to File Sur-Reply* (ECF No. 347). On March 7, 2016, the Defendants responded without objection to Mr. Widi's request for leave to file a surreply, and the Court sua sponte allowed the Defendant's reply statement of material facts and granted Mr. Widi leave to file a surreply. *Defs.' Resp. to Pl.'s Mot. to Strike or for Leave to File Sur-Reply* (ECF No. 348); *Order Denying Mot. to Strike and Granting Mot. for Leave to File Surreply* at 1-6 (ECF No. 349). On April 7, 2016, Mr. Widi moved to extend time to file his surreply, *Nunc Pro Tunc Mot. for Enlargements of Time* (ECF No. 352), which the Court granted that same day, *Order* (ECF No. 353), and on April 18, 2016, Mr. Widi filed his surreply. *Sur-Reply to Mot. for Summ. J. in Regard to Count XVIII* (ECF No. 355) (*Pl.'s Surreply*).

## II.   SUMMARY JUDGMENT FACTS[2]

### A.   EOUSA's Identification of Responsive Records, Disclosure Determinations, and Document Productions to Mr. Widi

On September 27, 2013, this Court denied dispositive motions previously filed by EOUSA and ATF with respect to Plaintiff's original FOIA and PA claims.[3]  DSMF ¶ 1; PRDSMF ¶ 1.   After the Court denied Defendants' dispositive motions, Defendants filed their Answer.  DSMF ¶ 2; PRDSMF ¶ 2.  In their Answer, ATF and EOUSA indicated that they were processing Plaintiff's FOIA/PA requests and were preparing substantive responses, irrespective of any issues with mailing or the payment of search fees.  *Id.*  In their Answer, Defendants also noted that EOUSA had further referred certain documents responsive to Plaintiff's requests to ATF, the

---

[2]    In keeping with "the conventional summary judgment praxis," the Court recounts the facts in the light most hospitable to nonmovant's case theories consistent with record support. *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002).

[3]    In full, the Defendants proposed this statement:

> On September 27, 2013, this Court denied dispositive motions previously filed by EOUSA and ATF with respect to Plaintiff's original Freedom of Information Act ("FOIA") and Privacy Act ("PA") claims.  (ECF No. 172).  Those motions had been predicated on various technical defenses, such as Plaintiff's failure to pay search fees to EOUSA, and did not address the substance of Plaintiff's original FOIA/PA requests. (ECF No. 44).

DSMF ¶ 1.  Mr. Widi interposed a denial:

> Denied.  The Court denied the dispositive motions filed by the ATF and EOUSA, but the review was not limited to just technical defenses as the Court concluded that the defendants were "at least partially incorrect that Mr. Widi's request is cognizable exclusively under FOIA and not under PA."  (ECF No. 173, pg. 30).

PRDSMF ¶ 1.

Contravening Local Rule 56(b)'s prohibition on footnotes in the statement of material facts, D ME. LOC. R. 56(b), the Defendants included a footnote conceding that this proposed fact was "not necessarily 'material' for the purposes of the instant motion" but that it may "provide helpful background and context for those factual averments that are material to the issues at hand."  DSMF ¶ 1 n.1.  Because Mr. Widi denies only the second sentence of the Defendant's proposed statement, however, the Court admits the first sentence for context.

United States Marshals Service ("USMS"), and the Federal Bureau of Prisons ("BOP"), for processing and potential production. *Id.* Defendants confirmed that those agencies were substantively processing the documents referred by EOUSA, and attached copies of the relevant correspondence from EOUSA, ATF, BOP, and USMS to Plaintiff as exhibits to their Answer. *Id.*

Upon receipt of Plaintiff's FOIA/PA request, EOUSA undertook a search to determine the location of any and all files related to Plaintiff.[4] DSMF ¶ 3; PRDSMF ¶ 3. EOUSA determined that all of the records related to Plaintiff were located in the U.S. Attorney's Office for the District of Maine ("USAO"), where Plaintiff had been prosecuted for possession of firearms and ammunition by a felon and manufacturing marijuana. *Id.* The USAO conducted a systematic search for records using the

---

[4]        Mr. Widi interposed a denial:

Denied.  Supporting declaration not based on personal knowledge or action.

PRDSMF ¶ 3.

While "[t]he party offering the testimony has the burden of laying a foundational showing that the witness had an adequate opportunity to observe, actually observed, and presently recalls the observation," it is a "minimal" burden: if "reasonable persons could differ as to whether the witness had an adequate opportunity to observe, the witness's testimony is admissible."  1 MCCORMICK ON EVIDENCE § 10 (7th ed. rev. 2013).

In support of their statement, the Defendants cite the Declaration of John F. Boseker, an Attorney Advisor at EOUSA, who has filed two previous declarations in this matter. DSMF Attach. 3 *Third Decl. of John F. Boseker* ¶¶ 9-10 (ECF No. 305) (*Boseker Decl.*); *see also Reply to Pl.'s Opp'n to the Mot. to Dismiss and for Summ. J.* Attach. 2 *Second Decl. of John F. Boseker* (ECF No. 83); *Statement of Undisputed Material Facts* Attach. 2 *Decl. of John F. Boseker* (ECF No. 45).  Based on Mr. Boseker's position and apparent  familiarity with the matter, the Court concludes Mr. Boseker has sufficient personal knowledge regarding the EOUSA's handling of Mr. Widi's FOIA and PA request.  The Defendants meet their minimal burden.

There is a larger problem with Mr. Widi's denial, which he repeats verbatim twenty-nine times in his reply.  PRDSMF ¶ 3-4, 7-11, 16-20, 22-24, 30-33, 35-44.  All thirty denials disregard a basic stricture of summary judgment: that the nonmoving party "shall support each denial or qualification by a record citation . . . ."  D. ME. LOC. R. 56 (c).  Instead of providing citations of his own, as required, Mr. Widi uses the same language to deny for lack of foundation more than two-thirds of the Defendants' statements.  The Court will not individually treat each stitch in this blanket denial; it admits all thirty statements over Mr. Widi's denials.

computer case tracking systems TALON and LIONS, as well as other databases and card file indexes, Plaintiff's name, the USAO file jacket number, and the district court case number, to determine all possible locations of responsive files.   DSMF ¶ 4; PRDSMF ¶ 4.  The FOIA contact at the USAO also sent out an email to the entire office regarding whether they had any files in the office regarding Plaintiff.   *Id.*  The only records located were contained in Plaintiff's criminal case file.   *Id.*  Although Plaintiff requested records under both FOIA and the PA, EOUSA determined that the responsive records were not disclosable under the PA.[5]  DSMF ¶ 5; PRDSMF ¶ 5.

---

[5]      In full, the Defendants proposed this statement:

> Although Plaintiff requested records under both FOIA and the Privacy Act, EOUSA determined that the responsive records were not disclosable under the PA because they constituted records maintained by an agency or component performing as its principal function activity pertaining to the enforcement of criminal laws, and were therefore exempt under 5 U.S.C. § 552a(j)(2).  Third Boseker Decl., ¶ 11.  EOUSA did, however, proceed to review the records under the provisions of FOIA.  *Id.*

DSMF ¶ 5.
    In addition to Mr. Widi's standard denial based on the supposed lack of "personal knowledge or action," he wrote:

> Moreover, this Court already concluded that the defendants were "at least partially incorrect that Mr. Widi's request is cognizable exclusively under FOIA and not under PA."  (ECF No. 173, pg. 30).

PRDSMF ¶ 5.  Mr. Widi is correct that the Court reached that conclusion in its earlier order denying cross-motions for summary judgment dated September 30, 2013.  *Sept. 30, 2013 Order* at 30 (ECF No. 173).
    In support of their statement, the Defendants cite Mr. Boseker's declaration:

> EOUSA processes all requests made by individuals for records pertaining to themselves under both the FOIA and the PA in order to provide the requester with the maximum disclosure authorized by the Acts.  The Criminal Case Files (Justice/USA-007) are part of the DOJ Privacy Act System of Records.  The Attorney General has promulgated rules exempting these records from the PA's access provisions as authorized by 5 U.S.C. § 552a(j)(2), which appears at 28 CFR §16.81.  Subsection (j)(2) exempts from mandatory disclosure all records maintained by an agency or component performing as its principal function any activity pertaining to the enforcement of criminal laws.  As the entire Widi case file pertained to a criminal prosecution, it was necessarily compiled for law enforcement purposes.  Therefore, EOUSA determined that the responsive records withheld were not disclosable under the PA.  Accordingly,

EOUSA did, however, proceed to review the records under the provisions of FOIA. *Id.*

By letter dated November 20, 2013, EOUSA released twenty-seven (27) pages in full and fourteen (14) pages in part to Plaintiff.[6]  DSMF ¶ 6; PRDSMF ¶ 6.  With respect to the documents withheld in whole or in part, EOUSA asserted that the following FOIA exemptions applied to the records: 5 U.S.C. § 552(b)(3) ("Exemption 3") (grand jury materials); 5 U.S.C. § 552(b)(5) ("Exemption 5") (privileged attorney

---

the records were then reviewed under the provisions of the FOIA by virtue of the dictates of PA subdivision (t).

*Boseker Decl.* ¶ 11.  So, despite the Court's September 30, 2013 ruling on this point, the Defendants held to their position that Mr. Widi's request was not cognizable under the PA and, once again, did not consider his request under that statute.  Mr. Widi asks the Court to reject the Defendants' proposed statement of fact on the ground that it conflicts with the Court's earlier order.

As the Court sees it, what Mr. Widi objects to is the Defendants' attempt to incorporate legal claims into their statement of facts.  He denies this particular legal claim because he thinks the Court has already found it to be erroneous.  It is within the Court's discretion, however, to qualify the statement so as to excise the legal basis—i.e., the EOUSA's interpretation of 5 U.S.C § 552a(j)(2))—from the statement of fact: i.e., that the EOUSA did not review Mr. Widi's request under the PA.  The Court proceeds in this way, and it will address the arguments over the legal validity of the EOUSA's refusal to consider Mr. Widi's claim under the PA in the discussion.  The Court grants in part and denies in part Mr. Widi's denial.

[6]      Besides his "not based in personal knowledge or action" denial, Mr. Widi writes:

The letter and records were sent to FCI Otisville and Mr. Widi had been transferred to another institution so the records were never received.  The Court already concluded that Mr. Widi does not need to submit another request for the so called "public records" as such withholding is not justified under the law.  (ECF No. 173, pg. 26-27).

PRDSMF ¶ 6.

Mr. Widi erred in his citation, as the cited portion of the Court's September 30, 2013 order addresses the contents of a letter the EOUSA sent to Mr. Widi on November 25, 2011; in particular, the Court concluded the letter was ambiguous as to whether the EOUSA assessed a fee on Mr. Widi. *Sept. 30, 2013 Order* at 26-27.

Although the Court has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts," ME. LOC. R. 56(f), in this instance the Defendants admitted in their present motion to the grounds for Mr. Widi's denial. *Defs.' Mot.* at 5 n.8 ("The government re-sent EOUSA's response to Plaintiff on February 20, 2015, after it became aware that Plaintiff had not received EOUSA's November 20, 2013 correspondence").  Rather than outright deny this statement, the Court qualifies the statement to include the fact that Mr. Widi did not receive the November 20, 2013 disclosure until fifteen months later.

work product/deliberative process); 5 U.S.C. §§ 552(b)(6) ("Exemption 6") and (b)(7)(C) ("Exemption 7(C)") (personal privacy protections); 5 U.S.C. § 552(b)(7)(D) ("Exemption 7(D)") (confidentiality); and 5 U.S.C. § 552(b)(7)(F) ("Exemption 7(F)") (threat of harm). *Id.* Finally, in its November 20, 2013 letter, EOUSA also advised Plaintiff that a volume of public records (estimated at 1600 pages) was available upon request at an estimated cost of $150.00. *Id.* Mr. Widi did not receive the November 20, 2013 letter until EOUSA re-sent it on February 20, 2015. *Id.* By letter dated May 14, 2015, EOUSA released an additional twenty-five (25) pages to Plaintiff, with identified redactions. DSMF ¶ 7; PRDSMF ¶ 7.

Thereafter, EOUSA prepared an index of all EOUSA documents withheld in whole or in part, which detailed the specific FOIA exemptions applied to justify non-disclosure of records responsive to Plaintiff's FOIA requests ("EOUSA Index"). DSMF ¶ 8; PRDSMF ¶ 8.

With respect to documents released in part to Plaintiff, EOUSA categorically redacted the names of law enforcement agents, employees of the U.S. Probation Office and the district court, and the names of other third parties pursuant to Exemption 7(C). DSMF ¶ 9; PRDSMF ¶ 9. Exemption 7(C) protects the release of records of information compiled for law enforcement purposes if such release could reasonably be expected to constitute an unwarranted invasion of personal privacy. DSMF ¶ 10; PRDSMF ¶ 10. In this case, all information regarding Plaintiff was compiled for law enforcement purposes. *Id.* EOUSA further determined that the release of the identities of, and personal information about, third parties could subject such persons

8

to an unwarranted invasion of personal privacy and would otherwise be detrimental to those persons. *Id.* Accordingly, EOUSA redacted this information prior to disclosing certain documents to Plaintiff. *Id.*

EOUSA withheld a number of documents in full which related to the underlying investigation and prosecution of Plaintiff, and were exempt from disclosure pursuant to Exemptions 3, 5, 6, 7(C), 7(D), and/or 7(F). DSMF ¶ 11; PRDSMF ¶ 11. Examples include: the prosecution memorandum prepared by the Assistant U.S. Attorney who handled Plaintiff's criminal case; privileged intra-agency communications and attorney work product created in anticipation of Plaintiff's criminal prosecution; and grand jury records. *Id.* In connection with responding to Plaintiff's FOIA request, EOUSA evaluated each document to determine whether any information could be segregated and released.[7] DSMF ¶ 12;

---

[7]   Mr. Widi interposed a variation on his standard denial:

> Denied. Supporting declaration not based on personal knowledge or action *and legal conclusions are not fact.*

PRDSMF ¶ 12 (emphasis supplied). Mr. Widi repeats this denial verbatim three more times in his reply. PRDSMF ¶¶ 13, 25, 27.

