UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DAVID J. WIDI, JR.,                    )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )        2:12-cv-00188-JAW
                                       )
PAUL MCNEIL, et al.,                   )
                                       )
            Defendants.                )

## ORDER ON MOTION FOR RECONSIDERATION

In this long-pending lawsuit, the Court addresses the Plaintiff's motion to be allowed to proceed with numerous claims arising out of a law enforcement search and seizure that took place at his residence on November 28, 2008. The Court allows some of the claims to go forward against some defendants and rejects other claims against other defendants.

## I.    PROCEDURAL HISTORY

On February 11, 2015, the Court issued a forty-seven-page screening order in which it granted David J. Widi, Jr.'s motion for leave to amend his complaint as to certain counts and denied it as to others. *Screening Order, Order Vacating in Part Earlier Order Den. Mot. for Leave to File Second Am. Compl. as to Served Defs., Order Granting in Part Mot. to File Second Am. Compl., Order Striking Portions of the Second Am. Compl., and Order Den. Mot. to Stay* (ECF No. 270) (*Screening Order*). On May 4, 2015, Mr. Widi filed a motion asking the Court to reconsider its screening order. *Mot. for Recons.* (ECF No. 292) (*Recons. Mot.*). On December 8, 2015, the Court

issued an order denying Mr. Widi's motion for reconsideration of its screening order. *Order on Mot. for Recons. and Mot. Pursuant to Fed. R. Civ. P. 60* (ECF No. 325) (*Recons. Order*). In that order, the Court required Mr. Widi to produce some documentary evidence to support the allegations set forth in certain counts in his Second Amended Complaint. *Id.* at 1.

On March 24, 2016, Mr. Widi responded to the Court's order and filed a motion asking the Court to reconsider its December 8, 2015 order denying his motion to reconsider its screening order. *Resp. to Order on Mot. for Recons. and Mot. Pursuant to Fed. R. Civ. Pro. 60 with Accompanying Documentary Evid. and Mot. for Disc.* (ECF No. 351) (*Widi Mot.*). The Defendant, Special Agent Paul McNeil, filed an opposition on April 15, 2016. *McNeil's Opp'n to Pl.'s Resp. to Order on Mot. for Recons.* (ECF No. 354) (*McNeil Opp'n*). On May 5, 2016, Mr. Widi filed a reply. *Reply to McNeil's Opp'n to Pl.'s Resp. to Order on Mot. for Recons.* (ECF No. 356) (*Widi Reply*).

The Court previously addressed two portions of Mr. Widi's March 24, 2016 motion. On October 3, 2016, the Court refused to reinstate the dismissed claims against Defendant Special Agent McNeil. *Order Den. Mot. to Compel Disc. and Strike* (ECF No. 368). On November 21, 2016, the Court denied Mr. Widi's demand for recusal. *Recusal Order* (ECF No. 384). The Court now turns to the remainder of the claims in Mr. Widi's March 24, 2016 motion.

## II. BACKGROUND

### A. The February 11, 2015 Screening Order

On February 11, 2015, the Court issued a screening order, addressing the claims left unscreened by the Magistrate Judge's July 13, 2012 screening order. *Screening Order*. Mr. Widi's First Amended Complaint contained fourteen counts and named thirty-five defendants. *First Am. Compl.* (ECF No. 15). Mr. Widi's Second Amended Complaint contained eighteen counts and named fifty defendants. *Second Am. Compl.* (ECF No. 191). In its February 11, 2015 order, the Court granted Mr. Widi's motion for leave to amend to file a second amended complaint regarding Count Two (the Excessive Force Claim), Count Thirteen (the Unlawful Probation Search claim) as against Detective Kevin Curran only, and Count Eighteen (the Freedom of Information Act / Privacy Act claim) as against the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the Executive Office of the United States Attorney, and the Office of Information Policy. *Screening Order* at 46–47. However, the Court did not allow Mr. Widi to proceed on a number of the counts in the proposed Second Amended Complaint. *Id.* at 46.

### B.      The Motion to Reconsider and Order on Motion to Reconsider

On May 4, 2015, Mr. Widi objected to the Court's screening order. *Recons. Mot.* On December 8, 2015, the Court declined to alter its screening order but allowed Mr. Widi thirty days to move to amend his Second Amended Complaint as to certain counts. *Recons. Order* at 1. However, worried that Mr. Widi was shifting the factual allegations to respond to the Court's rulings, the Court required him to produce documentary evidence to support his newest allegations. *Id.* at 1, 25.

### C.      The Motion to Reconsider the Order on the Motion to Reconsider

On March 24, 2016, Mr. Widi both objected to the Court's December 8, 2015 reconsideration order and responded to the Court's order for documentary evidence supporting his newest allegations. *Widi Mot.* at 1–27. Mr. Widi's first contention is that in performing its screening review under 28 U.S.C. § 1915A, the Court erred in imposing a summary judgment standard against him. *Id.* at 1–3. Mr. Widi next objects to the Court's analysis of *Bailey v. United States*, 133 S. Ct. 1031 (2013). *Widi Mot.* at 3–5. Mr. Widi also objects to the Court's conclusions about the timeliness of his claims against Special Agent McNeil. *Id.* at 5–9. Mr. Widi responds to the Court's stated concerns about his allegations against Officer Moya of the EPD. *Id.* at 9–12. He also explains his ownership of the van. *Id.* at 12–14. Next, he argues that the search warrant in this case did not authorize a sniff search of the van. *Id.* at 14–16. Mr. Widi turns to the grey trailer and explains why he contends the search was impermissible. *Id.* at 16–18. Mr. Widi next addresses the seizure of the motorcycle and why he contends the seizure was impermissible. *Id.* at 18–21. Mr. Widi then reviews his defamation claim and argues that his allegations meet legal standards. *Id.* at 21–23. Mr. Widi reargues the Court's order on the motion for summary judgment in the probation search. *Id.* at 23–25. Finally, Mr. Widi contests the Court's ruling on prosecutorial immunity. *Id.* at 25–27.

### D. Special Agent McNeil's Opposition

Special Agent McNeil opposed Mr. Widi's motion for reconsideration. *McNeil Opp'n.* First, Special Agent McNeil contends that Mr. Widi failed to comply with the time deadlines of the Court's rules and orders. *Id.* at 4–6. Next, Special Agent McNeil

defends the Court's decision to require Mr. Widi to present some documentary evidence confirming the allegations in his second amended complaint.  *Id.* at 6–10.

### E.    David Widi's Reply

On May 5, 2016, Mr. Widi filed a reply.  *Widi Reply*.  Mr. Widi reiterates his arguments about the Court applying a summary judgment standard to his motion to amend the complaint.  *Id.* at 2–4.  He then accuses Special Agent McNeil of twisting facts and misleading the Court concerning the timeliness of his filings.  *Id.* at 4–5. Mr. Widi also addresses both the motorcycle and van counts.  *Id.* at 5–8.  Finally, he turns to the Right to Financial Privacy count.  *Id.* at 8–10.

