UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DAVID J. WIDI, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  2:12-cv-00188-JAW |
| | ) |
| PAUL MCNEIL, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON MOTION FOR RECONSIDERATION**

The Court declines to reconsider almost all of its rulings in this protracted Freedom of Information Act case but does relent on one issue—namely, whether documents claimed as attorney work product are segregable. In addition, the Court requests further clarification from the Executive Office of the United States Attorneys as to the basis for its non-disclosure of certain character letters.

I. **PROCEDURAL AND FACTUAL HISTORY**

This Freedom of Information Act (FOIA) and Privacy Act (PA) claim has a complicated procedural history, which the Court described in its August 16, 2016 Summary Judgment Order on Count XVIII (ECF No. 360) (*Order*). For purposes of this motion, it suffices to say that on August 16, 2016, the Court issued an order on the Defendants' motion for summary judgment based on their submission of a *Vaughn*[1] index. In its seventy-three page order, the Court granted summary judgment for all but eight listed documents, and it ordered the Executive Office of the

---

[1] *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); *Summ. J. Order on Count XVIII* at 1, n.1 (ECF No. 360) (*Order*).

United States Attorneys (EOUSA) either to file a supplemental *Vaughn* index or to release the requested documents within thirty days of August 16, 2016, the date of the order. *Order* at 72–73.

On September 15, 2016, the EOUSA filed a renewed motion for summary judgment and a statement of fact. *EOUSA's Renewed Mot. for Summ. J. on Count XVIII* (ECF No. 366) (*EOUSA's Mot.*); *Supp. Statement of Undisputed Material Facts* (ECF No. 367) (DSSMF). On October 11, 2016, David J. Widi, Jr. filed a motion for reconsideration of the summary judgment order and an objection to the EOUSA's renewed motion for summary judgment. *Mot. for Recons. of Summ. J. Order and Obj. to EOUSA's Renewed Mot. for Summ. J. on Count XVIII* (ECF No. 370, 371) (*Pl.'s Mot. for Recons.*; *Pl.'s Opp'n.*). On October 25, 2016, EOUSA filed a reply to Mr. Widi's opposition to its renewed motion for summary judgment. *EOUSA's Reply Br. in Supp. of Its Renewed Mot. for Summ. J. on Count XVIII* (ECF No. 375) (*EOUSA Reply*). On November 3, 2016, EOUSA and the Bureau of Alcohol, Tobacco, and Firearms (ATF) filed their opposition to Mr. Widi's motion for reconsideration. *ATF's and EOUSA's Opp'n to Pl.'s Mot. for Recons. of Summ. J. Order on Count XVIII* (ECF No. 378) (*Defs.' Opp'n*). On December 5, 2016, Mr. Widi filed his reply to the EOUSA and ATF's opposition to his motion for reconsideration. *Reply to ATF's and EOUSA's Opp'n to Mot. for Recons. of Summ. J. Order on Count XVIII* (ECF No. 391) (*Pl.'s Recons. Reply*).

The Court extensively described the factual background of this FOIA litigation in its August 16, 2016 Order. *See Order* at 4–26.

## II. THE MOTION FOR RECONSIDERATION

In his motion for reconsideration, Mr. Widi asks the Court to reconsider its rulings on ATF documents 1–6, 28–31, and 40 and EOUSA documents 11, 12, 14–23, and 25–28. *Pl.'s Mot. for Recons.* at 35.

### A. The *Vaughn* Index for the ATF Documents

Mr. Widi's first objection is that ATF's *Vaughn* index was insufficient to allow for an appropriate review. *Id.* at 2–4. Mr. Widi explains that he thought the Court would perform an "*in camera* review of the documents." *Id.* at 3 (citing *Maynard v. CIA*, 986 F.2d 547, 557 (1st Cir. 1993)). Instead, the Defendants submitted a twelve-page affidavit from Stephanie M. Boucher, Chief, Disclosure Division of AFT, as well as sixteen exhibits that describe the process and the disputed documents, the dates of the documents, the claimed exceptions, and the justification for the withholding. *Defs.' Mot. for Summ. J.*, Exs. A–P (ECF No. 305) (*Defs.' Mot. for Summ. J.*).

