UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DAVID J. WIDI, JR.,                    )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )          2:12-cv-00188-JAW
                                       )
PAUL MCNEIL, et al.,                   )
                                       )
            Defendants.                )


**ORDER ON DEFENDANTS KEVIN CADY AND ROBERT BROWN'S
MOTION TO DISMISS COUNTS IV, V AND VI**

The Court denies in part and grants in part a motion to dismiss three counts

against two law enforcement officers, which allege that they participated in a

conspiracy to violate a plaintiff's civil rights. The Court concludes that the plaintiff's

allegations state plausible claims that the officers participated in a conspiracy to

conduct an illegal seizure and search but does not state a plausible claim that they

omitted probable cause factors from an affidavit in support of a search warrant.

**I.      BACKGROUND**

The procedural history of Mr. Widi's claims against Kevin Cady and Robert

Brown, leading to their motion to dismiss, is convoluted. To begin, Mr. Widi named

Lieutenant Kevin Cady and Officer Robert Brown, officers with the town of Eliot

Police Department, in his initial complaint filed on June 13, 2012. *Compl.* (ECF No.

1). On July 13, 2012, the Magistrate Judge screened the complaint and specifically

authorized Mr. Widi to proceed against five defendants, but she did not address the

claims against the remaining thirty-five defendants, including Lieutenant Cady and Officer Brown. *Order for Service After Screening Compl. Pursuant to 28 U.S.C. § 1915A* (ECF No. 6). Mr. Widi twice amended his complaint and on February 11, 2015, the Court screened the Second Amended Complaint as to those defendants not screened on July 13, 2012. *Screening Order, Order Vacating in part Earlier Order Denying Mot. for Leave to File Second Am. Compl. as to Served Defs., Order Granting in part Mot. to File Second Am. Compl., Order Striking Portions of the Second Am. Compl., and Order Denying Mot. to Stay* (ECF No. 270). In its Screening Order, the Court allowed Mr. Widi to proceed against Lieutenant Cady and Officer Brown on Count II, excessive force, but not on Counts III, IV, V or VI. *Id.* at 35-39. Counts III and IV alleged illegal sniff searches of his company van and Counts V and VI alleged illegal seizure of the van and the omission of probable cause factors in obtaining a warrant to search the van. *Second Am. Compl.* ¶¶ 76-104 (ECF No. 191).

On May 4, 2015, Mr. Widi moved for reconsideration of the Screening Order. *Mot. for Recons.* (ECF No. 292). On December 8, 2015, the Court reiterated its ruling on Count III of the Second Amended Complaint, but it allowed Mr. Widi to provide some proof for his assertions related to Counts IV, V, and VI. *Order on Mot. for Recons. and Mot. Pursuant to Fed. R. of Civ. Pro 60* (ECF No. 325). On March 16, 2016, Mr. Widi responded to the December 8, 2015 order. *Resp. to Order on Mot. for Recons. and Mot. Pursuant to Fed. R. of Civ. P. 60 with Accompanying Documentary Evid. and Mot. for Disc.* (ECF No. 351). On January 10, 2017, the Court allowed

Counts IV, V and VI to proceed against Lieutenant Cady and Officer Brown. *Order on Mot. for Recons.* (ECF No. 392).

On January 24, 2017, Lieutenant Cady and Officer Brown moved to dismiss Counts IV, V and VI. *Defs. Kevin Cady and Robert Brown's Mot. to Dismiss Counts IV, V and VI* (ECF No. 403) (*Defs.' Mot.*). On June 26, 2017, Mr. Widi filed a response. *Opp'n to Defs. Brown and Cady's Mot. to Dismiss for Failure to State a Claim with Regards to Counts IV, V and VI of the Second Am. Compl. (ECF#403)* (ECF No. 455) (*Pl.'s Opp'n*). On July 10, 2017, Lieutenant Cady and Officer Brown filed their reply. *Reply Mem. of Law in Support of Defs. Kevin Cady and Robert Brown's Mot. to Dismiss Counts IV, V and VI* (ECF No. 460) (*Defs.' Reply*).

