UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| DAVID J. WIDI, JR., | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:12-cv-00188-JAW |
| | ) | |
| PAUL MCNEIL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON STEPHEN E. HICKEY AND MICHAEL GRASSO'S MOTION FOR SUMMARY JUDGMENT ON COUNT VII OF THE SECOND AMENDED COMPLAINT

Claiming that a grey trailer on his property was illegally opened and searched by law enforcement, a plaintiff claims that two law enforcement officers were the individuals involved in the allegedly illegal trailer search. In response, the officers have submitted sworn declarations that when they came upon the grey trailer, the door of the trailer was wide open and they observed and photographed items in plain view. Although the plaintiff is skeptical of the officers' sworn statements, the Court concludes that there is no evidence contradicting the officers' versions of the search of the grey trailer and that the officers are therefore entitled to summary judgment because they cannot be said to have illegally searched something in plain view.

I.  BACKGROUND

On June 13, 2012, David J. Widi, Jr. filed a civil rights complaint against a host of defendants, including Alcohol, Tobacco and Firearms (ATF) Agents Stephen E. Hickey, Jr. and Michael Grasso. *Compl.* (ECF No. 1). On July 13, 2012, the Magistrate Judge issued a screening order and authorized service of process on five

defendants, not including ATF Agents Hickey and Grasso; the Magistrate Judge did not address the viability of the claims against Agents Hickey and Grasso. *Order for Serv. After Screening Compl. Pursuant to 28 U.S.C. § 1915A* (ECF No. 6). On August 2, 2012, he amended the complaint. *Am. Compl.* (ECF No. 15). In the Amended Complaint, Mr. Widi made allegations against Agents Hickey and Grasso, arising out of a search of his residence on November 28, 2008. *Id.*

On November 18, 2013, Mr. Widi filed a second amended complaint but failed to file a motion for leave to amend the first amended complaint. *Second Am. Compl.* (ECF No. 191). After straightening out a procedural tangle, the Court issued an extensive order on February 11, 2015, screening the allegations in the Second Amended Complaint and allowing some, but not all to go forward. *Screening Order, Order Vacating in part Earlier Order Denying Mot. for Leave to File Second Am. Compl. as to Served Defs., Order Granting in part Mot. to File Second Am. Compl., Order Striking Portions of the Second Am. Compl., and Order Denying Mot. to Stay* (ECF No. 270) (*Screening Order*). As a result of the February 11, 2015 order, the Second Amended Complaint became the operative complaint in this case.

In the Second Amended Complaint, specifically in Count VII, Mr. Widi claimed that certain unnamed ATF and other law enforcement agents unlawfully searched his grey trailer on November 28, 2008. *Second Am. Compl.* at 29. However, in its February 11, 2015 screening order, the Court concluded that Count VII should not go forward because of its scattershot approach. *Screening Order* at 39. On May 4, 2015, Mr. Widi filed a motion asking the Court to reconsider its screening order. *Mot. for*

2

*Recons.* (ECF No. 292) (*First Recons. Mot.*).  On December 8, 2015, the Court issued a twenty-five page order denying Mr. Widi's motion for reconsideration of its screening order, and requiring Mr. Widi to present some documentary evidence supporting his allegations.  *Order on Mot. for Recons. and Mot. Pursuant to Fed. R. Civ. P. 60* (ECF No. 325) (*First Recons. Order*).

On March 24, 2016, Mr. Widi filed another motion for the Court to reconsider its order denying his motion to reconsider its screening order.  *Resp. to Order on Mot. for Recons. and Mot. Pursuant to Fed. R. Civ. Pro. 60 with Accompanying Documentary Evid. and Mot. for Disc.* (ECF No. 351) (*Mot. to Recons. Order on Mot. to Recons.*).  On January 10, 2017, the Court issued a thirty-three page order, granting the motion in part and denying it in part.  *Order on Mot. for Recons.* (ECF No. 392) (*Second Recons. Order*).  Acknowledging that Mr. Widi's allegations against Agents Hickey and Grasso were "thin", the Court nevertheless allowed Mr. Widi to proceed against these Agents based on the allegation that the Agents opened up the grey trailer door and photographed a motorcycle inside a grey trailer on Mr. Widi's property for which there was no search warrant.  *Id.* at 19-20.  On March 31, 2017, Agents Grasso and Hickey answered the amended complaint.  *Stephen E. Hickey, Jr.'s Ans. to Second Am. Compl. and Affirmative Defenses* (ECF No. 424); *Michael Grasso's Ans. to Second Am. Compl. and Affirmative Defenses* (ECF No. 425).

On April 18, 2017, Agents Grasso and Hickey moved for summary judgment and submitted a statement of undisputed material facts.  *Stephen E. Hickey and Michael Grasso's Mot. for Summ. J. on Count VII of the Second Am. Compl.* (ECF No.