Mr. Widi is correct that the Defendants may not introduce legal conclusions in their statement of fact, as the Court can "afford no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.'" *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (quoting *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001)). The question is whether Defendants' statement is a legal conclusion rather than a fact.

To answer this question, the Court looks to the statement's context. The statement largely parrots the cited record evidence:

> Each document was evaluated to determine if any information could be segregated and released. The documents withheld in their entirety contained no meaningful portions that could be released without destroying the integrity of the document or without identifying a third party individual or confidential informant. To the extent that large portions of text were withheld within a document released in part, this principle and practice was also true.

PRDSMF ¶ 12.  It is the EOUSA's position that the documents withheld in their entirety contained no meaningful portions that could be released without destroying the integrity of the document or without identifying a third party individual or confidential informant.  *Id.*  It is also the EOUSA's position that to the extent that large portions of text were withheld within a document released in part, this principle and practice was also true.[8]  *Id.*

## B.    EOUSA Referrals to BOP

Kimberly Blow is employed by BOP as a Government Information Specialist for the Office of General Counsel, Freedom of Information/Privacy Action Section, in Washington, D.C.  DSMF ¶ 14; PRDSMF ¶ 14. Ms. Blow's duties and responsibilities

---

*Boseker Decl.* ¶ 42.  Mr. Boseker explains that—after evaluating the documents—EOUSA found some to be non-segregable, which it wholly withheld, and others segregable, which it disclosed with redactions.  The Court reads Mr. Boseker's statement as an explanation of EOUSA's decisionmaking process; from this perspective, the statement is more factual than legal.  The Court nonetheless agrees with Mr. Widi that it could be read as legally conclusory, so it qualifies the language to make clear that it represents EOUSA's opinion.

[8]      In full, the Defendants proposed this statement:

> Each step in the handling of Plaintiff's FOIA request was consistent with EOUSA's and the USAO's procedures adopted to ensure an equitable response to all persons seeking access to records under the FOIA/PA, Third Boseker Decl., ¶ 43.  All reasonably segregable responsive, non-exempt information originating with EOUSA has now been produced to Plaintiff.  *Id.*, ¶¶ 43, 2.

DSMF ¶ 13.  Mr. Widi interposed the same denial as in footnote six:

> Denied.  Supporting declaration not based on personal knowledge or action and legal conclusions are not fact.

PRDSMF ¶ 13.

Mr. Widi has a point.  Whereas EOUSA's statement discussed in footnote six explained the agency's decisionmaking process, this proposed statement—again echoing the cited record evidence—is legally conclusory.  *See Boseker Decl.* ¶ 43.  The Court will not admit a statement setting forth the bare claim that EOUSA followed procedures and disclosed everything that it had to disclose; in other words, it will not admit as fact the statement that EOUSA fulfilled its legal obligations.  This is especially so given the Court's obligation to construe the facts in the light most favorable to Mr. Widi.  The Court affirms Mr. Widi's denial.

include reviewing BOP records that are responsive to FOIA and PA requests, as well as making release determinations pursuant to FOIA and applicable laws.  *Id.*

On or about October 22, 2013, BOP received a FOIA referral from EOUSA. DSMF ¶ 16; PRDSMF ¶ 16.  The referral consisted of thirteen (13) pages of documents pertaining to Plaintiff's Competency to Stand Trial evaluation.  *Id.*  Although the records were referred to BOP for processing by EOUSA, BOP nevertheless logged the referral into FOIAXpress (BOP's computerized database for FOIA and PA requests) and assigned it a unique BOP FOIA number.  DSMF ¶ 15-16; PRDSMF ¶ 15-16.  The EOUSA referral to BOP in October of 2013 was logged in as FOIA request number 2014-00420, and thereafter assigned to Ms. Blow for processing.  DSMF ¶ 16; PRDSMF ¶ 16.

By letter dated November 12, 2013, BOP released three (3) pages to Plaintiff in their entirety and ten (10) pages with certain information redacted pursuant to Exemptions 6 and 7(C).  DSMF ¶ 17; PRDSMF ¶ 17.  Exemption 6 was applied to exempt personnel and medical files and similar files the disclosure of which BOP determined would constitute a clearly unwarranted invasion of personal privacy.  *Id.*  Exemption 7(C) was applied to exempt records compiled for law enforcement purposes which BOP determined could reasonably be expected to constitute an unwarranted invasion of personal privacy.  *Id.*

On March 27, 2015, BOP was asked to prepare a *Vaughn* Index.  DSMF ¶ 18; PRDSMF ¶ 18.  In response, BOP reviewed the records again and determined that some information previously redacted could be unredacted and disclosed to Plaintiff.

11

*Id.* BOP also concluded that some additional limited information previously released fit within the statutory language for a withholding. *Id.* Accordingly, by letter dated April 10, 2015, BOP provided a Supplemental Release to Plaintiff. *Id.*

In the Supplemental Release, BOP once again applied Exemptions 6 and 7(C) to redact information on privacy grounds. DSMF ¶ 19; PRDSMF ¶ 19. In addition, BOP redacted certain information pursuant to Exemption 7(F) because the records had been compiled for law enforcement purposes, and BOP concluded that disclosure of the redacted information could endanger the lives or physical safety of an individual. *Id.*

BOP prepared a *Vaughn* Index to describe with particularity the documents and all the meaningful information contained there, including the exemptions claimed and how the information withheld met the threshold requirements for the claimed exemption. DSMF ¶ 20; PRDSMF ¶ 20. The documents described in BOP's *Vaughn* Index were evaluated for segregability, and all reasonably segregable responsive, non-exempt information originating with BOP has now been produced to Plaintiff. *Id.*

**C.    EOUSA Referrals to USMS**

William E. Bordley is an Associate General Counsel and the FOIA/PA Officer of the USMS, assigned to the Headquarters, Office of General Counsel, in Alexandria, Virginia. DSMF ¶ 21; PRDSMF ¶ 21. Mr. Bordley is familiar with the procedures followed by the USMS in responding to FOIA and PA requests for information maintained in the records and files of the USMS. *Id.* The USMS Headquarters Office

of General Counsel is responsible for processing all FOIA/PA requests made to any USMS office located throughout the United States pursuant to USMS policy. *Id.*

By letter dated October 22, 2013, EOUSA referred six (6) pages to the USMS that EOUSA had located in response to Plaintiff's FOIA request to EOUSA dated April 21, 2013. DSMF ¶ 22; PRDSMF ¶ 22. The six pages had originated with the USMS, and the USMS was asked to respond directly to Plaintiff in accordance with 28 C.F.R. § 16.4(c)(2). *Id.* The EOUSA referral was assigned FOIA Request Number 2014USMS24822. *Id.*

By letter dated November 1, 2013, the USMS sent a response to Plaintiff consisting of the six pages referred to the USMS by EOUSA. DSMF ¶ 23; PRDSMF ¶ 23. The USMS asserted Exemption 6 and Exemption 7(C) to withhold the names of law enforcement personnel and other prisoners. *Id.* In February of 2015, a copy of the USMS's response was re-sent to Plaintiff after Plaintiff claimed that he never received the USMS's letter dated November 1, 2013. *Id.*

During the course of the litigation, the USMS learned that ATF had referred two documents that originated with the USMS, which ATF had located in responding to a separately served FOIA request. DSMF ¶ 24; PRDSMF ¶ 24. By letter dated April 9, 2015, the USMS sent Plaintiff the two pages referred to the USMS by ATF. *Id.* The USMS asserted Exemptions 6 and 7(C) to withhold the names of several USMS law enforcement officers. *Id.*

The records responsive to Plaintiff's FOIA request are maintained by the USMS in the Prisoner Processing and Population Management/Prisoner Tracking

13

System ("PPM/PTS"), JUSTICE/USM-005 system of records.[9]  DSMF ¶ 25; PRDSMF ¶ 25.  Records maintained in this system are compiled for law enforcement purposes in connection with the USMS's receipt, processing, transportation, and custody of prisoners.  *Id.*  As such, the USMS took the position that this system of records is exempt from the access provision of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2).  *Id.*  To ensure maximum access, however, the records were processed for disclosure pursuant to FOIA.  *Id.*

By letter dated June 17, 2015, received by the USMS on June 25, 2015, ATF referred a CD/DVD accompanied by a Court Order issued by the United States District Court Judge Woodcock in the case of *In re David Widi*, Misc. No. 1:10-mc-

---

[9]        In full, the Defendants proposed this statement:

> The records responsive to Plaintiff's FOIA request are maintained by the USMS in the Prisoner Processing and Population Management/Prisoner Tracking System ("PPM/PTS"), JUSTICE/USM-005 system of records.  Bordley Decl., ¶ 6.  Records maintained in this system are compiled for law enforcement purposes in connection with the USMS's receipt, processing, transportation and custody of prisoners.  *Id.*  As such, this system of records is exempt from the access provision of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2).  *Id.*  To ensure maximum access, however, the records were processed for disclosure pursuant to FOIA.  *Id.*

DSMF ¶ 25.  Mr. Widi interposed this denial:

> Denied.  Supporting declaration not based on personal knowledge or action and legal conclusions are not fact.

PRDSMF ¶ 25.

Mr. Widi's denial has merit.  As proposed, the third sentence states a legal conclusion regarding the PPM/PTS's exempt status as a system of records under the PA provision codified at 5 U.S.C. § 552a(j)(2).  DSMF ¶ 25.  Not only is this a legal conclusion, it is also one that the Court has already cast doubt upon: "PA subsection (j) does not permit exemptions from subsection (d)—the provision allowing individuals to access their own records. § 552a(j)."  *Sept. 30, 2013 Order* at 7.

Rather than eliminating the sentence entirely, the Court amends the sentence to indicate that it represents the Defendants' position on the PA exemption.  As rephrased this is an opinion, and as written above, the Court will address the applicability (or lack thereof) of the PA exemption in its discussion.  It also allows the fourth sentence, which follows from the third by explaining that "the records were processed for disclosure pursuant to FOIA" despite claimed PA exemption, to remain in place.

14

00133.[10]   DSMF ¶ 26; PRDSMF ¶ 26.   The order and accompanying CD/DVD are protected from disclosure by an order sealing such records by Judge Woodcock.   *Id.* Accordingly, the USMS determined that it lacked the authority to consider the releasability of this material under FOIA.   *Id.*

The USMS prepared a *Vaughn* Index with respect to the information it redacted and withheld from the pages referred to it by EOUSA.[11]   DSMF ¶ 27.   In sum, of the eight total pages located by EOUSA and ATF and referred to the USMS

---

[10]   Mr. Widi interposed a denial:

Denied.   Supporting declaration not based on personal knowledge or action and legal conclusions are not fact.   Moreover, this Court already concluded that the defendants were "at least partially incorrect that Mr. Widi's request is cognizable exclusively under FOIA and not under PA."   (ECF No. 173, pg. 30).

PRDSMF ¶ 26.
The Defendants cite the declaration of William E. Bordley, Associate General Counsel of USMS, who is well positioned to comment on the contents of a letter the USMS received from ATF regarding Mr. Widi.   DSMF Attach. 2 *William E. Bordley Decl*. ¶ 7 (ECF No. 305) (*Bordley Decl.*).   Mr. Widi's denial is without merit, and the Court admits the statement.

[11]   In full, the Defendants proposed this statement:

The USMS prepared a *Vaughn* Index with respect to the information it redacted and withheld from the pages referred to it by EOUSA.   Bordley Decl., ¶¶ 8-10.   In sum, of the eight total pages located by EOUSA and ATF and referred to the USMS pertaining to Plaintiff's requests, the USMS redacted the names and other personal identifying information of law enforcement officers, inmates, and one USMS administrative employee based on personal privacy grounds under Exemptions 6 and 7(C), but otherwise produced the records to Plaintiff.   *Id.,* ¶ 11.   No reasonably segregable non-exempt portions of the itemized pages were withheld from Plaintiff.   *Id.*   All documents were process[ed] by the USMS to achieve maximum disclosure consistent with the provisions of FOIA.   *Id.*

PRDSMF ¶ 27.   Mr. Widi interposed this denial:

Denied.   Supporting declaration not based on personal knowledge or action and legal conclusions are not fact.

PRDSMF ¶ 25.
Viewed in the light most favorable to Mr. Widi, the nonmoving party, the Court (1) concludes that the last two sentences of the Defendants' proposed facts are legal conclusions and (2) amends the language to indicate that it represents the Defendants' position rather than a statement of fact.

pertaining to Plaintiff's requests, the USMS redacted the names and other personal identifying information of law enforcement officers, inmates, and one USMS administrative employee based on personal privacy grounds under Exemptions 6 and 7(C), but otherwise produced the records to Plaintiff.  *Id.*  The USMS took the position that no reasonably segregable non-exempt portions of the itemized pages were withheld from Plaintiff and that all documents were processed by the USMS to achieve maximum disclosure consistent with the provisions of FOIA.  *Id.*

### D. ATF's Identification of Responsive Records, Disclosure Determinations, and Document Productions to Mr. Widi, Including Documents EOUSA Referred to ATF

Stephanie M. Boucher is the Chief of the Disclosure Division of ATF.[12]  DSMF ¶ 28; PRDSMF ¶ 28; DRSMF ¶ 1.  In this capacity, Ms. Boucher receives all requests made of ATF under FOIA and the Privacy Act.  *Id.*  Ms. Boucher also reviews all requests referred to ATF from other agencies that have located ATF documents in

---

[12]    Mr. Widi interposed a denial:

> Denied.  Boucher claims to receive all requests made under the FOIA and the PA, review all requests referred to the ATF by other agencies, process all FOIA and PA requests, and supervise what records should be disclosed.  (Boucher Dec. ¶ 2).  But then states that she is "familiar with the procedures followed by this office in responding to the FOIA request made by Mr. David Widi."  (Boucher Dec. ¶ 3).  This Court should thus infer that Boucher claims that by virtue of her position she receives, reviews, processes and supervises release of records but that . . . she was not directly involved with the review of Mr. Widi's request.