## III.    DISCUSSION

### A.    Timeliness

In his objection, Special Agent McNeil argues that Mr. Widi's motion for reconsideration is untimely.  *McNeil Opp'n* at 4–5.  Mr. Widi replies that he has had difficulty receiving his legal mail due to the policies of the Federal Correctional Institute Pollock.  *Widi Reply* at 4–5.  The Court is aware that Mr. Widi, as well as other inmates, have experienced difficulty obtaining legal mail sent to them by the Clerk's Office in the District of Maine because the name of the Clerk of Court did not appear on the return address.[1]  *Order Dismissing Mot. for Ct. Intervention and Granting Mot. to Enlarge Time to File Resp.* (ECF No. 227); *United States v. Nóbrega,*

---

[1]    As the Court noted in its April 7, 2014 order, the return address for mail from the Clerk's Office listed only that it was from the Clerk's Office, and some federal correctional institutions interpreted 28 C.F.R. § 540.18(a) as requiring that a person's name be identified in the return address.  *Order Dismissing Mot. for Ct. Intervention and Granting Mot. to Enlarge Time to File Resp.* at 1–3.  As of April 2014, however, the Clerk's Office changed its practice and typed in the name of the Clerk of Court for the District of Maine in the return address.  *Id.* at 2–3.  This change in practice seems to have satisfied BOP requirements.

No. 1:10-cr-00186-JAW, *Order on Def.'s Mot. Concerning the Warden's Mail Practices* (ECF No. 357). In light of this difficulty, the Court is unable to conclude that Mr. Widi failed to timely comply with the deadlines because it is unclear when he actually received the Court's orders.

## B. Applying a Summary Judgment Standard to a Screening Order

The Court rejects Mr. Widi's accusation that by requiring him to produce some documentary evidence of his newest allegations, it is applying a summary judgment standard to its screening authority under 28 U.S.C. § 1915A and his motion for leave to amend under Federal Rule of Civil Procedure 15(a). The Court is doing nothing of the kind. Instead, the Court is attempting to manage the litigation that Mr. Widi filed on June 13, 2012, over three years ago—making it the second oldest civil case assigned to this Judge—so that frivolous claims are ejected and only potentially meritorious claims proceed.

More significantly, based in part on the Court's past experience with Mr. Widi,[2] the Court became concerned that Mr. Widi was tailoring his factual allegations to meet the Court's rulings. The clearest example is his allegation concerning ownership of his company van. In its February 11, 2015 screening order, the Court observed that in his Second Amended Complaint, Mr. Widi listed Widi Tile Company

---

[2] In 2013, the Court addressed another of Mr. Widi's civil complaints against a host of governmental defendants. *Widi v. U.S. Dep't of Justice*, Civil Docket No. 1:11-cv-00113-JAW. Mr. Widi made all manner of allegations against persons attempting to carry out an order of Judge George Z. Singal. Fortunately, the activities of Mr. Widi and the Defendants were captured on videotape and, once the Court viewed the videotape, it concluded that the "disparity between Mr. Widi's allegations and the actual contents of the disc are so extreme that the Court conclude[d] that allowing Mr. Widi to proceed on his allegations would perpetuate a fiction and would only waste judicial time and governmental resources." *Id.*, *Order Dismissing Case* (ECF No. 118). On October 20, 2015, the Court's dismissal was affirmed by the Court of Appeals for the First Circuit. *Id.*, *J.* (ECF No. 134).

LLC as a party plaintiff and had asserted claims on its behalf for an allegedly illegal seizure of the company van. *Screening Order* at 37–39 (citing *Second Am. Compl.* at 25–26). In its screening order, the Court ruled that Mr. Widi could not proceed with a claim on behalf of his incorporated business. *Id.* In response, Mr. Widi changed his allegation to assert that he, not Widi Tile Company LLC, was the true owner of the company van. *Recons. Mot.* at 9–10. The Court was naturally skeptical about this change in allegation, and before allowing Mr. Widi to proceed with his newest allegation of the ownership of the company van, the Court required Mr. Widi to produce some documentary evidence as to the true owner. *Recons. Order* at 12–16. As Mr. Widi had added new allegations to his other counts, the Court applied the same principle to them as well, requiring him to produce some evidence beyond his own say-so that the factual allegations were true. The Court is not convinced that it should reconsider this part of its order on Mr. Widi's motion to reconsider.

### C.  *United States v. Bailey*

Mr. Widi also objects to the Court's conclusions about whether Special Agent McNeil was entitled to qualified immunity. *Widi Mot.* at 3–5. On September 23, 2013, the Court dismissed Mr. Widi's claim against Special Agent McNeil on the basis of qualified immunity, concluding that at the time of Mr. Widi's arrest, the controlling precedent from the United States Supreme Court allowed the arrest of occupants incident to the execution of a search warrant. *Order Den. Pl.'s Mot to Stay; Den. Pl.'s Mot. to Strike; and Granting Def. McNeil's Mot. to Dismiss* at 13–14 (ECF No. 170). In its February 11, 2015 screening order, the Court applied this same principle to

other Defendants. *Screening Order* at 31–32. On May 4, 2015, Mr. Widi again objected to the Court's reasoning. *Recons. Mot.* at 1–4. On December 8, 2015, the Court issued a third opinion on the issue of qualified immunity. *Recons. Order* at 2–5. On March 24, 2016, Mr. Widi objected a third time to the Court's ruling. *Widi Mot.* at 3–5. For the reasons the Court has repeatedly explained, the Court rejects Mr. Widi's *United States v. Bailey* claim.

### D.     Excessive Force Claim Against Elliot Police Officer Elliott Moya

In its reconsideration order of December 8, 2015, the Court allowed Mr. Widi to amend his Second Amended Complaint if he could present the Court with roughly contemporaneous evidence against Officer Elliott Moya that would provide a foundation for his allegations. *Recons. Order* at 5–7. On March 24, 2016, Mr. Widi submitted a memorandum with an appendix that he claims substantiates his allegations of excessive force against Officer Moya, which is set forth in Count Two of his Second Amended Complaint. *Widi Mot.* at 9–12. The Court has reviewed the appendix and agrees that there is sufficient evidence to allow Mr. Widi to proceed with his excessive force claim against Elliot Police Department Officer Elliott Moya. The Court previously expressed its substantial reservations about a tight handcuff claim, without more, as the basis of a lawsuit against the officer. *Screening Order* at 35 n.7. Nevertheless, based upon the current state of the law, Mr. Widi may proceed against Officer Moya.