Mr. Widi is correct that one way for a court to resolve a FOIA dispute is to perform an in camera review of the withheld documents. But it is not the only way. As the First Circuit wrote, a *Vaughn* index "includes a general description of each document sought by the FOIA requester and explains the agency's justification for nondisclosure of each individual document or portion of a document." *Union Leader Corp. v. United States Dep't of Homeland Sec.*, 749 F.3d 45, 48–49 n.3 (1st Cir. 2014) (quoting *Church of Scientology Int'l v. United States Dep't of Justice*, 30 F.3d 224, 228 (1st Cir. 1994))). The question is whether the court is satisfied that the government has provided "an adequate factual basis for the district court's decision . . . ."

*Maynard*, 986 F.2d at 558. Here, with the exception of the description of character letters, the Court was and remains satisfied that the Defendants provided sufficient information to allow for a proper judicial review. The Court rejects Mr. Widi's challenge subject to the EOUSA's response to the Court's concern about character letters.

### B. The ATF Documents

#### 1. Exemptions 7(C) and 7(F)

In its Order, the Court upheld ATF's redactions and withholdings of documents under FOIA Exemption 7(C) on the ground that ATF was entitled not to disclose information related to the identities of law enforcement personnel and third parties who were involved in the investigation of the criminal case against Mr. Widi. *Order* at 61–62. The Court quoted the Supreme Court's and First Circuit's analyses of similar FOIA requests that sought personal information from the government. *Id.* at 62 (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 175 (2004); *Moffatt v. United States Dep't of Justice*, 716 F.3d 244, 251 (1st Cir. 2013)). The Court observed that Mr. Widi failed "to connect his deeply personal stake in this information to a larger governmental function," *Moffat*, 716 F.3d at 252, in a way the Court found persuasive, and the Court did not view Mr. Widi's contentions about Government misconduct to have met the standard of a "meaningful evidentiary showing." *Favish*, 541 U.S. at 175.

Mr. Widi remains unpersuaded, arguing that when some ATF documents that he received through other sources and the ATF documents that he received through

the FOIA request are compared, the FOIA request documents were too aggressively redacted. *Pl.'s Mot. for Recons.* at 4-7. At the same time, Mr. Widi concedes that Exemption 7(C) allows the Government to redact "information such as birthdates, places of birth and social security numbers," but he does not agree that "the names of interviewees who testified in open court have a privacy interest in their names." *Id.* at 6.

In *Moffatt*, the First Circuit rejected a similar claim. The plaintiff in *Moffatt* observed that he had received an FBI 302 report that was less redacted than the version of the report released under FOIA. 716 F.3d at 251. In rejecting the argument, the First Circuit noted that it has "previously stated that prior revelations of exempt information do not destroy an individual's privacy interests." *Id.*

But the overriding problem with Mr. Widi's argument is that the Government did not redact the ATF documents only under Exemption 7(C), but also under Exemption 7(F). Exemption 7(F) protects "records or information compiled for law enforcement purposes" whose disclosure "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). As the Court noted, Mr. Widi threatened a witness during his trial. *Order* at 68 (quoting *United States v. Widi*, 2:09-cr-00009-GZS, *Tr. of Proceedings* 89:23–24 (ECF No. 286) (*Sentencing Tr.*) ("I've reviewed the video, he did make a throat-slashing movement"); *see also Sentencing Tr.* 93:11–12 ( "I believe that Mr. Widi made threats to a witness in this case on multiple occasions"). In fact, the sentencing judge enhanced his sentence for the threat. *Id.* Also, Mr. Widi was convicted of possession of a firearm

5

and ammunition by a felon and of manufacturing marijuana. *United States v. Widi*, 2:09-cr-00009-GZS, *J.* (ECF No. 258). The sentencing judge described Mr. Widi as possessing seven firearms, including high-powered assault rifles and a semi-automatic UZI. *Sentencing Tr.* 91:12–92:1. The judge also concluded that Mr. Widi possessed the firearms to protect his marijuana grow operation and would have used them. *Id.* 93:8–16 ("I think that Mr. Widi had these guns and would have used these guns, which is why he had them, to protect the marijuana operation. I'm concerned that the public needs to be protected from Mr. Widi"). Given this history, the Court is not persuaded that the Court erred in concluding that the ATF justifiably redacted documents under Exemptions 7(C) and 7(F).