## II.    THE SECOND AMENDED COMPLAINT

David Widi's allegations against Lieutenant Cady and Officer Brown arise out of a series of incidents in November 2008, during which Mr. Widi was arrested, his residence searched, and his van towed and searched. *Second Am. Compl.* ¶¶ 76-104. Mr. Widi alleged that Lieutenant Cady and Officer Brown were employed by the town of Eliot Police Department. *Id.* ¶¶ 19-20. He stated that Lieutenant Cady "participated in the seizure of Mr. Widi and the search of his residence" and "was in charge of holding Mr. Widi at the Eliot Police Department and he refused Mr. Widi privacy to speak with his attorney." *Id.* ¶ 19. He alleged that Lieutenant Cady "supervised the EPD (Eliot Police Department) officers." *Id.* As regards Officer Brown, Mr. Widi alleged that he "participated in the seizure of Mr. Widi and the search of his residence." *Id.* ¶ 20.

## A. Count IV — Illegal Seizure of Tile Company Van

In Count IV, Mr. Widi alleges that the officers, including officers from the EPD, who were to participate in the search of Mr. Widi's home, gathered in a pre-search briefing where they "made plans and agreed to seize Mr. Widi's tile company van, even though it was not listed in the warrant." *Id.* ¶ 84. He claims that Lieutenant Cady "attempted to get Mr. Widi's consent to allow the ATF and members of the search team to search his tile company van," but Mr. Widi "declined to allow the search." *Id.* ¶ 85.

Regarding Officer Brown, Mr. Widi claims that another officer "requested that [Officer] Brown return to Mr. Widi's residence, where [Officer] Curran directed him to observe the van being loaded on a flatbed." *Id.* ¶ 86. Mr. Widi says that the search warrant "did not authorize the seizure of Mr. Widi's van" and his van "contained Mr. Widi's tile company tools and business papers, including contracts for tile jobs." *Id.* ¶ 87. Mr. Widi cites a decision from this District during his criminal case that the van seizure "violated the Fourth Amendment. *United States v. Widi*, 686 F. Supp. 2d 107, 114-15 (D. Me. 2010)." *Id.* ¶ 88. He alleges that the EPD defendants violated his constitutional rights by seizing the van and demanded damages. *Id.* ¶¶ 89-91.

## B. Count V — Second Illegal Sniff

In Count V, Mr. Widi re-alleges the pre-search conference and the van seizure despite the fact that the van was not contained in the search warrant. *Id.* ¶¶ 92-93. After seizing the van, Mr. Widi says the police subjected the van to a second sniff test on November 30, 2008, which he acknowledged was positive. *Id.* ¶ 94. Specifically,

he alleged that Officer Curran and Officer Short had Officer Carr conduct the second sniff search. *Id.* He claims that the officers of the EPD, among others, violated his constitutional rights. *Id.* ¶ 97.

### C. Count VI — Search Warrant and Omission of Probable Cause Factors

In Count VI, Mr. Widi again alleges the pre-search conference and illegal van seizure despite the fact that the van was not contained in the search warrant. *Id.* ¶ 100. He alleges that after the second positive sniff, Officer Curran submitted an affidavit to Judge O'Neill at the York District Court per Agent McNeil and Officer Short's instruction. *Id.* ¶ 101. Mr. Widi alleges that "Curran, Short, McNeil, Armstrong, and Anderson agreed to omit information regarding the negative sniff with intentional and reckless disregard for the truth because that fact would have had an adverse affect on the determination of probable cause." *Id.* ¶ 102. He claims generally that the officers of the EPD violated his constitutional rights. *Id.* ¶ 103.