428) (*Defs.' Mot.*); *Statement of Undisputed Material Facts* (ECF No. 429) (DSMF). After a series of extensions, on July 28, 2017, Mr. Widi filed a response, an opposing statement of material facts, and a set of additional facts. *Opp'n to Hickey and Grasso's Mot. for Summ. J. on Count VII of the Second Am. Compl.* (ECF No. 473) (*Pl.'s Opp'n*); *Opposing Statement of Material Facts* (ECF No. 474) (PRDSMF; PSAMF). On August 7, 2017, Agents Grasso and Hickey filed a reply memorandum and a reply to Mr. Widi's additional material facts. *Stephen E. Hickey and Michael Grasso's Reply Br. in Support of Their Mot. for Summ. J. on Count VII of the Second Am. Compl.* (ECF No. 479); *Defs.' Resps. to Pl.'s Statement of Additional Fact* (ECF No. 480) (DRPSAMF).

## II. LEGAL STANDARD

A court may grant summary judgment under Federal Rule of Civil Procedure 56 if the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A 'material' fact is a 'contested fact [that] has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant,' and a 'genuine issue' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *McCarthy v. City of Newburyport*, 252 F. App'x 328, 332 (1st Cir. 2007) (quoting *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001)) (internal quotation marks and citation omitted). The Court must examine the record evidence "in the light most favorable to [the nonmovant], and [must draw] all reasonable inferences in . . . favor [of the nonmoving party]." *Foley v. Town of Randolf*, 598 F.3d 1, 5 (1st Cir. 2010). At the

4

same time, courts ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Cortés-Rivera v. Dep't of Corr. & Rehab.*, 626 F.3d 21, 26 (1st Cir. 2010) (quoting *Sullivan v. City of Springfield*, 561 F.3d 7, 24 (1st Cir. 2009)).

## III. STATEMENT OF FACTS

### A. The Parties

David J. Widi, Jr. was investigated for, charged with, and ultimately convicted of being a felon-in-possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1) and manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1) in the District of Maine. DSMF ¶ 1; PRDSMF ¶ 1. Stephen E. Hickey and Michael Grasso are both currently employed as Special Agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). DSMF ¶ 2; PRDSMF ¶ 2. During November of 2008, Agents Hickey and Grasso were both assigned to the Portland office of ATF, along with Special Agent Paul J. McNeil. DSMF ¶ 3; PRDSMF ¶ 3.

### B. Events Leading up to the Search at Mr. Widi's Residence

Special Agent Kevin Curran of the Eliot Police Department and the Maine Drug Enforcement Agency (MDEA) began investigating David J. Widi, Jr. after debriefing an informant in July of 2008. PSAMF ¶ 19; DRPSAMF ¶ 19. Agent Curran included Agent McNeil of ATF in the investigation and Agents Curran and McNeil worked closely together from the beginning of the investigation. *Id.* On November 25, 2008, Agent McNeil submitted an application and obtained a federal search warrant for Mr. Widi's residence. PSAMF ¶ 20; DRPSAMF ¶ 20. Agents McNeil and Curran arranged to have members of the ATF, the Eliot Police Department, the MDEA, and the Maine State Police jointly execute the warrant. *Id.*

5

On November 28, 2008, the law enforcement personnel who were to be involved in the execution of the warrant held a pre-search briefing.[1] PSAMF ¶ 21; DRPSAMF ¶ 21. Agent Curran arranged to have a K-9 unit at the scene in order to conduct an external sniff of Mr. Widi's van when the search warrant was being executed.[2] *Id.*

---

[1] In his statement of additional material fact 21, Mr. Widi asserts:
  At that briefing the law enforcement personnel planned and agreed [to] violate Mr. Widi's Fourth Amendment rights. For example, the law enforcement personnel plotted to conduct a traffic stop on the basis that Mr. Widi's New Hampshire license was allegedly suspended, even though they knew that he had a valid Maine license and would have been operating in Maine. The claim that Mr. Widi's New Hampshire license was suspended was false as his license was not suspended by New Hampshire until 2/18/09 and, therefore, it would have been valid on November 28, 2008.
PSAMF ¶ 21. Special Agents Hickey and Grasso requested that these statements be struck because in the Agents' view, they are argument, not fact and because the Court rejected Mr. Widi's Fourth Amendment claim. DRPSAMF ¶ 21. Special Agents Hickey and Grasso also say that they were not involved in Mr. Widi's detention or the sniff search of his van. *Id.* The Special Agents also dispute Mr. Widi's contention that he held a valid New Hampshire license on November 28, 2008. *Id.*

In the Court's view, most of Mr. Widi's paragraph 21 is immaterial to his claim against Special Agents Hickey and Grasso. Mr. Widi's allegation against Special Agents Hickey and Grasso is that they unlawfully opened his locked trailer and photographed what was inside. *Second Am. Compl.* at 30. The Court allowed Mr. Widi to proceed against Special Agents Hickey and Grasso on this allegation alone. *Second Recons. Order* at 19-20. He has not alleged that Special Agents Hickey and Grasso participated in his arrest or in the sniff search of his van. *Second Am. Compl.* at 30. Although the parties argue about whether Mr. Widi had a valid New Hampshire driver's license, the Court does not reach this dispute because it is not material to the legal issues in the motion for summary judgment.