PRDSMF ¶ 28.
    As noted in footnote three, personal knowledge imposes only a "minimal" burden on the party offering a statement.  1 McCormick on Evidence § 10.  Here, the Court has reviewed the declaration of Stephanie M. Boucher, the chief of ATF's disclosure division, who provides statements regarding the agency's handling of Mr. Widi's requests.  DSMF Attach. 4 *Second Decl. of Stephanie M. Boucher* ¶¶ 2-3 (ECF No. 305) (*Second Boucher Decl.*).  Mr. Widi is correct that Ms. Boucher, as chief, occupies a supervisory role.  This does not, however, undercut Ms. Boucher's personal knowledge of ATF's handing of Mr. Widi's FOIA and PA requests; to the contrary, the Court finds her well qualified to make statements on this matter.  In their reply, the Defendants cite ample authority to this effect.  *Defs.' Reply* at 7-8 (collecting cases).  The Court admits the Defendants' statement.

their records while processing the FOIA and PA requests. *Id.* Ms. Boucher is responsible for processing all FOIA and PA requests, supervising the determination of which records should be disclosed, processing all documents referred to ATF from other agencies, and recording all administrative appeals filed with ATF. *Id.* Ms. Boucher is familiar with the procedures followed by ATF's Disclosure Division in responding to the FOIA request made by Plaintiff.[13] DSMF ¶ 29; PRDSMF ¶ 29; DRSMF ¶ 2.

Plaintiff initially made a direct FOIA request to ATF dated March 28, 2011. DSMF ¶ 30; PRDSMF ¶ 30. The Disclosure Division did not receive Plaintiff's initial FOIA request. *Id.* However, the Disclosure Division was made aware of Plaintiff's initial FOIA request after EOUSA forwarded a referral packet to the Disclosure Division on October 22, 2013, and advised the Disclosure Division that the documents were part of an ongoing litigation. *Id.* At that time, the Disclosure Division was provided with a copy of Plaintiff's Complaint and a copy of his initial request to ATF, as well as a copy of the referral from EOUSA. *Id.*

By email dated November 5, 2013, the Disclosure Division sent a copy of Plaintiff's FOIA request and a search form to the FOIA point of contact for the Boston Field Division. DSMF ¶ 31; PRDSMF ¶ 31. The Disclosure Division forwarded the

---

[13]     Mr. Widi interposed a denial on essentially the same grounds as footnote eleven:

  Denied. Supporting declaration not based on personal knowledge or action. Boucher has knowledge of the standard practice of procedures but no personal knowledge of how Mr. Widi's request was treated.

PRDSMF ¶ 29.
      For the reasons set out in footnote eleven, the Court overrules Mr. Widi's denial and admits the Defendants' statement.

request to the Boston Field Division based on the information contained in the documents referred to ATF by EOUSA.  *Id.*  The information contained in the records sent to ATF by EOUSA included the requester's name, criminal investigation number, case agent name, and Field Division.  *Id.*  This is the same information that would have been pulled from a search of ATF's case management systems, which is the normal starting point for a FOIA search based on a criminal prosecution.  *Id.*

By letter dated November 27, 2013, the Disclosure Division acknowledged receipt of Plaintiff's FOIA request and assigned it request number 2014-0133.  DSMF ¶ 32; PRDSMF ¶ 32.  The Disclosure Division also acknowledged receipt of the referral from EOUSA on the same date and assigned it request number 2014-0132. *Id.*

ATF's field office in Portland, Maine, forwarded documents responsive to Plaintiff's FOIA request to the Disclosure Division on December 17, 2013.  DSMF ¶ 33; PRDSMF ¶ 33.  ATF determined that documents responsive to Plaintiff's request were exempt from disclosure under Exemption (j)(2) of the Privacy Act.[14]  DSMF ¶ 34; PRDSMF ¶ 34.  ATF nevertheless processed Plaintiff's request under FOIA.  *Id.*

---

[14]     Mr. Widi interposed a denial:

> Denied.  Supporting declaration not based on personal knowledge or action.  Moreover, this Court already concluded that the defendants were "at least partially incorrect that Mr. Widi's request is cognizable exclusively under FOIA and not under PA." (ECF No. 173, pg. 30).

PRDSMF ¶ 34.
      The Court encountered similar denials at footnotes four and eight.  Again, the Court admits the Defendants' statement for its narrative value (i.e., ATF decided to apply a PA exemption) but expresses no opinion at this moment regarding its legal validity (i.e., whether ATF was correct in doing so).  As written, the statement begins "ATF determined . . . ."  Thus, no qualification is needed, and the Court admits the statement as written.

The Disclosure Division sent Plaintiff a final response to his FOIA request on April 25, 2014, as well as a final response to the referral of documents from EOUSA. DSMF ¶ 35; PRDSMF ¶ 35. The Disclosure Division also advised Plaintiff that documents had been referred to the USMS and EOUSA for processing and a direct response to Plaintiff. *Id.* In its final responses, ATF enclosed the released documents and indicated that ATF was withholding information pursuant to Exemptions 3, 6, 7(C), 7(E), and 7(F). DSMF ¶ 36; PRDSMF ¶ 36. The Disclosure Division re-sent its responses to Plaintiff on February 20, 2015, after it became aware that Plaintiff had not received its April 25, 2014 correspondence. DSMF ¶ 37; PRDSMF ¶ 37.

On May 19, 2015, ATF learned that certain photographic and video evidence in the USAO/District of Maine file had been inadvertently omitted from the materials initially sent to EOUSA. DSMF ¶ 38; PRDSMF ¶ 38. The photographic and video evidence originated with ATF. *Id.* Accordingly, the Disclosure Division was informed that the USAO would forward the materials to EOUSA, which would then in turn refer the materials to ATF for processing. *Id.*

By letter dated May 26, 2015, EOUSA referred the following materials to ATF for review and a direct response to Plaintiff: (a) video of the execution of the search warrant of Plaintiff's home; (b) two videos of third party interviews; (c) video of Plaintiff during his booking; and (d) three discs of pictures from the search of Plaintiff's home. DSMF ¶ 39; PRDSMF ¶ 39.

Based on the notification provided by the USAO, the Disclosure Division also doubled checked the files sent in from the field in response to Plaintiff's original FOIA

request and discovered that the photographic and video evidence had been inadvertently omitted from the ATF initial search response as well. DSMF ¶ 40; PRDSMF ¶ 40. A Disclosure Specialist telephonically contacted the Special Agent in charge of the criminal investigation of Plaintiff, who verbally confirmed the existence of the photographic and video evidence. *Id.* A Disclosure Specialist handling the case then followed up the conversation with an email to the Special Agent requesting that any outstanding materials be sent in to the Disclosure Division. *Id.*

On June 10, 2015, the Disclosure Division received copies of the following materials from ATF's Portland field office: (a) video of the execution of the search warrant of Plaintiff's home; (b) two videos of third party interviews; (c) video of Plaintiff during his booking; (d) video footage originating with the USMS; (e) three discs of pictures from the search of Plaintiff's home; and (f) a disc containing ATF forensic analysis of Plaintiff's home computer. DSMF ¶ 41; PRDSMF ¶ 41. The material received from ATF's field office differed slightly from the material referred to ATF by EOUSA. *Id.* ATF's material included the ATF Forensic Analysis of Plaintiff's home computer and the video footage originating with the USMS. *Id.*

By letter dated June 29, 2015, the Disclosure Division forwarded to Plaintiff a final response with respect to the materials received on June 10, 2015. DSMF ¶ 42; PRDSMF ¶ 42.

ATF conducted a thorough search for all documents responsive to Plaintiff's FOIA request. DSMF ¶ 43; PRDSMF ¶ 43. ATF properly reviewed all information relating to Plaintiff for the greatest degree of access and properly withheld

information pursuant to Exemptions 6, 7(C), 7(E), and 7(F). *Id.* Ms. Boucher's staff also reviewed each page of the material identified as responsive to ensure that no additional information could be released.[15] *Id.*

### E. After Mr. Widi Filed his Opposition, ATF Identified and Released Additional Responsive Records, and ATF also Conducted its own Search for Responsive Records

#### 1. Additional Documents Released

In his Opposition, Mr. Widi identified the following records as having been excluded from ATF's February 29, 2015 release of records to him, which had been previously referred to ATF by EOUSA:

1.  References in ATF's Management Log to notice of forfeitures sent to Mr. Widi;

2.  Report of Investigation 13 (ROI 13);

3.  Portsmouth Police Department Incident Report (EOUSA = ATF Doc. No. 47)

4.  12/02/08 Eliot Police Department Continuation Report (EOUSA = ATF Doc. No. 48);

---

[15]   ATF proposed the following statement:

ATF has prepared a *Vaughn* Index in connection with this litigation which describes in detail each responsive document and all meaningful information contained therein, including the exemptions claimed and how the information withheld met the threshold requirements for the claimed exemption. ATF has now provided all reasonably segregable responsive, non-exempt information originating with ATF to Plaintiff.

DSMF ¶ 44. Mr. Widi interposed one of his standard denials:

Denied. Supporting declaration not based on personal knowledge or action.

PRDSMF ¶ 44.
Mr. Widi's objection is not persuasive, but ATF's own actions in this case—i.e., releasing more documents on January 29, 2016, in response to Mr. Widi's opposition, *see* DRSMF ¶¶ 3-20—render its proposed statement inaccurate. It is within the discretion of the Court to exclude a statement where the party offering it has contradicted its veracity.

5.  Email Regarding High Capacity (EOUSA = ATF Doc. No. 49); and

6.  Email between local police officials regarding Guns (EOUSA = ATF Doc. No. 50).

DRSMF ¶ 3.

Based on the items identified by Mr. Widi, Ms. Boucher spoke with the Special Agent responsible for maintaining Mr. Widi's criminal file to determine whether these records had been included in the initial copy of Mr. Widi's case file, when it was provided to the Disclosure Division in response to ATF's first search request. DRSMF ¶ 4. The Special Agent confirmed that notices of forfeiture are not maintained in the criminal investigatory file, but rather fall under the purview of, and are maintained by, the Asset Forfeiture Division. DRSMF ¶ 5. The Special Agent also confirmed that ROI 13 was in fact part of the case file. *Id.* With respect to ATF Doc. Nos. 47-50, the Special Agent agreed to conduct a review of the case file to determine whether the case file contained copies of said documents. *Id.*

As confirmation of the specific records noted as missing by Mr. Widi, a Specialist in the Disclosure Division itemized the list of records that Mr. Widi noted as missing and sent it to the Special Agent. DRSMF ¶ 6.

On January 14, 2016, the Specialist in the Disclosure Division also sent a request to ATF's Asset Forfeiture division for all records generated from Mr. Widi's criminal case. DRSMF ¶ 7. On January 21, 2016, in response to the search request submitted to the Asset Forfeiture Division, the Disclosure Division received a copy of (1) a certified mail, return receipt Notice Letter dated December 8, 2008; (2) a

22

certified mail, return receipt Notice Letter dated January 6, 2009; and (3) a Declaration of Administrative Forfeiture. DRSMF ¶ 8.

On January 27, 2016, the Special Agent in charge of Mr. Widi's criminal investigation undertook a page-by-page comparison of the documents provided to the Disclosure Division and the documents contained in the case file. DRSMF ¶ 9.

This extra step was taken to ensure that all responsive documents had been provided to the Disclosure Division. *Id.* The review confirmed that ATF's criminal file for Mr. Widi does not contain a copy of pages 329-333 in Document No. 48, which is a copy of the criminal history check of witnesses done in preparation for trial and directly transmitted to the Assistant U.S. Attorney handling Mr. Widi's case. DRSMF ¶ 10. The review also confirmed that Mr. Widi's criminal case file does not contain a copy of the emails found as Documents 49 and 50. *Id.* ATF did not retain a copy of these documents in Mr. Widi's case file. *Id.*

The comparison of the documents revealed that ROI 13 had been included in the original copy provided to the Disclosure Division but was inadvertently excluded from the documents released to Mr. Widi due to an administrative oversight in the processing of records. DRSMF ¶ 11. The comparison also revealed that the Disclosure Division's copy of Mr. Widi's file did not contain the Eliot Police Department Incident Report dated December 10, 2008, and a set of documents tracking the release and receipt of property related to evidence seized during Mr. Widi's criminal investigation that had been added to Mr. Widi's file well after the Disclosure Division's 2014 release of records to Mr. Widi. *Id.* (The December 10, 2008

23

Incident Report contained a copy of the (1) December 9, 2008 Portsmouth Police Department Incident Report and (2) December 2, 2008 Eliot Police Department Continuation Report.)  *Id.*  No other records were found to have been missing from the prior releases made to Mr. Widi.  *Id.*

By letter dated January 29, 2016, the Disclosure Division forwarded to Mr. Widi a final response on the materials received on January 21 and 27, 2016.  DRSMF ¶ 12.  The release contained a copy of ROI 13, the December 10, 2008 Eliot Police Report, the release and receipt of property documentation, and the records received from the Asset Forfeiture Division.  *Id.*

The rationale for exempting the January 29, 2016 release from the Privacy Act, as well as the determination of the applicable FOIA Exemptions applied to these documents, conform with the explanation provided in Ms. Boucher's Second Declaration.  DRSMF ¶ 19.  Ms. Boucher's staff reviewed each page of the January 29, 2016 release and the content identified therein as responsive, to ensure that no additional information could be released.  DRSMF ¶ 20.  All reasonably segregable, non-exempt releasable information has been provided to Mr. Widi.  *Id.*

## 2.    A Fresh Search Conducted

In Plaintiff's Opposition, Mr. Widi questioned the adequacy of ATF's search for records because the Disclosure Division had not conducted a search through N-Force or TECS, prior to submitting a search request to the Field Division responsible for maintaining Mr. Widi's criminal file.  DRSMF ¶ 13.