### E.     Ownership of the Company Van

In its reconsideration order, the Court allowed Mr. Widi to amend his Second Amended Complaint if he could provide the Court with documentary evidence that he, not Widi Tile Company LLC, was the owner of the van seized in November 2008. *Recons. Order* at 12–17. The Court reviewed Mr. Widi's appendix and agrees that he has presented sufficient evidence for the Court to conclude for purposes of judicial screening of his allegations that he was the owner of the seized van in November 2008.

## F.     The First Sniff Search

In its screening and reconsideration orders, the Court addressed Counts Three, Four, Five, and Six of the Second Amended Complaint. *Screening Order* at 36–39; *Recons. Order* at 10–17. Count Three alleges that law enforcement engaged in an illegal sniff search of his company van while they executed the November 28, 2008 search of his residence but that the sniff test came back negative. *Second Am. Compl.* ¶¶ 76–82. Count Four alleges that law enforcement seized the van by loading it on a flatbed causing Mr. Widi to suffer business damages. *Id.* ¶¶ 83–91. Count Five alleges that on November 30, 2008, law enforcement conducted a second sniff search of the van, which came back positive. *Id.* ¶¶ 92–98. Count Six alleges that law enforcement improperly obtained a search warrant of the van by omitting reference to the first negative sniff. *Id.* ¶¶ 99–104. In its reconsideration order, the Court stated that if Mr. Widi demonstrated that he, not Widi Tile Company LLC, owned the van, it would reinstate Counts Four, Five and Six of the Second Amended Complaint. *Recons. Order* at 16–17.

This is not enough for Mr. Widi. He demands that the Court reinstate Count Three, which alleged that law enforcement engaged in an illegal sniff search of the van while executing the search warrant on November 28, 2008. *Recons. Mot.* at 14–16. He points out that his van was parked in a parking lot behind his apartment building and was not visible from the street. *Id.* at 15. Thus, he argues that his van was located in a "constitutionally-protected area," and the dog sniff violated his Fourth Amendment rights under *Florida v. Jardines*, 133 S. Ct. 1409 (2013). *Id.* at 16.

The Court maintains substantial concerns about the viability of Count Three. The Court accepts as a premise under *United States v. Place*, 462 U.S. 696 (1983) that "a canine sniff is *sui generis*." *Id.* at 707. As the Supreme Court explained in *Place*, a "well-trained narcotics dog" not only does not require the object to be opened to perform a sniff, but also "discloses only the presence or absence of narcotics, a contraband item." *Id.* Thus, the *Place* Court concluded that a canine sniff of luggage in an airport "did not constitute a 'search' within the meaning of the Fourth Amendment." *Id.* Here, a canine sniff that revealed nothing about the contents of Mr. Widi's van falls generally under this principle.

In *Jardines*, the Supreme Court concluded that a canine sniff could constitute a Fourth Amendment violation if the police without a warrant led the dog to the homeowner's front door and the dog alerted to the presence of drugs. 133 S. Ct. at 1415–16. The focus of the *Jardines* Court was whether law enforcement could undertake a warrantless search by entering onto the homeowner's property and

conducting a search without violating the Fourth Amendment. One obvious difference here is that the officers were executing a warrant, and they had a general right to be where they were when they walked around Mr. Widi's van with a trained canine either because to perform the search they had to enter onto the property or because the van was located in a part of the Widi lot that would not have required a search warrant.

The Court is dubious about whether the van was truly within the curtilage of the Widi home within the meaning of *United States v. Dunn*, 480 U.S. 294, 301 (1987) and its progeny. Also, keeping in mind that Mr. Widi is complaining about a search where the dog did not alert on anything inside the van, it is difficult to know exactly what Mr. Widi could possibly gain by claiming damages from an uneventful dog sniff wholly outside his van.

Nevertheless, the Court will relent and allow Count Three to proceed in this case. A screening order under 28 U.S.C. § 1915A is an awkward place for the Court to jettison a claim unless it is "patently meritless and beyond all hope of redemption." *Brown v. Rhode Island*, 511 Fed. Appx. 4, 5 (1st Cir. 2013). Here, Mr. Widi's Count Three remains on the extreme edge of futility, but it is better for the Court to address the legal issues after defense counsel has entered an appearance, particularly since Detective Curran will be represented in Counts Four, Five, and Six of the Second Amended Complaint.

### G. The Van Seizure, the Second Sniff Search, and the Search

#### 1. The Allegations in Counts Four, Five, and Six of the Second Amended Complaint

In Count Four of the Second Amended Complaint, Mr. Widi says that during a pre-search briefing, the ATF, the Maine Drug Enforcement Agency (MDEA), the town of Eliot Police Department (EPD), and the Maine State Police (MSP) Defendants "made plans and agreed to seize Mr. Widi's tile company van, even though it was not listed in the warrant." *Second Am. Compl.* ¶ 84. He claims that while he was held at the town of Eliot police station, Detective Kevin Cady of the EPD attempted to get Mr. Widi to consent to a search of his company van, but Mr. Widi declined to give his consent. *Id.* ¶ 85. Mr. Widi alleges that, despite the negative sniff, Special Agent McNeil "directed the seizure of the van" and that Chief Theodore Short "requested that [Officer Robert] Brown return to Mr. Widi's residence, where [Detective Kevin] Curran directed him to observe the van being loaded on a flatbed." *Id.* ¶ 86. Mr. Widi states that his company van contained his "company tools and business papers, including contracts for tile jobs" and that the "seizure of the van prevented Mr. Widi from completing his tile jobs." *Id.* ¶¶ 87, 89. He seeks damages from being unable to complete and enforce his tile contracts. *Id.* ¶ 91.

In Count Five, Mr. Widi again alleges that the ATF, MDEA, EPD, and MSP Defendants planned to seize his tile company van even though it was not included in the search warrant. *Id.* ¶ 93. He further states that Chief Short and Detective Curran had Corporal Jerome Carr of the MSP "conduct a second sniff search on the van at [Special Agent] McNeil's direction on November 30, 2008, which now came back positive." *Id.* ¶ 94. Mr. Widi claims he suffered unspecified damages as a result of this second sniff search. *Id.* ¶ 98.

Finally, in Count Six, Mr. Widi says that Detective Curran submitted an affidavit in support of a state search warrant to Judge O'Neill of the Maine District Court in York, Maine, "per [Special Agent] McNeil and [Chief] Short's instruction." *Id.* ¶ 101. However, he says Detective Curran, Chief Short, Special Agent McNeil, ATF Agent Glenn Anderson, and ATF Resident Agent Dale Armstrong "agreed to omit information regarding the negative sniff with intentional and reckless disregard for the truth because that fact would have had an adverse [e]ffect on the determination of probable cause." *Id.* ¶ 102. Mr. Widi alleges unspecified damages. *Id.* ¶ 104.