### 2. Exemption 7(E)

Under Exemption 7(E), an agency may withhold records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Mr. Widi objects to the withholding of a document under this exemption. *Pl.'s Mot. for Recons.* at 10–11. He quotes *Citizens for Responsibility & Ethics in Washington v. United States Department of Justice*, 746 F.3d 1082 (D.C. 2014), for the proposition that a "near-verbatim recitation of the statutory standard is inadequate." *Pl.'s Mot. for Recons.* at 10 (quoting *Citizens*, 746 F.3d at 1102).[2]

---

[2] Mr. Widi miscites the *Citizens* case as 393 F.3d 1345, which is actually *Lopez v. Department of Justice*, a 2005 Court of Appeals for the District of Columbia case. Nevertheless, the Court was able to locate *Citizens*, a 2014 Court of Appeals for the District of Columbia case, and Mr. Widi's quotation is accurate.

6

The document is the ATF Operational Plan. *See Defs.' Mot. for Summ. J.,* Ex.. O, at 25. The ATF explained the basis for its Exemption 7(E) withholding:

> Information related to tactical and contingency plans, as well as ATF law enforcement policies, have been withheld under Exemption (b)(7)(E) was used to withhold TECS codes [sic]. These file numbers are primarily used to store and retrieve law enforcement information. Disclosure of such numbers and codes could allow individuals outside the agency to circumvent agency functions and gain access to sensitive investigative information.

*Id.* In *Citizens*, the DOJ stated only that it was withholding the document "to protect procedures and techniques used by FBI [agents] during the investigation," 746 F.3d at 1102, and the Court of Appeals for the District of Columbia properly viewed the DOJ's explanation as "inadequate." *Id.* Here, by contrast, the ATF has explained the bases of its withholding as including "tactical and contingency plans," "ATF law enforcement policies," and "TECS codes." *Defs.' Mot. for Summ. J.,* Ex.. O, at 25. The distinction between a mere recitation of the statute and the ATF's explanation in Mr. Widi's case is apparent. The Court rejects Mr. Widi's request for reconsideration of its ruling based on Exemption 7(E).

### 3. Governmental Misconduct

In its August 16, 2016 Order, the Court addressed Mr. Widi's claim that he had presented evidence of governmental impropriety that requires the ATF to reveal otherwise exempt documents. *Order* at 61–62. The context of this conclusion is the First Circuit's discussion in *Carpenter v. United States Department of Justice*, 470 F.3d 434 (1st Cir. 2006), of situations, like Mr. Widi's, where the "asserted public interest in [the] documents centers on [the requester's] criminal trial and his own

7

innocence." *Id.* at 441. To obtain such documents, the requester must demonstrate that his "deeply personal stake in this information" is related to a "larger governmental function." *Moffat*, 716 F.3d at 252.

In his opposition to the ATF's motion for summary judgment, Mr. Widi raised this same issue and posited examples of governmental misconduct that he contended met the *Moffat* standard. *Obj. to Mot. for Summ. J. on Count XVIII* at 11–13 (ECF No. 323) *(Pl.s' Obj. to Mot. for Summ. J.)*. The Court considered his examples and concluded that they did not meet the requirement of a "meaningful evidentiary showing" of governmental misconduct. *Order* at 62 (quoting *Favish*, 541 U.S. at 175). In his motion for reconsideration, Mr. Widi reiterates and expands on his view that he has produced "competent evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred and the public certainly has an interest in knowing about the constitutional violations." *Pl.'s Mot. for Recons.* at 12.