## III. THE POSITIONS OF THE PARTIES

### A. The Officers' Motion

In their motion to dismiss, the officers review the legal standards for qualified immunity, emphasizing that a plaintiff must demonstrate that the constitutional right was "clearly established" at the time. *Defs.' Mot.* at 6-7 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). To meet the "clearly established" prong of the qualified immunity test, a plaintiff must show that the contours of the constitutional right were sufficiently clear and that in the specific factual context of the case, the violation would have been clear to a reasonable officer. *Id.* at 7 (citing *MacDonald v. Town of*

*Eastham*, 745 F.3d 8, 12 (1st Cir. 2014)).   The officers also recite the plausibility standard that the United States Supreme Court adopted in *Iqbal* and *Twombly*.   *Id.* at 5-6 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

### 1.    Count IV — Illegal Seizure of the Company Van

Lieutenant Cady points out that Mr. Widi's sole specific allegation against him by name in Count IV is that while Mr. Widi was at the Eliot police station, Lieutenant Cady "attempted to get Mr. Widi's consent to allow the ATF and members of the search team to search his tile company van.   Mr. Widi declined to allow the search." *Id.* at 8 (quoting *Second Am. Compl.* ¶ 85).   Lieutenant Cady asserts that even if this allegation is true, it does not state a legal claim against him.   *Id.*

In turn, Officer Brown observes that Mr. Widi's sole allegation against him by name in Count IV is that at the directive of other officers, he observed the van being loaded onto a trailer before being towed away.   *Id.* (citing *Second Am. Compl.* ¶ 85). As with Lieutenant Cady, Officer Brown maintains that this allegation is insufficient to state a claim against him.   *Id.* at 8-9.

### 2.    Counts V and VI — Illegal Sniff Search and the Search Warrant

Lieutenant Cady and Officer Brown observe that neither Count V nor Count VI contains any specific allegations against them by name.   *Id.* at 10-11.   All that is left, they say, are scattershot allegations in which Mr. Widi has included them in general and unformed allegations against all the members of their police department.

*Id.* at 10-12. They assert that these general allegations are insufficient to maintain the claims in Counts V and VI.

### B. David J. Widi, Jr.'s Response

In his opposition, Mr. Widi observes that in addressing a motion to dismiss, a court must not look behind the allegations in the complaint to assess whether a plaintiff will be able to prove what he alleges. *Pl.'s Opp'n* at 2 (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). He also notes that a court must hold a pro se litigant's pleadings to a less stringent standard than an attorney's. *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Turning to his claims against Lieutenant Cady and Officer Brown, Mr. Widi relies on the general allegation against the members of the Eliot Police Department, namely that EPD members were present at the pre-search meeting where they "planned and agreed with the other defendant to subject Mr. Widi to unlawful searches and seizures." *Id.* at 4. He observes that this Court earlier rejected ATF Special Agent Paul McNeil's motion to dismiss because there was a general allegation against the ATF agents. *Id.* (quoting *Order Denying Pl.'s Mot. to Stay; Denying Pl.'s Mot. to Strike; and Granting Def. McNeil's Mot. to Dismiss* at 10-11 (ECF No. 170)).

Mr. Widi next claims that because this Court earlier allowed the claims against Lieutenant Cady and Officer Brown to continue, "that decision should continue to govern the same issues in subsequent stages of the same litigation." *Id.* at 4-5 (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).

Mr. Widi explains that his claim against Lieutenant Cady and Officer Brown is based on an alleged civil rights conspiracy. *Id.* at 5. Mr. Widi says that the Second Amended Complaint sufficiently alleges the conspiracy, which began when the EPD members gathered in the pre-search meeting, decided to abridge his rights, and proceeded to do so by unlawfully searching and seizing his van. *Id.*

Finally, Mr. Widi argues that the district court's determination that his van was wrongfully seized operates to collaterally estop Lieutenant Cady and Officer Brown from claiming now that the seizure was legal. *Id.* at 6. He asserts that Lieutenant Cady and Officer Brown were in privity with the United States and therefore should be bound by legal decisions in the criminal case. *Id.* Even if neither police officer is deemed to have been in privity, Mr. Widi contends that they should be barred from denying the illegality of the search and seizure of the van by the doctrine of non-mutual offensive collateral estoppel. *Id.* at 7. Finally, Mr. Widi maintains that neither Lieutenant Cady nor Officer Brown may avoid liability by the qualified immunity defense, because his privacy rights to the van were clearly abridged and the omission of the negative sniff from the state search warrants was clearly illegal. *Id.* at 7-9.