The only potential materiality of Mr. Widi's allegations about a pre-search agreement to violate his civil rights is that, in searching his grey trailer, these Special Agents were part of a larger law enforcement conspiracy. Cabined by this narrower point, the Court examined the basis for Mr. Widi's statement of fact: "At that briefing the law enforcement personnel planned and agreed [to] violate Mr. Widi's Fourth Amendment rights." PSAMF ¶ 21. In support of this statement in his additional statement of material fact, Mr. Widi cites only his own sworn declaration. *Id.* (citing *Pl.'s Opp'n* Attach. 1 *Decl. of David J. Widi, Jr.* ¶ 4) (*Widi Decl.*). But Mr. Widi's sworn declaration contains no citation in support of his statement. *Widi Decl.* ¶ 4. Mr. Widi was not present at the pre-search law enforcement meeting, *see* PSAMF ¶ 21, and he has presented no probative evidence from an eyewitness to support his contention that the law enforcement officers discussed violating his civil rights at the pre-search meeting. As such, Mr. Widi has not presented an adequate foundation for his allegations. Accordingly, the Court did not include these allegations in its statement of facts because they are argument, not evidence.

[2] Mr. Widi's statement in paragraph 21 is that "law enforcement personnel also planned to subject Mr. Widi's van to a sniff search even though it was not listed on the warrant." PSAMF ¶ 21. Special Agents Hickey and Grasso clarified in their response that it was Special Agent Curran who arranged to have the K-9 unit present to perform the sniff search of Mr. Widi's van. DRPSAMF ¶ 21. The Court included this additional detail because it is consistent with Mr. Widi's paragraph 21.

After law enforcement completed the briefing, Mr. Widi left his apartment and traveled to a gas station where he was subjected to a de facto arrest. PSAMF ¶ 22; DRPSAMF ¶ 22. It was Mr. Widi's common practice always to secure the premises before leaving and he ensured that the grey utility trailer was locked before he left. *Id*. After his arrest at the gas station, Mr. Widi was returned to his apartment in a patrol car and he observed that the grey trailer remained locked for the hour he was present. *Id*. Sometime after Mr. Widi was transported to the Eliot Police Station, the grey trailer was opened by someone using keys that Agent Curran took from him and gave to Agent McNeil.[3] *Id*. The search warrant did not authorize a search of the grey trailer. *Id*.

### C. The Search at Mr. Widi's Residence

On the morning of November 28, 2008, Agents Hickey and Grasso participated in the execution of a federal search warrant at Mr. Widi's residence in Eliot, Maine; Agent McNeil had already obtained the search warrant. DSMF ¶ 4; PRDSMF ¶ 4. Agents Hickey and Grasso were assisted by state and local law enforcement officers, who were also present at the scene. *Id*. Although Mr. Widi continues to question whether the evidence was sufficient to warrant his convictions, the search yielded evidence that, with other evidence, was sufficient to support the arrest, prosecution,

---

[3] In paragraph 22, Mr. Widi asserts that law enforcement unlocked and opened the grey trailer, using the key that Agent Curran took from him at the Eliot Police station. PSAMF ¶ 22. Agents Hickey and Grasso admit for purposes of their motion that somebody unlocked the grey trailer and opened its door using the key that Mr. Widi provided to law enforcement. DRPSAMF ¶ 22. But they do not admit that law enforcement unlocked and opened the trailer door. *Id*.

7

and ultimately the conviction of Mr. Widi on drug and firearms charges. DSMF ¶ 5; PRDSMF ¶ 5.[4]

Before the search for contraband began on the morning of November 28, 2008, ATF agents conducted a preliminary security "sweep" of Mr. Widi's residence to ensure that no one was present inside. DSMF ¶ 6; PRDSMF ¶ 6. During the execution of the search warrant, ATF created three video segments that they said were a pre-search view of the apartment, a view of the shed, and a post-search view of the apartment. PSAMF ¶ 23; DRPSAMF ¶ 23. Videotaping the premises prior to the execution of any search warrant is standard ATF operating procedure. DSMF ¶ 8; PRDSMF ¶ 8. The sound and time-stamp features were intentionally turned off.[5] PSAMF ¶ 23; DRPSAMF ¶ 23. The video attached to Special Agent Douglas Kirk's declaration is the same video the prosecution submitted at Mr. Widi's criminal trial. *Id.* During Mr. Widi's criminal trial, Agent McNeil testified that the pre-search segment of the video was taken before the search. *Id.* ATF Agent Kirk videotaped the interior and exterior of Mr. Widi's residence as well as the yard and nearby shed