As noted in Ms. Boucher's June 29, 2015 Declaration, EOUSA's referral to ATF contained all of the qualifying information necessary to retrieve the records requested by Mr. Widi.  DRSMF ¶ 14.  In the absence of any qualifying information, a Specialist in the Disclosure Division conducts a search in N-Force or TECS to determine the location(s) where an individual's criminal records are maintained.  DRSMF ¶ 15.  Based on the results from the search, a search request is then submitted to the Field Division(s) responsible for the criminal investigation(s).  *Id*.

In Mr. Widi's case, the information  in the records referred to ATF by EOUSA nullified the need to conduct a preliminary inquiry via N-Force or TECS as it identified the Field Division responsible for maintaining Mr. Widi's criminal file.  DRSMF ¶ 16.  In light of Mr. Widi's objection, however, a Specialist in the Disclosure Division conducted a search for records in N-Force using Mr. Widi's first and last name, date of birth, and social security number to determine if any other criminal case files pertaining to Mr. Widi were present.  DRSMF ¶ 17.

The N-Force search resulted in the identification of only one criminal case file pertaining to Mr. Widi, Investigation Number 762065-09-0023.  Third Boucher Decl., ¶ 19. The N-Force file relating to Mr. Widi is the same file as the one retrieved, processed, and released to Mr. Widi in 2014.  DRSMF ¶ 18.

### 3.    Conclusion

Based on the foregoing, ATF has concluded its search for all documents responsive to Mr. Widi's FOIA request, and has confirmed that the recent January 29, 2016 release, in conjunction with the prior April 2014 and June 2015 releases,

25

represent the entirety of all materials contained in Mr. Widi's case file.  DRSMF ¶ 21.  ATF has properly reviewed all information relating to Mr. Widi for the greatest degree of access, and properly withheld information pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) in its January 29, 2016 release.  DRSMF ¶ 22.  ATF has prepared a Supplemental *Vaughn* Index in connection with the January 29, 2016 release of records which describes in detail each responsive document and all meaningful information contained therein, including the exemptions claimed and how the information withheld met the threshold requirements for the claimed exemption.  DRSMF ¶ 23.  ATF has now provided all reasonably segregable responsive, non-exempt information originating with ATF to Plaintiff.  *Id.*

## III.   THE PARTIES' POSITIONS

### A.   The Defendants' Motion

While "acknowledg[ing] that federal agencies bear the burden of establishing the applicability of claimed exemptions under FOIA," *Defs.' Mot.* at 13 (citing 5 U.S.C. § 552(a)(4)(B)), the Defendants stress that courts resolve "[m]ost" FOIA cases at summary judgment on the basis of "agency affidavits and declarations."  *Id.* at 14 (citing *Brown v. U.S. Dep't of Justice*, No. 1:13-cv-01122-LJO-SKO, 2015 WL 1237274, at *3 (E.D. Cal. Mar. 17, 2015)).  The Defendants' overarching argument is that they "have now produced all non-exempt records responsive to [Mr. Widi's] original FOIA requests and established that any information withheld or redacted from responsive records is exempt from disclosure under FOIA."  *Id.* at 1.

The Defendants assert that they "conducted adequate searches for responsive records." *Id.* at 15. Adequacy, they submit, is to be measured "by a standard of reasonableness," *id.* (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)), which "requires 'both systemic and case-specific exercises of discretion and administrative judgment . . . .'" *Id.* at 15-16 (quoting *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003)). They refer back to the facts and state that "the adequacy of the search is not an issue in this case . . . ." *Id.* at 16.

To the extent that the Defendants have withheld or redacted responsive documents, they contend that such actions "were proper under one (or more) applicable FOIA exemptions." *Id.* The Defendants then march through their withholdings and redactions exemption by exemption.

### 1.    Exemption 3

Exemption 3 protects information "specifically exempted from disclosure by statute." *Id.* at 17 (quoting 5 U.S.C. § 552(b)(3)). Federal Rule of Criminal Procedure 6(e) "establishes a presumption of nondisclosure of Grand Jury materials," *id.* (quoting *Leon v. United States*, 250 F. App'x 507, 509 (3d Cir. 2007) (per curiam)), and—according to the Defendants—"satisfies Exemption 3's statute requirement." *Id.* (citing *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 867 (D.C. Cir. 1981); *Cozen O'Connor v. U.S. Dep't of Treasury*, 570 F. Supp. 2d 749, 776 (E.D. Pa. 2008)). Thus, "[i]n this case, the materials withheld by EOUSA clearly fall with the purview of Rule 6(e) and Exemption 3, and were therefore properly withheld." *Id.* at 17-18 (collecting cases).

### 2.    Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." *Id.* at 19 (quoting 5 U.S.C. § 552(b)(5)).  The Defendants assert two privileges, attorney work product and deliberative process, that they believe entitle them to protection under Exemption 5.  *Id.* at 19-21.  The attorney work product privilege covers documents that were "created in connection with the prosecution of [Mr. Widi]," *id.* at 20, while the deliberative process privilege covers documents "that reflect decision-making by agency officials regarding the scope and focus of the pending investigations [of Mr. Widi]." *Id.* at 21.

### 3.    Exemption 6

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* at 21 (citing 5 U.S.C. § 552(b)(6)).  The test, as set out by the Defendants, is "whether disclosure of the information threatens a protectable privacy interest; if so, the agency must weigh that privacy interest against the public interest in disclosure, if any." *Id.* at 22 (citing *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991)).  The Defendants recount how an alphabet soup of agencies—"ATF, EOUSA, USMS and BOP"—applied this test, found a threat to privacy interests, and determined the privacy interests outweighed the countervailing public interest in disclosure as regards an array of information: "the names of law enforcement personnel," "the names of BOP personnel," "the names of other inmates," and "the

names and identifying information of individuals who provided information to the Government." *Id.* at 22-24.

### 4.    Exemptions 7(C), (D), (E), and (F)

Exemptions 7(C), (D), (E), and (F) all protect information compiled for law enforcement purposes. *Id.* at 24 (citing 5 U.S.C. § 552(b)(7)). Because the agencies asserting protection under these exemptions specialize in law enforcement, the Defendants claim that these agencies are "entitled to deference." *Id.* at 25 (quoting *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003)). The Defendants address each of these subsections in turn.

### a.    Exemption 7(C)

Exemption 7(C)—like Exemption 6—guards personal information, but the Defendants claim Exemption 7(C) has a more stringent test because it addresses personal information in the particular context of law enforcement. *Id.* (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)). The Defendants identify two categories of information withheld pursuant to Exemption 7(C): first, the identity of law enforcement officers and support staff, which they say is "routinely protected under the FOIA privacy exemptions," *id.* at 26 (collecting cases); second, the identity of third parties, e.g., other prisoners, which they say is "generally categorically exempt." *Id.* at 27 (collecting cases).

### b.    Exemption 7(D)

Exemption 7(D) allows for "redaction of law enforcement records where their release 'could reasonably be expected to disclose the identity of a confidential source.'"

29

*Id.* at 27 (quoting 5 U.S.C. § 552(b)(7)(D)).  According to the Defendants, Exemption 7(D) "requires no balancing of public and private interests," *id.* (citing *Dow Jones & Co. v. U.S. Dep't of Justice*, 917 F.2d 571 (D.C. Cir. 1990)); rather, it "applies if an agency establishes that a source has provided information under either an express or implied promise of confidentiality."  *Id.* (citing *Williams v. FBI*, 69 F.3d 1155, 159 (D.C. Cir. 1995)).  In this case, they contend that EOUSA "properly withheld" the names of people "who have provided information to investigators under assurances of confidentiality." *Id.* at 28.

### c.      Exemption 7(E)

Exemption 7(E) authorizes the withholding of information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  *Id.* at 28 (quoting 5 U.S.C. § 552(b)(7)(E)).  Here, ATF used Exemption 7(E) as a shield to protect "internal case preparation checklists, operations plans used to plan and implement the arrest of Plaintiff, and TECS and NCIC computer file numbers." *Id.*

### d.      Exemption 7(F)

Finally, Exemption 7(F) does not require disclosure that "could reasonably be expected to endanger the life or physical safety of any individual."  *Id.* at 29 (citing 5 U.S.C. § 552(b)(7)(F)).  The Defendants suggest that Mr. Widi has violent tendencies and threatened a witness at trial, which bolsters ATF's, EOUSA's, and BOP's reliance on Exemption 7(F) "to protect the identities of law enforcement personnel, other

government employees, and other individuals who have cooperated with or participated in [his] criminal investigation . . . ." *Id.*

## B. Mr. Widi's Opposition

On the legal standard, Mr. Widi asserts that FOIA requires "broad disclosure" unless "a specific narrowly construed exemption applies," *Pl.'s Opp'n* at 5 (citing *Aronson v. IRS*, 973 F.2d 962, 966 (1st Cir. 1992)), and that it also requires partial disclosure of segregable documents. *Id.* at 6 (citing 5 U.S.C. § 552(b); *Wightman v. Bureau of ATF*, 755 F.2d 979, 983 (1st Cir. 1985)). Mr. Widi raises an array of objections to the Defendants' motion for summary judgment. He focuses on the perceived shortcomings of two agencies, ATF and EOUSA, and the Court organizes its summary of his arguments by agency.

### 1. Mr. Widi's Objections as to both ATF and EOUSA

#### a. ATF's and EOUSA's Failure to Review under the Privacy Act

Mr. Widi argues that EOUSA and ATF "continue to maintain that Mr. Widi's request is exclusively cognizable under FOIA and not under the PA," *id.* at 7, despite the fact that the law of the case—as set forth in the Court's September 30, 2013 order—establishes that the Defendants are "at least partially incorrect" on this point. *Id.* at 7 (quoting *Sept. 30, 2013 Order* at 30).

#### b. EOUSA Documents Improperly Referred to ATF Are Being Improperly Withheld by ATF

Mr. Widi again argues that the Defendants are at odds with the Court's September 30, 2013 order. There, the Court wrote that FOIA and the PA do not

"permit the agency receiving the request to 'refer' records in its possession to other government components for 'review and direct response,'" *id.* at 15 (quoting *Sept. 30, 2013 Order* at 26), yet "the EOUSA has handled Mr. Widi's request by forwarding it to the ATF for a direct response," and to make matters worse, "the ATF has now improperly applied exemptions to the requested records." *Id.* Mr. Widi then provides a catalogue of these putative misapplications. *Id.* at 16-17 (discussing errors in the application of Exemptions 6, 7(C), and 7(F)).

> **c.    ATF Documents Referred to EOUSA Improperly Withheld without Review**

Mr. Widi also claims that EOUSA failed to review a document that ATF referred to it. *Id.* at 15.

> **2.    Mr. Widi's Objections as to ATF**

> **a.    ATF's Inadequate Search and Improper Withholding**

Mr. Widi cites First Circuit law judging an agency's search for documents in response to a FOIA request by "a standard of reasonableness." *Id.* (quoting *Maynard v. CIA*, 986 F.2d 547, 559-60 (1st Cir. 1993)). He identifies procedural shortcomings in ATF's search that resulted in improper withholding; specifically, he alleges that ATF used EOUSA information rather than conducting its own search, that this constituted an "abnormal search method," and that the result has been tardy disclosures as well as records that are still being wrongfully withheld. He believes this conduct indicates bad faith, which he tries to corroborate with a smattering of other evidence he finds suspicious.

> **b.    ATF's Misapplication of FOIA Exemptions**

Limiting the scope of his response to six categories of documents, Mr. Widi responds to the ATF's exemption claims seriatim.

### i.   Exemption 6

Mr. Widi's response here is simple: because the requested files are about him and no one else, "this exemption is wrongfully applied because the records are not personnel, medical or similar files within the meaning of § 552(b)(6)." *Id.* at 10 (footnote omitted).

### ii.   Exemption 7(C)

Mr. Widi, like the Defendants, concedes that Exemption 7(C) is similar, to but more stringent than, Exemption 6 because it applies to information compiled for law enforcement purposes rather than information from personnel, medical, or other such files. *Id.* at 10 n.4. He says the law requires him to "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* at 11 (citing *Union Leader Corp. v. U.S. Dep't of Homeland Sec.*, 749 F.3d 45, 50 (1st Cir. 2014)). Mr. Widi runs through "just some examples" of several theories by which he thinks he can produce evidence to that effect: ATF gave orders to the Eliot Police, and the Eliot Police violated Mr. Widi's Fourth Amendment rights, so maybe ATF was involved in those constitutional violations; Mr. McNeil sanitized information he presented to the court in support of the search warrant; the USAO engaged in prosecutorial misconduct by refusing to turn over information about a handgun mentioned at trial; and the Eliot Police falsified their reports on Mr. Widi's case. *Id.* at 12-13. Regarding the weighing of public and private interests, he

33

thinks "the public interest in investigating outweighs the limited privacy interest of individuals . . . ." *Id.* at 13 (citations omitted).

### iii.   Exemption 7 (E)

According to Mr. Widi, ATF's attempt to apply this exemption to the Recommendation for Prosecution fails because it is a "near recitation of the statutory language." *Id.* at 13. ATF also fails in its attempt to apply the exemption to the Operational Plan because it does not explain how the redacted information could be used to obtain law enforcement techniques and procedures. *Id.* at 14.

### iv.   Exemption 7(F)

Mr. Widi claims that he never threatened anybody; rather, he "was only adjusting his tie" *id.*, and even if he did make threats, release of the records would not further endanger anybody because he "already knows who the witnesses are, what they told investigators, and the identities of law enforcement." *Id.* at 15.

### 3.   Mr. Widi's Objections as to EOUSA

### a.   EOUSA's Improper Withholding of Public Records

Again accusing EOUSA of contravening an aspect of the Court's September 30, 2013 order, Mr. Widi contends that EOUSA has not released "public records." *Id.* at 8 (citing *Sept. 30, 2013 Order* at 26-27).