### 2. Parties' Positions

Although Mr. Widi responds to the Court's concern as to whether he or his company owned the company van, he does not anticipate the Court's concern as to who among all the law enforcement defendants was actually responsible for seizing and searching the van. *Widi Mot.* at 12–16.

In his opposition, Special Agent McNeil argues that there is no evidence that he was involved in the seizure and search of the company van. *McNeil Opp'n* at 10, n.5. Special Agent McNeil points out that Judge George Singal's February 23, 2010 order on Mr. Widi's motion to suppress stated that "Agent McNeil arranged for the van to be towed to the impound lot." *Id.*; *United States v. Widi*, 2:09-cr-00009-GZS, *Order on Mot. [to] Suppress and Supp. Mot. to Suppress* at 3 (ECF No. 136). On March 1, 2010, however, the Government moved to correct the record to substitute "Eliot Police [O]fficers" in place of Special Agent McNeil. *Mot. to Correct Record* at 1

(ECF No. 147). On March 4, 2010, Mr. Widi through his counsel filed a notice that he did not object to the Government's motion to correct the record. *Notice* at 1 (ECF No. 148). On March 4, 2010, Judge Singal struck Special Agent McNeil from the suppression order and substituted Eliot Police Officers. *Order on Mot. to Correct the Record* (ECF No. 149).

Mr. Widi replied by criticizing his criminal defense attorney, by claiming that he had no opportunity to object to the motion to correct the record, and by saying that it did not matter who had ordered the seizure and search in the criminal context. *Widi Reply* at 8.

### 3. Analysis

As with its prior order, the Court is reluctant to allow Mr. Widi to engage in a scattershot complaint, naming law enforcement officers who may well have had nothing to do with the seizure and search of the van. Specifically, the Court is not convinced that Special Agent McNeil ordered its seizure; based on the representation of the Assistant United States Attorney, the Court concludes that the officers of the EPD were the ones who seized and searched the van.

Regarding the first canine sniff, which is the subject of Count Three, Mr. Widi's Second Amended Complaint mentions only one officer by name, Detective Curran, other than dismissed Agent McNeil. *Second Am Compl.* ¶ 78.

As listed in Mr. Widi's Second Amended Complaint, the police officers for the town of Eliot involved in the van seizure were Chief Theodore Short, *Second Am. Compl.* ¶ 18, Lieutenant Kevin Cady, *id.* ¶ 19, Officer Robert Brown, *id.* ¶ 20, and

Detective Kevin Curran. *Id.* ¶ 25. The Second Amended Complaint does not allege that other named Eliot police officers were involved in the seizure and search of the van. *Id.* ¶ 21 (Officer Elliott Moya), ¶ 22 (Officer Adam C. Martin), ¶ 23 (Officer Matthew Raymond). The Court will allow Mr. Widi to proceed against Detective Curran on Count Three and Chief Short, Lieutenant Cady, Officer Brown, and Detective Curran on Counts Four, Five, and Six.

## H.    The Grey Trailer

In Count Seven of his Second Amended Complaint, Mr. Widi claims that a number of law enforcement agencies held a briefing in which they "planned and agreed to unlawfully search Mr. Widi's grey trailer that was not listed on the federal search warrant." *Second Am. Compl.* ¶ 106. He also alleges that Judge Singal determined that the search of the grey trailer was not authorized by the warrant. *Id.* ¶ 107. In its screening order, the Court noted that "[u]nlike his other counts, Mr. Widi does not state when law enforcement searched his grey trailer, who among the law enforcement officers searched his grey trailer, and what happened to the trailer following the search." *Screening Order* at 38. The Court concluded that "[s]uch vague allegations do not permit the Court to authorize suit." *Id.* Mr. Widi objected to the Court's order and urged reconsideration. *Recons. Mot.* at 10–11. The Court refused to do so, but the Court allowed Mr. Widi to specify which officers he claimed actually searched the grey trailer. *Recons. Order* at 19.

In his March 24, 2016 motion, after complaining that the delay in this lawsuit has been caused by the Court and explaining that he was "not present" when the

illegal search was conducted, Mr. Widi asserts that the Court may "reasonably infer" that the decision to search his grey trailer was made by the twenty law enforcement officers in the pre-search briefing meeting. *Widi Mot.* at 18. The Court disagrees and will not allow Mr. Widi to maintain a lawsuit against twenty law enforcement officers on the basis of such a speculative inference.

Lastly, Mr. Widi lists the officers he believes were actually involved in the search of his grey trailer. *Id.* In his view, the officers were Officer Robert Brown, Officer Matthew Raymond, Detective Kevin Curran, Eliot Police Chief Theodore Short,[3] Special Agent Paul McNeil, Special Agent Michael Grasso, and Special Agent Stephen E. Hickey, Jr. *Id.*

According to Mr. Widi, his allegation against Detective Kevin Curran, Officer Michael Brown, and Officer Matthew Raymond is based on the contention that "Curran directed Brown and Raymond to observe the seizure of the 'yellow Harley-Davidson motorcycle that was also inside' the grey trailer." *Widi Mot.* at 18. For this proposition, Mr. Widi cites the testimony of Officer Brown. *Id.* (citing App. at A122). The cited portion of the transcript reads:

> When I was in the booking room[,] Officer Moya showed up and said that Chief Short had requested me back at the—Mr. Widi's residence. When I got there[,] Detective Curran directed me to observe National Wrecker loading Mr. Widi's van onto a flatbed. I escorted the van to National Wrecker, watched them offload it inside of their bay. At that point Officer Matthew Raymond, he showed up. Myself and him secured the vehicle with the evidence tape on all the doors and windows.

---

[3] The Complaint and First Amended Complaint listed Theodore Strong as the Chief of the town of Eliot Police Department. *Compl.* at 2, 13-14 (ECF No. 1); *First Am. Compl.* at 2, 13–14 (ECF No. 15). The Second Amended Complaint lists Theodore Short as the Chief of the Eliot Police Department. *Second Am. Compl.* ¶ 18.

> I was requested to go back to Mr. Widi's residence, escort the wrecker back there, and when I arrived we was told there was a yellow Harley-Davidson motorcycle that was also inside—at Mr. Widi's residence. And I observed them load that onto the flatbed and drive it to their bay, which is approximately a mile down the road, offload it, secure it with—

App. at A122:1–18.

As Officer Brown described his actions, they do not state a viable cause of action against him. There is no evidence that Officer Brown actually searched the grey trailer. He merely watched the wrecker company load the trailer onto a flatbed, and he escorted the wrecker with the motorcycle to the wrecker company's lot. Mr. Widi's allegations do not amount to a cognizable cause of action against Officer Brown.