The Court simply disagrees. The Court previously addressed Mr. Widi's contentions against Special Agent McNeil and his suspicions that Mr. Vaccaro was part of a governmental conspiracy. *See Order Den. Pl.'s Mot. to Stay; Den. Pl.'s Mot. to Strike; and Granting Def. McNeil's Mot. to Dismiss* (ECF No. 170); *Screening Order, Order Vacating in Part Earlier Order Den. Mot. for Leave to File Second Am. Compl. as to Served Defs., Order Granting in Part Mot. to File Second Am. Compl., Order Striking Portions of the Second Am. Compl., and Order Den. Mot. to Stay* (ECF No. 270). The Court has nothing more to say on the subjects.

### 4. Adequacy of the Search

In his opposition to the ATF's motion for summary judgment, Mr. Widi criticized the adequacy of the ATF document search. *Pl.s' Obj. to Mot. for Summ. J.* at 8–10. The Court disagreed and concluded that the ATF search was adequate. *Order* at 48–50. Mr. Widi returns to reargue the point. *Pl.'s Mot. for Recons.* at 13–15. The Court remains unconvinced. For the reasons described in its Order, the Court again concludes that the ATF conducted a "reasonably thorough search," and Mr. Widi has failed to demonstrate that the ATF's search was "not made in good faith." *Order* at 47–50 (quoting *Moffat*, 716 F.3d at 254).

### C. The *Vaughn* Index for the EOUSA Documents

In his motion for reconsideration, Mr. Widi takes issue with the EOUSA's *Vaughn* Index. *Pl.'s Mot. for Recons.* at 15. Quoting *Church of Scientology International v. United States Department of Justice*, 30 F.3d 224 (1st Cir. 1994), Mr. Widi contends that the EOUSA's *Vaughn* Index failed to correlate the claimed exemptions and "the particular part of a withheld document to which they apply." *Pl.'s Mot. for Recons.* at 16 (quoting *Church of Scientology*, 30 F.3d at 231). In its response, the EOUSA argues that Mr. Widi waived this issue, maintains that the Court adequately addressed this issue in its August 16, 2016 Order, and argues that the brevity of the documents at issue and the description of the documents clearly justify the withholdings. *Defs.' Opp'n* at 2, 5, 12–15. Furthermore, the EOUSA observes that for many of the documents, the attorney-work product privilege

attached and, unlike other exemptions, the segregability analysis does not apply. *Id.* at 14–15.

Mr. Widi has made a technical point. In *Church of Scientology*, the First Circuit made it clear that the government agency claiming an exemption should correlate the "particular exemption and the sections of the documents to which it relates" and should also address segregability. 30 F.3d at 230–31. In its *Vaughn* Index, the EOUSA cites multiple claimed exemptions for each document but does not indicate whether each exemption is applicable to a portion of the withheld document or to the entire document. *Statement of Undisputed Material Facts*, Attach. 3, *Third Decl. of John F. Boseker* at 20–23 (ECF No. 305) (*Boseker Decl.*).

Even so, as the First Circuit explained, the reason for this rule is to afford "the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Church of Scientology*, 30 F.3d at 231 (quoting *Wiener v. FBI*, 943 F.2d 972, 977–78 (9th Cir. 1991)). In *Church of Scientology*, "[m]ost documents, including lengthy ones . . ., are withheld in their entirety, without reference to segregability." 30 F.3d at 231. By contrast, here, the EOUSA has either adequately explained the bases for a total withholding or has limited its withholding to portions of documents. In either case, the policy underlying *Church of Scientology* has in this Court's view been satisfied.

### D. The EOUSA Documents

#### 1. Exemption 3

Mr. Widi complains that the EOUSA documents 11, 12, and 32 did not fit within the category of documents properly withheld under 5 U.S.C. § 552(b)(3) (documents "specifically exempted from disclosure by statute") because he is not convinced the withheld documents were actually presented to the grand jury. *Pl.'s Mot. for Recons.* at 18–20. He uses document 11 as an example:

> *Prosecution Approved Memo — AUSA to Attorney Reviewers (CRM Chief/First Asst (1/2/09) (5 pgs)* — Intra-agency communication made in anticipation of grand jury presentation discussing criminal case against Widi, analyzing evidence and drug and firearm charge, containing reviewer handwritten remarks and changes . . . .