### C. The Officers' Reply

Lieutenant Cady and Officer Brown reply to a few of Mr. Widi's issues. First, they contend that a generalized allegation against the officers at the EPD is insufficient as a matter of law to sustain a claim. *Defs.' Reply* at 1-2 (citing *Maldonado v. Fontanes*, 568 F.3d 263, 274 (1st Cir. 2009)).

Next, they dispute Mr. Widi's contention that the Court earlier allowed a claim to proceed against Special Agent McNeil under a generalized allegation against ATF agents. *Id.* at 2-3.

Third, Lieutenant Cady and Officer Brown assert that collateral estoppel does not bar them from litigating in this civil forum issues resolved in the criminal case. *Id.* at 3-5 (citing *Bilida v. McCleod*, 211 F.3d 166, 170-71 (1st Cir. 2000)).

## IV.    DISCUSSION

In Counts IV, V, and VI, Mr. Widi makes the general allegations that "the ATF, MDEA, EPD, and MSP defendants" violated his rights to be free from unreasonable searches and seizures, and they conspired to violate those rights. *Second Am. Compl.* ¶¶ 90, 97, 108. Mr. Widi asserts that there was a pre-search briefing where the "defendants planned and agreed to unlawfully seize and search Mr. Widi's tile company van that was not included in the warrant." *Second Am. Compl.* ¶¶ 84, 93, 100. He alleges that "the ATF, MDEA, EPD, and MSP defendants made plans and agreed to have the MSP defendants enter Mr. Widi's private property during the execution of the search warrant to conduct a K-9 sniff on Mr. Widi's tile company van." *Id.* ¶ 77. He claims that during the search, Detective Curran of the EPD "had the MSP defendants conduct a sniff of Mr. Widi's tile company van at McNeil's instruction, which came back negative." *Id.* ¶ 78.

In Count IV, Mr. Widi says that Lieutenant Cady "attempted to get Mr. Widi's consent to allow the ATF and members of the search team to search his tile company van", but that Mr. Widi "declined to allow the search." *Id.* ¶ 85. Although Mr. Widi

does not allege that in asking Mr. Widi for his consent, Lieutenant Cady did anything illegal, the Court infers that Mr. Widi is claiming Lieutenant Cady was acting as the "good cop" and, failing to obtain of his consent, the seizure and search would proceed according to the planned conspiracy. The Court agrees with Lieutenant Cady that the conspiracy allegation against him is thin, but the motion to dismiss standards control the Court's disposition.

Despite the negative sniff, Mr. Widi alleges that ATF Special Agent McNeil "directed the seizure of the van" and EPD Chief Short "requested that Brown return to Mr. Widi's residence, where [Detective] Curran directed him to observe the van being loaded on a flatbed." *Id.* ¶ 86. Then in Count V, Mr. Widi alleges that after the van was towed, "[Detective] Curran and [Chief] Short had [Maine State Trooper Jerome] Carr conduct a second sniff search on the van at [Special Agent] McNeil's direction on November 30, 2008, which now came back positive." *Id.* ¶ 94. As with the allegations against Lieutenant Cady, the allegations against Officer Brown are thin. At best, he participated in the conspiratorial pre-search meeting and watched the van being seized. Again, however, the Court is constrained by the standards for a motion to dismiss and must accept Mr. Widi's allegations as true.

Count VI is a different story. In Count VI, Mr. Widi alleges that [Detective] Curran submitted an affidavit in support of a state search warrant to Judge O'Neill at the York District Court per [Special Agent] McNeil and [Chief] Short's instruction." *Id.* ¶ 101. He lists the members of law enforcement who "agreed to omit information, regarding the negative sniff with intentional and reckless disregard for the truth

because that fact would have had an adverse affect on the determination of probable cause." *Id.* ¶ 102. They were "[Detective] Curran, [Chief] Short, [Special Agent] McNeil, [Resident Agent] Armstrong, and [Special Agent] Anderson." *Id.* Mr. Widi makes no allegation that either Lieutenant Cady or Officer Brown was involved in the preparation or submission of the search warrant and affidavit to Judge O'Neill.