---

[4] Mr. Widi interposes a qualified response to the Defendants' statement that the search yielded evidence that was sufficient to support his convictions. PRDSMF ¶ 5. Mr. Widi admitted that he was convicted of drug and firearms charges. DSMF ¶ 1; PRDSMF ¶ 1. This Court's own docket confirms that on April 20, 2010, a federal jury found him guilty of the firearms and drug charges. *United States v. Widi*, No. 2:-09-cr-00009-GZS. Mr. Widi appealed his convictions to the Court of Appeals for the First Circuit and on July 6, 2012, the First Circuit affirmed the convictions. *United States v. Widi*, 684 F.3d 216, 226 (1st Cir. 2012). As Mr. Widi's convictions are final, the Court must accept them as fact. In its description of the undisputed facts, the Court noted Mr. Widi's contention about the sufficiency of evidence for the convictions and it added that the evidence obtained at the search was not the sole evidence that secured his convictions. Otherwise, the Court overrules Mr. Widi's objection.
[5] Mr. Widi's paragraph 23 alleges that the sound and time-stamp features were intentionally turned off. PSAMF ¶ 23. Special Agents Hickey and Grasso say that the sound and time-stamp features were not activated. DRPSAMF ¶ 23. Without evidence about the operation of the sound and time-stamp features of the video recorder and whether they require the user to activate or turn off these functions, the Court viewed this factual dispute in the light most favorable to the Plaintiff and included Mr. Widi's version.

in order to create a permanent record of the premises.[6] DSMF ¶ 7; PRDSMF ¶ 7. The video shows a .50 caliber barrel in a box on the kitchen table and the same .50 caliber barrel was photographed in the attic of the apartment.[7] *Id.* There was a draft Photo Log created during the execution of the search warrant captured in one of the photographs provided as part of the discovery in Mr. Widi's criminal case, and the copy submitted by Agent Hickey is not a true and accurate copy of the draft log generated during the search. PSAMF ¶ 24; DRPSAMF ¶ 24.[8]

---

[6] In their paragraph 7, the Defendants say that "[i]mmediately after," the protective sweep ATF Agent Douglas Kirk videotaped the interior and exterior of Mr. Widi's residence, the yard, and nearby shed in order to create a permanent record of the premises "as they appeared prior to the execution of the search warrant." DSMF ¶ 7. Mr. Widi denied the statement, referring to his own sworn declaration. PRDSMF ¶ 7. Because the exact timing of the videotape is in dispute, the Court eliminated the phrase, "immediately thereafter" and "as they appeared prior to the execution of the search warrant." However, Mr. Widi does not appear to deny that the ATF Agent Kirk actually took the videotape or that the videotape shows his residence, yard, and shed. The Court included that much of Defendants' paragraph.

[7] In his paragraph 23, Mr. Widi says: "After being confronted with this discrepancy McNeil admitted that the video was not taken prior to the search." PSAMF ¶ 23. Agents Hickey and Grasso objected to this part of paragraph 24 on the ground that it is not supported by the record. DRPSAMF ¶ 23. In paragraph 23, Mr. Widi cites his sworn declaration at paragraph 6 as support for his contention about Agent McNeil's admission. PSAMF ¶ 23. In paragraph 6 of his sworn declaration, Mr. Widi cites ECF Number 286 in his criminal case at pages 28 to 32. *Widi Decl.* ¶ 6. The citation is to a transcript of Mr. Widi's October 13, 2010 sentencing hearing. *United States v. Widi*, No. 2:09-cr-00009-GZS, *Tr. of Proceedings* (ECF No. 286).

This part of the sentencing hearing transcript is the testimony of Agent McNeil. *Id.* at 28-32. Agent McNeil acknowledges that the .50 caliber gun barrel was moved around. *Id.* 28:2-6. He confirms that law enforcement began videotaping the apartment at the beginning of the search in order to document the way the place looked when law enforcement walked in. *Id.* 28:7-15. He agreed that the video showed the .50 caliber gun barrel on the kitchen table. *Id.* 28:16-20. He also agreed that a photograph showed the same .50 caliber barrel in the attic. *Id.* 30:3-5. Agent McNeil declined to say that the videotape of the barrel in the kitchen was taken before the photograph of the barrel in the attic. *Id.* 30:10-17. Agent McNeil testified that "[m]ultiple people did multiple things at the same time." *Id.* 31:9. He testified that some people were taking photographs and a videotape was also being taken, but he could not say whether they were "at the same time, one before the other" or "if video began before photographs for some of them." *Id.* ¶ 31:6-8. He acknowledged that it was possible that some photographs were taken before the videotaping. *Id.* 31:23-32:1. Based on this testimony, the Court agrees with Agents Hickey and Grasso that Agent McNeil did not testify that the videotape was not taken prior to the search and the Court omitted Mr. Widi's assertion from the statement of facts.