### b.   EOUSA Improperly Withheld Agency Records by Misapplying Exemptions and Failure to Segregate

Mr. Widi accuses EOUSA of using a "shotgun method of applying nearly every exemption to withhold the majority of records in full." *Id.* at 18. He provides a list of twenty-six documents, all of which he claims were withheld without a *Vaughn* Index

34

that included "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Id.* at 19 (quoting *Church of Scientology v. U.S. Dep't of Justice*, 30 F.3d 224, 231 (1st Cir. 1994)).  After arguing that EOUSA also failed to properly segregate agency records, Mr. Widi treats EOUSA's exemption claims one by one.

### i.  Exemption 3

Mr. Widi argues that EOUSA has not met its burden with regard to Exemption 3, which protects information that is otherwise statutorily exempted from disclosure, noting that "[t]he EOUSA does not explain what the exhibits are, if they were created for independent purposes, or how they would implicate the secrecy concerns of Rule 6(e)." *Id.* at 20.  He also reminds the Court that his Complaint stated a claim "against the U.S. Attorney[']s Office for failing to present his financial records to the grand jury as required by 12 U.S.C. § 3420" and that he "needs the grand jury records to prosecute this claim . . . ." *Id.* at 20-21.

### ii.  Exemption 5

Mr. Widi points out perceived errors in EOUSA's reliance on Exemption 5, which protects inter- and intra-agency communications that would be unavailable in litigation, by arguing (1) that EOUSA withheld a batch of documents under the attorney work product privilege based on an affidavit's overly generalized statements and (2) that it withheld another batch under the deliberative process privilege without meeting that privilege's twin requirements that the documents be

predecisional and deliberative.  *Id.* at 22-24.  Even if the documents were properly categorized in one way or another under Exemption 5, Mr. Widi urges that a government misconduct waiver applies to his facts.  *Id.* at 23 (citing *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995)).

### iii.    Exemption 6

Mr. Widi reiterates the argument against applying Exemption 6 that he made earlier against ATF: i.e., the files are about him, so the exemption does not apply.  *Id.* at 24; *see* Section III(B)(2)(b)(i), *supra.*

### iv.    Exemption 7(C)

Mr. Widi incorporates the argument against applying Exemption 7(C) that he made earlier against ATF; in short, "[t]he Governmental misconduct in this case overrides any potential privacy interest of law enforcement or third parties in their identities and the information about Mr. Widi does not implicate a privacy interest on behalf of these individuals."  *Id.* at 25; *see* Section III(B)(2)(b)(ii), *supra.*

### v.    Exemption 7(D)

Mr. Widi hones in on Exemption 7(D)'s legal test—"not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential"—and submits that the "EOUSA index fails to establish that the redacted information was supplied under an expressed or implied assurance of confidentiality."  *Id.* at 25-26 (quoting *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993)).

### vi.    Exemption (F)

Finally, Mr. Widi objects to the withholding of his psychiatric consultation under Exemption 7, which protects against the disclosure of information that could endanger a person's life or safety, on the grounds that he "is the requester in this case" and that the document "was submitted as an exhibit at Mr. Widi's sentencing and therefore it is openly available to the public." *Id.* at 26.

### C.    The Defendants' Reply

The Defendants characterize Mr. Widi's response as a "fishing expedition" trolling a sea of meritless claims. *Defs.' Reply* at 1.

First, although the Court has found that Mr. Widi's request was at least partially cognizable under the PA, *Sept. 30, 2013 Order* at 7-8, 29-30, the Defendants "respectfully submit that the Court's earlier analysis was incorrect, and that all of the documents responsive to [Mr.] Widi's record requests are exempt from the access provisions of the PA." *Defs.' Reply* at 3.  The thrust of the Defendants' argument is 5 U.S.C. 552a(j)(2) completely exempts the information Mr. Widi seeks under the PA; i.e., "it is the very '*system of records*' itself that has been exempted from the provisions of the PA.  Not any particular document or documents within the agency's files." *Id.* at 5 (emphasis in original) (footnote omitted) (citing *Miller v. Dir. of FBI*, No. 77 C 3331, 1987 WL 18331, at *2 (N.D. Ill. Oct. 8, 1987)).

Second, the Defendants dispute the notion that EOUSA improperly withheld public records.  *Id.* at 6.  Rather, they claim to have offered them in November 2013 contingent on Mr. Widi accepting a copying fee of $150—an offer he never took them

up on. *Id.* at 6-7. They infer that Mr. Widi already has these documents, as he cites to them in his briefs, *id.* at 7 n.7; nonetheless, they renew their offer contingent on Mr. Widi paying the fee. *Id.* at 7.

Third, the Defendants assert that ATF's search was adequate. They refer to the third affidavit submitted by Stephanie M. Boucher, ATF's Disclosure Division Chief, which she submitted in response to Mr. Widi's opposition and in which she defends the adequacy of ATF's search. *Id.* at 10 (citing *Third Boucher Decl.*). The Defendants urge the Court to interpret ATF's supplemental production of records to Mr. Widi on January 29, 2016—after undertaking "a page-by-page comparison between the records contained in Widi's criminal file against documents previously released to him"—as evidence of the agency's good faith in correcting errors as opposed to any bad faith for making them in the first place. *Id.* at 11 (citing *Maynard*, 986 F.2d at 565; *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986)).

Fourth, the Defendants maintain that ATF properly applied Exemptions 6 and 7(C). Focusing on the latter, they argue that the privacy interest in identifying information contained in law enforcement files makes it "'categorically exempt' from disclosure." *Id.* at 13 (quoting *Lazaridis v. U.S. Dep't of State*, 934 F. Supp. 2d 21, 38 (D.D.C. 2013)). The FOIA requester then must present "a countervailing public interest in disclosure," *id.* (quoting *Boyd v. EOUSA,* 87 F. Supp. 3d 58, 71 (D.D.C. 2015)), and "[t]he only relevant public interest for purposes of Exemption 7(C) is that of shedding light on the agency's performance." *Id.* (citing *Davis v. U.S. Dep't of Justice,* 968 F.2d 1276, 1282 (D.C. Cir. 1992)). According to the Defendants, Mr. Widi

wants government information for his own use, and not to assess agency performance more abstractly. *Id.* Furthermore, to the extent Mr. Widi claims he seeks to uncover government misconduct in his case, the Defendants say that he "must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* at 14 (quoting *Favish,* 541 U.S. at 172). The Defendants think Mr. Widi offers fanciful theories but no hard evidence. *Id.* at 15.

Fifth, the Defendants cite a string of authorities in support of their view that ATF's withholding of law enforcement database codes is "precisely the type of information contemplated by Exemption 7(E)" because "an intruder could circumvent agency functions" by "alter[ing] or creat[ing] false records." *Id.* at 16 (collecting cases). They also assert that ATF's functions would be harmed if they were forced to release "the checklist that outlines the requirements needed to advance a case from the investigatory phase into the prosecutorial phase." *Id.*

Sixth, the Defendants insist that ATF properly applied Exemption 7(F) to protect law enforcement and informant information. *Id.* Though Mr. Widi takes the position in his opposition that this is a misunderstanding, that he was simply readjusting his tie, the Defendants point to the trial judge's finding that Mr. Widi "did make a throat-slashing movement." *Id.* at 17 (quoting *United States v. Widi,* 2:09-cr-00009-GZS, *Tr. of Proceedings* 89:23-24 (ECF No. 286)).

Seventh, the Defendants contend that Mr. Widi is "simply wrong" that EOUSA did not process documents that ATF referred to it. *Id.* at 17-18.

Finally, the Defendants turn their attention to Mr. Widi's arguments against EOUSA. They label Mr. Widi's protestations about the inadequacy of EOUSA's *Vaughn* Index "simply nonsensical." *Id.* at 19. They find his claims concerning grand jury materials "equally unfounded," as "the materials withheld by EOUSA clearly fall with[in] the purview of Rule 6(e) and Exemption 3 . . . ." *Id.* (collecting cases). Lastly, the Defendants portray Mr. Widi's opposition to EOUSA's assertion of Exemption 7(D) "meritless," and if the Court were to credit his opposition on this point, they believe the documents would qualify under another exemption regardless. *Id.* at 20.

### D.   Mr. Widi's Surreply

In his surreply, Mr. Widi does not admit, deny, or qualify the Defendants' reply statement of additional material facts; instead, he largely rehashes the arguments in his opposition. *Pl.'s Surreply*.

He complains that the ATF and EOUSA still have not responded to his PA requests, again points out that the Court earlier suggested his request is cognizable under the PA, and writes that "[t]he law of the case doctrine 'precludes relitigation of the legal issues presented in successive stages of a single case once those issues have been decided." *Id.* at 3-4 (quoting *Field v. Mans*, 157 F.3d 35, 40 (1st Cir. 1998). He alleges that the ATF and EOUSA impermissibly shuffled documents back and forth when they should have been reviewing them. *Id.* at 4-5. Mr. Widi strikes on a new argument by pointing out that though ATF's reply makes much of the fact that it circled back to conduct its own search for documents instead of using EOUSA's search, ATF searched only one of its two databases—i.e., it searched N-Force, but not

40

TECS.  *Id.* at 5.  Regarding public documents, which EOUSA contends it need not disclose because Mr. Widi cites to them and so must already possess them, Mr. Widi writes that the agency must "cough up" the documents regardless.  *Id.* at 6.

Mr. Widi found the ATF's supplemental *Vaughn* index that accompanied their statement of additional material facts inadequate, asserting that "the ATF has adopted a policy of applying Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) as together as a blanket exemption and then providing boilerplate justifications to support the withholding," before marching through arguments presented in his opposition.  *Id.* at 6-12.

## IV.   DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is "material" if it "has the potential to change the outcome of the suit."  *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010)).  A dispute is "genuine" if "a reasonable jury could resolve the point in favor of the nonmoving party."  *Id.* (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

"If the moving party has made a preliminary showing that there is no genuine issue of material fact, the nonmovant must 'produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue.'"  *McCarthy v. City*

*of Newburyport*, 252 Fed. App'x 328, 332 (1st Cir. 2007) (internal punctuation omitted) (quoting *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)).   In other words, the nonmoving party must "present 'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Bos.*, 985 F.2d 1113, 1116 (1st Cir. 1993)).

The Court then "views the facts and draws all reasonable inferences in favor of the nonmoving party." *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011) (citing *Fed. Ins. Co. v. Commerce Ins. Co.*, 597 F.3d 68, 70 (1st Cir. 2010)).   But the Court "afford[s] no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.'" *Tropigas*, 637 F.3d at 56 (quoting *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001)); *accord Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 325 (1st Cir. 2009).

## B.   Privacy Act

The Privacy Act provides:

> Each agency that maintains a system of records shall . . . upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him . . . .

5 U.S.C. § 552a(d)(1).   When an agency withholds documents under the PA and the requester challenges that withholding, the Court undertakes de novo review of the agency action.   *Id.* § 552a(g)(2)(A).   "[T]he burden is on the agency to sustain its

42

action." *Boehm v. FBI*, 948 F. Supp. 2d 9, 17 (D.D.C. 2013) (citing 5 U.S.C. § 552a(g)(2)(A); *Doe v. United States*, 821 F.2d 694, 697-98 (D.C. Cir. 1987) (en banc)).

The Defendants assert a general exemption from disclosure under 5 U.S.C. § 552a(j)(2).  The First Circuit has written that § 552a(j)(2) "exempts from mandatory disclosure records maintained by an agency that performs as its principal function any activity pertaining to the enforcement of criminal laws."  *Church of Scientology*, 30 F.3d at 232 n.12.  The text of the statutory exemption reads:

> The head of any agency may promulgate rules . . . to exempt any system of records within the agency from any part of this section . . . if the system of records is . . . maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of . . . information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual . . . .

5 U.S.C. § 552a(j)(2)(B).  The test for § 552a(j)(2) is twofold.  To qualify for exemption, the withheld records must be (1) "stored in a system of records that has been designated by an agency to be exempt from the Privacy Act's disclosure requirements" and (2) "stored in a system that is 'maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws,' and that consists of 'information compiled for the purpose of a criminal investigation.'"  *Boyd*, 87 F. Supp. 3d at 86; *see also Boehm*, 948 F. Supp. 2d at 18 (setting out this two-part test); *Taylor v. U.S. Dep't of Justice*, 257 F. Supp. 2d 101, 107 (D.D.C. 2003) (same).

The Defendants meet their burden on the two-part test and can permissibly withhold the records under § 552a(j)(2). First, EOUSA's system of records have been designated as exempt from disclosure under the PA. 28 C.F.R. § 16.81(a)(4) (exempting criminal case files from disclosure); *see also* DSMF Attach. 3 *Third Decl. of John F. Boseker* ¶ 11 (ECF No. 305) (asserting PA exemption on behalf of EOUSA) (*Boseker Decl.*). ATF's systems of records have been likewise exempted. *Privacy Act of 1974; Systems of Records*, 68 Fed. Reg. 3553, 3555 (Jan. 24, 2003); *Second Boucher Decl.* ¶¶ 24-26 (asserting PA exemption on behalf of ATF). Second, both EOUSA and ATF are agencies whose "principal function" concerns law enforcement and the information requested by Mr. Widi was "compiled for the purpose of a criminal investigation," as asserted by the declarations of EOUSA's Mr. Boseker and ATF's Ms. Boucher. *Boseker Decl.* ¶ 11; *Second Boucher Decl.* ¶ 25. The caselaw supports their assertions. *Boyd*, 87 F. Supp. 3d at 87 ("[I]t is plain that EOUSA's 'principal function' involves the enforcement of criminal laws") (quoting 5 U.S.C. § 552a(j)(2)(B)); *Barouch v. U.S. Dep't of Justice*, 87 F. Supp. 3d 10, 32 (D.D.C. 2015) ("[I]t is plain that ATF is an agency 'which performs as its principal function any activity pertaining to the enforcement of criminal laws'") (quoting 5 U.S.C. § 552a(j)(2)(B)).