The allegations against Officer Raymond are even more attenuated. Although Mr. Widi says that Officer Raymond observed the seizure of the motorcycle, Officer Brown testified that Officer Raymond joined him at the wrecker lot and assisted him in placing evidence tape around the company van. App. at A122:7–10. Officer Brown did not testify that Officer Raymond went with him back to the Widi residence. *Id.* at A122:11–16 ("I was requested to go back to Mr. Widi's residence, escort the wrecker back there, and when I arrived, we was told there was a yellow Harley-Davidson motorcycle that was also inside—at Mr. Widi's residence. And I observed them load that onto the flatbed…"). Contrary to Mr. Widi's representation, Officer Brown did not say that Officer Raymond was present at the Widi residence when the motorcycle was found or loaded onto the flatbed. Mr. Widi has not produced sufficient evidence to proceed with his claim against Officer Matthew Raymond.

Mr. Widi's allegation against Detective Curran is that he "directed Brown and Raymond to observe the seizure" of the motorcycle. *Widi Mot.* at 18. If Mr. Widi's allegations against Officers Brown and Raymond are insufficient, his claim against Detective Curran must fail, too.

Mr. Widi's allegation against Chief Short is that he "directed Brown to return to Mr. Widi's residence where Curran directed Brown and Raymond to observe the seizure of the 'yellow Harley-Davidson motorcycle that was also inside' the grey trailer." *Id.* The fact that Chief Short ordered one of his officers to return to the Widi residence does not implicate the Chief in the search of the grey trailer. In fact, Mr. Widi expressly claims that it was Detective Curran, not Chief Short, who ordered Officer Brown and Officer Raymond to "observe the seizure of the" Harley-Davidson from the grey trailer. *Id.* Mr. Widi's allegation against Chief Short is insufficient to implead him in Mr. Widi's lawsuit.

Finally, on October 3, 2016, the Court addressed and rejected Mr. Widi's attempt to reinitiate the dismissed claims against Special Agent Paul McNeil. *Order Den. Mot. to Compel Disc. and Strike* (ECF No. 368). In addition, however, Mr. Widi's sole allegation against Special Agent McNeil is that he was "also present when the motorcycle was impounded." *Widi Mot.* at 18. In its September 24, 2013 order granting Special Agent McNeil's motion to dismiss, this Court quoted the First Circuit Court of Appeals in *Calvi v. Knox County*, 470 F.3d 422, 428 (1st Cir. 2006) as stating that the "mere presence" of an officer at a scene "without more, does not by some mysterious alchemy render him legally responsible under [42 U.S.C. § 1983] for

18

the actions of a fellow officer." *Order Den. Pl.'s Mot. to Stay; Den. Pl.'s Mot. to Strike; and Granting Def. McNeil's Mot. to Dismiss* at 20 (ECF No. 170). In his pending motion, Mr. Widi has done no more than allege that Special Agent McNeil was present at what Mr. Widi contends was an illegal seizure. This is not, as a matter of law, sufficient to reinitiate his lawsuit against Special Agent McNeil.

This leaves Mr. Widi's allegations against Special Agent Michael Grasso and Special Agent Stephen E. Hickey, Jr. Mr. Widi's allegations against Special Agents Grasso and Hickey are based on the fact that their names appear on a Photo Log, which lists "Grasso" for Photo 20 as the person who found the evidence, names the location of the photograph as the "Utility Trailer w/ Harley," and lists Stephen Hickey as the photographer. *Id.*, Attach. 2, App. at A32 (App.). Mr. Widi alleges in his motion that this means that Special Agent Grasso found the utility trailer with the motorcycle inside, and Special Agent Hickey took photographs of it. *Widi Mot.* at 18. Mr. Widi attached Photograph 20, which shows an enclosed trailer with the door open and a motorcycle inside. App. at A39.

Mr. Widi's evidence against Special Agents Grasso and Hickey is thin. However, there is at least some documentation that, if true, indicates that Special Agent Grasso found the motorcycle listed in the grey trailer and that Special Agent Hickey took a photograph of its contents. As Mr. Widi points out, the search warrant in this case did not authorize a search of the grey trailer, and the First Circuit makes clear that "[t]he authority to search conferred by a warrant is circumscribed by the particular places delineated in the warrant and does not extend to other or different

19

places." *United States v. Fagan*, 577 F.3d 10, 13 (1st Cir. 2009) (citing *United States v. Bonner*, 808 F.2d 864, 868 (1st Cir. 1986)).

A search occurs when the government "physically occupie[s] private property for the purpose of obtaining information." *United States v. Jones*, 132 S. Ct. 945, 949 (2012). Likewise, a search occurs when the government violates an individual's subjective expectation of privacy that "society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). It appears that the agents opened the enclosed trailer and inspected its contents as part of their wider search for contraband in the apartment and the nearby sheds. Mr. Widi conceivably had a subjective expectation of privacy in his trailer that was objectively reasonable. By opening the trailer and inspecting and photographing its contents without a warrant, Special Agents Grasso and Hickey arguably conducted a search that violated Mr. Widi's rights under the Fourth Amendment. Therefore, the Court will allow Mr. Widi to proceed against Special Agent Michael Grasso and Special Agent Stephen Hickey, Jr.

## I.     Neil Vaccaro's Motorcycle

In its screening order, the Court dismissed Counts Eight and Nine because they spun such a strange and implausible tale that the Court determined they should not proceed. *Screening Order* at 39 (noting that the claims were "too fanciful to generate a federal cause of action"). Counts Eight and Nine allege that during the morning of November 28, 2008, the ATF, MDEA, EPD, and MSP held a pre-search meeting to discuss the warranted search of Mr. Widi's residence. *Second Am. Compl.*

¶ 111. Mr. Widi alleges that Neil Vaccaro was the owner of a motorcycle in the grey trailer and that Mr. Widi was holding the motorcycle as collateral for a $5000 loan that Mr. Widi had extended to Mr. Vaccaro. *Id.* ¶¶ 111, 117. Mr. Widi claims that before the search, these law enforcement agencies conspired with Mr. Vaccaro to seize his motorcycle, even though it was not listed in the warrant. *Id.* ¶¶ 111, 121. Mr. Widi alleges that Mr. Vaccaro was acting as a confidential informant for Special Agent McNeil against Mr. Widi, and that Mr. Vaccaro approached Special Agent McNeil and suggested to Special Agent McNeil that the police agree to return the motorcycle to Mr. Vaccaro in exchange for Mr. Vaccaro's assistance to law enforcement against Mr. Widi. *Id.* ¶ 121. Mr. Widi claims that Special Agent McNeil agreed to give Mr. Vaccaro the motorcycle so long as Mr. Vaccaro claimed that Mr. Widi had stolen it. *Id.*

During the search of the Widi residence, Mr. Widi says Special Agent McNeil directed Eliot Police Chief Short and Detective Curran to seize the Vaccaro motorcycle. *Id.* at 124. Mr. Widi alleges that Chief Short ordered Officers Brown and Raymond back to the Widi residence where Detective Curran instructed them to observe the motorcycle being loaded onto the flatbed. *Id.* ¶¶ 123–24.