*Id.* at 19–20.

Mr. Widi has again made a technical point, this time about Exemption 3. The Court remains unconvinced. As the First Circuit observed in *Church of Scientology*, Exemption 3 involving grand jury secrecy is necessarily broad, and it encompasses not only the direct revelation of grand jury transcripts "but also the disclosure of information which would reveal the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like." 30 F.3d at 235 (citations and internal punctuation omitted). It seems apparent that a memorandum from an assistant United States attorney to his or her superiors concerning potential charges against a person that discusses an upcoming presentation to a grand jury together with the supervisor's handwritten notes would reveal prosecution strategy and the direction of the investigation as well as the evidence that the prosecutor intended to present to the grand jury. Under *Church of Scientology*, these types of internal memoranda

11

among prosecutors about upcoming presentations to the grand jury are exempt from FOIA disclosure.

## 2. Exemption 5

### a. Deliberative Process Privilege

In its August 16, 2016 Order, the Court concluded that EOUSA documents 19, 22–23, 26–28 and 34 were predecisional and deliberative, and therefore entitled to withholding under Exemption 5. *Order* at 56. Mr. Widi first objects to the Court's conclusion based on his continued assertion that he has presented evidence of governmental impropriety, a claim the Court has rejected. *Pl.'s Mot. for Recons.* at 22. Next, Mr. Widi asserts that the EOUSA failed to identify a specific agency decision justifying the withholding of these documents. *Id.* at 22–25. On their face, however, each of the documents addressed information concerning the prosecution of Mr. Widi, including the thinking of assistant United States attorneys at various times during the criminal case against him. Thus, they represent "the agency's group thinking in the process of working out" its decisions. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975). As such, they are properly withheld.

### b. Attorney Work Product

In its August 16, 2016 Order, the Court did not reach the question of whether the EOUSA would be entitled to withhold these same documents under the attorney work product privilege. *Order* at 57–58. However, the Court did determine that the attorney work product privilege applied to EOUSA documents 14 and 18. *Id.* at 58.

Mr. Widi demands reconsideration on the ground that the *Vaughn* entries do not establish segregability. *Pl.'s Mot. for Recons.* at 26–27.

In response, the EOUSA takes the position that the material is subject to the attorney work product privilege and therefore the segregability analysis does not apply. *Defs.' Opp'n* at 15. The EOUSA cites caselaw from the District of Columbia. *Id.* (citing *Citizens for Responsibility and Ethics in Washington v. United States Dep't of Justice*, 48 F. Supp. 3d 40, 51 (D.D.C. 2014); *Judicial Watch v. United States Dep't of Justice*, 432 F.3d 366, 371 (D.C. Cir. 2005)).

But the rule in the First Circuit appears to be different than the rule in the District of Columbia. In *Church of Scientology*, the First Circuit wrote:

> To withhold a document based on [the attorney work product] privilege, the Department must prove that it was prepared under the direction of an attorney in contemplation of litigation. *And, as with all exemptions, it must offer some basis for concluding that there are no segregable, nonexempt portions of the document.*

*Church of Scientology*, 30 F.3d at 236 (emphasis supplied); *Maine v. United States Dep't of Interior*, 298 F.3d 60 (1st Cir. 2002) ("[A]n agency seeking to withhold a document [based on attorney work product privilege] . . . must identify the litigation for which the document was created . . . and explain why the work-product privilege applies to all portions of the document") (internal punctuation and citation omitted).