The seminal case in the First Circuit describing the legal standard for motions to dismiss is *Maldonado*, which followed the United States Supreme Court's *Twombly* and *Iqbal* decisions. To set the stage, in *Twombly*, the Supreme Court addressed a class action that alleged parallel conduct between telecommunications companies that was unfavorable to competition but legal, and a conspiracy to restrain commerce or trade that was illegal under the Sherman Act. 550 U.S. at 548-51. The Supreme Court concluded that "a bare assertion of conspiracy will not suffice" because "without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 557 (internal quotation marks omitted).

In *Iqbal*, the Supreme Court addressed allegations the Attorney General was the "principal architect" and the FBI director was "instrumental" in harsh conditions of confinement and invidious discrimination. 556 U.S. at 662. The Supreme Court said these allegations regarding the officials' involvement in the conduct were "bare assertions, much like the pleading of conspiracy in Twombly" which "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim . . . ." *Id.* at 681. These "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at

678.  While a court must accept all factual allegations as true when considering a motion to dismiss, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*.  Instead a court must ask whether the nonconclusory factual allegations are sufficient to push the plaintiff's conclusions "across the line from conceivable to plausible." *Id*. at 680.

In *Maldonado*, residents of three public housing complexes brought a civil rights suit under 42 U.S.C. § 1983 against the Mayor of Barceloneta, Puerto Rico, alleging that the Mayor "planned, personally participated in, and executed . . . raids in concert with others" against the residents of public housing complexes during which municipal officials seized the residents' family pets and killed them.  568 F.3d at 266-67, 274.  The First Circuit took issue with the absence of any specific details about how he "planned" or "participated" in the illegal conduct beyond that bare conclusion.  The Mayor was "not named as the individual who directly planned, supervised, and executed the raids," but rather, the complaint "merely allege[d] that he supervised, directly or indirectly, the agencies involved" and that he was present when one of the raids occurred.  *Id*.  There was "no allegation the Mayor participated in the killing of any pet or directed the services of the private contractor."  *Id*.  The First Circuit concluded that the "generalized allegation" of the Mayor's involvement was "insufficient to push the plaintiffs' claim beyond the pleadings stage." *Id*. at 274.  The *Maldonado* Court explained that the allegations against the Mayor "do not establish that his involvement was sufficiently direct to hold him liable for violations of the plaintiffs' substantive due process rights."  *Id*.

Two counts within Mr. Widi's Complaint fare better than those in *Iqbal*, and *Maldonado* for at least two reasons. First, *Iqbal* and *Maldonado* are distinguishable from Mr. Widi's Second Amended Complaint because the defendants in those cases were high ranking officials, not street level officers. See *Iqbal*, 556 U.S. at 668-69 (noting that the plaintiff had other claims against individual officers, but the allegations against those "at the highest level of the federal law enforcement hierarchy" were "the only ones relevant here"). Elected mayors and top political appointees are generally tasked with setting broad policies, not directly implementing those policies on the ground or participating in the kind of confrontations that typically give rise to lawsuits against officers in their personal capacities. This necessarily makes allegations that high ranking officials entered into conspiracies about or participated in ground level conduct less plausible than allegations against street level officers themselves, simply because those officers' jobs take them closer to those kinds of situations. Since the decisions of high ranking officials impact broad swaths of the population and, thus, create more potential plaintiffs, there is also a greater burden on them if plaintiffs are able to subject them to discovery with fewer factual allegations or specific details about their involvement. *See id*. at 686 (noting the potential burden discovery might have on "high-level officials who must be neither deterred nor detracted from the vigorous performance of their duties"). The allegations here are against street level officers with whom Mr. Widi had direct personal contact during the execution of the search warrant and his arrest, not high ranking officials removed from the situation.