[8] In his paragraph 24, Mr. Widi states: "There was a Photo Log created during the execution of the search warrant that was captured in one of the photographs provided as part of the discovery in Mr. Widi's criminal discovery and the copy submitted by Hickey is not a true and accurate copy of the

**D.     The Alleged Search of the Grey Trailer**

The videotape by Agent Kirk includes footage of the grey trailer and the motorcycle inside the trailer. DSMF ¶ 9; PRDSMF ¶ 9. At the time Agent Kirk filmed the trailer, it was wide open. *Id.*[9] Prior to the execution of the search warrant, Agent

---

log generated at the time of the search." PSAMF ¶ 24. Agents Hickey and Grasso denied this statement and requested it be struck. DRPSAMF ¶ 24.

   In support of paragraph 24, Mr. Widi cited: "*Compare Widi v. McNeil*, 2:12-cv-00188-JAW (D. Me.) (ECF No. 429-5:11) *with* attached Exhibit C." Docket number 429 refers to the statement of material fact that Agents Hickey and Grasso submitted in support of their motion for summary judgment. The Court assumes 5 refers to attachment five, which is Agent Hickey's sworn declaration. DSMF Attach. 5 *Decl. of Stephen Hickey*. Page 11 of Agent Hickey's sworn declaration is a copy of a document titled "Photo Log." *Id.* at 11. To his statement of facts, Mr. Widi attached an exhibit C, which is a photograph of a portion of a photo log beginning with number 76 and ending in number 77. PSAMF Attach. C. There is a pen obscuring the description of the items and it is otherwise difficult to read.

   Agents Hickey and Grasso request that this statement be struck because it is argument, not fact. DRPSAMF ¶ 24. They point to Agent Hickey's sworn declaration in which he states that the photograph in Exhibit C depicts a rough draft of handwritten notes he made on the day of the search to help him keep track of the items he was photographing. *Id.* Attach. 1 *Supp. Decl. of Stephen E. Hickey* ¶ 5. He says that he later used those notes to create a final, more legible version of the photo log that became part of the official record. *Id.*

   The Court viewed both the photograph and the final photo log and it is apparent that the photograph reveals the draft of a photo log, not the finished product. The first column is entitled "Roll", presumably referring to the roll number. The second column is entitled "Photo", presumably referring to the number of the photographs within the roll. In Exhibit C, the column for "Roll" mistakenly contains the numbers of the photographs and the column for "Photo" is blank. Also, none of the identifying information (e.g. case number, investigation title, page number) is completed at the top of the document and the last number is 77. There is a pen lying across the photo log in Exhibit C suggesting the author was still working on an incomplete log.

   By comparison, the photo log attached to Agent Hickey's sworn declaration has the identifying information completed on the top of the page: Case No. 762065-09-0023, David Widi as the investigation title, and page 7 of 7 pages. The "roll" column is left blank, the photo number column is filled in, and the last number is 79-81. Based on the Court's comparison, Exhibit C depicts field notes that Agent Hickey later polished up and completed as part of the final report.

   The Court is not clear why all of this matters. Assuming the worst – namely that there were two final reports and Agent Hickey substituted a different final report than the one depicted in the photograph, Mr. Widi has pointed to nothing about either document that bears on whether the trailer door was locked or open when these Special Agents commenced the search.

[9]    Mr. Widi interposed a qualified response to this statement on the ground that the utility trailer was open only because law enforcement personnel opened it. PRDSMF ¶ 9. The Court has not included Mr. Widi's qualification because the Defendants' statement as drafted does not state or imply when the trailer door was opened or by whom.

   The Defendants' paragraph 10 states: "Once Agent Kirk finished videotaping the premises, ATF agents began searching the locations that were authorized to be searched by the federal warrant (namely, Widi's residence and a shed on the property)." DSMF ¶ 10. Mr. Widi denied this paragraph on the ground that the videotape was not taken prior to the search. PRDSMF ¶ 10. The Court agrees with Mr. Widi that there is a factual dispute about whether Agent Kirk's video was taken before or

Hickey was assigned to take photographs of the premises and items found during the search. DSMF ¶ 11; PRDSMF ¶ 10. At some point during the day, while the search warrant was being executed, Agent Grasso asked Agent Hickey to take a photograph of the grey trailer, and Agent Hickey thereafter photographed the trailer and the Harley Davidson inside the trailer, which was in plain view.[10] DSMF ¶ 12; PRDSMF ¶ 12. Neither Agent Hickey nor Agent Grasso opened the trailer.[11] DSMF ¶ 13; PRDSMF ¶ 13. The trailer was already open when each of them first encountered it. *Id.* Agent Grasso does not recall "finding" the trailer.[12] DSMF ¶ 14; PRDSMF ¶ 14. In fact, he was not even "looking" for the trailer because it was not one of the locations they were focusing on during the execution of the search warrant. *Id.* Agent Hickey listed Agent Grasso as the individual who "found" the trailer simply because Agent Grasso was the one who asked him to photograph it. DSMF ¶ 15; PRDSMF ¶ 15. Agent Grasso's best guess as to why he asked Agent Hickey to take a picture of the trailer is that some other law enforcement officer at the scene asked if ATF could take a photograph of the trailer.[13] DSMF ¶ 16; PRDSMF ¶ 16.