It bears mentioning that the Court's ruling on this point differs from the conclusion it reached in its September 30, 2013 order.[16] *See Sept. 30, 2013 Order* at

---

[16]     In particular, the Court wrote "PA subsection (j) does not permit exemptions from subsection (d)—the provision allowing individuals to access their own records." *Sept. 30, 2013 Order* at 7. But § 552a(j)(2) permits an agency "to exempt any system of records within the agency from any part of this section *except for* [list of subsections not including (d)]." 5 U.S.C. § 552a(j)(2) (emphasis supplied).

7-8, 29-30.  The Defendants revisited the issue and briefed it more fully, and the Court has reconsidered its position and determined that the Defendants are entitled to exemption under § 552a(j)(2).[17]  *Defs.' Mot.* at 4-5.

This does not, however, end the discussion.  Where—as here—a requester challenges the withholding under both PA and FOIA, "the responding agency 'must demonstrate the documents fall within some exemption under *each* Act." *Boyd*, 87 F. Supp. 2d at 86-87 (emphasis in original) (quoting *Martin v. Office of Special Counsel, Merit Sys. Prot. Bd.*, 819 F.2d 1181, 1184 (D.C. Cir. 1987)).  That is to say, documents which must be disclosed under FOIA cannot be protected by PA, and vice versa. *Martin*, 819 F.2d at 1184 ("If a FOIA Exemption covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act; if a Privacy Act exemption but not a FOIA exemption applies, the documents must be released under FOIA").  The Court turns to FOIA.

## C.    Freedom of Information Act

### 1.    Generally

---

Because § 552a(d) is not included among the subsections excepted from the exemption, § 552a(d) may be exempted by § 552a(j)(2).

As an alternative, the Court considered exemption under 5 U.S.C. § 552a(k)(2).  The First Circuit has succinctly described the difference between subsections (j)(2) and (k)(2): "Section (j)(2) exempts from mandatory disclosure records maintained by an agency that performs as its principal function any activity pertaining to the enforcement of criminal laws.  Section (k)(2) of the Act similarly exempts certain investigatory materials compiled for law enforcement purposes in other than criminal matters." *Church of Scientology*, 30 F.3d at 232 n.12.  Contextually, these facts present a question of the enforcement of criminal laws, so they fall squarely within the domain subsection (j)(2)—and not (k)(2).  That being the case, the Court has addressed the parties' claims under § 552a(j)(2) and need not reach § 552a(k)(2).

[17]      The law of the case doctrine, cited by Mr. Widi, does not persuade the Court otherwise.  While "[a] presumption against reconsideration makes sense" for reasons of judicial efficiency, "a trial court could not operate justly if it lacked power to reconsider its own rulings as an action progresses toward judgment."  18B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FED. PRACTICE AND PROCEDURE § 4478.1 (2d ed. 2002).

In passing FOIA, Congress intended "to establish a general philosophy of full agency disclosure and to close the loopholes which allow agencies to deny legitimate information to the public." *GTE Sylvania, Inc. v. Consumers Union of the U.S., Inc.*, 445 U.S. 375, 385 (1980) (citations and internal quotation marks omitted).   FOIA "expose[s] the operations of federal agencies 'to the light of public scrutiny,'" *Carpenter v. U.S. Dep't of Justice*, 470 F.3d 434, 437 (1st Cir. 2006) (quoting *Dep't of the Air Force v. Rose,* 425 U.S. 352, 372 (1976)), and "furthers the right of citizens to know 'what their government is up to.'" *Id.* (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 773 (1989)).   The statute directs federal agencies to provide public access to their records unless the materials fall into one of its exemptions.   5 U.S.C. § 552(a)(3) (listing nine exemptions).   When the agency asserts that a document is exempt from disclosure, the "government bears the burden of demonstrating the applicability of a claimed exemption . . . and the district court must determine de novo whether the queried agency has met this burden . . . ." *Church of Scientology*, 30 F.3d at 228.   "The nine exemptions are to be construed narrowly, with any doubts resolved in favor of disclosure." *Carpenter*, 470 F.3d at 438 (quoting *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988)); *see also Aronson*, 973 F.2d at 966 ("[C]ourts have interpreted the disclosure provisions generously, in order to achieve the FOIA's basic aim: sunlight").   While each FOIA request must reasonably describe the records sought, the "agency also has a duty to construe a FOIA request liberally." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).   Finally, regarding FOIA's application within the particular context

of a motion for summary judgment, the Court may grant summary judgment "on the basis of the agency's accompanying affidavits or declarations if they describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 737 (D.C. Cir. 1981) (collecting cases). The Court first considers the adequacy of the search, and then the withholdings and redactions under each claimed exemption.

### 2.   Threshold Inquiry: Adequacy of the Search

#### a.   Law

"The adequacy of an agency's search for documents under the FOIA is judged by a standard of reasonableness and depends upon the facts of each case." *Moffat v. U.S. Dep't of Justice*, 716 F.3d 244, 250, 254 (1st Cir. 2013) (quoting *Maynard*, 986 F.2d at 559). In assessing adequacy, the focus is not on "whether relevant documents exist, but whether the agency's search was 'reasonably calculated to discover the requested documents.'" *Id.* (quoting *Maynard*, 986 F.2d at 559). In other words, it "is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Id.* (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)). "A search need not be exhaustive." *Fowlkes v. Bureau of ATF*, 67 F. Supp. 3d 290, 297 (D.D.C. 2014) (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985)).

Regarding burdens, the agency bears the initial burden of showing the adequacy of its search, which it can meet by—for instance—offering affidavits describing the search. *Moffat*, 716 F.3d at 254 (citing *Iturralde*, 315 F.3d at 314-15). The Court may rely upon agency affidavits so long as "they are relatively detailed and nonconclusory, and are submitted by responsible agency officials in good faith." *Maynard*, 986 F.2d at 559 (citations omitted). The affidavits, at a minimum, should "describe in reasonable detail the scope and method by which the search was conducted." *Id.* (citations omitted). If the agency meets its burden, then the requester can rebut the affidavits "only by showing that the agency's search *was not made in good faith*." *Moffat*, 716 F.3d at 254 (emphasis in original) (quoting *Maynard*, 986 F.2d at 560).

### b.    Application

Mr. Widi confines his claim of inadequate search to ATF. *Pl.'s Opp'n* at 8-10. In particular, he argues that "the standard practice and procedure were not utilized in this case," as ATF "used information obtained from the EOUSA to conduct its search rather than conducting its own search through 'N-FORCE' or 'TECS.'" *Id.* at 8. Indeed, Ms. Boucher of ATF admits the agency originally relied on information provided by EOUSA because it was "the same information that would have been pulled from an N-FORCE and/or TECS search." DSMF Attach. 4 *Second Decl. of Stephanie M. Boucher* ¶ 22 (ECF No. 305) (*Second Boucher Decl.*). After Mr. Widi's objection, however, Ms. Boucher describes ATF's process of circling back, conducting its own N-Force search, and confirming that the "N-Force file relating to Mr. Widi is

48

the same file as the one retrieved, processed, and released to Mr. Widi in 2014." *Third Boucher Decl.* ¶ 18-19. So, although "the information present in the records referred to ATF by EOUSA nullified the need to conduct a preliminary inquiry via N-Force or TECS," "a Specialist in the Disclosure Division conducted a search for records in N-Force using Mr. Widi's first and last name, date of birth and social security number." *Id.* at 17-18. N-Force, as explained in Ms. Boucher's earlier declaration, "is a case management system designed to support ATF law enforcement operations and acts as a single-point of data entry system, which enables users to store, utilize, and query investigative information, and to prepare investigative documents." *Second Boucher Decl.* ¶ 22 n.6.

ATF's additional efforts, however, do not placate Mr. Widi. He asserts that the agency "never conducted a search of the TECS database, which may have produced records other than those pertaining to Mr. Widi's criminal case." *Pl.'s Surreply* at 5. Despite EOUSA's search, which he has not challenged, and ATF's N-Force search, which revealed the same file as EOUSA's search, Mr. Widi would have the Court declare ATF's search inadequate because the agency did not run yet another search using the TECS database. The law is that a search must be reasonable, not exhaustive.

Mr. Widi argues that ATF acted in bad faith and lists several documents he believes were improperly withheld. *Pl.'s Opp'n* at 8-10. Following his objection, ATF looked into these documents and subsequently released several of them. *Third Boucher Decl.* ¶¶ 4-13. But the Court refuses to see in the agency's error correction

evidence of bad faith. [18] *See Maynard*, 986 F.2d at 565 ("Rather than bad faith, we think the forthright disclosure by the [agency] that it had located the misplaced file suggests good faith on the part of the agency" (citing *Meeropol*, 790 F.2d at 953).

Given the ample description of the process and the decision to run what turned out to be a redundant search, the Court concludes there is no genuine dispute of material fact as to whether the search was adequate by a standard of reasonableness.

### 3. FOIA Exemptions

#### a. Exemption 3

##### i. Law

Exemption 3 is FOIA's statutory exemption; it provides that material may be "specifically exempted from disclosure by statute" so long as the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A). Here, the Defendants cite Federal Rule of Criminal Procedure 6(e), which protects the secrecy of grand jury proceedings, as the statutory basis for Exemption 3's application. FED. R. CRIM. P. 6(e).

In *Church of Scientology*, the First Circuit analyzed Rule 6(e) within the confines of Exemption 3. 30 F.3d at 235-36. In general, it advised that the scope of grand jury secrecy is "necessarily broad," *id.* at 235 (quoting *Fund for Constitutional Gov't*, 656 F.2d at 869); that it "encompasses not only the direct revelation of grand

---

[18]    Moreover, if the Court were to rule otherwise, i.e., to decide that error correction evidences bad faith, it would be concerned about the reverse incentives that such a ruling would create.

jury transcripts but also the disclosure of information which would reveal 'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like,'" *id.* (quoting *Fund for Constitutional Gov't*, 656 F.2d at 869); and that agency withholdings under Exemption 3—in contrast to other FOIA exemptions—are entitled to "some deference." *Id.*

The *Church of Scientology* Court then identifies three categories of documents with three corresponding tiers of review.  The first category includes documents "whose contents are testimonial in nature or otherwise directly associated with the grand jury process, such as affidavits and deposition transcripts." *Id.* (footnote omitted).  The second category includes "business records or similar documents" that were "created for purposes independent of grand jury investigations" and "have legitimate uses unrelated to the substance of grand jury proceedings." *Id.* (quoting *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1412 (9th Cir. 1993)).  Whereas documents in the first category "ordinarily may be withheld simply on the basis of their status as exhibits," for the second, "the government needs to provide some basis for a claim that releasing them will implicate the secrecy concerns protected by Rule 6(e)." *Id.* (footnotes omitted).  A third category, which has a yet more distant relation to the purposes underlying grand jury secrecy than the second, comprises documents that are "simply located in the grand jury files" without any indication as to "whether the materials impermissibly would reveal the inner working of the grand jury." *Id.* at 236.  Regarding burdens, what is true for the second category applies to the third:

51

the government must "offer some support for its claim that the release of the sought-after documents would compromise the secrecy of the grand jury process." *Id.* (footnote omitted).

### ii.    Application

Mr. Widi contests EOUSA's withholding of eight documents under Exemption 3: Documents 11-12, 15-17, 21, 32, and 36. *Pl.'s Opp'n* at 20. EOUSA withheld all of these documents in full. *Boseker Decl.* ¶¶ 12-15; *Boseker Decl.* Attach. 3 *EOUSA Widi Doc. Index* (ECF No. 305) (*EOUSA Index*). Given the relatively few documents at issue, the Court individually addresses all eight documents.

Several of the documents are "directly associated with the grand jury process" because the government created them in preparing its case for the grand jury. *See EOUSA Index* ¶ 11 ("Prosecution Approved Memo" that was "made in anticipation of grand jury presentation" and "setting forth the case to be presented before the grand jury"); *id.* ¶ 12 (similar document prepared for the superseding, as opposed to the original, indictment); *id.* ¶ 32 (AUSA letters to district court identifying "third party individual grand jury witnesses"). These documents fall within the first category, and the Court concludes that there is no genuine dispute of material fact as to whether they are exempt: they are.

Other documents were created after the grand jury issued a superseding indictment on February 24, 2010. *United States v. Widi*, 2:09-cr-00009-GZS, *Superseding Indictment* (ECF No. 137). These documents nonetheless involve grand jury material. *See EOUSA Index* ¶ 15 (memo regarding grand jury presentation); *id.*

52

¶ 16 (email discussing superseding indictment); *id.* ¶ 17 (email containing prosecution to-do list); *id.* ¶ 21 (letter immunity request relying on grand jury material). Though temporally different in that they were created after, rather than before, the grand jury proceedings, the Court concludes that they may be fairly analogized to the first category because their exemption preserves grand jury secrecy. Moreover, unlike documents in the second category, which have legitimate uses unrelated to the grand jury proceedings, these documents actually arise from the grand jury proceedings. The Court concludes that there is no genuine dispute of material fact as to whether they are exempt: they are.

Lastly, Mr. Widi challenges EOUSA's withholding of 140 pages of "Grand Jury Records." *See id.* ¶ 36. EOUSA identifies three components of the records: (1) fifty pages of grand jury transcripts; (2) five pages of grand jury subpoenas; and (3) eighty-five pages of grand jury exhibits. *Id.* The transcripts and subpoenas are exempt, but EOUSA does not elaborate at all on the contents of the exhibits. The problem for EOUSA is that exhibits, by virtue of their status as exhibits, are not ipso facto entitled to protection. Rather, *Church of Scientology* instructs the Court to distinguish between exhibits that "may be withheld simply on the basis of their status as exhibits" and those for which "the government needs to provide some basis for a claim that releasing them will implicate the secrecy concerns protected by Rule 6(e)." 30 F.3d at 235. The Court is unable to draw this distinction when the extent of its information is the bare claim that the records comprise "85 pages of grand jury exhibits." *EOUSA Index* ¶ 36. Accordingly, the Court concludes that there is a

genuine dispute of material fact as to whether the grand jury exhibits referred to in Document 36 are exempt.