Mr. Widi claims that on December 4, 2008, six days after the November 28, 2008 search, Mr. Vaccaro contacted the Portsmouth, New Hampshire Police Department and spoke to Officer Andre Wassouf. *Id.* ¶ 126. Mr. Vaccaro supposedly told Officer Wassouf that he needed a report stating that Mr. Widi had stolen his motorcycle so that Mr. Vaccaro could regain possession of it. *Id.* Mr. Widi claims

that Officer "Wassouf agreed to generate the false report" and to have Lieutenant Dante Puopolo of the Portsmouth Police Department sign off on the report as a supervisor, even though Lieutenant Puopolo knew the report was false. *Id.*

Mr. Widi points out that he was never charged with theft of the motorcycle or receiving stolen property, nor were any other proceedings initiated to dispossess him of the motorcycle. *Id.* ¶ 127. He says that the police violated his constitutional rights and deprived him of collateral for his $5000 loan to Mr. Vaccaro. *Id.* ¶ 130.

In its December 8, 2015 order, the Court wrote:

> To knit this all together, Mr. Widi is alleging that an ATF Agent in Maine conspired with a chief of police, a police detective, and two police officers for the town of Eliot, Maine as well as a police officer and a police lieutenant for the city of Portsmouth, New Hampshire to steal a motorcycle from Mr. Widi and to give it to a man named Neil Vaccaro, who agreed to falsely testify that Mr. Widi had stolen his motorcycle in exchange for the stolen motorcycle. In effect, Mr. Widi is contending that eight people, including seven police officers from three different agencies or departments, engaged in a fairly elaborate conspiracy to frame him for a crime he did not commit. All of this is on Mr. Widi's say-so alone. The Court views these allegations as the type of frivolous and malicious claims that Congress had in mind when it enacted § 1915A. *See Widi v. DOJ*, 2013 U.S. Dist. LEXIS 62269, at *13-15.

*Recons. Order* at 20–21. Consistent with First Circuit authority, however, the Court allowed Mr. Widi to provide proof of these allegations to allow them to go forward. *Id.* at 21; *see Brown*, 511 Fed. Appx. at 5.

In his latest motion to reconsider, Mr. Widi refers to the appendix to support his allegations. *Widi Mot.* at 19–21. To support his assertion that Mr. Vaccaro had given him the motorcycle as collateral for the $5000 loan, Mr. Widi cites his own testimony. *Id.* at 19 (citing App. at 137–38). Mr. Widi also points to his sworn

declaration that he heard Special Agent McNeil direct Officer Curran to seize the motorcycle. *Id.* (citing *Statement of Opposing Material Facts*, Attach. 1, *Decl. of David J. Widi, Jr. Regarding S/A Paul McNeil* ¶ 6) (ECF 103). He also cites his own testimony to support his contention that Mr. Vaccaro had told Mr. Widi's brother—Billy Widi—that federal agents had told Mr. Vaccaro that if he did not claim that Mr. Widi had stolen the motorcycle, they would seize it as drug proceeds. *Id.* at 20 (citing *Widi Mot.*, Attach. 1, *Decl. of David J. Widi Jr. in Resp. to Order on Mot. for Recons. and Mot. Pursuant to Fed. R. Civ. P. 60* ¶ 4 (ECF 351)).

Mr. Widi also points out that Officer Wassouf of the Portsmouth Police Department did not interview Mr. Vaccaro about the stolen motorcycle until December 4, 2008, six days after the motorcycle was seized. *Id.* at 20 (citing App. at 73). Mr. Widi also finds it strange that Mr. Vaccaro waited from November 25, 2008, when the motorcycle went missing, to December 4, 2008, to report it missing. *Id.*

The Court is not convinced. Law enforcement seized the motorcycle on Friday, November 28, 2008, the day after Thanksgiving. Given that the Portsmouth Police Department was not involved in the November 28, 2008 search, the Court views it unremarkable that it would take six days for the two police departments to communicate and resolve how Mr. Vaccaro's motorcycle ended up in Mr. Widi's grey trailer. Mr. Vaccaro's statement that he thought Mr. Widi had taken his motorcycle, but he was not sure, is also unremarkable, because it is undisputed that Mr. Widi

had stored Mr. Vaccaro's motorcycle out of sight in Mr. Widi's grey trailer when the November 28, 2008 search took place.[4]

Nor is there any evidence that the police ever completed the supposed object of the asserted conspiracy. Mr. Widi proposes that Special Agent McNeil told Mr. Vaccaro that Mr. Vaccaro claimed that Mr. Widi had stolen the motorcycle, the police would give him the motorcycle. *Second Am. Compl.* ¶ 121. Yet Mr. Widi admits that he was never charged with stealing the motorcycle. *Id.* ¶ 127. Thus, from Mr. Widi's viewpoint, the object of this extensive conspiracy among several police departments was to bring a false charge of theft against Mr. Widi by coopting Mr. Vaccaro. But having successfully coopted Mr. Vaccaro and having risked their professional careers by manufacturing evidence against Mr. Widi, the police decided against pressing the theft charge against Mr. Widi.

Nor was Mr. Vaccaro useful as a witness in the federal charges. According to the witness list at Mr. Widi's trial for possession of firearms and ammunition by a felon and for manufacturing marijuana, Mr. Vaccaro was never called as a witness by either the Government or by Mr. Widi. *United States v. Widi*, 2:09-cr-9-GZS, *Witness List* at 1 (ECF No. 208).

---

[4]     The police report reads: "Neil [Vaccaro] stated that he thought Mr. David Widi took it without his permission but he was not sure." App. at 74. To the extent that Mr. Widi is claiming that the phrasing in the police report means that Mr. Vaccaro was sure that David Widi took his motorcycle but was not sure whether Mr. Widi took it without his permission, the Court is dubious. Mr. Vaccaro would have known whether he gave Mr. Widi permission to take his motorcycle, and the police returned the motorcycle to Mr. Vaccaro on December 4, 2008, which would have been odd if Mr. Vaccaro had given Mr. Widi permission to take it. The Court interprets Officer Wassouf's report to mean (1) that Mr. Vaccaro had last seen his motorcycle on November 25, 2008 at 6:00 a.m., (2) that he suspected David Widi had taken it, and (3) Mr. Vaccaro had not given Mr. Widi permission to take it.