Even so, the Court is extremely dubious about whether forcing the EOUSA to perform a segregability analysis on a single email from one assistant United States attorney to another and two letters from an assistant United States attorney to a lawyer at ATF will produce any information subject to disclosure. EOUSA document

13

14 consists of only two pages and was dated September 30, 2009, and EOUSA document 18 consists of two letters, a total of four pages, dated January 20, 2010, and March 25, 2010. The grand jury indicted Mr. Widi on January 6, 2009, and he went to trial on April 19–20, 2010. *United States v. Widi*, 2:09-cr-00009-GZS, *Indictment* (ECF No. 14); *Tr. of Proceedings* (ECF Nos. 235–36). These documents were therefore created in the midst of the criminal prosecution of Mr. Widi. By description, the documents involve discussions about evidence and witnesses, and are from one prosecutor to another or from one prosecutor to ATF counsel. Nevertheless, as the First Circuit has clearly ruled that the agency must perform a segregability analysis on attorney work product documents, to comply with the First Circuit directive, the Court will order it done for EOUSA documents 14 and 18.

### 3. Exemption 7(C)

Mr. Widi objects to the non-disclosure of EOUSA document 25. *Pl.'s Mot. for Recons.* at 26-27. The *Vaughn* index entry reads:

> *Third party letters "To Whom It May Concern" "Character Reference Letters" (Sept–Oct 2010)(11 pgs).* Letters are both typewritten and handwritten, individually identifiable, with no indication any copy provided to Widi. All withheld by 7C and 6 to protect each person and information provided from unwarranted invasion of personal privacy. (Cannot segregate without risk of disclosure of identity and personal opinions).

*Boseker Decl.* at 22. Mr. Widi believes these letters may have been submitted to the Court at his sentencing hearing. *Pl.'s Mot. for Recons.* at 27.

The Court is confused about these "character reference letters." The transcript of Mr. Widi's sentencing hearing establishes that the sentencing hearing took place on October 13, 2010, and that character letters were admitted into evidence at the

14

hearing. *Sentencing Tr.* 2:15; 31:18–21. In *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013), the First Circuit ruled that if a judge considers character letters at a sentencing hearing, the letters are judicial documents and, as such, are part of the public record. *Kravetz*, 706 F.3d at 58. The timing—September–October 2010—and description—"Character Reference Letters"—suggests that the withheld letters may be the same character letters admitted into evidence at Mr. Widi's sentencing hearing and subject to disclosure under *Kravetz*.

At the same time, the sentencing transcript confirms that it was Mr. Widi's defense counsel who introduced the character letters. *Sentencing Tr.* 31:18–21. If so, the documents are not the Government's; they are Mr. Widi's. Mr. Widi may well have a right to a copy of these letters, if they were admitted into evidence at his sentencing hearing.

Even so, FOIA is an awkward vehicle to obtain letters admitted into evidence by Mr. Widi's own attorney. Even if the letters are available through another source, such as Mr. Widi's former attorney or perhaps the Clerk of Court, FOIA's restrictions on dissemination of personal information under Exemptions 6 and 7(C) still apply to a FOIA request. The fact that a requester might be able to obtain the same information from another source does not terminate a third party's privacy interest. *Carpenter*, 470 F.3d at 440. Indeed, "[t]hat information has been released to the public domain, especially where the release is limited, has little bearing on the privacy interest." *Id.* As the Supreme Court observed, "disclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA

15

had in mind." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 765 (1989).

It is entirely possible that the documents in EOUSA document 25 are something entirely different, and the EOUSA should be able to clear this up. The record as it currently exists is something of a mystery, and the Court will allow the EOUSA to attempt to clarify the basis of its nondisclosure of EOUSA document 25, perhaps by describing the documents more clearly to the Court and Mr. Widi or providing a copy of the letters in question to the Court for its review as part of the EOUSA's *Vaughn* index.

## III. CONCLUSION

The Court DENIES David J. Widi, Jr.'s Motion for Reconsideration of Summary Judgment Order (ECF No. 370), except the Court ORDERS the Executive Office of the United States Attorneys to supplement its FOIA responses consistent with this Order to address the issues concerning EOUSA documents 14, 18, and 25 within two weeks of the date of this Order. Mr. Widi shall respond to the Executive Office of the United States Attorneys' submission within twenty-one days of the date of the filing of the supplement. The Executive Office of the United States Attorneys shall file any reply within seven days of the filing of Mr. Widi's response.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 8th day of May, 2017