Second, Mr. Widi's allegations contain more specific factual support about Officers Brown and Cady's involvement than the allegations in *Maldonado*. Even assuming Mr. Widi might have a claim against someone for the seizure of his van, *see United States v. Widi*, 686, F. Supp 2d 107, 114 (D. Me 2010), his blanket allegations against dozens of officers do not rise to the level of plausibility against every single law enforcement defendant. Nevertheless, as regards Officers Cady and Brown, Mr. Widi makes several specific allegations to support the general one, namely that they violated and conspired to violate his right to be free from unreasonable searches and seizures involving his van. He pleads details about the date, time, and location where the conspiracy began. See *Second Am. Compl.* ¶ 57 ("The defendants met early in the morning" for a briefing on November 28, 2008, "at the Eliot Police Station"). He describes the number of officers present in the room at the time. *Id.* (there "were around 20 agents and officers present"). He even describes several of the "plots hatched" and the officers' underlying motives. *See e.g. id.* ¶ 58.

Regarding the van seizure and Officer Cady in particular, Mr. Widi also alleges that he supervised the other EPD officers, participated in the search of his residence, was in charge of holding Mr. Widi at the police department, and attempted to get Mr. Widi to consent to the search of his van. *Id.* ¶ 19, ¶ 85. Regarding Officer Brown in particular, Mr. Widi alleges that he participated in the search of Mr. Widi's residence, placed Mr. Widi in handcuffs, was involved in the seizure of Mr. Widi's vehicles, and more specifically, that he was tasked with observing the van being loaded on a flatbed. *Id.* ¶ 20, ¶ 86.

The Court agrees with Officers Brown and Cady that none of these more specific allegations against them by name states a claim for wrongful conduct, but the Court finds them sufficient to bolster the allegations about the conspiracy and responsibility for the searches and seizure. The specific details alleged are not "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010). Taking the allegations as true and construing them liberally, the officers' involvement in the van seizure or conspiracy "was sufficiently direct" to survive a motion to dismiss. *Maldonado*, 568 F.3d at 274. The only specific allegation about the *Maldonado* Mayor's involvement in the pet killings was that he was merely present at one of the raids. An analogous level of involvement here is that of the unnamed officers who were not involved in the van seizure but were merely present during the execution of the search warrant at Mr. Widi's house. The defendants in that position were indeed screened and dismissed in earlier orders. In contrast, Officer Brown and Cady were more directly involved because of their temporal and physical proximity, and because they allegedly took specific steps in furtherance of the van seizure itself, such as seeking Mr. Widi's consent and monitoring the loading of the van. This level of involvement is more like the uniformed municipal employees and contractors carrying out the raids than the Mayor in *Maldonado*. *Id*.

The Court also agrees with Officers Brown and Cady that the specific allegations in Counts V and VI do not refer to them by name, and therefore these claims against them are not as plausible as those in Count IV. Count V, however, is

sufficiently related to the same van seizure and incorporate the earlier allegations such that it is part of the same conspiracy plausibly stated in Count IV.

By contrast, Count VI is further removed from the events described in Count IV. In his allegations about the second search warrant and the probable cause factors, Mr. Widi mentions several other officers by name but does not allege Officers Brown and Cady had anything to do with the application for a search warrant. There is no indication they even knew about the efforts to obtain a search warrant for the van. In short, he has not alleged enough specifics as to them to state a plausible claim in Count VI.

The Court's denial of Officer Brown and Cady's motion as to Counts IV and V does not reflect the Court's position on the ultimate likelihood of success by Mr. Widi at subsequent stages. Unlike a motion to dismiss where the Court must accept the allegations in the Second Amended Complaint as true, if the Defendants file a motion for summary judgment, the allegations underpinning Mr. Widi's Second Amended Complaint will be tested by a record based on evidence. The Court views either a motion for summary judgment or, if necessary, a trial on the merits as better vehicles to resolve Mr. Widi's allegations.

## V. CONCLUSION

The Court DENIES Defendants Kevin Cady and Robert Brown's Motion to Dismiss (ECF No. 403) as to Counts IV, and V and GRANTS the Motion to Dismiss as to Count VI.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of September, 2017