---

contemporaneous with the search. Viewing the dispute in the light most favorable to Mr. Widi, the Court declines to insert Defendants' paragraph 10 in the statement of undisputed facts.

[10] Mr. Widi interposed a qualified response, stating that the motorcycle was in plain view only because law enforcement personnel opened the trailer. PRDSMF ¶ 12. As the Defendants' paragraph 12 does not address who opened the trailer, only that the motorcycle was in plain view when Agent Hickey photographed it, the Court overrules Mr. Widi's qualified response.

[11] Mr. Widi interposed a qualified response to this sentence and the next: "Other witnesses may be able to cast light on Grasso's involvement with the trailer and, where he had been removed from the scene, Mr. Widi notifies this Court pursuant to Fed. R. Civ. P. 56(f) that he is without facts essential to opposition." PRDSMF ¶ 13. The Court addressed this issue in its Order on Motion for Discovery (ECF No. 530).

[12] Mr. Widi interposed a qualified response, repeating his qualified response to the Defendants' paragraph 13; the Court refers to the preceding footnote.

[13] Mr. Widi interposed a qualified response, repeating his qualified response to the Defendants' paragraph 13; the Court refers to footnote 11.

11

Neither Agent Hickey nor Agent Grasso has any information regarding who, if anyone, opened the trailer on November 28, 2008.[14] DSMF ¶ 17; PRDSMF ¶ 17. Indeed, they believe it is possible that the trailer was in that condition when law enforcement arrived to execute the search warrant that day. *Id.* Defendants' respective recollections regarding the condition of the trailer at the time they first encountered it (i.e. the fact that it was already open) are confirmed by the videotape taken by Agent Kirk. DSFM ¶ 18; PRDSMF ¶ 18. That videotape clearly shows that the trailer was open.[15] *Id.*

## IV. LEGAL ARGUMENT

### A. Agents Hickey and Grasso's Motion

Noting that Mr. Widi's claim against Agents Hickey and Grasso is based on the factual premise that they opened his locked trailer, the Agents say that this factual premise is false and that they did not open the trailer. *Defs.' Mot.* at 1-2. Instead, they say that they came upon the trailer with the door open and that the Harley Davidson in the photographs was therefore in plain view. *Id.* at 2. Because the Harley Davidson was, in their view, in plain view, the Agents contend that the Fourth Amendment is not implicated. *Id.* at 4. As they did not "search" the grey trailer, the Agents contend that they are entitled to summary judgment because Mr. Widi's claim

---

[14] Mr. Widi denied this and the next statement, restating that the trailer was locked when he left the premises. PRDSMF ¶ 17. But Mr. Widi's denial is nonresponsive to the Defendants' assertion. Assuming that the trailer was locked when Mr. Widi left his home, it does not follow that the Defendants know who unlocked it. The Court does not accept Mr. Widi's denial.

[15] Mr. Widi denied the original statements in Defendants' paragraph 18 on the ground that the videotape is not an accurate depiction of the premises before the search. PRDSMF ¶ 18. Based on its prior rulings, the Court removed the language in Defendants' paragraph 18 to the extent it states that the videotape was completed before the search.

against them is incorrectly grounded upon the false assumption that they made an illegal search. *Id.* at 4-5.

### B. David Widi's Opposition

Mr. Widi makes two points in opposition. First, he acknowledges that as he was not present when the trailer door was opened, he is "without sufficient facts to oppose the defendant motion." *Pl.'s Opp'n* at 4. Instead, he says that the Court should allow him to engage in discovery under Federal Rule of Civil Procedure 56(d).[16] *Id.* Next, Mr. Widi claims that he should be allowed to proceed against Agents Hickey and Grasso because he says they engaged in a conspiracy to violate his constitutional rights by subjecting him to unlawful searches and seizures. *Id.* He refers to his claim that there was a pre-search meeting at which the law enforcement participants planned to unlawfully arrest him and seize his property. *Id.* Mr. Widi maintains that in light of the conspiracy charge, the "identity of the person who actually opened the trailer is irrelevant." *Id.* at 5. Finally, he asserts that Agent Hickey lied to the Court about the photo log. *Id.*

### C. Agents Hickey and Grasso's Reply

In reply, the Agents say that the "single dispositive fact in this case remains essentially undisputed." *Defs.' Reply* at 2. They maintain that the "simple truth of the matter is that neither Agent Hickey nor Agent Grasso opened the grey utility trailer at issue in Count VII." *Id.* They point out that Mr. Widi concedes in his own declaration that he does not know who opened the trailer. *Id.* (quoting *Widi Decl.* ¶

---

[16] Mr. Widi cites Rule 56(f), but in 2010, former Rule 56(f) became Rule 56(d). *See* FED. R. CIV. P. 56 advisory committee's note to 2010 amendments, subdivision (d).