### b. Exemption 5

#### i. Law

Exemption 5 provides that FOIA disclosure provisions do not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court has held that "Exemption 5 incorporates the privileges which the Government enjoys under the relevant statutory and *case law* in the pretrial discovery context." *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799 (1984) (emphasis in original) (quoting *FTC v. Grolier, Inc.*, 462 U.S. 19, 26–27 (1983)). That is to say, "[a]gency documents which would not be obtainable by a private litigant in an action against the agency under normal discovery rules (*e.g.,* attorney-client, work-product, executive privilege) are protected from disclosure under Exemption 5." *Providence Journal v. U.S. Dep't of Army*, 981 F.2d 552, 557 (1st Cir. 1992) (citing *Weber Aircraft Corp.*, 465 U.S. at 799; *EPA v. Mink*, 410 U.S. 73, 86 (1973)). The primary purpose of Exemption 5 is to "enable the Government to benefit from 'frank discussion of legal or policy matters.'" *Grolier*, 462 U.S. at 23 (1983) (quoting S. Rep. No. 813, at 3 (1965)).

EOUSA seeks shelter under two discovery privileges: attorney work product and deliberative process.

To qualify for the deliberative process privilege, "a document must be (1) predecisional, that is, 'antecedent to the adoption of agency policy,' and (2) deliberative, that is, actually 'related to the process by which policies are formulated.'" *Texaco P.R., Inc. v. Dep't of Consumer Affairs,* 60 F.3d 867, 884 (1st Cir. 1995) (quoting *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988)). *Providence Journal* fleshes out the "predecisional" and "deliberative" aspects the privilege. The predecisional requirement is satisfied if the agency can "(i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document precedes, in temporal sequence, the decision to which it relates." *Providence Journal*, 981 F.2d at 557 (citations and quotation marks omitted). A predecisional document qualifies as "deliberative" when the document "(i) form[s] an essential link in a specified consultative processes, (ii) reflect[s] the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." *Id.* at 559 (citation and quotation marks omitted).

To qualify for the attorney work product privilege, EOUSA "must prove that [a withheld document] was prepared under the direction of an attorney in contemplation of litigation." *Church of Scientology*, 30 F.3d at 236 (citations omitted). This means an attorney's work "in anticipation of, or during, litigation." *Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 66 (1st Cir. 2002). The First Circuit has held that "at a minimum, an agency seeking to withhold a document . . . must identify the litigation

for which the document was created (either by name or through factual description) and explain why the work-product privilege applies to all portions of the document." *Id.* at 69 (quoting *Church of Scientology*, 30 F.3d at 237).

### ii.    Application

Mr. Widi contests EOUSA's withholding of ten documents under deliberative process privilege: Documents 19, 22-24, 26-28, 31, 34, and 35.  *Pl.'s Opp'n* at 22. EOUSA withheld all of these documents in full.  *Boseker Decl.* ¶¶ 16-20; *EOUSA Index*.  The Court is satisfied that Documents 19, 22-23, 26-28, and 34 are predecisional and deliberative, and therefore entitled to Exemption 5.  There are, however, genuine disputes of material fact regarding Documents 24, 31, and 35.

- Document 24 reads: "To the extent that inquiry and response [involving health care fraud investigator and paralegal specialist] reflects deliberative process, b5 applied to protect privileged material."  *EOUSA Index* ¶ 24.  This is insufficient, as the Court cannot pinpoint the specific agency decision to which this "agency and response" correlates, let alone determine that the "agency and response" was prepared to assist in the making of that decision.  The Defendants, by writing "[t]o the extent that . . . ," do not even go so far as to actually assert the exemption for the entire document, despite the fact that it is one they have withheld in full.  *Id.*

- Document 31 reads: "[L]egal research withheld as privileged b5 deliberative process . . . ."  *Id.* ¶ 31.  The claim that a document

56

constitutes legal research, without any inkling as to the content of the research or its relevance to the case, does not provide a basis on which the Court can find the document satisfies the predecisional and deliberative requirements of the privilege asserted.

- Document 35 reads: "[AUSA handwritten notes] of conversation with Widi attorney and described conversation with that attorney. . . . All withheld by . . . b5 to protect AUSA deliberative process (fact characterizations and mental impressions)." *Id.* ¶ 35. As Mr. Widi points out in his opposition, the document is dated January 19, 2011, which is several months after he was convicted. *Pl.'s Opp'n* at 23. That being the case, the Court finds that the notes could not have been predecisional with regard to his trial.

  At the same time, Mr. Widi appealed his conviction on October 14, 2010, *United States v. Widi*, 2:09-cr-00009-GZS, *First Notice of Appeal* (ECF No. 255), and the appeal was pending as of January 19, 2011. It is possible that AUSA's handwritten notes relate to issues on appeal and, if so, they could be subject to the deliberative process privilege. Based on the record, however, the Court is unable to determine whether the privilege obtains.

Mr. Widi contests EOUSA's withholding of fifteen documents under attorney work product privilege: Documents 11-12, 14-19, 22-23, 26-28, 31, 34, and 35.[19] *Pl.'s*

---

[19]   Despite Mr. Widi's objection, EOUSA did not assert attorney work product privilege with regard to Document 35, *EOUSA Index* ¶ 35, so the Court will not address it under this rubric.

*Opp'n* at 22.  EOUSA withheld all of these documents in full.  *Boseker Decl.* ¶¶ 16-20;

*EOUSA Index.*  Several of these documents were also withheld under the deliberative

process privilege, as well as other exemptions.  Where a court has already determined

that there is no genuine dispute of material fact that a document qualifies for a

specific exemption, it need not revisit the document to consider whether an

overlapping exemption would also apply.  To the extent that the Court has found a

claimed exemption presents a genuine dispute of material fact, however, it revisits

the document to consider whether it is covered by another claimed exemption.  It

follows that the Court need not revisit Documents 11-12, 15-17, 19, 22-23, 26-28, and

34.  For the first time, the Court reviews and is satisfied that Documents 14 and 18

were prepared under the direction of an attorney in contemplation of litigation, and

therefore entitled to Exemption 5.  There remains, however, a genuine dispute of

material fact as to Documents 31.  As quoted above, Document 31 consists of a one-

sentence assertion that legal research may be withheld pursuant to Exemption 5 via

both the deliberative process and attorney work product privileges.  With regard to

the latter, the Court can identify the litigation for which the document was created,

but EOUSA has not "explained[ed] why the work product privilege applies to all

portions of the document."  *Maine*, 298 F.3d at 69 (quoting *Church of Scientology*, 30

F.3d at 237).  It has thus not met its minimum burden under First Circuit law.  *Id.*

### c.    Exemptions 6 and 7(C)

#### i.    Law

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C), meanwhile, protects "records or information compiled for law enforcement purposes" whose disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). The basic test for both exemptions is the same: it requires the Court to "balance 'the individual's right of privacy' against the basic policy of opening 'agency action to the light of public scrutiny.'" *U.S. Dep't of State v. Ray*, 502 U.S. 164, 175 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976)) (writing in the context of Exemption 6); *see also Church of Scientology*, 30 F.3d at 237-38 ("Exemption 7(C) requires balancing of the privacy interests at issue against any public interest in disclosure") (citing *Reporters Comm.*, 489 U.S. at 762).

Despite the similar standards, there are differences between Exemptions 6 and 7(C). In *Reporters Committee*, the Supreme Court wrote that "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects": first, "whereas Exemption 6 requires that the invasion of privacy be 'clearly unwarranted,' the adverb 'clearly' is omitted from Exemption 7(C)"; second, "whereas Exemption 6 refers to disclosures that 'would constitute' an invasion of privacy, Exemption 7(C) encompasses any disclosure that 'could reasonably be expected to constitute' such an invasion." 489 U.S. at 756 (footnotes omitted). As a consequence, "the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader

than the standard applicable to personnel, medical, and similar files." *Id.* In order to be entitled to this broader standard, however, "the threshold requirement for FOIA Exemption 7(C) is that the document at issue must have been 'compiled for law enforcement purposes.'" *Schoenman v. FBI*, 576 F. Supp. 2d 3, 8 (D.D.C. 2008) (citing 5 U.S.C. § 552(b)(7)). EOUSA and ATF both compiled the information at issue for law enforcement purposes, *see* Section IV.B, *supra*, so they both pass through the 7(C) threshold and gain entitlement to 7(C)'s broader protection.

Confronted with an agency withholding on the dual bases of Exemptions 6 and 7(C), the D.C. Circuit interpreted *Reporters Committee* as allowing for review under only Exemption 7(C) to avoid redundancy: "If the information withheld here was 'compiled for law enforcement purposes,' thus implicating Exemption 7(C), then we would have no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011). The First Circuit has endorsed this economical approach. *Moffat*, 716 F.3d at 250 n.4 ("As Exemption 7(C) protects similar interests and shields a broader range of information, we need not address Exemption 6 separately") (quoting *Roth*, 642 F.3d at 1173).

The Court follows this approach and balances the privacy interests against the public interest in disclosure under only Exemption 7(C). On one side of the ledger, the privacy interest "protects a broad notion of personal privacy, including an individual's interest in avoiding disclosure of personal matters," *id.* at 251 (quoting

*Carpenter*, 470 F.3d at 438), and "guards against a broad range of individuals, including government agents, personnel, confidential sources, and investigatory targets." *Id.*, 716 F.3d at 251 (citing *Maynard*, 986 F.2d at 565). On the other side, the public interest in disclosure advances FOIA's basic purpose of "open[ing] agency action to the light of public scrutiny," *id.* (quoting *Reporters Comm.*, 489 U.S. at 772), but it is not "fostered by disclosure of information about private citizens that is accumulated in various government files but that reveals little or nothing about an agency's own conduct." *Id.* (quoting *Reporters Comm.*, 489 U.S. at 773).

## ii.    Application

Mr. Widi contests the agencies' redactions and withholdings of three categories of documents pursuant to Exemption 7(C): (1) an EOUSA withholding, *Pl.'s Opp'n* at 25; *EOUSA Index* ¶¶ 11-36; (2) an ATF redaction and withholding of documents originating with ATF, *Pl.'s Opp'n* at 11-13; DSMF Attach. 19 *ATF Index* ¶¶ 1-18, 27-31, 40, 45 (ECF No. 305) (*ATF Index I*); and (3) an ATF redaction and withholding of documents referred to it by EOUSA. *Pl.'s Opp'n* at 16-17; DSMF Attach. 20 *ATF Index* ¶¶ 47-50 (ECF No. 305) (*ATF Index II*).

The Court begins with the second and third categories related to ATF. After reviewing the documents redacted and—in the rare instance—withheld in full, the Court is satisfied that Exemption 7(C) protects ATF's documents. In some detail, ATF spells out that the information withheld concerns the identities of law enforcement officials and relevant third parties, and as such, the information implicates the privacy concerns that Exemption 7(C) exists to protect. *ATF Index I* ¶

1-18, 27-31, 40, 45; *ATF Index II* ¶¶ 47-50; *see Moffat*, 176 F.3d at 251.  Further, as in *Moffat*, Mr. Widi "has failed to connect his deeply personal stake in this information to a larger governmental function" in a way that the Court finds persuasive.  176 F.3d at 252.  Nonetheless, information requested by a criminal defendant may constitute a matter of public interest where it "shed[s] light on possible government misconduct," *id.* (quoting *Carpenter*, 470 F.3d at 441), and Mr. Widi has recounted "just some examples that show there was an overwhelming amount of governmental misconduct committed by the ATF and the U.S. Attorney[']s Office in Mr. Widi's criminal case." *Pl.'s Opp'n* at 11-13.  As the Supreme Court commented in *Favish*, "[a]llegations of government misconduct are 'easy to allege and hard to disprove,'" 541 U.S. at 175 (quoting *Crawford-El v. Britton*, 523 U.S. 574, 585 (1998)), and thus, "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* at 174.  The Court, which has come to know this complex, protracted case well and has considered Mr. Widi's allegations of government misconduct on this point, does not find that Mr. Widi has made the sort of "meaningful evidentiary showing" that is required of him.  *Id.* at 175.  There is no genuine dispute of material fact as to the documents withheld or redacted by ATF under Exemption 7(C) and, by extension, Exemption 6.

Turning to the first category related to EOUSA, the Court again considers only those documents that have not been properly withheld under another exemption.  Additionally, not all of the documents that Mr. Widi says EOUSA withheld pursuant

62

to Exemption 7(C) were actually withheld claiming that exemption.  *EOUSA Index* ¶¶ 13, 31.  Mr. Widi is correct, however, that several of EOUSA's claims to Exemption 7(C) with regard to the remaining documents are insufficient.  In contrast to the contested ATF documents reviewed above, most of which it released in redacted form, the contested EOUSA documents were all withheld in full.  Although the heading mentions parenthetically "All Reviewed for Segregability," *EOUSA Index*, only one of the documents—"Character Reference Letters"—gives the Court any assurance that EOUSA properly considered segregability.  *Id.* ¶ 25 ("Letters are both typewritten and handwritten, individually identifiable, with no indication any copy provided to Widi.  All withheld by 7C and 6 to protect each person and information provided from unwarranted invasion of personal privacy.  (Cannot segregate without risk of disclosure of identity and personal opinions)").  The other documents, however, provide no such assurances that EOUSA assessedsegregability after invoking Exemption 7(C).  *Id.* ¶¶ 24, 29-30, 33-36; *see Church of Scientology*, 30 F.3d at 238 (reversing a district court's grant of summary judgment on Exemption 7(C) where the agency's "*Vaughn* index repeatedly fail[ed] to explain why the agency has withheld an entire document rather than releasing it with the identifying information redacted").  Thus, as to EOUSA's wholesale withholding of certain documents, *EOUSA Index* ¶¶ 24, 29-30, 33-36,[20] there is a genuine dispute of material fact on Exemption 7(C) and, by extension, Exemption 6.