None of Mr. Widi's repeated contentions or suggested inferences supports his grand conspiracy theory. Rather, it appears to the Court that the police entered Mr. Widi's enclosed trailer without a warrant during the November 28, 2008 search and discovered a stolen motorcycle, which they returned to its rightful owner. Because the Court concludes that the motorcycle was stolen, Mr. Widi does not have standing to bring a claim with respect to the seizure of the motorcycle. An individual asserting that a seizure violated the Fourth Amendment must have a possessory interest in the item seized. *Accord United States v. Jeffers*, 342 U.S. 48, 52 (1951) ("The respondent unquestionably had standing to object to the seizure made without warrant or arrest unless the contraband nature of the narcotics seized precluded his assertion, for purposes of the exclusionary rule, of a property interest therein). Here, Mr. Widi had no right to possess the motorcycle owned by Mr. Vaccaro located in the trailer. Accordingly, Mr. Widi may not bring a civil rights claim against the officers to vindicate a right that he did not have.

Although Mr. Widi puts a bizarre spin on these facts in which he alleges a conspiracy among the rightful owner of the motorcycle and the numerous police officers across several departments, the Court concludes, once again, that his theories of liability are fanciful and that this part of Mr. Widi's lawsuit should not be allowed to go forward.

## J.    The Defamation Count

Count Ten of Mr. Widi's Second Amended Complaint alleges that a number of the Defendants defamed him. *Second Am. Compl.* ¶¶ 131–43. In his pending motion,

Mr. Widi demands that the Court revisit its ruling concerning the viability of Count Ten based on his conspiracy allegations regarding Mr. Vaccaro's motorcycle. *Widi Mot.* at 21–23. As the Court has determined that Mr. Widi's conspiracy allegations about Mr. Vaccaro's motorcycle should not go forward, the defamation count falls of its own weight.

### K.     Probation Search

In its December 8, 2015 order, the Court refused to revisit its April 21, 2014 order granting summary judgment to Maine Probation Officers Denis R. Clark and Michael Lyons. *Recons. Order* at 21–23. After the Court issued its April 21, 2014 order, Mr. Widi filed a motion for reconsideration on May 12, 2014; a supplemental motion for reconsideration and a request for a discovery order on July 25, 2014; and a second supplemental motion for reconsideration on August 14, 2014; all of which the Court denied on October 7, 2014. *Mot. for Recons. of Order Granting Summ. J. to Defs. Clark and Lyon* (ECF No. 242); *Suppl. Mot. for Recons. Under Fed. R. Civ. P. 59(e) and 60(b) with Accompanying Req. for Disc.* (ECF No. 246); *Second Suppl. Mot. for Recons. Under Fed. R. Civ. P. 59(e) and 60(b)* (ECF No. 248); *Order Den. Pl.'s Mots. for Recons.* (ECF No. 257). Mr. Widi's May 4, 2015 motion for reconsideration was, in effect, a motion to reconsider the Court's denial of his multiple motions for reconsideration of its April 21, 2014 order. Because the second reconsideration motion was untimely, on December 8, 2015, the Court declined to rule on Mr. Widi's May 4, 2015 motion for reconsideration. *Recons. Order* at 22–23. Mr. Widi's third motion for reconsideration fares no better.

As the Court wrote on December 8, 2015, the Court has said "all it is going to say about that Count as it applies to Probation Officers Clark and Lyon." *Recons. Order* at 23. Indeed, in its December 8, 2015 order, the Court noted that it had "done its best and has now written two exhaustive orders totaling forty-eight pages to explain its decision." *Id.* at 24. The Court readily acknowledged that it is hardly infallible, which is precisely why there is an appeals court, and it advised Mr. Widi that his recourse must be with the First Circuit. *Id.* at 24–25. The Court wrote that "[i]f the First Circuit agrees with Mr. Widi, this Court will accept its ruling and proceed accordingly." *Id.* at 25.

Despite this admonition, Mr. Widi filed yet another motion for the Court to reconsider its order. If Mr. Widi were represented by counsel, if the lawyer had filed four motions to reconsider an order, if the Court had informed the lawyer that his recourse must be with the First Circuit, and if the lawyer had filed a fifth motion, the Court would have demanded that counsel explain why sanctions should not issue. Despite the fact that Mr. Widi is representing himself, the Court expressly warns him not to file another motion to reconsider the Court's order on the Clark/Lyon summary judgment order. If he does, the Court will impose a suitable sanction.

## L. Right to Financial Privacy Act

Mr. Widi objects to the Court's conclusion that his claim against the Office of the United States Attorney (USAO) under the Right to Financial Privacy Act ("the RFPA"), 12 U.S.C. § 3417(a), is barred by absolute immunity. *Widi Mot.* at 25–27; *Recons. Order* at 23. He asserts that his claim is "not against the prosecutor in her

individual capacity but is rather against [the USAO as an] 'agency or department of the United States' for which the United States has assumed liability." *Widi Mot.* at 26. Mr. Widi argues that the RFPA constitutes a waiver of the United States' sovereign immunity, and therefore his claim against the USAO may proceed.

The RFPA states that "[a]ny agency or department of the United States…disclosing financial records or information contained therein in violation of this chapter is liable to the customer to whom such records relate…" 12 U.S.C. § 3417(a). As an initial matter, the RFPA authorizes suits against "agenc[ies] or department[s] of the United States," not against individual agents or employees. *See Liffiton v. Keuker*, 850 F.2d 73, 78 (2d Cir. 1988). Consequently, Mr. Widi is barred from asserting any claims against individual prosecutors at the USAO under the RFPA.

Under the principal of sovereign immunity, Mr. Widi may not maintain an action against the USAO unless federal legislation specifically authorizes the suit. "[A] waiver of sovereign immunity must be 'unequivocally expressed' in the statutory text." *F.A.A. v. Cooper*, 132 S. Ct. 1441, 1448 (2012) (quoting *Lane v. Peña*, 518 U.S. 187, 192 (1996)). Under the RFPA, agencies and departments of the United States are liable if they "disclos[e] financial records or information" in violation of the statute. 12 U.S.C. § 3417(a). The individual to whom the records relate may bring an action to enforce the provisions of the RFPA "in any appropriate United States district court without regard to the amount in controversy within three years from the date on which the violation occurs or the date of discovery of such violation,

whichever is later." 12 U.S.C. § 3416. Based on this statutory language, the Court concludes that the RFPA "unequivocally expresse[s]" a waiver of sovereign immunity. *Id.*; *see also Raikos v. Bloomfield State Bank*, 703 F. Supp. 1365, 1367 (S.D. Ind. 1989) ("By allowing recovery from…the government agency to whom disclosure is made, [the RFPA] operates as a limited waiver of sovereign immunity that otherwise prevents suits against the United States"). Therefore, Mr. Widi may assert a claim under the RFPA against the USAO.