13

5 ("I do not know who opened the trailer"). They also note that he has conceded that the Harley Davidson motorcycle was in plain view when Agent Hickey photographed it. *Id.* (citing PRDSMF ¶ 12). Without any evidence that either Agent Hickey or Agent Grasso actually opened the grey trailer, this leaves, in the Agents' view, only Mr. Widi's conspiracy claim. *Id.* at 3. The Agents say that there is no evidence that supports Mr. Widi's conspiracy allegations. *Id.* at 3-4.

V. **DISCUSSION**

A. **The Theories in the Second Amended Complaint**

In his Second Amended Complaint, Mr. Widi made a legal claim against Agents Hickey and Grasso that survived screening. *Second Recons. Order* at 19-20. As Agents Hickey and Grasso conceded, the grey trailer was not included in the search warrant, *Defs.' Mot.* at 2, n.1, and Mr. Widi's Second Amended Complaint expressly alleged that ATF agents and other law enforcement officers "planned and agreed to unlawfully search Mr. Widi's grey trailer that was not listed on the federal search warrant." *Second Am. Compl.* ¶ 106. As Mr. Widi's Second Amended Complaint and memorandum confirm, his allegations against Agents Hickey and Grasso are based on two theories: first, that Agents Hickey and Grasso were the officers who unlocked his grey trailer, and second, that they participated in a conspiracy to unlawfully search his grey trailer. *Pl.'s Opp'n* at 3-5. Neither theory is supported by any evidence. Therefore, Agents Hickey and Grasso are entitled to summary judgment in their favor.

Turning to the first theory, Agents Hickey and Grasso submitted sworn declarations that they did not open the grey trailer and that when they came upon

14

the trailer, the door had already been opened. *Defs.' Mot.* Attach. 2 *Decl. of Michael Grasso* ¶ 7 ("I recall the grey trailer, and I can state unequivocally that I did not 'open' that trailer on the day of the search"), ¶ 10 ("I can state unequivocally that the trailer was already open when I first encountered it"); *Defs.' Mot.* Attach. 5 *Decl. of Stephen E. Hickey* ¶ 9 ("I specifically recall the trailer and the Harley Davidson motorcycle, and I can state unequivocally that I did not 'open' that trailer on the day of the search", ¶ 10 ("I have no idea who, if anyone opened the trailer").

Against these direct denials, Mr. Widi offers no evidence that either Agent Hickey or Agent Grasso unlocked and opened the trailer door. He states in his opposition that Agent Curran took his keys and his keys were given to Agent McNeil. *Pl.'s Opp'n* at 3. Mr. Widi also states that the trailer could only have been opened with those keys. *Id.* Be that as it may, this evidence, even viewed in the light most favorable to Mr. Widi, fails to implicate either Agent Hickey or Agent Grasso as the person who unlocked the trailer lock and opened the door.[17] To find that either Agent Hickey or Grasso unlocked and opened the grey trailer door, the Court would have to engage in rank speculation. As noted earlier, the First Circuit has cautioned courts

---

[17] The timing does not seem right. Mr. Widi questioned whether Agent Kirk had taken the video before the officers began to execute the search warrant and Agent McNeil's testimony suggests that the videotaping may have taken place while some officers were already searching. But Mr. Widi acknowledges that after his arrest, he was taken to his home where he watched the search for an hour and during that time, he says the grey trailer door was locked. *Pl.'s Opp'n* at 2. He was then taken to the Eliot Police Department, where he says Agent Curran took his keys. *Id.* at 3.

The videotape shows the grey trailer door open. Thus, by Mr. Widi's telling, Agent Kirk must have taken the videotape of the Widi premises, including the grey trailer, an hour or more after the search was commenced. This is at least inconsistent with law enforcement policy that requires a videotape at the onset of the execution of a search warrant in order to document the state of the property before the search began. The Court does not need to resolve this issue because there is still no evidence that either Agent Hickey or Agent Grasso unlocked and opened the trailer door.

15

against crediting "conclusory allegations, improbable inferences, and unsupported speculation," *Cortés-Rivera*, 626 F.3d at 26 (1st Cir. 2010), when ruling on motions for summary judgment.