---

[20]     The Court refers only to the eighty-five pages of the grand jury exhibits in *EOSUA Index* ¶ 36, as it has already determined that the fifty pages of grand jury transcripts and five pages of grand jury subpoenas are exempt.  *See* Section IV.C.3.a.ii, *supra*.

### d.   Exemption 7(D)

#### i.   Law

Exemption 7(D) protects "records or information compiled for law enforcement purposes" whose disclosure "could reasonably be expected to disclose the identity of a confidential source," as well as "information furnished by a confidential source" when that information was also compiled "in the course of a criminal investigation." 5 U.S.C. § 552(b)(7)(D).  If the agency shows the government acquired the requested information "under an assurance of confidentiality," then the Court need not balance privacy interests against the public interest in disclosure as it does with Exemptions 6 and 7(C).  *Moffat*, 716 F.3d at 252-53 (citing *New England Apple Council v. Donovan*, 725 F.2d 139, 145 (1st Cir. 1984)).  In this way, "Exemption 7(D) provides greater protection to a narrower class of persons than does 7(C)."  *Id.* (footnote omitted) (quoting *New England Apple Council¸* 725 F.2d at 145).

In *Landano*, the Supreme Court considered the evidentiary showing the government must make to establish confidentiality under Exemption 7(D).  508 U.S. at 167.  The *Landano* Court rejected the "categorical"—or, as the Court viewed it, "universal"—exemption pressed by the Government: that it is entitled to an inference of confidentiality "whenever the source provides information to the [agency] in the course of a criminal investigation."  *Id.* at 175, 181.  But in "[m]ore narrowly defined circumstances," there can be "a basis for inferring confidentiality" when, for instance, "the nature of the crime investigated and the witness' relation to it support an inference of confidentiality."  *Id.* at 181.

### ii.    Application

Because ATF did not withhold or redact any documents pursuant to Exemption 7(D), Mr. Widi contests only EOUSA's withholding of documents on this ground. *Pl.'s Opp'n* at 25-26. He again cites to a batch of documents EOUSA withheld in full, *id.* (citing *EOUSA Index* ¶¶ 11-12, 22, 23, 29, 36), and notes that there is only one instance where EOUSA attempts to justify an inference of confidentiality under Exemption 7(D). *Id.* at 26.

The other documents having been found properly withheld under other exemptions, the Court considers Documents 29 and the grand jury exhibits in Document 36 under Exemption 7(D). Document 29 is a psychiatric consultation note, which EOUSA claims "contains highly personal and medical information based upon interview and observation, and recommendation." *EOUSA Index* ¶ 29. EOUSA declares that the note is entitled to "[i]nferred confidentiality in providing to AUSA, subject to withholding by 7D to protect confidential source and contents." *Id.* This is a confounding position for the agency to take. Assuming the note is about Mr. Widi and written after a consultation with him, the Court cannot understand how EOUSA can assert inferred confidentiality on Mr. Widi's behalf given that Mr. Widi is now the party requesting the document.[21] Regarding the grand jury exhibits in Document 36, EOUSA applies "7D to the extent that such individuals giving information to the grand jury would understand that information to be confidential." *EOUSA Index* ¶

---

[21]    Obviously, if the psychiatric note concerns someone other than Mr. Widi, the obverse point applies with equal force, namely that Mr. Widi would have no right to confidential psychiatric information about a third party.

36.  The Court is without grounds on which to decide that the Government elicited the information underlying all eighty-five pages of grand jury exhibits on an inference of confidentiality.  Once again, EOUSA does not make this assertion; instead, it cites Exemption 7(D) only "to the extent that" it might apply.  *Id.*  There is a genuine dispute of material fact as to whether Exemption 7(D) applies to Document 29 and the grand jury exhibits in Document 36 under Exemption 7(D).

### e.  Exemption 7(E)

#### i.  Law

Exemption 7(E) protects "records or information compiled for law enforcement purposes" whose disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  The D.C. Circuit has written that Exemption 7(E) "sets a relatively low bar for the agency to justify withholding," *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011), requiring only that the agency "demonstrate logically how the release of the requested information might create a risk of circumvention of the law."  *Id.* (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).

#### ii.  Application

Mr. Widi contests ATF's application of Exemption 7(E) to two documents: Documents 2 and 40.  *Pl.'s Opp'n* at 13-14 (citing *ATF Index I* ¶¶ 2, 40).  For Document

2, withholding "the case report checklist related to the prosecution recommendation,"

*ATF Index I* ¶ 2, Ms. Boucher's declaration adequately explains the risk:

> The internal case preparation checklists outline the steps and materials needed to move from the investigatory phase of a case to the prosecutorial portion of the case. The checklists outline information required to make each element of the charges. Disclosure of these checklists would provide individuals with the opportunity to know in advance what is needed to investigate and prosecute a criminal case under ATF's jurisdiction.

*Second Boucher Decl.* ¶ 42. For Document 40, withholding "TECS codes" that are "file numbers used to store and retrieve law enforcement information," *ATF Index I* ¶ 40, Mr. Boucher's declaration alleges that these numbers "are primarily used to store and retrieve law enforcement information. Disclosure of such numbers and codes could allow individuals outside the agency to circumvent agency functions and gain access to sensitive investigative information. Access to these databases could also permit an individual to alter or create false records." *Second Boucher Decl.* ¶ 42. Given the low bar, the Court easily concludes that the agency has met its burden. There is no genuine dispute of material fact as to the applicability of Exemption 7(E).

### f.    Exemption 7(F)

#### i.    Law

Exemption 7(F) protects "records or information compiled for law enforcement purposes" whose disclosure "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Exemption 7(F)'s language, the D.C. Circuit has noted, is "very broad": "The exemption does not require that a particular kind of individual be at risk of harm; 'any individual' will do.

Disclosure need not *definitely* endanger life or physical safety; a reasonable expectation of endangerment suffices." *Pub. Emps. for Envtl. Responsibility v. Int'l Boundary & Water Comm'n*, 740 F.3d 195, 205 (D.C. Cir. 2014) (emphasis in original) (citing *Mayer Brown*, 562 F.3d at 1193).

## ii.   Application

Mr. Widi contests ATF's and EOUSA's withholdings and redactions under Exemption 7(F). *Pl.'s Opp'n* at 14-15 (citing *ATF Index I* ¶¶ 1-31, 40, 45); *id.* at 17 (citing *ATF Index II* ¶¶ 47-50); *id.* at 26 (citing *EOUSA Index* ¶ 29). Regarding the ATF documents, Ms. Boucher's declaration asserts that "Mr. Widi received enhanced sentencing for threatening a witness a trial." *Second Boucher Decl.* ¶ 45. Most of the index entries prepared by ATF likewise assert that Mr. Widi "threaten[ed] a witness in open court." *See, e.g., ATF Index I* ¶¶ 1-4, 6-10, 12-16, 19, 21, 28-31. Indeed, as the Defendants point out in their reply, the record from Mr. Widi's criminal trial supports this assertion. *Defs.' Reply* at 16-17; *see United States v. Widi,* 2:09-cr-00009-GZS, *Tr. of Proceedings* 89:23-24 (ECF No. 286) ("I've reviewed the video, he did make a throat-slashing movement"). Mr. Widi protests that even if the Court accepts he threatened a witness, this still would not justify applying Exemption 7(D), as "[t]he question is whether the release of the records would endanger any individual, not whether Mr. Widi poses a danger to any individual." *Pl.'s Opp'n* at 15. This argument is without merit, and there is no genuine dispute of material fact as to ATF's withholdings and redactions under Exemption 7(F).

Regarding the EOUSA document, Mr. Boseker's declaration states that "[c]ertain individuals, confidential informants, and witnesses providing information about Mr. Widi and his criminal conduct have expressed fear for their safety. EOUSA was advised that Mr. Widi threatened a witness." *Boseker Decl.* ¶ 40. But the index entry prepared by EOUSA proclaims a concern about Mr. Widi's safety, not that of others; it applied Exemption 7(F) to the psychiatric consultation "due to potential for harm to Widi should document be disclosed to general prison population." *EOUSA Index* ¶ 29. The Court does not understand how release of this document to Mr. Widi could endanger Mr. Widi's safety. There remains a genuine dispute of material fact as to Document 29.

### 4. Remaining FOIA Issues

#### a. Referrals under FOIA

##### i. Law

As one recent decision addressing the issue of referrals from one agency to another under FOIA put it, it is "axiomatic" that "[i]f an agency receives a FOIA request for documents within its possession, the agency is responsible for processing the request and cannot simply refuse to act on the ground that the documents originated elsewhere." *Gahagan v. U.S. Citizenship & Immigration Servs.*, No. CV 15-2540, 2015 WL 7777982, at *6, 2015 U.S. Dist. LEXIS 161610, at *18 (E.D. La. Dec. 2, 2015) (quoting *Unrow Human Rights Impact Litig. Clinic v. U.S. Dep't of State*, No. 13–CV–1573 (KBJ), 2015 WL 5730606, at *11, 2015 U.S. Dist. LEXIS 131648, at *34 (D.D.C. Sept. 29, 2015)). That said, an agency in possession of

documents may transfer them to the agency from which they originated for review. *Keys v. Dep't of Homeland Sec.*, 570 F. Supp. 2d 59, 66-67 (D.D.C. 2008) (citing *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983)).  Explaining the approach set out in the D.C. Circuit's seminal *McGehee* decision, the *Keys* Court wrote:

> The legality of such referral procedures is "best determined on the basis of their consequences."  A referral system constitutes a "withholding" under FOIA "if its net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them."  A withholding of this sort "will be deemed 'improper' unless the agency can offer a reasonable explanation for its procedure."

*Id.* at 66-67 (quoting *McGehee*, 697 F.2d at 1110).

### ii.    Application

Seizing on the Court's language in its earlier order that "FOIA requires that the agency produce the records, not refer them to another agency," *Sept. 30, 2013 Order* at 26, Mr. Widi argues in his opposition and in his surreply that EOUSA and ATF have impermissibly shuffled documents back and forth among themselves.  *Pl.'s Opp'n* at 15; *Pl.'s Surreply* at 4.  The Defendants, meanwhile, say that "there is nothing nefarious about one agency's referral of documents to another agency where the records originated.  In fact, FOIA regulations expressly provide for such referrals." *Defs.' Reply* at 18 n.11 (citing *Smith v. EOUSA*, 69 F. Supp. 3d 228, 238 (D.D.C. 2014); 28 C.F.R. § 16.4(d)(2)).

While the Court earlier suggested referrals under FOIA may be impermissible, it now has the referral issue properly before it and decides to follow *McGehee* and its progeny.  Mr. Widi first argues that referrals are an instance of "improper

handling"—i.e., that the very fact of a referral constitutes impropriety.  *Pl.'s Opp'n* at

15.  The Court rejects this view.  *Cf. Gahagan*, 2015 WL 7777982, at *6 ("Because

plaintiff's only argument in favor of summary judgment is that referral of documents

responsive to a FOIA request is *per se* unlawful, plaintiff's motion is denied with

respect to referral").  Mr. Widi then argues that "[a]s a result of this mishandling of

the records the ATF has now located 92 pages of records and it is very likely that

other records have also been lost in the shuffle."  *Pl.'s Surreply* at 4.  But Mr. Widi

has not shown how referrals between ATF and EOUSA caused the ATF's late

disclosure of ninety-two pages of requested documents on January 29, 2016.  *See*

DRSMF ¶¶ 4-20 (explaining that ninety-two pages of documents were omitted from

the April 2014 original release, in part as a consequence of "administrative oversight,"

and not released until about twenty months later in the January 2016 additional

release).  The Court does not consider the agencies' handling of Mr. Widi's FOIA

request on this score to be an exemplar of administrative efficiency, but it is unable

to conclude that the oversight was a consequence of referral.  It therefore finds the

referrals permissible under the law.

### b.    Release of Public Records

In its earlier order, the Court wrote that "the Defendants have made no effort

to defend" their position that Mr. Widi must make a separate request for public

records and agree to pay a copying fee for them.  *Sept. 30, 2013 Order* at 27.  In

response to Mr. Widi's complaint that they still have not released the public records,

*Pl.'s Opp'n* at 7-8, the Defendants finally mounted a defense of their position.  *Defs.'*

*Reply* at 6-7.  EOUSA may charge copying fees, 5 U.S.C. § 552(a)(4)(A)(ii), so long as they are set out in regulations, *id.* § 552(a)(4)(A)(i); *see* 28 C.F.R. 16.11(c)(2) (regulation establishing copy fee at ten cents per page).  The Defendants represent that if Mr. Widi writes to request the public records and agrees to pay the fee, "he will receive them."  *Defs.' Reply* at 7.  The Court accepts the Defendants' position.  *See, e.g.*, *Cunningham v. Holder*, 842 F. Supp. 2d 338, 345-46 (D.D.C. 2012) ("Plaintiff here failed to pay the required copying fees, failed to request a waiver of those fees, failed to raise this issue in his appeal to OIP, and failed to submit a specific request for public records as required by EOUSA. . . .  Plaintiff has a simple option if he truly seeks to obtain these public records: he may request the documents following the procedures that EOUSA outlined in its response letter").  The ball is in Mr. Widi's court; if he wishes to obtain copies of public records, he should write EOUSA.

## V.  CONCLUSION

The Court GRANTS in part and DENIES in part the Defendants' Motion for Summary Judgment on Count XVIII (ECF No. 302).  The Court GRANTS summary judgment with the exception of the documents listed below, for which the Court finds there remain genuine disputes of material fact for the reasons stated in the order.  The EOUSA must either file a supplemental *Vaughn* index explaining the bases for the withholding in keeping with this order or release the documents within thirty days of this Order.

1. *EOUSA Index* ¶ 24

2. *EOUSA Index* ¶ 29

3.  *EOUSA Index* ¶ 30

4.  *EOUSA Index* ¶ 31

5.  *EOUSA Index* ¶ 33

6.  *EOUSA Index* ¶ 34

7.  *EOUSA Index* ¶ 35

8.  Grand jury exhibits portion of *EOUSA Index* ¶ 36.

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 16th day of August, 2016