Mr. Widi may or may not be correct when he alleges that his financial records were never actually presented to the grand jury. *Id.* In light of the substantial protections against the disclosure of what occurred during the grand jury proceeding, it would be exceedingly odd that the federal prosecutors shared with Mr. Widi all of the evidence they presented the grand jury.[5] As he went to trial, and as he attached transcripts of some of the grand jury testimony, Mr. Widi was presumably allowed to review the so-called *Brady* or Jencks Act material generated in the grand jury proceedings. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); 18 U.S.C. § 3500. But these disclosure typically do not involve all evidence that was before the grand jury.

_____

[5]    For example, to obtain transcripts of a grand jury proceeding, the movant must demonstrate that his desire for the transcript is justified by a "particularized need" that "outweighs the public interest in secrecy." *Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 U.S. 211, 222–23 (1979). Elsewhere, the Supreme Court has written that the "'indispensable secrecy of grand jury proceedings'…must not be broken except where there is a compelling necessity." *Procter & Gamble*, 356 U.S. 677, 682 (1958) (quoting *United States v. Johnson*, 319 U.S. 503, 513 (1943)). Consistent with these principles, Federal Rule of Criminal Procedure 6(e) "codifies the traditional practice of grand jury secrecy. With specified exceptions, it prohibits grand jurors, interpreters, stenographers, operators of recording devices, typists, government attorneys, or any person to whom disclosure is made under paragraph (3)(A)(ii) from disclosing 'matters before the grand jury.'" *In re Grand Jury Proceedings, Miller Brewing Co.*, 687 F.2d 1079, 1088 (7th Cir. 1982). In fact, individuals who violate the secrecy of grand jury proceedings may be subject to criminal prosecution under 18 U.S.C. § 1503. *In re Grand Jury Proceedings*, 814 F.2d 61, 70 (1st Cir. 1987).

Instead, to make this argument, Mr. Widi appears to be relying on the timing of the indictment in his case—January 6, 2009—*United States v. Widi*, 2:09-cr-00009-GZS, *Indictment* (ECF No. 14), and the date of the subpoena for his financial records—January 20, 2009. *Mot. for Recons. of Summ. J. for TD Bank*, Attach. 1, *Subpoena to Test. before Grand Jury* (ECF No. 174). He contends that the financial records could not have been presented to the grand jury that indicted him because the subpoena came after the indictment. *Widi Reply* at 8–10. But Mr. Widi discounts the fact that on February 24, 2010, the grand jury issued a superseding indictment against him. *United States v. Widi*, 2:09-cr-00009-GZS, *Superseding Indictment* (ECF No. 137). It is clear that the grand jury convened and received evidence after it had issued the original indictment. The Court does not accept Mr. Widi's timing argument.

Nevertheless, in light of the contents of the Executive Office of the United States Attorneys' renewed motion for summary judgment on Count Eighteen, it may well be that the Office of the United States Attorney for the District of Maine will be able to provide a straightforward explanation for why the federal prosecutor subpoenaed Mr. Widi's financial records from TD Bank, whether they were actually presented to the grand jury, and if not, what use was made of them. *See EOUSA's Renewed Mot. for Summ. J. on Count XVIII* (ECF No. 366). With some serious misgivings, the Court will allow Mr. Widi to proceed with Count Seventeen, the Right to Financial Privacy Act claim, against the Office of the United States Attorney for the District of Maine.

### M.    Requests for Discovery

In his motion, Mr. Widi requested that the Court authorize him to engage in discovery to supply the evidence the Court is requiring.  *Widi Mot.* at 27.  Also, on August 19, 2016, Mr. Widi moved for leave to issue a subpoena duces tecum to the town of Eliot.  *Mot. for Subpoena Duces Tecum to Town of Eliot* (ECF No. 362).

The Court DISMISSES without prejudice this part of Mr. Widi's request for relief in his motion for reconsideration and it DISMISSES without prejudice Mr. Widi's motion for subpoena duces tecum.  The Court has allowed some of these claims to go forward and has ruled against other claims.  For those claims the Court has declined to allow to proceed, it is not a matter of facts, it is a matter of law that motivates the Court's rulings.  For those claims the Court has allowed to proceed, the parties will be allowed to engage in discovery in the ordinary course.

## IV.   CONCLUSION

The Court GRANTS in part and DENIES in part David J. Widi, Jr.'s Response to Order on Motion for Reconsideration and Motion Pursuant to Federal Rule of Civil Procedure 60 with Accompanying Documentary Evidence and Motion for Discovery (ECF No. 351).

The Court concludes that David J. Widi, Jr. had stated a potential claim in Count Two of the Second Amended Complaint against Officer Elliott Moya of the EPD for excessive use of force involving the application of handcuffs; a potential claim against Detective Kevin Curran in Count Three of the Second Amended Complaint for unlawful search of the van; potential claims against Chief Theodore Short,

Lieutenant Kevin Cady, Officer Robert Brown, and Detective Kevin Curran in Counts Four, Five, and Six of the Second Amended Complaint for unlawful seizure and search of the van; a potential claim in Count Seven of the Second Amended Complaint against Special Agent Michael Grasso and Special Agent Stephen Hickey, Jr. for an unwarranted search of the grey trailer; and a potential claim against the United States Attorney's Office for the District of Maine in Count Seventeen of the Second Amended Complaint. The Court thus GRANTS in part David J. Widi's Motion for Leave to Amend Complaint (ECF No. 198).

The Court instructs the Clerk's Office to prepare the required documents for service of the Second Amended Complaint against Elliott Moya, Theodore Short, Michael Grasso, Stephen Hickey, Jr., and the United States Attorney's Office for the District of Maine. Kevin Curran, Robert Brown, and Kevin Cady are currently represented Defendants in this case; *Def. Kevin Curran's Answer to Second Am. Compl.* (ECF No. 278); *Answer, Affirmative Defenses and Jury Trial Demand (Def. Robert Brown)* (ECF No. 291); *Answer, Affirmative Defenses and Jury Trial Demand (Def. Kevin Cady)* (ECF No. 297). Defendants Curran, Brown and Cady are ordered to answer the Second Amended Complaint with its newly-permitted allegations in accordance with the time limits provided in the Federal Rules of Civil Procedure.

The Court otherwise DENIES David J. Widi, Jr.'s Motion for Reconsideration and Motion Pursuant to Federal Rule of Civil Procedure 60 with Accompanying Documentary Evidence and Motion for Discovery (ECF No. 351). The Court

DISMISSES without prejudice David J. Widi, Jr.'s Motion for Subpoena Duces Tecum to Town of Eliot (ECF 362).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 10th day of January, 2017