Mr. Widi's next theory is that Agents Hickey and Grasso participated in a conspiracy to deprive him of his constitutional rights. *Id.* at 4-5. Thus, Mr. Widi argues, it does not matter who actually unlocked and opened the grey trailer door, because Agents Hickey and Grasso were co-conspirators in a greater law enforcement conspiracy. *Id.* But there is no probative evidence that this conspiracy ever existed or that either Agent Hickey or Agent Grasso joined it. Mr. Widi bases his conspiracy charge on the allegation that law enforcement hatched a plot to arrest him under false pretenses and to ignore the restrictions of the search warrant in order to violate his Fourth Amendment rights. There is no evidence at all that these discussions actually took place at the pre-search meeting; Mr. Widi was obviously not present to hear any pre-search discussions and he has presented no evidence supporting his theory from anyone who was present. Moreover, even if the Court were to speculate that such a conspiracy existed, there is no evidence that either Agent Hickey or Agent Grasso participated in it. As against Agents Hickey and Grasso, Mr. Widi only alleges that they photographed an open trailer and a motorcycle that was in plain view. Again, to credit Mr. Widi's allegations, the Court would be required to engage in unwarranted speculation.

In short, even viewing the facts in the light most favorable to Mr. Widi, the Court concludes that he has failed to generate any genuine issues of material fact

against Agents Hickey and Grasso and that the Agents are entitled to judgment as a matter of law.

### B. Rule 56(d) Discovery

Mr. Widi's final point—that he should be allowed Rule 56(d) discovery—also fails. After the Agents filed the motion for summary judgment, on July 3, 2017, Mr. Widi, still incarcerated but soon to be released, filed a motion based in part on the fact that he was awaiting receipt of discovery from Agents Hickey and Grasso. *Second Mot. to Enlarge Time to File Opp'n to Defs. Hickey and Grasso's Mot. for Summ. J. on Count VII* (ECF No. 457). On July 6, 2017, the Court granted Mr. Widi's motion to extend time in part and urged the parties to resolve the discovery issue. *Order on David J. Widi, Jr.'s Second Mot. to Enlarge Time to File Opp'n to Defs. Hickey and Grasso's Mot. for Summ. J. on Count VII* at 5 (ECF No. 458). Mr. Widi filed his opposition to the motion for summary judgment on July 28, 2017. *Pl.'s Opp'n.*

Meanwhile on July 10, 2017, Agents Hickey and Grasso filed a status report regarding Mr. Widi's discovery requests. *Stephen E. Hickey and Michael Grasso's Status Report Regarding Pl.'s Purported Disc. Reqs.* (ECF No. 461). On the same day, Mr. Widi filed a motion to compel discovery against Agents Hickey and Grasso. *Mot. to Compel Disc.* (ECF No. 462). On July 17, 2017, Agents Hickey and Grasso filed an opposition to Mr. Widi's discovery requests. *Stephen E. Hickey and Michael Grasso's Opp'n to Pl.'s Mot. to Compel Disc.* (ECF No. 464). On September 5, 2017, Mr. Widi replied to the Defendants' response. *Reply to Hickey and Grasso's Opp'n to Pl.'s Mot. to Compel Disc.* (ECF No. 488).

On October 13, 2017, the Court issued an order in which it declined to allow Mr. Widi to obtain discovery from Agents Hickey and Grasso in order to prove his case against other defendants. *Order on Disc. Mot.* at 10-11 (ECF No. 510). At the same time, the Court authorized Mr. Widi to obtain "an extremely narrow and focused set of documents" from Agents Hickey and Grasso and directed the parties to confer in accordance with Local Rule 26(b). *Id.* at 11-12.

The parties continued their discovery dispute and on December 6, 2017, the Court issued another discovery order. *Order on Mot. for Disc.* (ECF No. 530). The Court noted that Agents Hickey and Grasso turned over two hundred and ten pages of documents to Mr. Widi, that it would not be appropriate to allow Mr. Widi to engage in discovery against Agents Hickey and Grasso in order to discover facts against other potential defendants, and that Mr. Widi failed to comply with Local Rule 26(b). *Id.* at 10. The Court dismissed without prejudice Mr. Widi's motion to compel discovery. *Id.* Mr. Widi has not filed another discovery motion against Agents Hickey and Grasso. Thus the Court has addressed Mr. Widi's request for discovery under Rule 56(d).

Finally, on October 13, 2017, the Court issued a scheduling order allowing for discovery until March 1, 2018 against the remaining defendants and on the remaining issues. *Scheduling Order* (ECF No. 512). If Mr. Widi had been able to unearth any direct probative evidence from the remaining parties as to who unlocked and opened the door, he would have been free to bring this evidence to the attention

18

of the Court. He has not done so. Mr. Widi has received the discovery under Rule 56(d) to which he is entitled.

## VI. CONCLUSION

The Court GRANTS Stephen E. Hickey and Michael Grasso's Motion for Summary Judgment on Count VII of the Second Amended Complaint (ECF No. 428).

SO ORDERED.

/s/ John A. Woodcock, Jr.  
JOHN A. WOODCOCK, JR.  
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of April, 2018